**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oakwood Homes Corporation, et al., | ) | Case No. 02-13396 (PJW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| _____ | ) | |
| OHC Liquidation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 04-57060 (PJW) |
| | ) | |
| Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S MOTION TO WITHDRAW THE REFERENCE**
**AND TO SET DATES FOR A PRE-TRIAL CONFERENCE AND JURY TRIAL**
**BEFORE THE DISTRICT COURT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..........................................2

SUMMARY OF PROCEEDINGS BEFORE THE BANKRUPTCY COURT .............3

ARGUMENT .....................................................11

    A.   Plaintiff Has A Seventh Amendment Right To A
         Jury Trial. .......................................13

    B.   The Adversary Proceeding Is Now "Trial Ready." .......14

    C.   Considerations Of Judicial Economy Favor
         Withdrawing The Reference As To The Entire
         Adversary Proceeding. ..............................16

CONCLUSION ...................................................22

# TABLE OF AUTHORITIES

## CASES

*In re Adelphi Inst., Inc.,*
    112 B.R. 534 (S.D.N.Y. 1990) ............................. 12

*Century Glove, Inc. v. First Am. Bank,*
    860 F.2d 94 (3d Cir. 1988) ............................... 21

*Citicorp Venture Capital v. Comm. of Creditors*
    *Holding Unsecured Claims,*
    160 F.3d 982 (3d Cir. 1998) .............................. 17

*Cong. Credit Corp. v. AJC Int'l, Inc.,*
    42 F.3d 686 (1st Cir. 1994) .............................. 16

*Dairy Queen, Inc. v. Wood,*
    369 U.S. 469 (1962) ...................................... 19

*Gray v. Solvay Polymers, Inc. (In re Dooley Plastic*
    *Co.),*
    182 B.R. 73 (D. Mass. 1994) .............................. 11

*Growe v. Bilodard Inc.,*
    325 B.R. 490 (D. Me. 2005) ............................... 11

*In re Hardesty,*
    190 B.R. 653 (D. Kan. 1995) .............................. 11

*Kowal v. Malkemus (In re Thompson),*
    965 F.2d 1136 (1st Cir. 1992) ............................ 21

*Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins.*
    *Servs.,*
    388 F. Supp. 2d 292 (S.D.N.Y. 2005) ..................... 17

*Michaelesco v. Shefts,*
    303 B.R. 249 (D. Conn. 2004) ........................ 12, 15

*Mirant Corp. v. Southern Co.,*
    337 B.R. 107 (N.D. Tex. 2006) ............................ 16

*NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.),*
    203 B.R. 905 (D. Del. 1996) .......................... 11, 12

*OHC Liquidation Trust v. Credit Suisse First Boston*
    *(In re Oakwood Homes Corp.),*
    340 B.R. 510 (Bankr. D. Del. 2006) ....................... 5

*Peachtree Lane Assocs. v. Granader,*
    175 B.R. 232 (N.D. Ill. 1994) ............................ 11

*Shubert v. Julius Kraft Co. (In re Winstar Commc'ns, Inc.)*,
    321 B.R. 761 (D. Del. 2005) ........................... 12, 15

*Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*,
    335 B.R. 539 (D. Del. 2005) .............................. 17

*In re Tastee Donuts, Inc.*,
    137 B.R. 204 (E.D. La. 1992) ............................ 16

*Travelers Cas. & Sur. Co. v. Skinner Engine Co. (In re Am. Capital Equip., LLC)*,
    325 B.R. 372 (W.D. Pa. 2005) ........................... 12

*United Orient Bank v. Green (In re Green)*,
    200 B.R. 296 (S.D.N.Y. 1996) ........................... 16

*Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In re Big V Holding Corp.)*,
    No. 01-233 (GMS), 2002 U.S. Dist. LEXIS 12609
    (D. Del. July 11, 2002) ............................ 12, 13

## STATUTES AND RULES

28 U.S.C. § 157(d) ......................................... *passim*

28 U.S.C. § 157(e) .......................................... 13

FED. R. CIV. P. 38(b) ......................................... 4

FED. R. BANKR. P. 5011(a) ..................................... 1

FED. R. BANKR. P. 9015(a) ..................................... 4

D. Del. LR 51.1(a) .......................................... 14

Del. Bankr. L.R. 5011-1 ...................................... 1

Pursuant to 28 U.S.C. § 157(d), Federal Rule of Bankruptcy Procedure 5011(a), and Rule 5011-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware,[1] Plaintiff OHC Liquidation Trust (**"Plaintiff"**), by and through its duly appointed trustee, Alvarez & Marsal, LLC, hereby moves to (1) withdraw the reference of the entire above-captioned adversary proceeding[2] (the **"Adversary Proceeding"**), which is currently pending before the U.S. Bankruptcy Court for the District of Delaware (the **"Bankruptcy Court"**); and (2) set dates for a pre-trial conference and jury trial before the U.S. District Court for the District of Delaware (the **"District Court"**) so that this case may proceed apace.

---

[1] Although Plaintiff's right to a jury trial on three "trial ready" counterclaims, combined with basic considerations of judicial economy, provides the basis (or "cause") for withdrawal of the reference here, Plaintiff has nevertheless complied with Local Rule 5011-1 by filing a concurrent motion with the Bankruptcy Court to determine whether this proceeding is "core."  Because the "core"/"non-core" distinction is not a basis to withdraw the reference in this particular instance, and because the resolution of that issue should not alter the outcome of the instant motion, Plaintiff has also requested that the Bankruptcy Court decline to require extensive briefing on the question and instead inform the District Court that the instant motion can be promptly decided solely on the basis of the papers filed with the District Court.

[2] Specifically, Plaintiff now moves to withdraw the reference as to Adversary Proceeding No. 04-57060 (PJW), currently pending before the Honorable U.S. Bankruptcy Judge Peter J. Walsh.  Items on the docket sheet for the Adversary Proceeding are cited herein as "Adv. Proc. D.I. No. __"; a "Record Appendix" including copies of all the cited material will be provided to the District Court.

## PRELIMINARY STATEMENT

This motion stems from an adversary proceeding that has been actively litigated before the Bankruptcy Court and is now ready for the final jury trial phase of the case. During this time, (i) all the parties' consensual and court-approved deadlines for discovery and dispositive motions have passed; (ii) both sides affirmed to the Bankruptcy Court (and to each other) that they are "trial ready"; and (iii) the case was just weeks before trial in the Bankruptcy Court were that court to rule there was no right to a jury trial. Prior to the entry of a pre-trial order, however, the Bankruptcy Court ruled that Plaintiff has a constitutional right to try certain claims against the Defendants in the Adversary Proceeding (collectively, **"Defendants"** or **"Credit Suisse"**) before a jury.

