IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>Oakwood Homes Corporation,<br>et al.,<br><br>                    Debtors. | Chapter 11<br><br>Case No. 02-13396 (PJW)<br><br><br>Jointly Administered |
| OHC Liquidation Trust,<br><br><br>                    Plaintiff,<br><br>     v.<br><br>Credit Suisse (f/k/a Credit<br>Suisse First Boston, a Swiss<br>banking corporation), Credit<br>Suisse Securities (USA), LLC<br>(f/k/a Credit Suisse First<br>Boston LLC), Credit Suisse<br>Holdings (USA), Inc. (f/k/a<br>Credit Suisse First Boston,<br>Inc.), and Credit Suisse (USA),<br>Inc. (f/k/a Credit Suisse First<br>Boston (U.S.A.), Inc.), the<br>subsidiaries and affiliates of<br>each, and Does 1 through 100,<br><br>                    Defendants. | <br><br><br><br><br><br><br>Adversary Proceeding<br>No. 04-57060<br><br>**Re: Adv. Proc. D.I. No. 209** |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION
TO WITHDRAW THE REFERENCE**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES..........................................ii

INTRODUCTION...................................................1

STATEMENT OF FACTS.............................................3

     A.   The Proof of Claim and the Objections
         and Counterclaims....................................3

     B.   Damages Disclosures.................................5

     C.   Proceedings Before the Bankruptcy Court..............6

ARGUMENT...................................................... 9

I.   PROCEDURE................................................. 10

II. PLAINTIFF'S MOTION SHOULD BE DENIED...................... 12

     A.   Plaintiff is Not Entitled to a Jury
         Trial on Any Claim.................................12

         1.   None of Plaintiff's Claims Give Rise to a
             Jury Trial......................................13

         2.   The Trust's Adversary Proceeding is Part and
             Parcel of the Claims Allowance Process..........19

     B.   Plaintiff Has Waived All Jury Trial Rights...........25

         1.   Plaintiff Waived Any Jury Trial Rights by
             Filing This Proceeding Before the Bankruptcy
             Court...........................................13

         2.   Plaintiff Has Waived Its Jury Trial Rights
             by Contract.....................................28

III  IN THE ALTERNATIVE, THIS ACTION IS NOT TRIAL-READY
     IF THE REFERENCE IS WITHDRAWN...........................30

CONCLUSION...................................................33

## TABLE OF AUTHORITIES

Page

### CASES

Andrews v. AmSouth Bank (In re Andrews),
No. 06-40016, 2007 WL 2819523
(Bankr. N.D. Ala. Sept. 26, 2007).............................25

Baltimore & Carolina Line, Inc. v. Redman,
295 U.S. 654 (1935)..........................................12

Billing v. Ravin, Greenberg & Zackin,
22 F.3d 1242 (3d Cir. 1994)..............................19, 22

Brown v. Citicorp USA, Inc., (In re Foxmeyer Corp.),
Adv. No. A98-279, 1999 WL 33220040
(D. Del. Dec. 1, 1999)...................................11, 12

Cantor v. Perelman,
No. Civ. A. 97-586-KAJ, 2006 WL 318666
(D. Del Feb. 10, 2006)..........................14, 15, 16, 17

Citicorp N. Am. v. Finley (In re Wash. Mfg. Co.),
133 B.R. 113 (M.D. Tenn. 1991)...........................20, 21

Clark v. Teeven Holding Co., Inc.,
625 A.2d 869 (Del. Ch.1992)..................................14

Dairy Queen, Inc. v. Wood,
369 U.S. 469 (1962)..........................................17

Dimitri v. Granville Semmes,
Civ. No. 00-2448, 2000 WL 1843495
(E.D. La. Dec. 14, 2000).................................26, 27

Doyle v. Mellon Bank Nat'l Ass'n (In re Globe Parcel
Serv., Inc.), 75 B.R. 381 (Bankr. E.D. Pa. 1987)..............13

EXDS, Inc. v. RK Elec., Inc.,
301 B.R. 436 (Bankr. D. Del. 2003)...........................25

In re Evangelist,
760 F.2d 27 (1st Cir. 1985)..............................13, 14

Frost, Inc. v. Miller, Canfield, Paddock & Stone
(In re Frost), 145 B.R. 878 (Bankr. W.D. Mich. 1992)..........20

Germain v. Conn. Nat'l Bank,
988 F.2d 1323 (2d Cir. 1993)......................22, 23, 24, 27

Granfinanciera, S.A. v. Nordberg,
492 U.S. 33 (1989)................................12, 13, 20

Haile Co. v. R.J. Reynolds Tobacco Co.
(In re Haile Co.), 132 B.R. 979 (Bankr. S.D. Ga. 1991).....26, 27

Harman v. Masoneilan Int'l, Inc.,
442 A.2d 487 (Del. Sup. Ct. 1982)..........................14

Hays v. Equitex, Inc. (In re RDM Sports Group),
260 B.R. 915 (Bankr. N.D. Ga. 2001).........................23

Hopkins v. Pusey,
475 F. Supp. 2d 479 (D. Del. 2007)..........................18

In re Jensen,
946 F.2d 369 (5th Cir. 1991)................................27

Katchen v. Landy,
382 U.S. 323 (1966).........................................20

Langenkamp v. Culp,
498 U.S. 42 (1990)..........................................20

Liquidation Trust of Hechinger Inv. Co. v. Fleet
Retail Fin. Group(In re Hechinger Inv. Co.),
327 B.R. 537 (D. Del. 2005).................................12

Longo v. McLaren (In re McLaren),
3 F.3d 958 (6th Cir. 1993)..................................27

Markman v. Westview Instruments, Inc.,
517 U.S. 370 (1996).........................................12

Mirant Corp. v. Southern Co.,
337 B.R. 107 (N.D. Tex. 2006)...............................23

NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.),
203 B.R. 905 (D. Del. 1996).................................26

N.I.S. Corp v. Hallahan (In re Hallahan),
936 F.2d 1496 (7th Cir. 1991)...............................27

Official Comm. of Unsecured Creditors of Integrated Health
Servs. v. Elkins (In re Integrated Health Servs.),
291 B.R. 615 (Bankr. D. Del. 2003)..............................31

Omnicare, Inc. v. NCS Healthcare, Inc.,
809 A.2d 1163 (Del. Ch.2002)...................................14

Parrot v. Wells, Fargo & Co. (The Nitro-Glycerine Case),
82 U.S. 524 (1872).............................................18

Parsons v. United States (In re Parsons),
153 B.R. 585 (M.D. Fla. 1993)..................................26

Pereira v. Farace,
413 F.3d 330 (2d Cir. 2005)................................15, 16

R&F Intellectual Prop. Acquisition, Inc. v. Hantover, Inc.
(In re Dynamic Tooling Sys.), No. 06-5476,
2007 Bankr. LEXIS 2090 (Bankr. D. Kan. June 12, 2007)..........23

Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs.,
Inc.),
320 B.R. 513 (Bankr. S.D.N.Y. 2005)............................23

Schwartz v. Prudential Ins. Co. of Am. (In re Kridlow),
No. 97-35168DAS, 1999 WL 97939
(Bankr. E.D. Pa. Feb. 19, 1999)......................25, 26, 27

Sigma Micro Corp. v. Healthcentral.com
(In re Healthcentral.com), 504 F.3d 775 (9th Cir. 2007)........11

Stalford v. Blue Mack Transp.(In re Lands End Leasing,
Inc.),
193 B.R. 426 (Bankr. D. N.J. 1996).............................13

Telum, Inc. v. E.F. Hutton Credit Corp.,
859 F.2d 835 (10th Cir. 1988)..................................28

Tracinda Corp. v. DaimlerChrysler AG (In re DaimlerChrysler
AG Sec. Litig.), Civ. No. A 00-993-JJF, 2003 WL 22769051
(D. Del. Nov. 19, 2003), aff'd, 502 F.3d 212 (3d Cir. 2007)....28

WSC, Inc. v. Home Depot, Inc. (In re WSC, Inc.),
286 B.R. 321 (Bankr. M.D. Tenn. 2002).........................23

Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),
5 F.3d 750 (4th Cir. 1993).....................................13

## STATUTES & RULES

28 U.S.C. § 157(d).....................................9, 10, 11

Fed. R. of Bankr. P. 5011(a)...............................10

Defendants Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.) (collectively, "Defendants" or "Credit Suisse"), respectfully submit this Opposition to Plaintiff's Motion to Withdraw the Reference.