Because the Bankruptcy Court has not been authorized to conduct jury trials, and Credit Suisse will not consent to such a trial in any event, Plaintiff's Seventh Amendment rights will be validated only if a jury trial is conducted by the District Court. This fact constitutes sufficient (and in this case dispositive) "cause" to withdraw the reference. Moreover, considerations of judicial economy clearly favor withdrawal as to the entirety of the proceeding. Thus, given that both sides agree that the Adversary Proceeding is "trial ready," it is now proper for the reference to be withdrawn.

## SUMMARY OF PROCEEDINGS BEFORE THE BANKRUPTCY COURT

On November 15, 2002 (the **"Petition Date"**), Oakwood Homes Corporation (**"Oakwood"**) and certain of its affiliates (collectively, the **"Debtors"** and together with the non-Debtor affiliates, the **"Oakwood Entities"**) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The remaining Debtors filed for chapter 11 protection on March 5, 2004.  The Debtors' chapter 11 cases were jointly administered before the Bankruptcy Court as Case No. 02-13396 (PJW).

By order entered on March 31, 2004, the Bankruptcy Court confirmed the Debtors' "Second Amended Joint Consolidated Plan of Reorganization of Oakwood Homes Corporation and Its Affiliated Debtors and Debtors in Possession" (the **"Plan"**).  Plaintiff is the Debtors' successor in interest pursuant to the Plan and the related Liquidation Trust Agreement dated April 13, 2004.

Defendant Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC) (**"CSS"**) filed four identical proofs of claim in the Debtors' bankruptcy cases.  In those proofs of claim, CSS asserted an entitlement to various liquidated and unliquidated amounts, *all* of which stemmed from a certain letter agreement dated August 19, 2002 (the **"August 19 Contract"**), which agreement was attached as an exhibit to the rider CSS filed with its proofs of claim.

Plaintiff commenced the Adversary Proceeding on November 13, 2004 via an objection to CSS's proofs of claim, which objection was coupled with ten counterclaims against the Defendants (the **"Objection/Counterclaims"** [Adv. Proc. D.I. No. 1]).  Plaintiff's counterclaims included claims against CSS and the other Credit Suisse Defendants for malfeasance unrelated to the August 19 Contract, including for breach of fiduciary duty, negligence, and breach of implied contract. (*See* Objection/Counterclaims at ¶¶ 47-54, 92-96.)  The Objection/Counterclaims contained numerous allegations of fact that pre-dated the parties' execution of the August 19 Contract.  (*See, e.g., id.* at ¶¶ 11, 18-32.)  The cover page of the Objection/Counterclaims explicitly stated **"JURY TRIAL DEMANDED,"** a point Plaintiff reiterated in the pleading's text (*see id.* at ¶ 3 ("Plaintiff demands a jury trial of any issue triable by a jury.")), and via a separately attached document entitled **"DEMAND FOR JURY TRIAL"** (*see id.* at p. 38).  This constituted a timely jury demand pursuant to Federal Rule of Civil Procedure 38(b), made applicable to the Adversary Proceeding by Federal Rule of Bankruptcy Procedure 9015(a).

Defendants filed a motion to dismiss certain counts of the Objection/Counterclaims, which motion was denied by the Bankruptcy Court on March 31, 2006 as to all but one of Plaintiff's ten counterclaims (more specifically, the motion

was left pending as to the claim for "deepening insolvency")
[Adv. Proc. D.I. Nos. 127-128; *see also OHC Liquidation Trust
v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340
B.R. 510 (Bankr. D. Del. 2006)]. Defendants subsequently
filed their "Answer and Affirmative Defenses" (the **"Answer"**
[Adv. Proc. D.I. No. 132]).

In the Answer, Defendants denied that Plaintiff has
any rights to a jury trial. (*See id.* at ¶ 3.)  Nevertheless,
Defendants did not then move to strike Plaintiff's timely
demand for a jury trial – indeed, they ***never*** moved to strike
or otherwise raised the issue before the Bankruptcy Court.

On July 7, 2005, the Bankruptcy Court entered a
Scheduling Order (the **"Scheduling Order"** [Adv. Proc. D.I. No.
42]) to govern the timing of initial disclosures and fact
discovery in the Adversary Proceeding.  Pursuant to the
Scheduling Order, discovery in the form of document requests,
interrogatories, depositions, and requests for admissions was
to begin in August 2005 and conclude in November 2006.
Although some contentious discovery disputes arose along the
way, and although certain limited agreed exceptions allowed
some fact discovery to proceed after November 2006, virtually
all of the parties' fact discovery was completed by November
30, 2006, and ***all*** discovery was completed by October 22, 2007.

In connection with a status conference before the Bankruptcy Court on September 25, 2006, the parties negotiated and filed a status conference report (the **"2006 SCR"** [Adv. Proc. D.I. No. 159]).  In the 2006 SCR, the parties consensually agreed to certain cut-off deadlines for the completion of expert discovery and for the filing of any motions for summary judgment.  (*See* 2006 SCR at p. 2.)  At the September 25, 2006 status conference, the Bankruptcy Court approved the deadlines set forth in the 2006 SCR and preliminarily set the week of November 5, 2007 for trial.

Following the September 25, 2006 status conference, the parties completed the remainder of the discovery process and engaged in multiple settlement discussions.  Such talks ultimately proved unsuccessful – the parties were not able to reach any consensual resolution of the Adversary Proceeding.

In connection with the parties' settlement discussions, Defendants requested an extension of the expert discovery deadlines, which extension was (i) agreed to by Plaintiff and (ii) approved by the Bankruptcy Court.  (*See* Adv. Proc. D.I. Nos. 172-173.)  Plaintiff served two initial expert reports by the deadline on April 30, 2007.  (*See* Adv. Proc. D.I. No. 175.)  Defendants filed no expert reports by the April 30 deadline.

In June 2007, the parties again attempted to settle the Adversary Proceeding.  In connection with these discussions, Defendants requested a second extension of the deadline for their submission of "rebuttal" expert reports. Plaintiff again agreed to, and the Bankruptcy Court again approved, Defendants' requested extension.  (*See* Adv. Proc. D.I. Nos. 178-179.)  Notwithstanding this further extension, Defendants filed no expert report by the July 18 deadline. Rather, Defendants filed a discovery motion, which motion the Bankruptcy Court resolved via a letter ruling dated September 13, 2007 (the **"Letter Ruling"** [Adv. Proc. D.I. No. 194]).

Defendants timely completed a deposition of one of Plaintiff's experts, Dr. Alan Shapiro, by September 10, 2007. The deposition of the other expert, Dr. Michael Tennenbaum, was delayed on account of the Defendants' discovery motion.