## INTRODUCTION

Nearly three years after Plaintiff commenced this objection to Credit Suisse's claim as an adversary proceeding in the Bankruptcy Court (the "Adversary Proceeding"), and only one month before the scheduled bench-trial date that Plaintiff requested, Plaintiff recollected its alleged right to a jury trial. In a status report filed shortly before the pre-trial order was due, for the first time since it filed Objections and Counterclaims in the Bankruptcy Court, Plaintiff asserted that it intended to demand a jury trial and wished to brief the issue before the Bankruptcy Court. Plaintiff succeeded in substance and in tactics: Less than two weeks prior to the trial date, the Bankruptcy Court notified the parties that it believed Plaintiff had a right to a jury trial on three of its ten counterclaims. That essentially put off the trial indefinitely, and it did so

one day before Plaintiff was compelled to commit itself to its
proof by filing a pretrial order in the Bankruptcy Court.

     This Motion asserts one basis as cause for withdrawal
of the reference: the Bankruptcy Court's belief that Plaintiff
has a jury trial right.  However, the decision that a jury trial
right exists — which in this District would require withdrawal of
the reference — must be independently determined by the District
Court pursuant to the Bankruptcy Code and Rules.  Indeed, a
number of factors establish that no jury trial right exists here:
(i) Plaintiff voluntarily chose to commence this Adversary
Proceeding in the Bankruptcy Court, a forum that cannot hold jury
trials; (ii) the Trust's counterclaims involve a mixture of legal
and equitable claims and remedies; (iii) the counterclaims were
pleaded as objections to a proof of claim and as the grounds for
equitably subordinating the proof of claim; and (iv) Plaintiff is
bound by an express contractual jury trial waiver that applies to
this action.  Each of these factors independently forecloses a
jury trial in this action.  On that basis, Plaintiff's Motion
should be denied.

     Even if Plaintiff were correct that a jury trial right
existed, Plaintiff's request for the scheduling of pretrial and
trial dates wrongly assumes that no proceedings or issues remain.
If certain claims are now to be tried to a jury, the nature of
this case is fundamentally different from the bench trial

scheduled by the Bankruptcy Court.  On the basis of a scheduled bench trial, Defendants made a number of decisions, not the least of which was the decision to forego moving for summary judgment, which should be reconsidered if Plaintiff will now be allowed to try certain claims to a jury.

STATEMENT OF FACTS

**A.    The Proof of Claim and the Objections and Counterclaims**

Defendant Credit Suisse Securities (USA), LLC ("CSS") filed four identical proofs of claim in the Oakwood Homes Corporation bankruptcy proceeding (the "Proof of Claim").[1]  The Proof of Claim sought payment of fees and expenses under an agreement between CSS and Oakwood Homes that was executed on August 19, 2002 (the "Financial Advisory Agreement").

On November 15, 2004, the Trust filed an Objection to the Proof of Claim and Counterclaims for (1) Breach of Fiduciary Duty; (2) Negligence; (3) Unjust Enrichment; (4) Equitable Subordination; (5) Avoidance and Recovery of 90 Day Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550; (6) Avoidance and Recovery of One Year Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550; (7) Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548 and 550; (8) Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544 and

---

[1]    Exhibit A to the Declaration of Brendan J. Murphy filed herewith (hereinafter cited "Murphy Decl. Ex. ___.").

550 and Applicable State Law; (9) Breach of Implied and Express Contract; and (10) Deepening Insolvency (the "Objections and Counterclaims").[2] (Murphy Decl. Ex. B., hereinafter cited as "Objections/Counterclaims ¶ __ or at __.".)

The Objections and Counterclaims sought recovery of almost $600 million in alleged preferential payments and fraudulent transfers, and sought disallowance or equitable subordination of CSS's claims.

The Objections and Counterclaims specified the relief sought as: (A) "For disallowance in its entirety of the [CS] Claims"; (B) "That [CS'] Claims be subordinated for all purposes to the claims of all other creditors in the Bankruptcy Case"; (C) "Disgorgement of all fees, sums, payments to CSFB and any profits derived unjustly thereon by all the Oakwood Companies"; and (D) "[D]amages according to proof"; as well as avoidance of certain alleged preferential and fraudulent transfers. (Objections/Counterclaims at 36-37.)

---

[2]    The Trust elected to bring its Objections and Counterclaims as one action seeking the disallowance or equitable subordination of the Proof of Claim based on the Counterclaims, and chose to name multiple Credit Suisse entities as defendants.  Those Credit Suisse Defendants were not named as separate entities providing separate and distinct services, but rather were alleged to be one unitary institution operating through its affiliates and subsidiaries.  (Objections/Counterclaims ¶¶ 10-11.)  Defendants deny such a characterization, but it was the Trust's choice to bring its Objections and Counterclaims in this posture, and it may not now at this late stage disavow that choice.

B.    **The Damages Disclosures**

On May 1, 2006, pursuant to an order of the Bankruptcy Court, the Trust served a supplemental damages disclosure pursuant to Federal Rule 26(a)(1). With respect to its fiduciary duty claim, the Trust asserted it was "entitled to recover from [Credit Suisse] all fees and other remuneration paid to [Credit Suisse] and to recover actual and consequential damages" and listed millions of dollars worth of fees paid to Credit Suisse, including fees associated with the Loan Assumption Program, fees paid in order to maintain the CSFB Warehouse Facility and the Servicer Advance Facility and the fees and costs of securitizations. (Murphy Decl. Ex. C at 4-6.)

With respect to damages associated with its claim for negligence, the Trust stated:

> Damages for this Counterclaim are substantially similar to the damages sought for breach of fiduciary duty, which are discussed above. The same facts that support the breach of fiduciary Counterclaim may support this Counterclaim. Nevertheless, this Counterclaim is a separate Cause of Action on which the Trust may recover damages.

(Murphy Decl. Ex. C at 6.)

With respect to the breach of implied contract claim, the Trust stated:

> The Trust asserts that well before the date of its written contract, CSFB acted as the financial advisor to the Debtors. The damages for breaching this implied contract include consequential damages suffered by the Debtors as a result of CSFB's

> failure to advise the Debtors to stop the asset-
> backed securitizations, which did not benefit the
> Debtors but only deepened their insolvency. The
> amount sought for CSFB's breach of the implied
> contract is substantially similar to the damage
> calculation for the Tenth Counterclaim (i.e.,
> Deepening Insolvency), which is discussed below.

(Murphy Decl. Ex. C at 8.)