Following the Letter Ruling, the parties negotiated and filed a status conference report (the **"2007 SCR"** [Adv. Proc. D.I. No. 195]) in anticipation of a status conference before the Bankruptcy Court on October 4, 2007.  In the 2007 SCR, the parties agreed that Defendants would depose Dr. Tennenbaum by October 22, 2007, and that "[f]ollowing the completion of the expert discovery process . . ., the parties believe that this adversary proceeding will be nearly 'trial ready.'"  (*See* 2007 SCR at pp. 1-2.)

The 2007 SCR further provided that, notwithstanding their repeated failure to meet the previously-agreed deadlines, Defendants would have until October 4, 2007 to decide whether to submit any expert "rebuttal" reports. (*See id.* at p. 1.) Via an e-mail dated October 3, 2007, Defendants' counsel informed Plaintiff's counsel that Defendants decided not to submit any expert witness reports.

The 2007 SCR also noted a residual issue which stemmed from the fact that "Plaintiff has timely demanded a jury trial on all issues triable by jury" but "Defendants do not consent to a jury trial conducted by this [Bankruptcy] Court." (*See id.* at p. 2.) Unmoved by this open issue, Defendants stated in the 2007 SCR that they were "prepared to proceed to trial before this [Bankruptcy] Court on November 5, 2007, and object to any delay." (*Id.*)

The parties' long-agreed September 14, 2007 deadline for summary judgment motions passed without either side filing any motions for summary judgment.

On October 4, 2007, the parties attended a status conference before the Bankruptcy Court.[3] At this conference:

---

[3] A true and correct copy of the official transcript for the October 4, 2007 status conference [Adv. Proc. D.I. No. 206] is attached as Exhibit "A" to the accompanying Declaration of Whitman L. Holt and is cited herein as "SC Tr. at __."

- The parties informed the Bankruptcy Court of Defendants' decision not to rely on any expert witnesses, including as "rebuttal" witnesses to Plaintiff's experts.  (*See* SC Tr. at 3:23 - 4:2.)

- The Defendants' counsel explained to the Bankruptcy Court that Defendants had intentionally decided not to file any summary judgment motions by the parties' long-agreed deadline.  (*See id.* at 8:9-13.)

- The Defendants' counsel informed the Bankruptcy Court of Defendants' belief that the Adversary Proceeding was "essentially trial ready."  (*See id.* at 6:13-15.)

- Plaintiff's counsel likewise informed the Bankruptcy Court that Plaintiff believed the Adversary Proceeding would be "entirely ready for trial" following the close of expert discovery on October 22, 2007.  (*See id.* at 4:2-8.)

- Notwithstanding its readiness for trial, Plaintiff's counsel explained that Plaintiff believed it had a constitutional right to a jury and, since the matter was nearly "trial ready," would promptly move to withdraw the reference if the Bankruptcy Court so determined.  (*See id.* at 4:7 – 5:12; 17:14-25.)

- After a brief colloquy between the Bankruptcy Court and counsel, the Bankruptcy Court agreed to set an expedited briefing schedule whereby the parties could set forth their respective positions about Plaintiff's rights to a jury trial *vel non*.  (*See id.* at 16:7 – 17:3; *see also* Adv. Proc. D.I. No. 200 (order setting forth briefing schedule regarding jury trial issue).)

- Pending the outcome of the parties' briefing regarding the jury trial issue, the Bankruptcy Court scheduled preliminary dates for the submission of a pre-trial order, a pre-trial conference, and a bench trial before the Bankruptcy Court.  (*See* SC Tr. at 18:17 – 19:13; *see also* Adv. Proc. D.I. No. 200 (order setting certain trial-related deadlines).)

Consistent with the October 4, 2007 status conference and the Bankruptcy Court's subsequent order, the parties filed lengthy and detailed briefs setting forth their respective positions regarding whether Plaintiff has a constitutional right to a jury trial. (*See* Adv. Proc. D.I. Nos. 198, 201, 203.)  Likewise, Defendants completed their final expert deposition (of Dr. Tennenbaum) by the October 22, 2007 deadline.  Thus, as of the conclusion of that deposition, *all* discovery in this Adversary Proceeding has been completed and *all* agreed deadlines for dispositive motions have run.

On October 25, 2007 – one day prior to the deadline for the parties to file a draft pre-trial order – the Bankruptcy Court scheduled a telephonic conference at which the parties were informed of the Bankruptcy Court's tentative ruling that Plaintiff has a constitutional right to a jury trial on certain of its claims.  Following this conference, the parties agreed that deadlines related to the trial preparation process would be suspended pending the Bankruptcy Court's ruling and proceedings before the District Court.

On November 15, 2007, the Bankruptcy Court issued a detailed memorandum opinion (the **"Jury Trial Opinion"** [Adv. Proc. D.I. No. 207; Holt Decl. Ex. "B"]) in which the Bankruptcy Court held that Plaintiff has the constitutional

right to a jury trial with respect to three of its counterclaims; specifically, the counterclaims for breach of fiduciary duty, negligence, and breach of implied contract.

## ARGUMENT

Pursuant to 28 U.S.C. § 157(d), the District Court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." A party's fundamental right to a jury trial can, by itself, constitute sufficient "cause" to withdraw the reference.[4] This conclusion follows from the fact that "absent the express consent of both parties and a special designation of jurisdiction by the district court, the bankruptcy court may not hold a jury trial." *NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 908

---

[4] *See, e.g.*, *Growe v. Bilodard Inc.*, 325 B.R. 490, 492 (D. Me. 2005) ("A bankruptcy court may not conduct a jury trial without the consent of the parties. Therefore, a valid jury demand can have the effect of mandating withdrawal to the District Court for trial." (citation omitted)); *In re Hardesty*, 190 B.R. 653, 655 (D. Kan. 1995) ("Sufficient cause for withdrawal of reference exists where the adversary proceeding concerns matters for which there is a right to a jury trial, a timely demand for a jury trial, and no mutual consent to trial before the bankruptcy court."); *Gray v. Solvay Polymers, Inc. (In re Dooley Plastic Co.)*, 182 B.R. 73, 81 (D. Mass. 1994) (the fact "that the Bankruptcy Court is not authorized to conduct a jury trial . . . constitutes good cause for withdrawing the reference"); *Peachtree Lane Assocs. v. Granader*, 175 B.R. 232, 235 (N.D. Ill. 1994) ("Because the bankruptcy court may not conduct a jury trial, 'cause' to withdraw the reference automatically exists in cases where the party seeking withdrawal is entitled to a jury trial under the Seventh Amendment." (citation and quotations omitted)).

(D. Del. 1996); *see also id.* at 914 ("Because the parties have not expressly allowed the bankruptcy court to hold a jury trial in this adversary proceeding and because this court has not made a special designation of jurisdiction, the bankruptcy court is not statutorily empowered to hold a jury trial in this matter. ***For this reason alone withdrawal is compelled.***" (emphasis added)).