## C.    Proceedings Before the Bankruptcy Court

Following the filing of the Objections and

Counterclaims, Defendants moved to dismiss. (Adv. Proc. D.I. No.

22.)   The Bankruptcy Court denied Defendants' motion. (Adv. Proc.

D.I. No. 128.)   Shortly after the Bankruptcy Court's denial of

Defendants' motion to dismiss, the Court entered a Scheduling

Order (Adv. Proc. D.I. No. 42) to govern certain fact discovery

issues.   The Scheduling Order provided that fact discovery would

begin in August 2005 and conclude in November 2006.   The parties

substantially complied with the Scheduling Order, completing the

majority of fact discovery by November 2006.

At a status conference on September 25, 2006, Plaintiff

requested that the Bankruptcy Court set a date for trial.

(Murphy Decl. Ex. D, at 33-34.)   Plaintiff did not then raise the

issue of a jury trial, but rather represented to the Court that

the need to set a trial date well in advance was driven by

Plaintiff's counsel's need to schedule non-party witnesses'

appearance for the trial.   The Bankruptcy Court scheduled the

trial for the week of November 5, 2007, with a status conference

to be held on September 25, 2007 (id. at 35-36) (which was subsequently rescheduled to October 4, 2007 (Adv. Proc. D.I. No. 193)).

In connection with the September 25, 2006, Status Conference, the parties submitted a joint status conference report. (Adv. Proc. D.I. No. 159.) In that report the parties agreed to certain deadlines for the completion of expert discovery and the filing of summary judgment motions. (Murphy Decl. Ex. E, at 4.) In addition to setting a trial date of November 5, the Bankruptcy Court also approved the parties' proposed deadlines for expert discovery and summary judgment. (Adv. Proc. D.I. No. 200.)

Plaintiff served two affirmative expert reports in April 2007. Looking toward a bench trial scheduled for November 2007, Defendants did not submit affirmative or rebuttal expert reports. Those strategic decisions were made on the basis of a bench trial date Plaintiff requested and obtained from the Bankruptcy Court.

Defendants further elected not to move for summary judgment based on the conclusion that the most efficient resolution of these claims in the context of a bench trial was to allow Plaintiff to present its case to the Court.

In connection with the October 4, 2007 status conference, the parties submitted a joint status conference

report.  In that report, literally 30 days before the scheduled
bench trial, Plaintiff announced that it intended to demand a
jury trial (and acknowledged that a jury trial could not be held
in the Bankruptcy Court). (Adv. Proc. D.I. No. 195.)  Defendants
argued that Plaintiff did not have a right to a jury trial on any
of its claims, and in any event, the Bankruptcy Court —
Plaintiff's chosen forum — could not conduct jury trials because
the Bankruptcy Court has not been specially designated to conduct
jury trials by the District Court. (Murphy Decl. Ex. E, at 2-3.)

     All parties and the Bankruptcy Court recognized and
acknowledged that the consequence of any jury trial right was the
need for Plaintiff to move for withdrawal of the reference. (See
id. at 3.)

     At the October 4 status conference the Bankruptcy Court
requested expedited briefing on Plaintiff's right to a jury
trial.  The Court maintained the November 5, 2007 trial date and
ordered the parties to file their Local Rule 7016-2 pre-trial
order on or before October 26, 2007. (Adv. Proc. D.I. No. 199.)

     The parties briefed the jury trial issue on an
expedited basis with briefing completed on October 17, 2007.
(Adv. Proc. D.I. Nos. 198, 201, 203.)  On October 25, 2007, the
Bankruptcy Court held a telephonic conference at which the
parties were informed of the Court's intention to rule that
Plaintiff was entitled to a jury trial on certain claims.

Following the telephonic conference, the parties stipulated that pretrial deadlines in the Bankruptcy Court were suspended as a result of the ruling and the required future proceedings before the District Court.  Consequently, no pre-trial order was ever filed.

On November 15, 2007, the Bankruptcy Court issued the Decision & Order. (Adv. Proc. D.I. No. 207, 208; Murphy Decl. Exs. F, G.)

## ARGUMENT

Pursuant to 28 U.S.C. § 157(d), "[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, . . . on timely motion of any party, for cause shown."  The Trust's Motion sets forth only one reason why cause exists for withdrawal of the reference: an alleged jury trial right on certain claims.[3] (Motion at 11-14.)  However, the Trust has no jury trial rights in this action, and for that reason, the Motion should be denied.  Defendants acknowledge that if a jury trial right exists, withdrawal of the reference would be necessary.  However, Plaintiff's assertion that this case remains trial-ready for a jury trial is wrong.  While this case was trial-ready for a bench trial scheduled for November 5, it is not trial-ready for a jury trial in the District Court.

---

[3]    Defendants agree that if the District Court elects to withdraw the reference, the entire Adversary Proceeding should be removed to the District Court on the basis of judicial economy and efficiency.

## I.   PROCEDURE

Although the Trust's Motion asserts only one cause in support of its request for withdrawal – that of a jury trial right on certain claims – the Trust makes no affirmative argument in support of its jury trial rights.  Instead, the Trust relies on the determination of the Bankruptcy Court in its decision and order granting the Trust's Motion for a Determination of Plaintiff's Rights to a Jury Trial.  (Motion at 13-14.)  However, as Defendants stated in their opposition to the Trust's Jury Trial Motion in the Bankruptcy Court (Jury Trial Opp. at __ ), pursuant to the Bankruptcy Code and Rules the question of whether the Trust has jury trial rights must necessarily be resolved by the District Court in the context of a motion to withdraw the reference.  The conclusion of the Bankruptcy Court has no binding effect on this Court for purposes of this Motion.

Congress set forth the procedure for withdrawing a jurisdictional reference under the Bankruptcy Code in 28 U.S.C. § 157(d).  That section provides that the District Court alone may determine that cause exists for withdrawing the reference.  In keeping with this procedure, the Supreme Court promulgated Federal Rule of Bankruptcy Procedure 5011(a), which states in its entirety: "A motion for withdrawal of a case or proceeding shall be heard by a district judge."  For the avoidance of doubt, the Advisory Committee Note to Rule 5011(a) provides that the Rule

10

"makes it clear that the bankruptcy judge will not conduct hearings on a withdrawal motion.  The withdrawal motion is committed exclusively to the district court."  Fed. R. Bankr. P. 5011(a) advisory committee's note.

On this Motion, the only question concerning whether cause exists to withdraw the reference is whether the Trust has a right to a jury trial on any claim.  Given that the express Congressional authority to withdraw a reference to the Bankruptcy Court is vested in the District Court, and Bankruptcy Rule 5011(a) provides that the Bankruptcy Court must not conduct a hearing or render a decision on a withdrawal motion, the District Court must resolve the jury trial issue, as it is the only issue concerning whether cause for withdrawal exists.  To afford the Bankruptcy Court's determination of jury trial rights any deference would run counter to the express direction of the Bankruptcy Code and Rules.[4]  See Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com), 504 F.3d 775, 788 (9th Cir. 2007) (finding procedure by which bankruptcy court determined withdrawal issues and conclusion inconsistent with 28 U.S.C. § 157(d) and Bankruptcy Rule 5011(a)).  See also Brown v. Citicorp USA, Inc., (In re Foxmeyer Corp.), Adv. No. A98-279,

---

[4]    Although Defendants believe the District Court must review and determine the jury trial issue in the context of this Motion, in an abundance of caution, Defendants also filed a Motion for Leave to Appeal the Bankruptcy Court's decision and order concerning the jury trial issue. (Adv. Proc. D.I. No. 215.)