Notwithstanding that a party's Seventh Amendment rights give rise to adequate "cause" for withdrawal of the reference, courts in this and other districts hold that "[w]ithdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is 'trial ready.'" *Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In re Big V Holding Corp.)*, No. 01-233 (GMS), 2002 U.S. Dist. LEXIS 12609, at *17 (D. Del. July 11, 2002) (citing cases).[5] Thus, even if a party has a jury right, the

---

[5] *See also, e.g., Travelers Cas. & Sur. Co. v. Skinner Engine Co. (In re Am. Capital Equip., LLC)*, 325 B.R. 372, 378 (W.D. Pa. 2005) ("It is appropriate, efficient, and logical that withdrawal of the reference in such circumstances can be deferred until the case is trial ready."); *Shubert v. Julius Kraft Co. (In re Winstar Commc'ns, Inc.)*, 321 B.R. 761, 764 (D. Del. 2005) ("A district court may consider a demand for a jury trial insufficient cause for discretionary withdrawal if the motion is made at an early stage of the proceedings and dispositive motions may resolve the matter."); *Michaelesco v. Shefts*, 303 B.R. 249, 253 (D. Conn. 2004) ("The appropriateness of removal of the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial ready." (quoting *In re Adelphi*

bankruptcy court must administer the case through the end of the discovery phase and the expiration of the deadline for dispositive motions. *See id.* at *18-19. Only when those processes are completed and the matter is actually ready for trial is a motion to withdraw the reference timely and ripe.

**A.    Plaintiff Has A Seventh Amendment Right To A Jury Trial.**

As the Bankruptcy Court cogently explains in its comprehensive Jury Trial Opinion, which opinion was rendered after detailed briefing by Plaintiff and Defendants, Plaintiff has a constitutional right to have a jury try three of its claims against Credit Suisse in the Adversary Proceeding.

Defendants made clear in the 2007 SCR that they will not consent to a jury trial conducted by the Bankruptcy Court. (*See* 2007 SCR at p. 2 ("The Defendants do not consent to a jury trial conducted by this Court.").) This fact alone bars the Bankruptcy Court from conducting a jury trial pursuant to 28 U.S.C. § 157(e). Moreover, the Bankruptcy Court has not been specially designated by the District Court to conduct jury trials in any event, which would also be required by section 157(e). Accordingly, Plaintiff's core constitutional rights can be protected if and only if the reference is withdrawn once the Adversary Proceeding is "trial ready."

---

*Inst., Inc.*, 112 B.R. 534, 538 (S.D.N.Y. 1990))).

**B.    The Adversary Proceeding Is Now "Trial Ready."**

As both sides to the Adversary Proceeding expressly represented to the Bankruptcy Court on the record at the October 4, 2007 status conference, *everything* now has been completed in the Adversary Proceeding except for the trial itself.  In fact, had the Bankruptcy Court not convened a telephonic conference on October 25, 2007, a pre-trial order would have been filed on October 26, 2007, thereby moving the Adversary Proceeding further toward the potential bench trial scheduled to begin on November 5, 2007.[6]  Any matter that is potentially less than two weeks from the start of trial is plainly at a sufficiently advanced stage so as to make withdrawal of the reference a proper and efficient response.

---

[6]    The fact that a pre-trial order has not actually been entered by the Bankruptcy Court should not alter the conclusion that the Adversary Proceeding is "trial ready."  Indeed, given the distinct pre-trial procedures outlined in the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, any pre-trial order entered by the Bankruptcy Court would need to be retooled for use before the District Court.  As but one example, District Court Local Rule 51.1(a) requires that proposed jury instructions be submitted "at least 3 business days before the pretrial conference."  D. Del. LR 51.1(a).  Since the Bankruptcy Court cannot conduct jury trials, all procedures relating to jury trials – including those required by Rule 51.1(a) – necessarily must be completed in the District Court, and since some of that process must occur *prior to* any pre-trial conference, it is clear that a pre-trial conference before the Bankruptcy Court cannot be a prerequisite to withdrawing the reference on Seventh Amendment grounds.  To the contrary, the appropriate point of cleavage would seem to be after the time for discovery and dispositive motions has run but before the pre-trial conference has occurred.  This is precisely the point at which the Adversary Proceeding now rests.

Indeed, if the Defendants' own statements to the Bankruptcy Court are not dispositive, even a superficial review of the status of the Adversary Proceeding confirms that it is now "trial ready."  Specifically, the deadlines for the following events, some of which were repeatedly extended at Defendants' request, have passed: fact discovery, expert discovery, and dispositive motions.  Furthermore, the parties have tried to settle the Adversary Proceeding, but all such efforts have proven unsuccessful to date.  At bottom, then, all that remains is for the Adversary Proceeding to proceed to trial.  Courts have regularly withdrawn the reference on Seventh Amendment grounds in other cases that were at an equivalent point in their life cycle.  *See, e.g.*, *Shubert v. Julius Kraft Co. (In re Winstar Commc'ns, Inc.)*, 321 B.R. 761 (D. Del. 2005) (granting motion to withdraw the reference on jury trial grounds in case that was not "at an early stage of the proceedings" but rather mere months from trial); *Michaelesco v. Shefts*, 303 B.R. 249, 253-54 (D. Conn. 2004) (granting motion to withdraw reference when party had right to a jury trial and scheduled trial date in the bankruptcy court made it "clear that the case is going to trial").  A similar conclusion should obtain here; the reference should be withdrawn because the Adversary Proceeding now is, but only recently became, "trial ready."

15

Beyond withdrawing the reference, Plaintiff also moves to set dates for a pre-trial conference and trial before the District Court.  Because Plaintiff desires to try the Adversary Proceeding on the merits before a jury at the earliest available opportunity, Plaintiff asks to schedule both dates as soon as is convenient for the District Court.

**C.    Considerations Of Judicial Economy Favor Withdrawing The Reference As To The Entire Adversary Proceeding.**

Numerous courts have elected to use the powers granted by 28 U.S.C. § 157(d) to withdraw the bankruptcy reference as to all aspects of an adversary proceeding in order to promote judicial economy, even when certain parts of that proceeding theoretically could have remained before a bankruptcy court for a second trial.[7]  In the instant case, it

---

[7]  *See, e.g.*, *Cong. Credit Corp. v. AJC Int'l, Inc.*, 42 F.3d 686, 690-91 (1st Cir. 1994) (instructing district court to withdraw the reference and consolidate proceedings "because bringing the preference claims into the district court will allow all facets of these controversies affecting the same property and the same defendants to be disposed of by one tribunal having undoubted jurisdiction and authority"); *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 122 (N.D. Tex. 2006) (finding that any "overlap in the judicial activities related to the adjudications to be made as to the withdrawn claims and the determinations to be made as to [a defendant's] claims in bankruptcy . . . could be eliminated by a withdrawal of the reference of [the defendant's] proofs of claim and objections thereto"); *United Orient Bank v. Green (In re Green)*, 200 B.R. 296, 299 (S.D.N.Y. 1996) (withdrawing reference as to entire proceeding since not doing so "likely would result in duplicative presentations on substantially overlapping factual matters" and "cause unnecessary delay and deplete both judicial resources and the assets of the bankruptcy estate"); *In re Tastee Donuts, Inc.*, 137 B.R. 204, 207 (E.D. La. 1992) ("Even if this

would unquestionably be more efficient for the District Court to withdraw the reference as to the entire Adversary Proceeding and to thereafter set and hold a single trial.