1999 WL 33220040 at *2, n.6 (D. Del. Dec. 1, 1999) (acknowledging that even when Bankruptcy Court determines jury trial rights initially, District Court may revisit issue in motion to withdraw the reference).

## II.   PLAINTIFF'S MOTION SHOULD BE DENIED

### A.   Plaintiff is Not Entitled to a Jury Trial on Any Claim

The Seventh Amendment preserves the right to a jury trial as it "existed under the English common law when the Amendment was adopted." Markman v. Westview Instruments, Inc., 517 U.S. 370, 376 (1996)(quoting Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 657 (1935)).  The Supreme Court has adopted a three part test to determine whether a right to a jury trial exists in the bankruptcy context.  Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989).  First, a court must compare the cause of action to 18th Century actions in England prior to the merger of the courts of law and equity.  Id.  Second, the court must examine the remedy sought and determine whether it is legal or equitable in nature.  Id. If the court determines that the cause of action and the remedy are both equitable in nature, the moving party has no right to a jury trial.  See, e.g. Liquidation Trust of Hechinger Inv. Co. v. Fleet Retail Fin. Group (In re Hechinger Inv. Co.), 327 B.R. 537, 543 - 46 (D. Del. 2005).  If, however, on balance, the analysis of the first two factors indicates that a party is entitled to a jury trial, the

court must decide whether Congress may or has assigned resolution of the relevant claim to a non-Article III court that does not use a jury as a fact finder. Granfinanciera, 492 U.S. at 42.

### 1. None of Plaintiff's Claims Give Rise to a Jury Trial

The Trust asserts a jury trial right on only three claims in this action: breach of fiduciary duty, breach of contract and negligence.[5] Essentially, in its Objection and Counterclaims and subsequent pleadings, the Trust has asserted that by virtue of providing underwriting services relating to Oakwood's securitization program, CSS assumed "duties" – fiduciary or otherwise – to Oakwood and its creditors, and breached those duties by not forcing Oakwood into bankruptcy before its Board of Directors decided to file.

"[A]ctions for breach of fiduciary duty, historically speaking, are almost uniformly actions 'in equity'--carrying with them no right to trial by jury." In re Evangelist, 760 F.2d 27, 29, 31 (1st Cir. 1985) (Breyer, J.); Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson), 5 F.3d 750, 757 (4th Cir. 1993); Stalford v. Blue Mack Transp.(In re Lands End Leasing, Inc.), 193 B.R. 426, 433 (Bankr. D. N.J. 1996); Doyle v. Mellon Bank Nat'l

---

[5]     In its Jury Trial Motion, the Trust conceded that it is not entitled to a jury trial on its objection to CSS's Proof of Claim or issues directly related thereto, including breach of contract and the recovery of pre-petition payments relating to the financial advisory contract on which the Proof of Claim was based. (Jury Trial Mot. at 3-4.)  The Trust has apparently elected to abandon the remaining preference, fraudulent transfer, and other common law claims pleaded in the Objections and Counterclaims.

Ass'n (In re Globe Parcel Serv., Inc.), 75 B.R. 381, 385 n.9
(Bankr. E.D. Pa. 1987).[6]

The second prong of Granfinanciera – the remedy sought
– further undercuts the Trust's right to a jury trial.
Plaintiff's Objections and Counterclaims and subsequent pleadings
allege that the Defendants enriched themselves, and seek
classically equitable remedies, including disgorgement and
equitable subordination in addition to their claims for
compensatory money damages.  Such a mix of equitable and legal
relief, when coupled with a historically equitable claim, strips
the Plaintiff of any right to a jury trial.

The District of Delaware's opinion in Cantor v.
Perelman is particularly instructive as the plaintiff in that
case sought a mix of equitable and legal remedies similar to what
the Trust is seeking in this case.  No. Civ. A. 97-586-KAJ, 2006
WL 318666 (D. Del Feb. 10, 2006)(Jordan, J.).  In Cantor, the
court examined the plaintiff's pleadings and prayer for relief

---

[6]    When assessing courts' traditional reluctance to convert classic
equitable claims (such as breach of fiduciary duty) into legal claims, the law
of Delaware is instructive.  In Delaware, breach of fiduciary duty claims are
exclusively heard in its Chancery Court, which is a constitutionally ordained
court of equity. Omnicare, Inc. v. NCS Healthcare, Inc., 809 A.2d 1163 (Del.
Ch.2002); Clark v. Teeven Holding Co., Inc., 625 A.2d 869, 878 (Del. Ch.1992)
(Chancery "still retains jurisdiction to hear nearly all the claims for breach
of a fiduciary duty").  The Chancery Court is charged with resolving breach
of fiduciary duty claims because the broad, flexible and discretionary remedy
analysis mandated by Delaware law upon a finding a breach of fiduciary duty is
far removed from the traditional province of the jury. Id. Given this degree
of discretion, any remedy imposed for a breach of fiduciary duty claim will
inherently be equitable, even if it takes the form of a money judgment. Harman
v. Masoneilan Int'l, Inc., 442 A.2d 487, 498 (Del. Sup. Ct. 1982).

and determined that its prayer for "compensatory damages, including all benefits obtained by Defendants as a result of their breaches of fiduciary duty" constituted a request for at least two forms of relief.  One, "compensatory damages," was legal in nature, while the other, "unjust enrichment, i.e., the 'benefits obtained by the defendants,'" was equitable.  Cantor, at * 5. Applying Granfinanciera, the court determined that plaintiff's breach of fiduciary duty claim was equitable and its requested relief was mixed law and equity.  The district court further held that where a party seeks both equitable and legal relief for an equitable claim, the party's entire claim must be judged equitable, and no right to a jury trial should attach: "[t]o weigh the factors differently would effectively ignore the historical factor, contrary to both the Seventh Amendment's purpose to 'preserve the right to a jury trial as it existed in 1791', and to the express holding of Granfinanciera that history is to be accorded weight in the balancing." Cantor, at *9 (internal citations omitted).

Cantor's holding is distinguishable from the Second Circuit's opinion in Pereira v. Farace because the plaintiffs in that action sought exclusively legal damages.  413 F.3d 330 (2d Cir. 2005).  In Pereira, the defendants were directors who had allegedly permitted the CEO to enrich himself (the CEO was not a defendant).  Id. at 334.  The Second Circuit's holding depended

15

entirely on the fact that since the director defendants had not
themselves been enriched, the damages remedy was purely legal. [7]
Id. at 339 – 41.

Here, the Trust has alleged that Credit Suisse's breach
of its fiduciary duty resulted in Credits Suisse "unjustly
enrich[ing] itself at the expense of [Oakwood]" and as such, the
Trust has "demand[ed] [CS]'s disgorgement of all fees and other
remuneration unjustly paid to [CS] … and to recover consequential
and actual damages." (Murphy Decl. Ex. B at ¶ 51.)  In its
Supplement to its Rule 26 (a)(1) Initial Disclosures the Trust
further emphasized the mixed nature of the relief it seeks,
stating that the Trust is "entitled to recover from [CS] all fees
and other remuneration paid to [CS] and to recover consequential
and actual damages." (Murphy Decl., Ex. C at 4.) As to its
disgorgement relief, the Trust listed millions of dollars worth
of fees paid to CS including fees associated with the Loan
Assumption Program, fees paid in order to maintain the CSFB
Warehouse Facility and the Servicer Advance Facility and the fees
and costs of securitizations. (Murphy Decl. Ex. C at 4.)