First, although Plaintiff's three counterclaims which are unrelated to the August 19 Contract are analytically and legally distinct from Plaintiff's objections to CSS's proofs of claim (and the "claims-allowance process" more broadly, *see* Jury Trial Opinion at pp. 17-20), there nevertheless are certain overlapping factual issues.

For instance, the entire history of Credit Suisse's relationship with the Oakwood Entities bears on the nature and scope of the duties owed, as well as on whether Credit Suisse occupied the status of a fiduciary or "insider," both ***before and after*** the execution of the August 19 Contract. *See, e.g.*, *Citicorp Venture Capital v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982, 986-92 (3d Cir. 1998); *Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 547 (D. Del. 2005); *Lumbermens Mut. Cas. Co. v. Franey Muha Alliant Ins. Servs.*, 388 F. Supp. 2d 292, 305-06 (S.D.N.Y. 2005). Likewise, the knowledge obtained by Credit Suisse's employees prior to August 19, 2002 about the Oakwood

---

adversary proceeding involves core matters as well, the Court finds that the interests of judicial efficiency require that the reference be withdrawn for the entire adversary proceeding.").

Entities' finances, capital structure, and operations is unquestionably relevant to an analysis of the quality of their services rendered after the August 19 Contract was executed.

Thus, the interests of judicial economy, and of avoiding the potential for inconsistent findings, plainly weigh heavily in favor of having any such overlapping factual issues – which may be germane to counterclaims as to which Plaintiff has a jury right and to counterclaims as to which it does not – determined at the same time and in a single forum.

Second, even in the absence of overlapping questions of fact, it is indisputable that a common set of witnesses must be called with respect to every one of Plaintiff's counterclaims. This consideration is particularly important in light of the fact that the two key former Oakwood employees now work for different corporations and cannot be compelled to testify in this matter.[8] Those former Oakwood employees have agreed to travel to this district and appear for one trial, and it is critical that their testimony be heard live by the jury. But there is no reason to ask these non-parties to

---

[8]  Specifically, Oakwood's former CEO, Mr. Myles E. Standish, currently lives in North Carolina and is affiliated with a manufactured housing company based in Idaho, to which Mr. Standish regularly commutes. Likewise, Oakwood's former executive vice-president, treasurer, and secretary, Mr. Douglas R. Muir, also lives in North Carolina and is presently CFO of Krispy Kreme Doughnuts, a publicly traded company.

consider inconveniencing themselves and their current employers twice for a second trial, nor is there any reason to assume that they will agree to such an overreaching request. Rather, it is far more efficient for the former Oakwood employees and their current employers (as well as for the employees of Plaintiff's own trustee and, presumably, for the employees of Credit Suisse) that they be asked to appear just once, for a consolidated trial before the District Court.

Third, basic scheduling considerations also support a single proceeding before the District Court.  To the extent that any common issues of fact bear on counterclaims as to which Plaintiff has a constitutional jury right and on counterclaims as to which Plaintiff does not have a jury right, all such issues should first be put to the jury.  *See, e.g.*, *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472-73 (1962); *see also* Jury Trial Opinion at pp. 12-13.  Consequently, the practical reality is that any proceedings left before the Bankruptcy Court would likely be stayed, pending final resolution of the matters tried by jury before the District Court.  This would cause the Adversary Proceeding to occupy an active docket before two federal courts in Delaware, and would further require both parties to navigate at least two tracks of scheduling and preparing for trial.  Clearly the more efficient route, which will minimize the final sum of judicial

resources that are consumed by this Adversary Proceeding, is
to have the entire matter proceed before a single court.

Fourth, considerations of cost further weigh in
favor of maintaining a single, consolidated action. Plaintiff
is an entity created to liquidate and distribute the limited
assets of a bankrupt corporation. Thus, each marginal dollar
spent in connection with the Adversary Proceeding is one that
potentially could be used to satisfy the claims of innocent
unsecured creditors – creditors who are unlikely to receive
full satisfaction. As such, Plaintiff seeks to minimize the
ultimate expense of this litigation (and although they are not
now bankrupt or a liquidating entity, Defendants presumably
share this goal). Dividing the Adversary Proceeding in two
necessarily increases the costs for all parties: two distinct
pre-trial orders will need to be negotiated; two trials will
occur; and thorny disputes regarding bilateral procedures,
appeals, and scheduling could arise. All these incremental –
yet ultimately unnecessary – costs can be avoided simply by
preserving the Adversary Proceeding's unitary nature and
holding one consolidated jury trial before the District Court.

Fifth, allowing the Adversary Proceeding to continue
as a combined action also advances important federal policies.
Courts have repeatedly recognized that bankruptcy law is
uniquely driven by the need for matters to proceed quickly and

efficiently, so that debtors' estates may be timely administered and closed.  *See, e.g.*, *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1145 (1st Cir. 1992) (noting "the important policy favoring efficient bankruptcy administration"); *Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94, 98 (3d Cir. 1988) (emphasizing how "issues central to the progress of the bankruptcy petition, those likely to affect the distribution of the debtor's assets, or the relationship among the creditors, should be resolved quickly" (citation and quotations omitted)).  Here, the Adversary Proceeding is the main remaining matter in chapter 11 cases that are many years old.  Splitting the proceeding into parts only further delays the date on which Plaintiff can close the Oakwood estate and make its final distribution to creditors.

In sum, myriad legal and practical considerations create ample "cause" for the District Court to exercise its discretion to withdraw the reference as to the whole Adversary Proceeding.  A withdrawal only as to certain aspects or counterclaims would raise the possibility of inconsistent factual findings, unnecessarily increase the cost and duration of this litigation, unduly inconvenience non-parties, and contravene recognized bankruptcy policy.  Basic principles of judicial economy, which are to guide the application of 28 U.S.C. § 157(d), should preclude these avoidable results.

## CONCLUSION

For the reasons and based on the authorities presented above, Plaintiff hereby requests that (1) the reference to the Bankruptcy Court be withdrawn as to the entire Adversary Proceeding, and (2) dates be scheduled for a pre-trial conference and jury trial before the District Court.