In its Jury Trial Motion, Plaintiff expressly conceded
its pursuit of mixed relief while fruitlessly attempting to

---

[7]    The Cantor court also questioned the wisdom of the Second Circuit's
overly expansive reasoning in Pereira, stating that its limited view of the
scope of equitable relief "tears that definition from [its] key logical
underpinning[s]." Cantor, 2006 WL 318666, at *8. Plaintiff seeks to do the
very same thing here.

distinguish contrary authority (Motion at 14.)  The Trust argued

that it is seeking much:

> broader damages from Credit Suisse.  While
> quantification may *include* Credit Suisse's ill-
> gotten fees, those fees are not the entirety of
> the Trust's damages claims; the Trust also seeks
> damages for harm caused by Credit Suisse's
> misconduct (such as the extent to which certain
> transactions – including the so-called "Lotus"
> transactions – increased the Oakwood Entities'
> indebtedness and caused significant losses).

(Jury Trial Mot. at 14.)  Under any reading of the record, the

Trust seeks a mixed form of relief here, which forecloses a jury

trial on its breach of fiduciary duty claim.  See <u>Cantor</u>, at *9.

        As to Plaintiff's other claims – breach of contract and

negligence – that purportedly carry jury trial rights, the Court

must look to the true nature of these claims to determine jury

trial rights rather than Plaintiff's unsupported characterization

of the claims.  <u>Dairy Queen, Inc. v. Wood</u>, 369 U.S. 469, 477-78

(1962)("[T]he constitutional right to trial by jury cannot be

made to depend upon the choice of words used in the pleadings.")

Plaintiff's claims for breach of implied contract and negligence

are <u>not</u> separate causes of action but rather are duplicative and

superfluous reiterations of Plaintiff's breach of fiduciary duty

claim.

        As for the negligence claim, in its damages

disclosures, Plaintiff made no attempt to segregate the

negligence claim from its breach of fiduciary duty claim, stating

"[d]amages for this [negligence] counterclaim are substantially similar to the damages sought for breach of fiduciary duty …. **The same facts that support the breach of fiduciary [sic] Counterclaim may support this Counterclaim.**" (Murphy Decl. Ex. C at 6.)

Moreover, it is black letter law that a negligence claim cannot exist without a duty running from defendant to plaintiff. Parrot v. Wells, Fargo & Co. (The Nitro-Glycerine Case),82 U.S. 524, 537 (1872) (stating that a party charging negligence must prove it by showing the defendant has violated some duty incumbent upon him); Hopkins v. Pusey, 475 F. Supp. 2d 479, 482 (D. Del. 2007) (finding that in order to state a claim for negligence under Delaware law one must allege that defendant owed plaintiff a duty of care). Here, Plaintiff does not assert that the manner in which Credit Suisse conducted securitizations or provided financing was negligent. Rather, Plaintiff claims that Credit Suisse failed to stop Oakwood from engaging in securitizations and drawing against the Loan Purchase Facility. Such a claim can only be grounded in an alleged fiduciary duty arising from a relationship of trust and confidence, as no general duty to force Oakwood to cease engaging in its business transactions could possibly exist otherwise.

Plaintiff's breach of implied contract claim is similarly duplicative. Plaintiff has never alleged the

traditional elements of an implied contract, such as offer, acceptance or consideration – nor could it as no evidence exists in the record to support such allegations.  Instead, Plaintiff relies exclusively on its broad allegation of a close relationship of trust and confidence that gave rise to Credit Suisse's obligation to provide financial advisory services when it had not been engaged or requested to provide such services. Therefore, any obligations relating to the provision of such services must necessarily be defined by the alleged fiduciary relationship of trust and confidence.[8]

### 2.    The Trust's Adversary Proceeding is Part and Parcel of the Claims Allowance Process

Even if the first two prongs of the Granfinanciera test pointed to a jury right – and they do not – the third prong forecloses the existence of a jury trial right in this case.  The Supreme Court recognized that certain matters which might have carried entitlement to a jury can still be "assigned" by Congress to a non-Article III court for resolution without a jury as, for instance, when they must be resolved as part of the "core" bankruptcy functions.

---

[8]    In addition, the parties' relationship for the period after August 19, 2002 is governed by the Financial Advisory Agreement and any breach of that agreement is not triable to a jury.  Therefore, the only implied contract that could exist, and any damages flowing from a breach of that implied contract, would necessarily exactly track the allegations of the breach of fiduciary duty claim.

The jury trial limitation embedded in the third prong of the Granfinanciera test "has [typically arisen] in connection with a creditor's demands for a jury trial in actions brought by the trustee in bankruptcy." Billing v. Ravin, Greenberg & Zackin P.A., 22 F.3d 1242, 1247 (3d Cir. 1994). That limitation arises from the fact that when a cause of action "falls within the process of the allowance and disallowance of claims," neither the debtor's estate nor the defendant has a Seventh Amendment right to trial by jury "because [the] claim has been converted from a legal one into an equitable dispute over a share of the estate." Billing v. Ravin, Greenberg & Zackin P.A., 22 F.3d 1242, 1253 (3d Cir. 1994). From this general principle, courts have concluded that counterclaims filed by a liquidation trust in response to a proof of claim that affect the allowance of a proof of claim are inextricably linked to the claims allowance process, and are therefore subject to the bankruptcy court's equitable jurisdiction.[9] See id., at 1252; See also Frost, Inc. v. Miller, Canfield, Paddock & Stone (In re Frost), 145 B.R. 878, 882

---

[9]     The Supreme Court has squarely endorsed this proposition in the context of fraudulent conveyance or preference claims in an adversary proceeding. See Langenkamp v. Culp, 498 U.S. 42, 44-45 (1990); Granfinanciera, S.A.,492 U.S. at 58-59; Katchen v. Landy, 382 U.S. 323, 330 (1966). This Circuit has applied this principle to actions beyond preference and fraudulent conveyance claims, specifically to a legal malpractice action. Billing v. Ravin, Greenberg & Zackin P.A., 22 F.3d 1242, 1253 (3d Cir. 1994). Other bankruptcy courts have also held that an affirmative claim that arises in or implicates the claims allowance process holds no jury trial rights. Frost, Inc. v. Miller, Canfield, Paddock & Stone (In re Frost), 145 B.R. 878, 882 (Bankr. W.D. Mich. 1992); Citicorp N. Am. v. Finley (In re Wash. Mfg. Co.), 133 B.R. 113, 115-17 (M.D. Tenn. 1991).

(Bankr. W.D.Mich. 1992); _Citicorp N. Am. v. Finley (In re Wash._
_Mfg. Co.)_, 133 B.R. 113, 115-17 (M.D. Tenn. 1991).

The sole issue is thus whether this action implicates
the claims allowance process.  The answer to that question is
clear: The Objections and Counterclaims as filed by the Trust
unquestionably invoked the equitable jurisdiction of this Court
and submitted all of its claims to the claims allowance process
for adjudication.

The Trust specifically objected to the Proof of Claim
on the following grounds:

- "The CSFB-LLC Claims should be disallowed in their entirety pursuant to Bankruptcy Code section 502(b)(1) for the reasons set forth in the Counterclaims below;" (Objections/Counterclaims ¶ 45.a.)

- "The CSFB Claims should disallowed in their entirety pursuant to 502(b)(4) based on the conduct above.  CSFB-LLC's claim exceeds the reasonable value of its purported services;" (Objections/Counterclaims ¶ 45.b.)