Respectfully submitted,

Dated:  November 19, 2007
Wilmington, Delaware

/s/ *Marla Rosoff Eskin*
MARLA ROSOFF ESKIN (No. 2989)
KATHLEEN CAMPBELL DAVIS (No. 4229)
CAMPBELL & LEVINE, LLC
800 N. King Street, Suite 300
Wilmington, DE 19801
(302) 426-1900

-and-

TONY CASTAÑARES (CA SBN 47564)
STEPHAN M. RAY (CA SBN 89853)
SCOTT H. YUN (CA SBN 185190)
WHITMAN L. HOLT (CA SBN 238198)
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Fl.
Los Angeles, CA 90067
(310) 228-5600

Special Counsel for the
OHC Liquidation Trust

# __Appendix of Unpublished Decisions__

1.  *Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In re Big V Holding Corp.)*,
    No. 01-233 (GMS), 2002 U.S. Dist. LEXIS 12609 (D. Del. July 11, 2002)

Case 1:07-cv-00799-JJF    Document 1-2    Filed 12/07/2007    Page 2 of 6

Page 1
2002 U.S. Dist. LEXIS 12609, *

**In re: BIG V HOLDING CORP., et al., Debtors. WAKEFERN FOOD CORP., Plaintiff, v. C&S WHOLESALE GROCERS, INC., Defendant.**

**Chapter 11, Case No. 00-04372 (RTL), (Jointly Administered), Adversary Proceeding No. 01-758, Civil Action No. 01-233 (GMS)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2002 U.S. Dist. LEXIS 12609**

**July 11, 2002, Decided**

**DISPOSITION:**    Plaintiff's motion to withdraw reference to bankruptcy was denied.

**COUNSEL:**  **[*1]**    For BIG V HOLDING CORP., debtor: Gregg Mattisen Galardi, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE.

For WAKEFERN FOOD CORP., plaintiff: Daniel J. DeFranceschi, Richards, Layton & Finger, Wilmington, DE.

For C & S WHOLESALE GROCERS, INC., defendant: Gregory W. Werkheiser, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:**  Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory Moneta Sleet

**OPINION**

MEMORANDUM AND ORDER

I. INTRODUCTION

On November 22, 2000, the Debtors, Big V Holding Corp., *et al.*, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Pursuant to 28 U.S.C. § 157(a), the bankruptcy cases were referred from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware ("the Bankruptcy Court"). [1] Since the petition date, the Debtors have continued in possession of their properties and the management and operation of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On December 6, 2000, an Official Committee of Unsecured Creditors ("the Creditors' Committee") was **[*2]** appointed by the United States Trustee pursuant to § 1102 of the Bankruptcy Code. Presently before the court is the Creditors' Committee's March 20, 2001 motion to withdraw the reference to the Bankruptcy Court. Since Wakefern has yet to assert a proper jury demand, and since considerations of judicial economy favor leaving the adversary proceeding in the Bankruptcy Court until it is ready for trial, Wakefern's motion to withdraw the reference will be denied at this time.

1    Referral of Title 11 proceedings from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware is automatic pursuant to a Standing Order of Reference dated July 23, 1984.

II. FACTS

Wakefern Food Corporation ("Wakefern"), the plaintiff in this adversary proceeding (the "C&S Action"), is a food cooperative wholesaler that centralizes the purchasing of inventory and supplies for its members. The Debtors have been a member of the Wakefern cooperative since 1959. **[*3]** Pursuant to the stockholder agreement and by-laws governing Wakefern members, the Debtors are obligated to purchase approximately 85% of their products from Wakefern.

On August 3, 2000, the Debtors decided that their continued participation in Wakefern was detrimental to their business and, as a result, entered into a supply agreement with C&S Wholesale Grocers, Inc. ("C&S"), a direct competitor of Wakefern. On November 28, 2001, six days after the Debtors filed for relief under chapter 11, Wakefern filed suit against C&S in New Jersey state court. The complaint alleged that C&S, by executing an agreement with the Debtors, had engaged in tortious interference with Wakefern's contractual relations and had aided and abetted the Debtors' breach of fiduciary duty. The complaint seeks preliminary and permanent injunctions as well as damages. The C&S Action was removed to the United States Bankruptcy Court for the District of New Jersey and was subsequently transferred to the United States Bankruptcy Court for the District of Delaware, the Honorable Raymond T. Lyons presiding. [2]

2    Judge Lyons is a visiting United States Bankruptcy Judge from the District of New Jersey.

[*4]  On March 20, 2001, Wakefern filed a motion to withdraw the reference of the C&S Action to the Bankruptcy Court. C&S objected, arguing that Wakefern had failed to make a simultaneous motion to the Bankruptcy Court for a determination of whether the C&S Action was a "core" or "non-core" proceeding as required by Delaware Local Bankruptcy Rule 5011-1. On May 25, 2001, the Bankruptcy Court issued an order designating the C&S Action as a "non-core" proceeding. Therefore, C&S withdrew its objection to Wakefern's motion to withdraw the reference. The Debtors and the Creditors' Committee, however, have continued to oppose the motion. On January 31, 2001, the Creditors' Committee filed a motion to intervene in the C&S Action, which was granted by the bankruptcy court on February 15, 2001. The court has no record of a motion to intervene being filed by the Debtors.

Central to the C&S Action is the Debtors' termination of the Wakefern supply agreement and execution of the C&S Supply agreement. Before proceeding with the C&S supply agreement, the Debtors sought a declaratory judgment from the Bankruptcy Court in order to determine whether the Debtors would owe a large withdrawal payment to Wakefern [*5]  if they proceeded with the C&S supply agreement. On September 14, 2001, in *Big V Supermarkets, Inc. v. Wakefern Food Corp.*, 267 B.R. 71, 111 (Bankr. D. Del. 2001), the Bankruptcy Court held that the Debtors would be obligated to make the withdrawal payment. The Bankruptcy Court also made specific findings as to what would constitute a breach of good faith and fair dealing with regards to the Debtors' attempts to abandon the Wakefern supply agreement.

Apart from the declaratory judgment action, the Bankruptcy court has presided over numerous scheduling and pretrial conferences and disputes, including Wakefern's February 9, 2001 motion to compel the Debtors' assumption/rejection of the Wakefern Agreement and C&S's March 28, 2001 motion to dismiss, or in the alternative, to stay proceedings. In sum, the C&S Action is intertwined with several proceedings and matters which are or were before the Bankruptcy Court. Furthermore, Bankruptcy Court Judge Lyons stated that he believes the C&S Action should be adjudicated together with the other actions relating to the bankruptcy case. During a March 28, 2001 scheduling conference, Judge Lyons stated, "I think this is a three [*6]  party dispute that should be dealt with together."