- "The CSFB LLC Claims should be disallowed in their entirety because CSFB breached the Financial Advisory Agreement and caused significant harm to the Debtors including, but not limited to, grossly unnecessary fees, expenses and interest on the alternate DIP financing and other expenses.  Alternatively, the contingency under which a fee for Financial Advisory Services would be paid was not satisfied;" (Objections/Counterclaims ¶ 45.d.)

- "In the alternative, the Plaintiff requests that the CSFB-LLC Claims, in part or in total, be equitably subordinated to all other claims against the Debtors, pursuant to the Bankruptcy Code section 510(c) for the reasons set forth in the Counterclaims below." (Objections/Counterclaims ¶ 45.e.)

There can thus be no dispute that the Objections and
Counterclaims invoked the equitable jurisdiction of the
Bankruptcy Court to disallow or otherwise equitably subordinate
CSS's Proof of Claim -- the Trust requested such relief no less
than four times.

Plaintiff itself chose to use the claims process -- by
means of purported "objections and counterclaims" -- to sue
several defendants which had not filed claims and allege that the
conduct of all Defendants was the basis for objecting to the
Proof of Claim.  Plaintiff's case, as pleaded, is therefore
inextricably linked to the claims allowance process insofar as
allowance or disallowance of CSS's Proof of Claim cannot be
resolved without reference to the conduct and claims underlying
the counterclaims.  The fact that Plaintiff seeks affirmative
recovery on certain of those Counterclaims does not affect this
conclusion. See Billing, at 1252 n.17.

Before the Bankruptcy Court, Plaintiff relied on a
handful of cases holding that a debtor or trustee is entitled to
a jury trial on certain counterclaims, but Plaintiff's reliance
on that authority was fundamentally misplaced, as the claims at
issue in those cases were determined to be wholly unrelated to
the claims allowance process.[10]  Specifically, in Germain v.

---

[10]    Plaintiff's reliance on authority finding that a creditor maintained a
right to a jury trial on certain counterclaims asserted by debtors or trustees
was equally misplaced.  The Trust sought to explain away the difference

<u>Conn. Nat'l Bank</u>, 988 F.2d 1323 (2d Cir. 1993), the court found
that, although the creditor had filed a proof of claim, the
trustee's action was "not part of the claims-allowance process"
and was not "integral to the reordering of relations among the
parties."[11] <u>Id.</u> at 1329.  The court reached this conclusion
because the claims at issue were common law causes of action
originally filed in an entirely separate state court proceeding,

---

between a creditor-defendant seeking to preserve its jury trial right and a
trustee-plaintiff by arguing that a "happenstance of pleading" should not make
"legal claims" part of the claims allowance process. (Jury Trial Mot. at 24.)
However, this difference in procedural posture is fundamental.  The cases
addressing a creditors' right to a jury trial on claims unrelated to the proof
of claim are focused on whether a creditor can be denied its constitutional
right to a jury trial with respect to claims it never intended to resolve
through the equitable powers of the bankruptcy court.  By contrast, the Trust,
as the counterclaims-plaintiff, is the master of its own proceeding, and it
chose to pursue an adversary proceeding in the Bankruptcy Court by objecting
to CSS's Proof of Claim and seeking equitable subordination based on certain
counterclaims.  The Trust affirmatively chose to bundle its counterclaims into
the objection to the Proof of Claim and to submit the entire controversy to
the bankruptcy court for resolution in connection with the claims allowance
process, knowing not only that it was invoking equity but that it filed the
case in a court that is not permitted to conduct jury trials.  The creditors
in the cases cited by Plaintiff had no similar ability to select a forum or
style of relief with respect to claims unrelated to a proof of claim.
Authority addressing this issue is therefore inapposite.  <u>See</u> <u>Mirant Corp. v.
Southern Co.</u>, 337 B.R. 107, 121 (N.D. Tex. 2006) (finding creditor's right to
jury trial not forfeited for claims unrelated to the proof of claim and claims
allowance process); <u>R&F Intellectual Prop. Acquisition, Inc. v. Hantover, Inc.
(In re Dynamic Tooling Sys.)</u>, No. 06-5476, 2007 Bankr. LEXIS 2090, at *19
(Bankr. D. Kan. June 12, 2007) (analyzing whether creditor forfeited jury
trial rights on claims not related to the creditor's proof of claim); <u>Rickel &
Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)</u>, 320 B.R. 513, 518
(Bankr. S.D.N.Y. 2005) (analyzing creditor's proof of claim on creditor's
right to a jury trial on claims against it).

[11]    Other courts finding a jury trial right held by a debtor or trustee are
grounded in similar reasoning.  <u>See</u> <u>WSC, Inc. v. Home Depot, Inc. (In re WSC,
Inc.)</u>, 286 B.R. 321, 329 (Bankr. M.D. Tenn. 2002) (finding claims asserted
against non-creditor defendants were properly triable to jury, but claims
asserted against creditor defendant that filed a proof of claim were not
triable to jury because they were integrally related to the proof of claim);
<u>Hays v. Equitex, Inc. (In re RDM Sports Group)</u>, 260 B.R. 915, 925 (Bankr. N.D.
Ga. 2001) (finding jury trial right held by trustee where claims "have
[nothing] to do with the claims process and/or the restructuring of the
debtor-creditor relationship" because they were asserted against third party
non-creditor defendants solely to augment the estate).

were not the underlying basis for the trustee's objection to a
proof of claim,[12] and therefore did not implicate the claims
allowance process.[13] Id. at 1325.

By contrast, the Trust freely elected to bring this
Adversary Proceeding in the form of "Objections and
Counterclaims" seeking to disallow or equitably subordinate the
Proof of Claim based on the counterclaims.  In so doing, the
Trust unquestionably invoked the equitable jurisdiction of the
Bankruptcy Court and submitted its claims against Defendants for
resolution within the claims allowance process.  We need not be
concerned with whether there would be a different result had the
Trust initially brought its affirmative claims in some other
forum.  It did not do so, and the Trust cannot walk away from its

---

[12]    Moreover, as an emphasis on the importance that the trustee's claims
were not interrelated with objections or subordination of claims, the Germain
court went out of its way to establish that the trustee's claims had no effect
on the claims allowance process, noting in a separate holding that it felt
compelled to assume that the trustee would bring no claim for equitable
subordination because such an action would be inconsistent with the trustee's
demand for a jury trial on the affirmative claims. Id. at 1332.  The court
noted that if the trustee wished to seek equitable subordination of the proof
of claim based on the facts alleged in the counterclaim, it could do so and
waive any jury trial rights on the underlying claims. Id.