One final fact is crucial to the court's analysis of Wakefern's motion. To date, Wakefern has not made any formal demand for a jury trial. However, Wakefern has indicated that they plan to file an amended complaint with the formal jury trial demand after the court decides this motion to withdraw the reference. Wakefern refuses to file the amended complaint for fear that filing a claim in the Bankruptcy Court could constitute consent to the jurisdiction of the Bankruptcy Court and consequently, waiver of the right to a jury trial.

## III. DISCUSSION

### A. Intervention

Neither the Debtors or the Creditors' Committee are parties to the C&S Action. Therefore, in order for their objection to be heard, they must have properly intervened in the adversary proceeding.

Federal Rule of Civil Procedure 24(a)(1) provides that upon timely application anyone shall be permitted to intervene in an action "when a statute of the United States confers an unconditional right to intervene." Both the Debtors and the Creditors Committee believe that they have an unconditional right to be heard under 11 U.S.C. § 1109 [*7]  (b), which states, in part, "A party in interest, including the debtor, . . . [or] a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter." Wakefern argues that the C&S Action, an adversary proceeding, is not a "case under this chapter" as required by the statute. Although the circuits are split on whether section 1109(b) confers an unconditional right to intervene, [3] the Third Circuit has taken a clear position on the issue. In *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1241 (3d Cir. 1994), the Third Circuit held that section 1109(b) gives a creditors' committee an unconditional right to intervene in a non-core adversarial proceeding in federal district court which is "related to" a bankruptcy case.

3    The Fourth, Fifth, and Eleventh Circuits have held that § 1109(b) does not create an absolute right of intervention in any adversary proceedings, not even those that are brought "under" chapter 11. *See Fuel Oil Supply and Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286-1287 (5th Cir. 1985); *In re Charter Co.*, 876 F.2d 866, 871 (11th Cir. 1989); *Matter of Richman*, 104 F.3d 654, 658 (4th Cir. 1997).

[*8]  A civil proceeding is "related to" bankruptcy when the outcome of that proceeding could conceivably have any effect on the estate being administered. *See Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999). The complaint in the adversary proceeding between Wakefern and C&S seeks an injunction against the Debtors' supply agreement with C&S. Thus the adversary proceeding clearly affects the Debtors' estate and their ability to reorganize. Moreover, the procedural history of the

C&S Action indicates that it is "related to" the bankruptcy. The proceeding was removed from state court pursuant to 28 U.S.C. § 1452(a), which allows a party to remove a cause of action that is "related to" a bankruptcy case. Furthermore, the C&S Action was referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a), which mandates that proceedings "related to" a case under title 11 shall be referred to the bankruptcy judges for the district. Therefore, the C&S Action clearly satisfies the "related to" requirement.

Since the C&S Action is "related to" the bankruptcy, the *Phar-Mor* holding dictates that the Debtors and Creditors' Committee [*9] have an unconditional right to intervene under section 1109(b). [4] In the instant proceeding, the Creditors' Committee has properly filed a motion to intervene and has otherwise complied with the requirements for intervention pursuant to Rule 24(c). Therefore, since 11 U.S.C. § 1109(b) gives a creditors' committee an unconditional right to intervene in light of *Phar-Mor*, the Creditors' Committee is a proper intervenor in this matter pursuant to Rule 24(a)(1). [5]

> [4] Bankruptcy Rule 7024, the sole Bankruptcy rule governing intervention in an adversary proceeding, merely adopts Federal Rule of Civil Procedure 24.

> [5] Based upon the current record, the court has been unable to determine whether the Debtors have filed a timely motion to intervene. Therefore the Debtors will not be considered a proper intervenor in this proceeding for purposes of Wakefern's motion to withdraw the reference; however, the Creditors' Committee's opposition to the motion should adequately represent the interest of the Debtors.

[*10] B. Mandatory v. Permissive Withdrawal of the Reference

The C&S Action was referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a). The procedure governing withdrawal of the reference to the Bankruptcy Court is stated in 28 U.S.C. § 157(d), which reads,

> "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d).

The first sentence of this statute describes the conditions under which withdrawal is permissive, while the second sentence describes the conditions under which withdrawal is mandatory. Since the C&S Action involves only state law tort and contract claims, it clearly does not meet the requirements for mandatory withdrawal. Therefore, the permissive withdrawal standard [*11] applies. Under this standard, the court may withdraw the reference of the adversary proceeding "for cause shown." *See* 28 U.S.C. § 157(d).

As the movant in this case, Wakefern bears the burden to show cause. *NDEP Corp. v. Handl-It, Inc.*, 203 B.R. 905, 907 (D. Del. 1996). The statute does not define "cause," but guideposts exist to elucidate the meaning of the word. The Third Circuit has stated that a court should consider: "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990). However, the "factors listed in *Pruitt* were not designed to be exhaustive; they are only minimal standards." *NDEP Corp.*, 203 B.R. at 908. Relevant considerations might also include "the nature of the proceedings (*i.e.*, core or non-core) and judicial economy." *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*, 107 B.R. 34, 39 (D. Del. 1989). Another factor which should be considered is "whether the [*12] parties have requested a jury trial." *Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989). The court will now consider these factors.

C. Factors to Consider in Determining Whether to Withdraw the Reference

1. Core v. Non-Core and Judicial Economy

There are strictures upon the Bankruptcy Court's authority to hear and determine non-core proceedings that do not apply in the instance of core proceedings. *See* 28 U.S.C. § 157(b)(1). Thus, a determination of whether the C&S Action is a core or non-core proceeding is crucial to the determination of the Creditors' Committee's motion. In an Order dated May 25, 2001, the Bankruptcy Court declared that the current adversary proceeding is non-core. No party has challenged the Bankruptcy Court's ruling, therefore, the court concludes the C&S Action is a non-core proceeding.

Moving to the question of judicial economy, the court believes the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and con-

fusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process, as **[*13]** set forth in *Pruitt*, 910 F.2d at 1168, would seem to be best served by leaving the C&S Action in the Bankruptcy Court. [6]

> [6]    The court is aware that courts in this district have held that "judicial economy favors permissive withdrawal of the reference of a non-core proceeding, since the district court would still need to review the merits of the dispute when considering the bankruptcy court's proposed findings of fact and conclusions of law." *NDEP Corp.*, 203 B.R. at 908, (paraphrasing *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*, 107 B.R. 34, 39 (D. Del. 1989)). Given the facts and circumstances of this case, the court declines to follow this precedent.