[13]    This distinction was in fact critical to the court's analysis, as it
distinguished the Supreme Court precedent in Katchen and Langenkamp on that
basis. Id. at 1327.  The Germain court reasoned that "[t]he very phrase
'claims-allowance process' suggests that the resolution of the dispute in
which a jury trial is sought must affect the allowance of the creditor's claim
in order to be part of that process." Id. at 1327.  The court concluded that
the common law affirmative claims, which were not tied to any objection to a
claim, were entirely unrelated to the claims allowance process.

initial choice to assert all of these causes of action as part of the claims process.[14]

### B.    Plaintiff Has Waived All Jury Trial Rights

#### 1.    Plaintiff Waived Any Jury Trial Rights by Filing This Proceeding Before the Bankruptcy Court

The Trust has waived any jury trial rights it might have had by asserting what the Trust now calls separate and distinct legal claims before the equitable jurisdiction of the Bankruptcy Court.  See, e.g., Schwartz v. Prudential Ins. Co. of Am. (In re Kridlow), No. 97-35168DAS, 1999 WL 97939 (Bankr. E.D. Pa. Feb. 19, 1999) (a debtor/trustee plaintiff that chooses the bankruptcy forum when alternatives exist forfeits right to a jury trial).[15]

---

[14]    In the Bankruptcy Court, the Trust attempted to walk away from vast swaths of its Objections and Counterclaims to validate an otherwise groundless jury demand.  However, once a dispute has been submitted to the equitable jurisdiction of the bankruptcy court in the claims allowance process, the party cannot revive any jury trial rights by disavowing its submission of the controversy to the bankruptcy court's jurisdiction.  EXDS, Inc. v. RK Elec., Inc., 301 B.R. 436 (Bankr. D. Del. 2003) (creditor having filed proof of claim cannot withdraw claim to obtain jury trial in later adversary proceeding).  In the context of a creditor seeking to revive jury trial rights by withdrawing a proof of claim, the Bankruptcy Court has concluded that once a party has submitted a controversy to the equitable jurisdiction of the bankruptcy court, that jurisdiction is exclusive.  The same must be true here.  For strategic reasons, more than three years after the filing of the Objections and Counterclaims, and raising the issue for the first time less than 30 days before the scheduled trial date, Plaintiff has asserted a jury demand on certain claims and to remove the action from the Bankruptcy Court — the very forum in which it chose to proceed.  Plaintiff simply cannot do so.  See EXDS, Inc., at 443 (holding that "by filing its proof claims [creditor] has caused its disputes . . . to be subject to the exclusive jurisdiction of this bankruptcy court and a withdrawal of the proof of claim would not change that result").  In any event, the Trust has not moved to amend its Objections and Counterclaims so all of its counts remain on file.

[15]    Other courts outside this Circuit have agreed with the reasoning or conclusion of the Schwartz court. Andrews v. AmSouth Bank (In re Andrews), No. 06-40016, 2007 WL 2819523, at *8 (Bankr. N.D. Ala. Sept. 26, 2007) (holding

In <u>Schwartz</u>, the Bankruptcy Court for the Eastern District of Pennsylvania addressed a request by a debtor/trustee plaintiff for a jury trial on certain claims in an adversary proceeding brought in the bankruptcy court.  Relying upon authority that a creditor who asserts counterclaims against a debtor in an adversary proceeding waives its jury trial rights by electing the bankruptcy court for resolution of such claims,[16] the court concluded:

> The same principles which apply to creditors should apply to a debtor or a trustee.  Thus, if such parties choose the bankruptcy forum when alternative forums exist, they should be prepared to forfeit their right to a jury trial in this forum.  The claims asserted in the instant Proceeding clearly could have been asserted in state court and possibly also in federal district court in the first instance.  Moreover, even if we recognized the Plaintiffs' assertion of a jury

---

debtor not entitled to jury trial on counterclaims for, among other reasons, she "submitted her legal cause of action for resolution by a court of equitable jurisdiction"); <u>Haile Co. v. R.J. Reynolds Tobacco Co. (In re Haile Co.)</u>, 132 B.R. 979, 981 (Bankr. S.D. Ga. 1991) ("By voluntarily selecting the bankruptcy court rather than state court as the forum in which to assert its state-law cause of action, plaintiff consented to this court's equitable jurisdiction and thereby waived its right to trial by jury."); <u>Parsons v. United States (In re Parsons)</u>, 153 B.R. 585, 588 (M.D. Fla. 1993) (debtor voluntarily submitted adversary action to equitable jurisdiction of bankruptcy court relinquishing right to jury trial); <u>Dimitri v. Granville Semmes</u>, Civ. No. 00-2448, 2000 WL 1843495 (E.D. La. Dec. 14, 2000) (debtor-plaintiff voluntarily brought adversary proceeding in bankruptcy court thereby waiving right to trial by jury).

[16]    Although the District Court has expressed disapproval of the waiver concept, it has done so in the context of a third-party, non-creditor defendant that files counterclaims to an adversary proceeding brought by a debtor.  In such cases, the critical distinction – which is plainly not at issue here – is the fact that no action, such as the filing of a proof of claim, has triggered the equitable claims allowance process.  <u>See, e.g.</u>, <u>NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)</u>, 203 B.R. 905, 912 (D. Del. 1996) (concluding non-creditor defendant had not waived jury trial right by asserting counterclaims where no proof of claim had been filed and case would have no effect on claims allowance or equitable distribution of estate).

> demand, we would be compelled to relegate the
> Plaintiffs to the federal district court forum for
> trial as a result of our determination that this
> Proceeding is non-core.  The only means for us to
> retain the Plaintiffs' chosen forum in this court
> is thus for us to strike their jury demand. [17]

Schwartz, at *5 (citations omitted).  The result here is the

same: The Trust voluntarily elected[18] to bring state-law-based

claims before the Bankruptcy Court for resolution even though

alternative forums that would permit a jury trial on such claims

were available.  Having done so, Plaintiff waived its right to a

jury trial on such claims. Id.; Haile Co., 132 B.R. at 981 ("By

voluntarily selecting the bankruptcy court rather than state

court as the forum in which to assert its state-law cause of

---

[17]    In Schwartz, the court acknowledged the split among the Circuit Courts
of Appeal concerning whether a debtor, by filing a voluntary petition for
bankruptcy and seeking equitable resolution of the claims against it,
effectively waives jury trial rights for its claims against other parties.
Compare Longo v. McLaren (In re McLaren), 3 F.3d 958 (6th Cir. 1993) (filing
of petition waives jury trial rights in debtor's claims against third
parties); N.I.S. Corp v. Hallahan (In re Hallahan), 936 F.2d 1496, 1505 (7th
Cir. 1991) (same); with Germain v. Conn. Nat'l Bank, 988 F.2d 1323, 1330 (2d
Cir. 1993) (filing of petition does not waive debtor's jury trial rights); In
re Jensen, 946 F.2d 369, 373-74 (5th Cir. 1991) (same).  The Third Circuit has
discussed but not resolved this split.  This issue, however, is not implicated
here because Plaintiff's waiver of its jury trial rights in connection with
this action arises not from the general filing of a voluntary petition for
bankruptcy, but rather from the Plaintiff's election to invoke the equitable
jurisdiction of the bankruptcy court by asserting the very state-law-based
claims in this forum as part of the claims allowance process.

[18]    It is of critical importance that Plaintiff controlled the process of
when, how, and where to file its state-law-based claims.  Plaintiff chose to
present those claims to Bankruptcy Court for resolution in the claims
allowance process and having done so, is charged with the knowledge of all
implications of its choice of forum.  See, e.g., Dimitri v. Granville Semmes,
at *5 (finding debtor's waiver of jury trial rights and noting importance that
"[t]his is not a situation where [debtor] was involuntarily joined as a party
by another participant in the bankruptcy proceeding").

action, plaintiff consented to this court's equitable
jurisdiction and thereby waived its right to trial by jury.").