The Bankruptcy Court is intimately familiar with the numerous complex issues surrounding the C&S Action. In fact, on September 14, 2001, the Bankruptcy Court issued a declaratory judgment in a separate adversary proceeding to this bankruptcy case which is interrelated with the C&S Action. *See Big V Supermarkets, Inc.*, 267 B.R. 71. **[*14]** In that proceeding, the Bankruptcy Court held that Wakefern would be entitled to a withdrawal payment if the Debtors were to proceed with their supply agreement with C&S. *Id.* at 111. Furthermore, the Bankruptcy Court made specific findings as to what would constitute a breach of good faith and fair dealing with regard to the Debtors' attempts to abandon the Wakefern supply agreement. *Id.* Thus, it is apparent that the Bankruptcy Court is very familiar with the facts and issues which are crucial to the determination of the C&S Action. Specifically, the Bankruptcy Court has become familiar with important provisions of Wakefern's By-Laws and Stockholders' Agreement, all of which are crucial to the C&S Action. In sum, the Bankruptcy Court has already expended invaluable time and energy familiarizing itself with the facts and issues surrounding the C&S Action. Considerations of judicial economy thus weigh in favor of leaving the case with the Bankruptcy Court. *See Northwestern Institute of Psychiatry, Inc. v. Travelers Indem. Co.*, 272 B.R. 104, 109 (E.D. Pa. 2001) ("The bankruptcy court is familiar with the parties, the factual background of the case **[*15]** and the legal issues involved. Therefore, this court finds no reason to disturb the present course and it declines to withdraw the reference as judicial economy will be served by allowing the adversary action to remain in bankruptcy court").

2. Right to a Jury Trial

The right to a jury trial is an important factor in determining a motion to withdraw the reference. This is so because absent the express consent of both parties and a

special designation of jurisdiction by the district court, the Bankruptcy Court may not hold a jury trial in a non-core proceeding. *See* 28 U.S.C. § 157(e).

It is clear that Wakefern has a constitutional right to a jury trial in this case. The Seventh Amendment states, "In Suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . ." U.S. CONST. amend. VII. In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 106 L. Ed. 2d 26, 109 S. Ct. 2782 (1989), the Supreme Court explained that "suits at common law" referred to controversies in which legal rights were to be determined, as distinguished from cases in which only equitable rights were **[*16]** recognized and only equitable remedies were administered. Furthermore, the Court stated that the Seventh Amendment only requires a jury trial if a cause of action is legal in nature and it involves a matter of private right. *Id.* at 42 n.4. The C&S Action, a contract and tort action for damages, is clearly legal in nature and involves a matter of private right. *See NDEP Corp.*, 203 B.R. at 909.

However, although Wakefern has a right to a jury trial of the C&S Action, a proper jury demand has not been made. Wakefern has stated that upon the court's determination of this motion to withdraw the reference, it will file the amended complaint containing a demand for a jury trial. While Wakefern's intention to formally demand a jury trial is duly noted, the fact remains that they have not yet done so. Wakefern is reluctant to file an amended complaint with a jury demand because it believes, not without reason, that filing an amended complaint could quite possibly constitute waiver of their Seventh Amendment right to have their claims tried by jury. *See Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1250-1253 (3d Cir. 1993) (identifying **[*17]** two theories whereby courts have divested parties of their rights to a jury in the bankruptcy context. Under the "waiver theory," a party can lose its right to a jury trial by voluntarily submitting to the jurisdiction of the bankruptcy court through the filing of a petition or claim in the bankruptcy court).

Although Wakefern may be entitled to a jury trial, their potential entitlement at some future date is not sufficient grounds to withdraw the reference at this time. Withdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is "trial ready." *See In re Northwestern Institute of Psychiatry, Inc.*, 268 B.R. 79, 84 (E.D. Pa. 2001) (citing *In re Commercial Financial Services, Inc.*, 239 B.R. 586, 596 (N.D. Okla. 1999); *see also Barlow & Peek, Inc. v. Manke Truck Lines, Inc.*, 163 B.R. 177, 179 (D. Nev. 1993) (refusing to withdraw reference until "it is clear that a jury trial will be necessary and that the case is prepared and ready for such trial to commence"). It would

be premature to withdraw the reference to the bankruptcy court based upon the unfixed proposition that **[\*18]** a jury trial may occur in the future. At the present time, the case is not ready for trial. Assuming that Wakefern does file the amended complaint containing a proper jury demand, a jury trial may not be necessary in order to resolve the C&S Action. During the March 28, 2001 scheduling conference in connection with the C&S Action, Bankruptcy Court Judge Lyons stated that this case "cries out for settlement." Until Wakefern properly asserts their right to a jury trial, the C&S Action should remain in the Bankruptcy Court.

The court is persuaded that Wakefern's right to a jury trial, if properly asserted in the future, will not be adversely affected by having the Bankruptcy Court preside over pretrial matters until the case is ready to be tried in the District Court. Until that time, the bankruptcy judge can serve basically the same function as a magistrate. *See In re Delaware and Hudson Ry. Co.*, 122 B.R. 887, 897 (D. Del. 1991).

## IV. CONCLUSION

In this case, judicial economy weighs heavily in favor of leaving the C&S Action in the Bankruptcy Court, since that court has already issued a declaratory judgment in an adversarial proceeding which is factually

**[\*19]** and legally interrelated with the C&S Action. Withdrawal of the reference at this point based on Wakefern's right to a jury trial would be premature, since Wakefern has yet to officially file a jury demand.

The court will deny Wakefern's motion to withdraw the reference, but will do so without prejudice. When the C&S Action is ready for trial, Wakefern may file a renewed motion to withdraw the reference.

For the foregoing reasons, IT IS HEREBY ORDERED that:

    1. Wakefern's request for withdrawal of the reference to bankruptcy is DENIED;

    2. This denial is without prejudice to Wakefern's ability to renew its request for withdrawal of the reference at a later time, when a jury trial has been properly demanded and the case becomes ready for trial.

Dated: July 11, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**TRANSMITTAL SHEET FOR** Additional Documents Filed 12/10/07 in Support of Motion to **WITHDRAWAL THE REFERENCE**
**TO THE**
**U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**Adversary Case #:04-57060  OHC v. Credit Suisse**
**Related Bankruptcy Case #: 02-13396 Oakwood Homes Corporation**

| | |
|---|---|
| **Deputy Clerk Transferring Case:** | Mary Ellen Behornar |
| **Case Type:** | Adversary |
| **Nature of Suit:** | 454 Recover Money/Property |
| **Cause of Transmittal:** | **Additional documents filed 12/10/07 in Support of Motion to Withdrawal the Reference** |
| **Parties:** | OHC Liquidation Trust v. Credit Suisse |
| **Plaintiff's Counsel:** | Kathleen Campbell Davis, Mark T. Hurford, Marla Rosoff Eskin |
| | Campbell & Levine, LLC |
| | 800 King Street |
| | Suite 300 |
| | Wilmington, DE 19801 |
| **Defendant's Counsel:** | Cynthia L. Collins, Lee E. Kaufman, Mark D. Collins, Russell C. Silberglied |
| | Richards Layton & Finger |
| | One Rodney Square |
| | PO Box 551 |
| | Wilmington, DE 19899 |