### 2. Plaintiff Has Waived
###    Its Jury Trial Rights by Contract

It is well settled that a jury trial right can be
waived by contract if the waiver is knowing, voluntary and
intelligent.  Tracinda Corp. v. DaimlerChrysler AG (In re
DaimlerChrysler AG Sec. Litig.), Civ. No. A 00-993-JJF, 2003 WL
22769051, at *2 (D. Del. Nov. 19, 2003), aff'd 502 F.3d 212 (3d
Cir. 2007).  See also Telum, Inc. v. E.F. Hutton Credit Corp.,
859 F.2d 835, 837 (10th Cir. 1988) (recognizing that
"[a]greements waiving the right to trial by jury are neither
illegal nor contrary to public policy").

In connection with the execution of the Loan Purchase
Facility, Oakwood Acceptance Corporation, a debtor, agreed to be
bound by the terms of the Class A Note Purchase Agreement dated
February 8, 2001.  That Agreement, which set forth the manner in
which a Credit Suisse Defendant would lend funds to a bankruptcy
remote trust that would in turn purchase loans from Oakwood
Acceptance Company, was crucial to the flow of funds under the
Loan Purchase Facility.  Section 9.14 of the Note Purchase
Agreement – which is entitled "WAIVERS OF JURY TRIAL" – provides:

> EACH OF THE SELLER, THE SERVICER, THE ISSUER, THE DEPOSITOR,
> THE TRANSFEROR, THE AGENT AND THE PURCHASERS HEREBY
> IRREVOCABLE AND UNCONDITIONALLY WAIVES, TO THE EXTENT
> PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO TRIAL
> BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING DIRECTLY

OR INDIRECTLY TO THIS AGREEMENT OR ANY OTHER DOCUMENT OR
INSTRUMENT RELATED HERETO AND FOR ANY COUNTERCLAIM THEREIN.

(Murphy Decl. Ex. H at 53.)  In a side agreement dated February
9, 2001, Oakwood Homes Corporation – the principal debtor here –
acknowledged its obligations in connection with the Loan Purchase
Facility and related documents, and agreed to the express terms
of an identical jury trial waiver.  (Murphy Decl. Ex. I at 6.)

The Trust, as successor in interest to the debtors, is
therefore foreclosed from seeking a jury trial on any claims
"relating directly or indirectly to the Note Purchase Agreement
or any of the contracts related thereto under the loan purchase
facility." As outlined below, even assuming that Plaintiff's
equitable claims carried a jury trial right (they do not), they
nonetheless cannot be tried to a jury because Plaintiff has
plainly waived such a right as against a Defendant in this
action.

This contractual waiver is most germane to the breach
of fiduciary duty claim, which, as noted above, subsumes the
other claims of negligence and breach of implied contract.
Although Plaintiff's fiduciary duty claim has mutated
substantially over time, one allegation has remained constant:
by providing Oakwood with financing, Credit Suisse wrongfully
perpetuated Oakwood's life and breached a "duty" to cause it to
file for bankruptcy before it actually did so.
(Objections/Counterclaims ¶¶ 19, 49, 53)  The cornerstone of this

theory is the Loan Purchase Facility, which Plaintiff's "standard of care" expert characterizes as so "vital to providing liquidity for Oakwood's securitization business" that if Credit Suisse "did not take over the role as lender, [Oakwood's] securitization business would have immediately collapsed."  (Murphy Decl. Ex. J at 16-17, 36-39.)

Plaintiff thus alleges that at the moment Credit Suisse began providing the Loan Purchase Facility in early 2001, Credit Suisse breached its duty by providing Oakwood with harmful and "value destructive" financing.  Id.  In addition to the "breach" at the inception of the Loan Purchase Facility, Credit Suisse breached its "duties" every time it allowed Oakwood to use the facility to enable another securitization.  (Murphy Decl. Ex. J at 16-17, 36-39.)  So central to plaintiff's fiduciary duty claim is the Loan Purchase Facility that there could be no such claim absent these allegations.  Consequently, the Trust must and should be held to the jury trial waiver contained in the Loan Purchase Facility documentation.

## III. IN THE ALTERNATIVE, THIS ACTION IS NOT TRIAL-READY IF THE REFERENCE IS WITHDRAWN

Should this Court determine that Plaintiff is entitled to a jury trial, and therefore withdrawal of the reference is appropriate, this Adversary Proceeding is no longer trial-ready. The Trust goes to great lengths in its Motion to argue that this

Adversary Proceeding was trial-ready in the Bankruptcy Court before this Motion. (Motion at 14-16.)  However, this action was trial-ready for a bench trial scheduled for November 5, 2007.  To the extent Plaintiff may be allowed to try certain claims to a jury now, several issues must be revisited prior to any such jury trial.  Specifically, Defendants are entitled to reconsider any potential summary judgment motion as well as expert testimony.

There can be no dispute that jury trials cannot be conducted in the Bankruptcy Courts for the District of Delaware because the District Court has not specially designated the Bankruptcy Courts to hold jury trials.[19]  Official Comm. of Unsecured Creditors of Integrated Health Servs. v. Elkins (In re Integrated Health Servs.), 291 B.R. 615, 622 (Bankr. D. Del. 2003) ("In this District, the Bankruptcy Judges have not been specially designated by the District Court to conduct a jury trial.  Therefore, even if the parties consent, we may not conduct a jury trial.").  This was true when Plaintiff filed the Objections and Counterclaims more than three years ago, and was true when Plaintiff requested that the Bankruptcy Court set a trial date more than a year ago.  The trial scheduled by the

---

[19]    Perhaps for tactical reasons or plain misunderstanding of the law, Plaintiff has been inexplicably reluctant to acknowledge that this is black letter law in the District of Delaware.  Repeatedly before the Bankruptcy Court, Plaintiff argued that Defendants would not consent to a jury trial in the Bankruptcy Court. (See Murphy Decl. Ex. K, at 4.)  Although Plaintiff continues to make this assertion, Plaintiff does now at least acknowledge this principle. (Motion at 13.)  "Consent" is irrelevant; the Bankruptcy Court was not permitted to conduct a jury trial.

Bankruptcy Court (at Plaintiff's request) for which Plaintiff and Defendants prepared over the course of a year could only be conducted as a bench trial. Neither party objected to this fact and Defendants have developed their defense to this Adversary Proceeding in appropriate preparation for a bench trial.

Defendants' strategic decisions in preparation for a scheduled bench trial included the decisions to forego a summary judgment motion and the submission of affirmative or rebuttal expert testimony. Defendants concluded that because this action would be tried before the Bankruptcy Court without a jury, a summary judgment motion and affirmative and/or rebuttal expert testimony submitted by Defendants would be an unnecessary and inefficient use of party and judicial resources. However, if this Court determines that certain claims should be submitted to a jury for determination, Defendants are entitled to revisit those decisions, particularly in light of Plaintiff's tactical decision to assert its jury trial rights at the eleventh hour just before the bench trial was scheduled to begin.

## CONCLUSION

For all the reasons stated above, Defendants respectfully request that the District Court (i) deny Plaintiff's Motion; or (ii) in the alternative, schedule a status conference for the parties and the Court to consider appropriate further proceedings.

DATED:      December 3, 2007
            Wilmington, Delaware

            _____
            Mark D. Collins (No. 2981)
            Russell C. Silberglied (No. 3462)
            Lee E. Kaufman (No. 4877)
            RICHARDS, LAYTON & FINGER, P.A.
            One Rodney Square
            920 North King Street
            Wilmington, Delaware  19801
            (302) 651-7700

                    -and-

            R. Paul Wickes
            Mary K. Warren
            Michael J. Osnato, Jr.
            J. Justin Williamson
            LINKLATERS
            1345 Avenue of the Americas
            New York, New York  10105
            (212) 903-9000

            Attorneys for Defendants