**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Oakwood Homes Corporation, et al., | ) Bankruptcy Case No. |
| | ) 02-13396 (PJW) |
| | ) |
| Debtors. | ) Jointly Administered |
| _____ | ) |
| OHC Liquidation Trust, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary Proceeding No. |
| | ) 04-57060 (PJW) |
| Credit Suisse (f/k/a Credit | ) |
| Suisse First Boston, a Swiss | ) |
| banking corporation), Credit | ) |
| Suisse Securities (USA), LLC | ) |
| (f/k/a Credit Suisse First | ) Civil Case No. |
| Boston LLC), Credit Suisse | ) 07-00799 |
| Holdings (USA), Inc. (f/k/a | ) |
| Credit Suisse First Boston, | ) |
| Inc.), and Credit Suisse (USA), | ) |
| Inc. (f/k/a Credit Suisse First | ) |
| Boston (U.S.A.), Inc.), the | ) |
| subsidiaries and affiliates of | ) |
| each, and Does 1 through 100, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**REPLY BRIEF IN SUPPORT OF THE**
**PLAINTIFF'S MOTION TO WITHDRAW THE REFERENCE**
**AND TO SET DATES FOR A PRE-TRIAL CONFERENCE AND JURY TRIAL**
<u>**BEFORE THE DISTRICT COURT**</u>

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................1

ARGUMENT ........................................................4

    A.   Defendants Are Attempting An Impermissible
        Collateral Attack On The Jury Trial Opinion. ..........4

    B.   The Bankruptcy Court Properly Rejected All Of
        Defendants' Attacks On Plaintiff's Jury Rights
        On The Merits. .......................................9

           1.   A Jury Right Exists Where, As Here, Any
               "Legal" Claims Are Present Or "Legal"
               Relief Is Sought. ................................9

           2.   Controlling Case Law Is Clear That Each
               Claim Must Necessarily Be Part Of The
               Claims-Allowance Process In Order To
               Result In An Implied Jury Waiver. ...............11

           3.   Contractual Jury Waivers Are Narrowly
               Construed; The Bankruptcy Court Properly
               Limited The One Before It. ......................13

           4.   The Bankruptcy Court Properly Favored The
               Protection Of Plaintiff's Basic
               Constitutional Rights. .........................16

    C.   Defendants' Request For Special Powers To
        Revisit Tactical Decisions They Knowingly Made
        Should Be Rejected. ..................................17

CONCLUSION .....................................................20

## TABLE OF AUTHORITIES

### CASES

*Aetna Ins. Co. v. Kennedy*,
301 U.S. 389 (1937) ................................ 14, 15

*Am. Universal Ins. Co. v. Pugh*,
821 F.2d 1352 (9th Cir. 1987) ........................... 4

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) ..................................... 16

*Billing v. Ravin, Greenberg & Zackin, P.A.*,
22 F.3d 1242 (3d Cir. 1994), *cert. denied*, 513 U.S.
999 (1994) .......................................... 11, 12

*Brown v. Citicorp USA, Inc. (In re FoxMeyer Corp.)*,
No. 99-705 (GMS), 1999 WL 33220040 (D. Del. Dec. 1,
1999) ................................................. 4, 8

*Cantor v. Perelman*,
No. 97-586-KAJ, 2006 WL 318666 (D. Del. Feb. 10,
2006) .................................................. 10

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995) ...................................... 5

*City of New York v. Beretta U.S.A. Corp.*,
317 F. Supp. 2d 193 (E.D.N.Y. 2004) ..................... 16

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992) ...................................... 5

*In re Crown Vantage, Inc.*,
No. 02-03836, 2002 U.S. Dist. LEXIS 26109 (N.D. Cal.
Dec. 16, 2002) ......................................... 12

*Dairy Queen, Inc. v. Wood*,
369 U.S. 469 (1962) ............................... 2, 9, 10

*Dastgheib v. Genentech, Inc.*,
457 F. Supp. 2d 536 (E.D. Pa. 2006) .................... 11

*EEOC v. Blue Star Foods, Inc.*,
No. 78-5-W, 1980 U.S. Dist. LEXIS 11131 (S.D. Iowa
Mar. 7, 1980) .......................................... 16

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ..................................... 14

*Educ. Testing Servs. v. Katzman*,
    670 F. Supp. 1237 (D.N.J. 1987) ......................... 16

*First Union Nat'l Bank v. United States*,
    164 F. Supp. 2d 660 (E.D. Pa. 2001) ..................... 15

*In re Franklin Towne Lodge Ltd. P'ship*,
    No. 91-2702, 1992 U.S. Dist. LEXIS 18817 (E.D. Pa.
    Nov. 25, 1992) ......................................... 12

*Germain v. Conn. Nat'l Bank*,
    988 F.2d 1323 (2d Cir. 1993) ........................... 12

*In re Globe Parcel Serv., Inc.*,
    75 B.R. 381 (E.D. Pa. 1987) ............................ 12

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) ................................... 9, 10

*Hays v. Equitex, Inc. (In re RDM Sports Group)*,
    260 B.R. 915 (Bankr. N.D. Ga. 2001) .................... 12

*Lindsey v. Ipock*,
    732 F.2d 619 (8th Cir. 1984), *cert. denied*, 469 U.S.
    881 (1984) .............................................. 5

*M&E Contractors v. Kugler-Morris Gen. Contractors*,
    67 B.R. 260 (N.D. Tex. 1986) ........................... 12

*McClelland v. Braverman Kaskey & Caprara, P.C. (In re
    McClelland)*,
    332 B.R. 90 (Bankr. S.D.N.Y. 2005) ..................... 12

*Mirant Corp. v. Southern Co.*,
    337 B.R. 107 (N.D. Tex. 2006) .......................... 12

*NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*,
    203 B.R. 905 (D. Del. 1996) ............................ 12

*Official Comm. of Unsecured Creditors v. TSG Equity Fund
    L.P. (In re EnvisioNet Computer Servs.)*,
    276 B.R. 1 (D. Me. 2002) ................................ 4

*Pereira v. Farace*,
    413 F.3d 330 (2d Cir. 2005), *cert. denied*, 126 S.
    Ct. 2286 (2006) ....................................... 11

*Ross v. Bernhard*,
    396 U.S. 531 (1970) ................................. 11, 12

*Sigma Micro Corp. v. Healthcentral.com (In re
    Healthcentral.com)*,
    504 F.3d 775 (9th Cir. 2007) ............................ 7

*Texas v. United States*,
    523 U.S. 296 (1998) .................................... 19

*Tracinda Corp. v. DaimlerChrysler AG*,
    502 F.3d 212 (3d Cir. 2007) .................... 14, 15, 19

*Tray-Wrap, Inc. v. Six L's Packing Co.*,
    984 F.2d 65 (2d Cir. 1993) ............................. 17

*Turner v. Johnson & Johnson*,
    809 F.2d 90 (1st Cir. 1986) ............................ 16

*United States v. McAlister*,
    630 F.2d 772 (10th Cir. 1980) .......................... 16

*Urban Outfitters, Inc. v. 166 Enter. Corp.*,
    136 F. Supp. 2d 273 (S.D.N.Y. 2001) .................... 15

*Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In re
    Big V Holding Corp.)*,
    No. 01-233 (GMS), 2002 U.S. Dist. LEXIS 12609 (D.
    Del. July 11, 2002) ................................... 18

*In re White Farm Equip. Co.*,
    38 B.R. 718 (N.D. Ohio 1984) ........................... 5

*Williams Elecs. Games, Inc. v. Garrity*
    366 F.3d 569 (7th Cir. 2004) .......................... 10

## STATUTES AND RULES

28 U.S.C. § 157(d) .................................... 6, 19

28 U.S.C. § 158(a) .................................. 1, 6, 8

## OTHER AUTHORITIES

U.S. CONST. amend. VII .............................. *passim*

Plaintiff[1] respectfully submits this Reply Brief to further support Plaintiff's motion to withdraw the reference and to address Defendants' December 3, 2007 opposition thereto (the **"Defendants' Brief"**; cited herein as "Def. Br. at __").

## PRELIMINARY STATEMENT

As explained in the Opening Brief, two factors combine to form the "cause" needed to withdraw the reference: (1) the Bankruptcy Court's cogent and comprehensive Jury Trial Opinion and (2) numerous considerations of judicial economy.

Credit Suisse does not contest, and in fact agrees with, Plaintiff's analysis of the latter point. (*See* Def. Br. at 9 n.3.)  Rather, Credit Suisse throws forth an all-out onslaught on the Jury Trial Opinion, but – amazingly – never addresses the Bankruptcy Court's reasoning.  This collateral attack is inappropriate, both procedurally and substantively. The Jury Trial Opinion is a legal ruling made by a federal court, possessing proper jurisdiction, after full and fair briefing.  Thus, if Defendants dispute the Bankruptcy Court's interlocutory decision and wish to challenge it before another federal court, they must follow the clear procedures for doing so.  In fact, Credit Suisse has already initiated that process by moving for "leave" to appeal under 28 U.S.C. § 158(a).[2]

---

[1]  All capitalized terms used but not otherwise defined in this Reply Brief have the meaning given such terms in Plaintiff's initial motion to withdraw the reference (the **"Opening Brief"**).

[2]  (*See* Adv. Proc. D.I. Nos. 213-215.)  Plaintiff has submitted a lengthy answer in opposition to Defendants' request for a premature interlocutory appeal, a true and correct copy of which

Defendants' blatant attempt to argue their would-be interlocutory appeal in the Defendants' Brief is improper and should be quickly rejected.  Even if this Court does consider Defendants' arguments on the merits, though, it should reject each one, for exactly the reasons the Bankruptcy Court did.

First, Defendants' attempt to implode two of Plaintiff's claims, as support for a "mixed relief" theory, is unwarranted.  Defendants cannot rewrite the borders of Plaintiff's claims and remedies or erase their inherently "legal" nature.  Further, even on its own terms, this "mixed relief" theory is akin to the "incidental" construct rejected long ago by *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962).

Second, Defendants' categorical "waiver" theory, under which there are **no** jury rights when debtors or trustees sue in bankruptcy court, is likewise contrary to Supreme Court precedent, as well as case law in this Circuit.  The proper inquiry is whether ***every one*** of Plaintiff's counterclaims is in the "claims-allowance process."  Here, Defendants simply ignore how three counterclaims are unrelated to CSS's claims.

Third, Defendants also try to seek asylum in a contractual jury waiver.  But they overlook the inconvenient truth that this waiver was limited in scope and was only signed by a handful of the parties to this action.  Plus, even if that contractual waiver could somehow be read to apply

---

is attached as Exhibit "A" to the accompanying Declaration of Whitman L. Holt.  Plaintiff hereby incorporates all the arguments in that answer and again requests that leave to appeal be denied.

here, Defendants have failed *yet again* to meet their burden of proving that the waiver was enforceable in the first instance.

Credit Suisse made the very same arguments to the Bankruptcy Court, and that court rejected *them all*.  In so doing, the Bankruptcy Court devoted its judicial resources to crafting a 28-page opinion explaining why Defendants' position is contrary to controlling case law.  While Credit Suisse would prefer just to ignore them, the reasons detailed by the Bankruptcy Court make clear that this is not a close case.  Even if it were, however, the Bankruptcy Court correctly deferred to the long-standing principle that close cases are resolved in favor of protecting parties' fundamental rights.

The final gambit in the Defendants' Brief is a plea for this Court to let Credit Suisse revisit several tactical decisions they, and their sophisticated counsel, knowingly made in the face of a valid jury demand which they never moved to strike.  Defendants offer no basis in fact or law for such remarkable relief.  Indeed, Defendants simply ignore the clear case law holding that they could have moved to strike Plaintiff's jury demand at any point, even up to the eve of trial.  Further, Defendants do not address the substantial delay, cost, and prejudice that will befall Plaintiff if Defendants are permitted to claim an effective "mulligan" in this litigation.  In the final analysis, Defendants should not be heard to complain because Plaintiff chose to protect its constitutional rights and promptly moved to withdraw the reference as soon as the "cause" for doing so crystallized.

## ARGUMENT

At bottom, the Defendants' Brief raises three issues:  (1) Can Defendants collaterally attack the Jury Trial Opinion?  (2) Was the Bankruptcy Court wrong on the merits?  (3) Can Defendants now reverse course on their prior pointed statements that this matter is "trial ready"?  As explained in turn below, the answer to each question is a resounding "**_no_**."

### A.    Defendants Are Attempting An Impermissible Collateral Attack On The Jury Trial Opinion.

Although Defendants already had their day before the Bankruptcy Court, they seek to ignore the learned Jury Trial Opinion and get a second bite at the apple before this Court. Such tactics not only are procedurally improper, as Defendants themselves recognize, but also are extraordinary in that they effectively make believe that the Bankruptcy Court did not already consider and reject each of Defendants' arguments.

Defendants do not contend that the Bankruptcy Court lacked jurisdiction to decide the jury issue – nor could they in light of the case law supporting such authority[3] – or that they were denied a fair opportunity to present their position. Rather, the crux of Defendants' opposition is that the Jury Trial Opinion is a mere legal nullity, with "no binding effect

---

[3]    *See Brown v. Citicorp USA, Inc. (In re FoxMeyer Corp.)*, No. 99-705 (GMS), 1999 WL 33220040, at *1 (D. Del. Dec. 1, 1999) ("Either this court or the Bankruptcy Court can determine whether [parties] are entitled to a jury trial."); *accord, e.g.*, *Am. Universal Ins. Co. v. Pugh*, 821 F.2d 1352, 1355 (9th Cir. 1987); *Official Comm. of Unsecured Creditors v. TSG Equity Fund L.P. (In re EnvisioNet Computer Servs.)*, 276 B.R. 1, 6-7 (D. Me. 2002).

on this Court," which means Defendants get to reargue the whole issue anew before this Court.  (*See* Def. Br. at 10-11.)

Unfortunately for Defendants, the Jury Trial Opinion is more than "the Bankruptcy Court's **belief** that Plaintiff has a jury trial right" (Def. Br. at 2 (emphasis added)); it is a ruling by a federal court that carries the force of law.[4]  And because the Jury Trial Opinion is a proper judicial order, it bears the weight of law unless reversed **on appeal** and cannot be collaterally attacked as part of the instant motion practice.  Indeed, the Supreme Court previously rejected just such a play in *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), in which parties attempted to collaterally attack a bankruptcy court order in a different federal court.  The Court strongly rebuked these tactics, noting that if the parties were "dissatisfied with the Bankruptcy Court's ultimate decision," then they should follow the appellate procedures set forth in 28 U.S.C. § 158.  *See id.* at 313.  The parties' choice "not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's [order]" threatened to "seriously undercut[] the orderly process of the law."  *Id.*[5]

---

[4]  While the Jury Trial Opinion and associated order may be an interlocutory, rather than final, decision, that fact merely alters the methods of appeal available to Defendants.  *See generally Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992).

[5]  *See also, e.g., Lindsey v. Ipock*, 732 F.2d 619, 622 (8th Cir. 1984) (refusing to allow collateral attack on bankruptcy court's orders in subsequent proceedings; objecting party either had to appeal or "was obligated to obey these orders even if they were in error"); *In re White Farm Equip. Co.*, 38 B.R. 718, 722-23 (N.D. Ohio 1984) (explaining why party's failure to appeal an

The Defendants' Brief represents an analogous threat to the rule of law; after receiving an unfavorable ruling from a federal court, Defendants hope either to ignore or to attack that ruling before this Court.  If Defendants disagree with the Bankruptcy Court's legal analysis, however, the correct remedy is to seek proper appellate review.  In fact, Credit Suisse knows this, and has already moved for "leave" to appeal under section 158(a).  As discussed in Plaintiff's answer to their specious motion for leave, Defendants cannot establish all (or even one) of the four **required** conditions for a premature interlocutory appeal.  Nevertheless, the appellate procedures carefully crafted by Congress should not be short-circuited via an inappropriate collateral attack on a valid judicial order.  Although Defendants disguise their attack as a "belt-and-suspenders" approach (*see* Def. Br. at 11 n.4), their attempt to reargue the full jury issue on the merits, as if the Jury Trial Opinion never existed, should be rejected.

Several pages of the Defendants' Brief are spent justifying Defendants' procedurally defective posture.  (*See* Def. Br. at 10-12.)  Defendants' position collapses, however.

First, contrary to Defendants' suggestion, the Jury Trial Opinion encroaches on neither 28 U.S.C. § 157(d) nor Rule 5011(a).  The ultimate decision whether to withdraw the reference always remains in this Court's hands, and open

---

unfavorable bankruptcy court ruling "constitutes a waiver of the issue and a bar to a collateral attack in the context of this [District] Court's withdrawal of reference" analysis).

issues of "cause" still must be determined **by this Court**.[6]

For instance, two open issues must be resolved here: (1) Is the case "trial ready"? and (2) Do considerations of judicial economy create "cause" to withdraw the Adversary Proceeding "in whole," rather than certain counterclaims "in part"?  Both issues were discussed in the Opening Brief, and the fact that Defendants happen to agree with Plaintiff's analysis of the latter point (*see* Def. Br. at 9 n.3) does not render the issue perfunctory.  While Defendants are wrong about the "trial ready" analysis, *see* pp. 17-20, *infra*, this Court must still reach a conclusion about that disputed issue.

In fact, bankruptcy courts regularly decide issues bearing on whether "cause" exists to withdraw the reference, such as whether (i) a proceeding is "core"; (ii) parties are properly joined to an action; or (iii) certain claims survive motions to dismiss or for summary judgment.  Credit Suisse is simply incorrect in its bald assertion that affording such rulings "any deference" runs "counter to the express direction of the Bankruptcy Code and Rules."  (*See* Def. Br. at 11.)  To the contrary, such determinations have the force of law unless and until they are reversed following proper appellate review.

_____

[6]  In this respect, the present framework differs dramatically from *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775 (9th Cir. 2007), which case invalidated a local rule providing that the reference was to "be automatically withdrawn" following rulings by bankruptcy judges, thereby **bypassing the district courts completely**.  *See id.* at 784-85.  No such problem exists here; the ultimate decision to "withdraw" *vel non* always remains with this District Court, and there has been no improper usurpation of the Court's ability to analyze "cause" upon motion.

Second, the main case Defendants cite to support their contorted procedures, *Brown v. Citicorp USA, Inc. (In re FoxMeyer Corp.)*, No. 99-705 (GMS), 1999 WL 33220040 (D. Del. Dec. 1, 1999), undermines their disregard of the Jury Trial Opinion. In *FoxMeyer*, parties moved to withdraw the reference and, like Defendants, argued that the District Court is the only court that can decide jury rights. This Court disagreed, holding "that the Bankruptcy Court should determine, at least in the first instance, whether the [parties] are entitled to a jury trial." *See id.* at *2. Further, the Court noted that the standard practice after a disputed jury ruling would be to appeal pursuant to 28 U.S.C. § 158(a).[7] *See id.* at *2 n.6. Although the Court remarked that "potential inefficiency **might** warrant" consideration of disputed bankruptcy rulings with a withdrawal motion, this comment was limited to rulings based on "purely legal" issues. *See id.* (emphasis added). This possible exception to the standard practice does not apply here in any event since, as discussed below, the Bankruptcy Court made factual findings in the Jury Trial Opinion.

In sum, Defendants' thinly-disguised collateral attack on the Jury Trial Opinion ought to be rejected. If Credit Suisse disagrees with the Bankruptcy Court's ruling, they must seek **and obtain** "leave" for an interlocutory appeal. They should not be allowed to ignore rulings of the Bankruptcy

---

[7]    Which appeal, of course, would require the putative appellant to prove **all four** of the required conditions for an interlocutory appeal under 28 U.S.C. § 158(a), **none** of which are present here.

Court (such as the Jury Trial Opinion) merely by behaving before this Court as though such rulings were never made.

**B.  The Bankruptcy Court Properly Rejected All Of Defendants' Attacks On Plaintiff's Jury Rights On The Merits.**

While Defendants' attempt to reargue the merits anew should not be countenanced, this Court might review the Jury Trial Opinion to ensure that "cause" for withdrawal exists. If so, the Court should adopt the entire Jury Trial Opinion.[8]

**1.  A Jury Right Exists Where, As Here, Any "Legal" Claims Are Present Or "Legal" Relief Is Sought.**

As the Supreme Court explained in *Dairy Queen, Inc. v. Wood*, "[i]t would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. ***As long as <u>any</u> legal cause is involved the jury rights it creates control***." 369 U.S. 469, 473 n.8 (1962) (emphasis added) (citation and quotation omitted); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989) (underscoring the key distinction between "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where ***equitable rights <u>alone</u>*** were recognized, and equitable remedies were administered" (bolded emphasis added) (citation and quotations omitted)).  The Bankruptcy Court correctly applied these cases

---

[8]  The page limitations for reply briefs restrict Plaintiff's ability fully to develop the merits analysis in this Reply Brief. Thus, to the extent that the analysis contained herein does not completely address the Court's concerns, Plaintiff respectfully asks the Court to consider the more detailed analysis set forth in (i) Plaintiff's answer to Defendants' motion for leave to appeal (Holt Decl. Ex. "A") & (ii) the Jury Trial Opinion itself.

by rejecting Defendants' "mixed relief" theory in light of the many "legal" elements here. (*See* Jury Trial Opinion at 10-17.)

First, Credit Suisse cannot contest that claims for negligence and breach of implied contract are historically "legal" claims. Instead, Credit Suisse desperately tries to recast Plaintiff's whole case by asserting that these two claims "exactly track" or are "duplicative" of the breach of fiduciary duty claim. (*See* Def. Br. at 17-19.)  This is a mistake; as the Bankruptcy Court held, the three counterclaims are not coextensive.  (*See* Jury Trial Opinion at 10-11.) Hence, the inextricably "legal" nature of two claims alone creates jury rights under *Diary Queen* and *Granfinanciera*.[9]

Second, the Bankruptcy Court properly performed the "remedy" analysis.  Plaintiff does not seek "equitable" relief – such as an accounting, constructive trust, or injunction – but rather an award of fungible damages; Plaintiff does not care where Credit Suisse gets money to pay a judgment.  Thus, as Judge Posner cogently explained in *Williams Electronics Games, Inc. v. Garrity*, Plaintiff's requested relief is "a legal remedy for a legal wrong, not [] an equitable remedy for a legal or an equitable wrong."  366 F.3d 569, 578 (7th Cir.

---

[9]  Defendants' perpetual reliance on *Cantor v. Perelman*, No. 97-586-KAJ, 2006 WL 318666 (D. Del. Feb. 10, 2006) – a case properly distinguished by the Bankruptcy Court (*see* Jury Trial Opinion at 15-16) – is puzzling.  The only claims at issue in *Cantor* were historically "equitable." Here, in contrast, there are additional causes of action that have always been "legal" in nature. Indeed, Judge Jordan expressly noted how the *Cantor* analysis would have been different "if at least one of Plaintiffs' claims [had been] legal rather than equitable."  *Id.* at *7 n.7.

2004); *see also, e.g.*, *Pereira v. Farace*, 413 F.3d 330, 339-41 (2d Cir. 2005); *Dastgheib v. Genentech, Inc.*, 457 F. Supp. 2d 536, 543-46 (E.D. Pa. 2006).  After thoroughly discussing the authorities and weighing the history of a proceeding pending before it for three years, the Bankruptcy Court reached the same conclusion.  (*See* Jury Trial Opinion at 13-17.)  Credit Suisse offers no reason to believe the Bankruptcy Court erred.

**2.    Controlling Case Law Is Clear That Each Claim Must Necessarily Be Part Of The Claims-Allowance Process In Order To Result In An Implied Jury Waiver.**

The thrust of Credit Suisse's next argument (which is bifurcated to tumesce their brief) is that the combination of claim objections with affirmative litigation before the Bankruptcy Court somehow made the entire Adversary Proceeding part of the "claims-allowance process" or otherwise triggered categorical submission to "equitable jurisdiction." (*See* Def. Br. at 19-25.)  The Bankruptcy Court properly rejected these overreaching theories. (*See* Jury Trial Opinion at 17-22.)

First, the Supreme Court has clearly instructed that "legal claims are not magically converted into equitable issues by their presentation to a court of equity." *Ross v. Bernhard*, 396 U.S. 531, 538 (1970). The Third Circuit has similarly expressed its belief that a waiver theory based solely on a bankruptcy forum "raises as many questions as it answers," and the mere "fact that the debtor may have voluntarily submitted itself to the bankruptcy court's equitable jurisdiction does not complete the analysis. *A court must also ask whether the resolution of the particular*

*dispute at issue is <u>necessarily</u> part of the process of the disallowance and allowance of claims.*"  *See Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1251-52, n.14 (3d Cir. 1994) (emphasis added).[10]   The Bankruptcy Court followed the teachings of *Ross* and *Billing* and rejected a *per se* "waiver" theory whereby one can *never* sue in bankruptcy court without losing one's jury rights.  (*See* Jury Trial Opinion at 21-22.)

    Second, there is no reason to question the Jury Trial Opinion's focused review of the "claims-allowance process" itself.  (*See id.* at 17-20.)  As a threshold matter, the Bankruptcy Court did what courts always do in this area: approach the issue claim-by-claim, in each instance asking whether a given cause of action bears a necessary logical relationship to the allowance or disallowance of a creditor's claim in bankruptcy.  *See, e.g.*, *Germain*, 988 F.2d at 1327-32; *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 120-22 (N.D. Tex. 2006); *In re Crown Vantage, Inc.*, No. 02-03836, 2002 U.S. Dist. LEXIS 26109, at *9-12 (N.D. Cal. Dec. 16, 2002).[11]

---

[10]  Other courts in this Circuit also reject Defendants' rigid forum-based rule.  *See, e.g.*, *NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 912-13 (D. Del. 1996); *In re Franklin Towne Lodge Ltd. P'ship*, No. 91-2702, 1992 U.S. Dist. LEXIS 18817, at *8-10 (E.D. Pa. Nov. 25, 1992); *In re Globe Parcel Serv., Inc.*, 75 B.R. 381, 383 (E.D. Pa. 1987).  These cases are in accord with many other circuit-, district-, and bankruptcy-level authorities.  *See, e.g.*, *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1330 (2d Cir. 1993); *M&E Contractors v. Kugler-Morris Gen. Contractors*, 67 B.R. 260, 266-67 (N.D. Tex. 1986); *Hays v. Equitex, Inc. (In re RDM Sports Group)*, 260 B.R. 915, 920-26 (Bankr. N.D. Ga. 2001).

[11]  Courts reject the blunderbuss argument that the case's procedural posture – "counterclaims" to proofs of claim – results in a jury waiver.  *See, e.g.*, *McClelland v. Braverman Kaskey & Caprara*,

Nor is there any real dispute about whether the Bankruptcy Court made the right finding. The basic problem with Defendants' position below was their inability to explain why common law claims based upon misconduct beginning years before the contract underlying CSS's proofs of claim was executed have a necessary link to whether claims arising under that August 2002 contract should be allowed. The Defendants' Brief makes no better effort to address this obvious problem – or to explain why *all* aspects of a many-year relationship must be crammed into a contract covering just 88 days – because it cannot be solved; all three of the counterclaims as to which the Bankruptcy Court affirmed Plaintiff's jury rights could be resolved apart from CSS's proofs of claim, and thus they are not *necessarily* part of the "claims-allowance process."[12]

### 3. Contractual Jury Waivers Are Narrowly Construed; The Bankruptcy Court Properly Limited The One Before It.

In a final effort to avoid trying any part of this case to a jury, Defendants again point to a contractual jury waiver clause in the documentation for the "warehouse" credit

---

*P.C. (In re McClelland)*, 332 B.R. 90, 95 (Bankr. S.D.N.Y. 2005) ("Unlike the act of filing a proof of claim, the assertion of a counterclaim by the debtor does not automatically result in waiver of the right to trial by jury on those counterclaims.").

[12] As Plaintiff has argued, considerations of judicial economy create "cause" to withdraw *all* of Plaintiff's counterclaims in the Adversary Proceeding, including those for which there is no jury right. (*See* Opening Brief at 16-21.) While Defendants agree with this conclusion (*see* Def. Br. at 9 n.3), they never dispute Plaintiff's underlying premise – i.e., that the various counterclaims are not forever interwoven. The reason Defendants *do not* make this crucial argument is that the separate bases for the claims (*see* Jury Trial Opinion at 6-7) means they *can not*.

facility used by the Oakwood Entities.  The Bankruptcy Court rejected this contractual waiver argument **for three separate reasons**, any one of which would be sufficient to render that waiver inoperative here.[13]  (*See* Jury Trial Opinion at 22-28.)

The Bankruptcy Court's first problem with the purported waiver was that the relevant contracts were not executed by even close to all the parties to this litigation, either on Plaintiff's side or on Defendants' side.  (*See* Jury Trial Opinion at 22-25.)  It is difficult to understand how Defendants could dispute this factual conclusion, which explains why it goes unmentioned in their brief.  *See, e.g., EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").

Indeed, among the Bankruptcy Court's conclusions was that the **sole** beneficiary of the purported waiver – "Credit Suisse First Boston, New York Branch" – is separate from the other Defendants.  Credit Suisse has waffled on this point, depending upon the context, but here they make **no** mention of this factual issue – perhaps because Defendants' counsel wants to continue their gamesmanship about whether "New York Branch" is a party here (*see* Holt Decl. ¶ 6) instead of stating facts that forthrightly respond to the Bankruptcy Court's ruling.

---

[13] As explained below, all of the Bankruptcy Court's waiver analysis is well-supported.  Critically, all that analysis was performed in light of the repeated instruction that, "[b]ecause the 'right of jury trial is fundamental, **courts indulge every reasonable presumption <u>against</u> waiver**.'"  *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007) (emphasis added) (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)).

The Bankruptcy Court's second problem with the waiver was that it only applies to actions relating to one financing transaction, whereas this litigation "is about whether Defendants breached far broader duties, not arising from any written contract, by partaking in a myriad of alleged illicit transactions with the Oakwood Companies," which falls outside the scope of the purported waiver.  (*See* Jury Trial Opinion at 25.)  Defendants offer no new reason to doubt the Bankruptcy Court's narrow reading of the purported waiver's scope, which was required under both *Aetna Insurance Co.* and *Tracinda.  See also, e.g.*, *Urban Outfitters, Inc. v. 166 Enter. Corp.*, 136 F. Supp. 2d 273, 275 (S.D.N.Y. 2001).

The third part of the Bankruptcy Court's waiver analysis also goes unmentioned by Credit Suisse.  This part applied the framework of *First Union National Bank v. United States*, 164 F. Supp. 2d 660 (E.D. Pa. 2001), to this case's facts.  (*See* Jury Trial Opinion at 26-28.)  Under *First Union*, the proponents of purported waivers must offer "evidence that there was not a gross disparity in bargaining power between" the parties, which is particularly important when the signatory corporation is in poor "financial straits at the time the documents were executed, [since] it is highly likely that there was a severe disparity in bargaining power" in such circumstances.  *See* 164 F. Supp. 2d at 665.  Here, the Bankruptcy Court reviewed record testimony and concluded that "there is a good argument that the two Oakwood Companies were at a severely disadvantaged bargaining [position]" when they

negotiated the purported waiver, and since "Defendants did not offer any evidence to the contrary," they failed to meet their burden of proof on this issue.  (*See* Jury Trial Opinion at 28.)  The Bankruptcy Court's factual finding and stated need for more evidence is critically important, because it can be reversed ***only if*** Credit Suisse offers contrary evidence.  But Defendants proffer no such evidence.  Rather, as with the rest of the Jury Trial Opinion, Defendants act as if the Bankruptcy Court's findings do not even exist.  This evasion creates no reason for the Court to doubt the Bankruptcy Court's findings, and provides absolutely zero grounds for a contrary result.

   **4.    The Bankruptcy Court Properly Favored The Protection Of Plaintiff's Basic Constitutional Rights.**

       As detailed above, the Jury Trial Opinion properly rejected ***all*** the strained arguments against a jury that Credit Suisse attempts to repackage – almost verbatim – here.  Even so, any "close call" by the Bankruptcy Court comports with the "guiding beacon . . . lit by the Supreme Court: when in doubt, grant a jury trial."  *City of New York v. Beretta U.S.A. Corp.*, 317 F. Supp. 2d 193, 196 (E.D.N.Y. 2004).[14]  (*See* Jury Trial Opinion at 9.)  Defendants develop no argument as to why this was improper, nor do they provide any compelling reasons for ***this Court*** to depart from such fundamental principles.

---

[14] *See also, e.g.*, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959); *Turner v. Johnson & Johnson*, 809 F.2d 90, 99 (1st Cir. 1986); *United States v. McAlister*, 630 F.2d 772, 774 (10th Cir. 1980); *Educ. Testing Servs. v. Katzman*, 670 F. Supp. 1237, 1243 (D.N.J. 1987); *EEOC v. Blue Star Foods, Inc.*, No. 78-5-W, 1980 U.S. Dist. LEXIS 11131, at *11 (S.D. Iowa Mar. 7, 1980).

## C.   Defendants' Request For Special Powers To Revisit Tactical Decisions They Knowingly Made Should Be Rejected.

At the end of the Defendants' Brief lies the lone argument the Bankruptcy Court did not already consider and reject, mainly because Defendants advanced the exact opposite position before the Bankruptcy Court.  (*See* Holt Decl. Ex. "B" at 6:13-15 ("I agree . . . that the case is essentially trial ready.").)  Notwithstanding this unambiguous statement on the record, Defendants now claim they are not ***really*** "trial ready" and think they have some novel rights to reopen discovery and motion practice, thereby burdening Plaintiff with potentially years of delay and gargantuan sums of additional costs, all because ***they*** made improvident choices by ***assuming*** there would be no jury trial.  (*See* Defendants' Brief at 30-32.)  This desperate plea for unprecedented relief – in support of which Defendants can point to not a single statute, rule, case, or other authority[15] – should be rejected for several reasons.

First, as an initial matter, there can be no dispute that Credit Suisse was on notice of Plaintiff's timely jury demand ever since this proceeding began.  Nor is there – despite Defendants' intimations – any colorable argument that "the meticulous provision made in [FRCP] 39 for jury waivers," which requires "a ritual that is almost sacramental" once demand is made, was followed here. *See Tray-Wrap, Inc. v. Six*

---

[15] Nor do Defendants articulate why jury trials are so radically different from bench trials.  Jury trials are a fundamental part of American legal practice, and if Defendants thought they are so different, they had notice and an opportunity to prepare for one.

17

*L's Packing Co.*, 984 F.2d 65, 68 (2d Cir. 1993).  The issue thus becomes what response is reasonable to expect from a sophisticated party represented by sophisticated counsel.

Plaintiff submits that the answer is obvious:  If Defendants and their counsel disputed the substance of Plaintiff's jury demand, or otherwise thought it "was simply surplus ink on a page" (Holt Decl. Ex. "B" at 14:16-17), then Defendants should have brought a motion to strike that demand, but they *never* should have casually relied on their own – clearly misguided – belief that the demand was of no import.

Credit Suisse did not move to strike, however, or otherwise inform Plaintiff, Plaintiff's counsel, or the Bankruptcy Court of their intuition that the proper demand was meaningless "ink."  Rather, Credit Suisse chose to allow the deadlines for expert discovery and dispositive motions to run, knowing full well that the case could be tried to a jury.

Plaintiff, meanwhile, always intended to enforce its jury rights in the event that the claims as to which it has a jury right actually went trial, and never told Credit Suisse anything to the contrary.  Still, Plaintiff knew courts in this and other districts hold that "[w]ithdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is 'trial ready.'"  *Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In re Big V Holding Corp.)*, No. 01-233 (GMS), 2002 U.S. Dist. LEXIS 12609, at *17 (D. Del. July 11, 2002) (citing cases).  As such, when Defendants did not move to strike, Plaintiff

raised the issue so it could be resolved contemporaneously
with this case becoming "trial ready" after the close of
discovery – which did not occur until October 22, 2007.[16]

        Second, Credit Suisse's cries of unfairness ring
particularly hollow when one considers how imbalanced their
regime would be.  As the Third Circuit has noted, "[p]arties
have a great deal of latitude on the timing of motions to
strike a jury demand" and "a court has the discretion to
permit a motion to strike a jury demand at any time, even on
the eve of trial."  *Tracinda Corp. v. DaimlerChrysler AG*, 502
F.3d 212, 226 (3d Cir. 2007) (citation and quotations
omitted).  In light of this rule, the Third Circuit rejected a
party's argument that "it would have conducted discovery
differently had it known that it would be trying its case to
the court rather than to a jury" and "was unable to modify its
trial strategy in time because the District Court struck [its]
jury demand only a few weeks before trial."  *See id.* at 226-
27.  Defendants' proposed regime turns *Tracinda* inside out; it
would allow defendants not only to wait until the very last
minute to move to strike, but also to take refuge in claims of
unfairness where, as here, plaintiffs act proactively to
fulfill proper jury demands as trial draws near.  Parity of

---

[16] Then, promptly following the actual close of discovery and the
   Bankruptcy Court's issuance of the Jury Trial Opinion – i.e.,
   once "cause" had crystallized and a motion under 28 U.S.C. §
   157(d) would not have been premature or violated the ripeness
   doctrine, *see generally Texas v. United States*, 523 U.S. 296,
   300-02 (1998) – Plaintiff filed the instant motion to withdraw
   the reference and to schedule a jury trial before this Court.

reasoning requires a more principled result, and precludes Defendants' apparent fealty to some newfound sense of equity.

Third and finally, the Court must not lose sight of the prejudice Plaintiff will face if Defendants' extraordinary request is granted. At this point, Defendants have already examined Plaintiff's experts, reviewed certain proposed trial exhibits, and otherwise discovered details about Plaintiff's position while negotiating a draft pre-trial order. Letting Defendants hit the "reset" button, while still retaining the knowledge they gained about Plaintiff's case, is fundamentally unfair. Equally important is how Defendants' requested relief would undoubtedly extend an Adversary Proceeding which is over three years old well into the future, thereby multiplying the costs to the parties and further delaying a final distribution to Plaintiff's creditor-beneficiaries. There is no reason in law or fact for this Court to permit such a pernicious result.

In sum, Defendants' counsel was right when he told the Bankruptcy Court that this case is ready for trial; beyond withdrawing the reference and scheduling the jury trial to which Plaintiff has a Seventh Amendment right, there simply is nothing left to do. Defendants' multi-pronged effort to delay trial on the merits – via unwarranted appeals or unprecedented demands to reopen long-closed matters – should not succeed.

## CONCLUSION

For the reasons and based on the authorities presented above and in the Opening Brief, Plaintiff once again requests that its motion to withdraw the reference be granted.

20

Respectfully submitted,

Dated:  December 10, 2007
Wilmington, Delaware

/s/Marla Rosoff Eskin
MARLA ROSOFF ESKIN (No. 2989)
KATHLEEN CAMPBELL DAVIS (No. 4229)
CAMPBELL & LEVINE, LLC
800 N. King Street, Suite 300
Wilmington, DE 19801
(302) 426-1900

-and-

TONY CASTAÑARES (CA SBN 47564)
STEPHAN M. RAY (CA SBN 89853)
SCOTT H. YUN (CA SBN 185190)
WHITMAN L. HOLT (CA SBN 238198)
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Fl.
Los Angeles, CA 90067
(310) 228-5600

Special Counsel for the
OHC Liquidation Trust

# <u>Appendix of Unpublished Decisions</u>

1.  *Brown v. Citicorp USA, Inc. (In re FoxMeyer Corp.)*,
    No. 99-705 (GMS), 1999 WL 33220040 (D. Del. Dec. 1,
    1999)

2.  *Cantor v. Perelman*,
    No. 97-586-KAJ, 2006 WL 318666 (D. Del. Feb. 10, 2006)

3.  *In re Crown Vantage, Inc.*,
    No. 02-03836, 2002 U.S. Dist. LEXIS 26109 (N.D. Cal.
    Dec. 16, 2002)

4.  *EEOC v. Blue Star Foods, Inc.*,
    No. 78-5-W, 1980 U.S. Dist. LEXIS 11131 (S.D. Iowa
    Mar. 7, 1980)

5.  *In re Franklin Towne Lodge Ltd. P'ship*,
    No. 91-2702, 1992 U.S. Dist. LEXIS 18817 (E.D. Pa.
    Nov. 25, 1992)

6.  *Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In
    re Big V Holding Corp.)*,
    No. 01-233 (GMS), 2002 U.S. Dist. LEXIS 12609 (D. Del.
    July 11, 2002)

Westlaw.

Not Reported in F.Supp.2d                                                                   Page 1
Not Reported in F.Supp.2d, 1999 WL 33220040 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**In re Foxmeyer Corp.
D.Del.,1999.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
In re: FOXMEYER CORPORATION, Foxmeyer
Drug Company, Healthcare Transportation System,
Inc., Merchandise Coordinator Services Corporation,
Foxmeyer Software, Inc. and Health Mart, Inc.,
Debtors
Bart A. BROWN, Jr., As Chapter 7, Trustee,
Plaintiff,
v.
CITICORP USA, INC., et. al., Defendants.
**No. 96-1329 (MBM), 96-1330(MBM), 96-
1331(MBM), 96-1332(MBM), 96-1333(MBM), 96-
1334(MBM), ADV. A98-279, CIV. A. 99-705
GMS.**

Dec. 1, 1999.

Thomas L. Ambro, Richards, Layton & Finger,
Wilmington, for Foxmeyer Corporation, debtors.
Kathleen P. Makowski, Phillips, Goldman & Spence,
P.A., Wilmington, for Bart A. Brown, Jr., as Chapter
7 Trustee, plaintiffs.
Karen C. Bifferato, Connolly, Bove, Lodge & Hutz,
Wilmington, for Noteholder Defendants, defendants.

ORDER
SLEET, J.

I. INTRODUCTION

*1 On August 27, 1996, the Debtors [FN1] filed
voluntary petitions for relief under Chapter 11 of the
Bankruptcy Code. Pursuant to 28 U .S.C. § 157(a),
the bankruptcy cases were referred from the United
States District Court for the District of Delaware to
the United States Bankruptcy Court for the District of
Delaware ("the Bankruptcy Court"). On March 18,
1997, the Debtors' Chapter 11 cases were converted
to cases under Chapter 7 of the Bankruptcy Code. On
May 19, 1997, the Bankruptcy Court appointed Bart
A. Brown, Jr. as Trustee for the Debtors ("the
Trustee").

FN1.    The    Debtors    are    FoxMeyer

Corporation, FoxMeyer Drug Company,
Healthcare Transportation System, Inc.,
Merchandise Coordinator Services
Corporation, FoxMeyer Software, Inc., and
Health Mart, Inc.

On June 9, 1998, the Trustee commenced an
adversary proceeding (Adversary Proceeding No.
A98-279) to recover approximately $370 million
transferred from the Debtors to the Noteholder
Defendants [FN2] and the Bank Defendants [FN3]
(collectively, "the Defendants") on June 19, 1996.
These payments were made as part of a refinancing
transaction through which the Debtors replaced
unsecured debt owed to the Noteholder and Bank
Defendants with secured debt owed to a new group of
lenders headed by General Electric Capital
Corporation. The Trustee seeks to recover the $370
million transferred to the Defendants as avoidable
preferences under 11 U.S.C. § 547(b).

FN2.    The Noteholder Defendants are
Principal Life Insurance Company (f/k/a
Principal Mutual Life Insurance Company),
The Northwestern Mutual Life Insurance
Company, The Variable Annuity Life
Insurance Company, ReliaStar Life
Insurance Company (f/k/a Northwestern
National Life Insurance Company),
Northern Life Insurance Company,
ReliaStar Life Insurance Company of New
York (successor in interest to The North
Atlantic Life Insurance Company of
America), William Blair & Company
L.L.C., The Franklin Life Insurance
Company, General American Life Insurance
Company, The Ohio National Life Insurance
Company, Provident Mutual Life Insurance
Company (f/k/a Provident Mutual Life
Insurance Company of Philadelphia),
Provident Mutual Life and Annuity
Company of America, Berkshire Life
Insurance Company, Farm Family Casual
Insurance Company (f/k/a Farm Family
Mutual Insurance Company), Life Insurance
Company of the Southwest, American
Mutual Life Insurance Company, Manhattan
Life Insurance Company, Union Central

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 2
Not Reported in F.Supp.2d, 1999 WL 33220040 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Life Insurance Company and Royal Maccabees Life Insurance Company.

FN3. The Bank Defendants are Citibank, N.A., Citicorp USA, Inc., Paribas (f/k/a Banque Paribas), Wells Fargo Bank (Texas), National Association (f/k/a First Interstate Bank of Texas, N.A.), The Bank of Tokyo-Mitsubishi, Ltd., Credit Suisse First Boston (f/k/a Credit Suisse), Bank of America, N.A. (successor in interest to The Boatman's National Bank of St. Louis, Bank of America, Illinois and NationsBank of Texas, N.A.), Bank of Nova Scotia, The Fuji Bank, Limited, PNC Bank, N.A. and U.S. Bank National Association (f/k/a First Bank National Association).

Before the court are the Defendants' motions requesting withdrawal of the reference of this adversary proceeding to the Bankruptcy Court, pursuant to 28 U.S.C. § 157(d).FN4 For the reasons that follow, the court will deny the Defendants' motions.

FN4. The Noteholder Defendants requested withdrawal in a motion filed September 10, 1999 (D.I.1). The Bank Defendants requested withdrawal in a "Memorandum in Support of Noteholder Defendants' Motion for Withdrawal of the Reference," filed on September 20, 1999. This memorandum was docketed in the Bankruptcy Court (Bankr.D .I. 69), but has not been docketed in this court.

## II. DISCUSSION

The Defendants request for withdrawal is based upon their asserted rights to a jury trial in the District Court. In opposing withdrawal, the Trustee argues that the Defendants have lost any such rights they may once have had. Indeed, the Trustee has filed a motion in the Bankruptcy Court ("the Default Motion") requesting that court enter default judgments against the Defendants or, alternatively, to strike the Defendants' jury demands. The Trustee contends that this court cannot grant the Defendants' motions for withdrawal unless and until the Bankruptcy Court rules on the Default Motion. The Defendants argue that this court, rather than the Bankruptcy Court, should determine whether the

Defendants are entitled to a jury trial.

### A. The Bankruptcy Court Should Determine Defendants' Rights to a Jury Trial

Either this court or the Bankruptcy Court can determine whether the Defendants are entitled to a jury trial. *See, e.g., In re Washington Manufacturing Co.,* 133 B.R. 113, 116 (M.D.Tenn.1991) (noting that the bankruptcy court is normally an appropriate forum for determining whether a right to jury trial exists, but concluding that the district court can also decide that issue when the right to jury trial is the "cause" asserted in a motion to withdraw a reference to bankruptcy); *In re TJN, Inc.,* 207 B.R. 499, 501 & n .1 (Bankr.D.S.C.1996) ( "Ordinarily, the Bankruptcy Court in which the adversary [proceeding] is pending is the forum in which the parties' right to jury trial is determined."(citations omitted)); *see also* 28 U.S.C. § 157(b)(1) (bankruptcy judges may hear and determine all bankruptcy cases and core proceedings and may enter appropriate orders and judgments).

**\*2** Under the circumstances of this case, the Bankruptcy Court is better positioned than this court to decide the jury trial issue. The parties appear to agree that, ordinarily, defendants in actions to avoid preferential transfers under 28 U.S.C. § 547(b) are guaranteed the right to a jury trial. *See Langenkamp v. C.A. Culp,* 498 U.S. 42, 43-44 (1990); *Granfinanciera v. Nordberg,* 492 U.S. 33 (1989). In this case, however, the Defendants' rights to a jury trial will turn, at least in part, on procedural defaults, discovery violations and/or waivers that have allegedly occurred in the course of the proceedings to date before the Bankruptcy Court.FN5 These issues have been fully addressed in the briefing on the Trustee's Default Motion before the Bankruptcy Court. The Bankruptcy Court is more familiar with the proceedings to date in this case. It is also better positioned than this court to assess the extent of prejudice that may have occurred as a result of any alleged defaults or delays. Under these circumstances, the court concludes that the Bankruptcy Court should determine, at least in the first instance, whether the Defendants are entitled to a jury trial in this case.FN6

FN5. The Trustee asserts the following bases for denying the Defendants a jury trial: (1) default judgments should be entered against the Defendants (thus

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 33220040 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

mooting the jury trial issue) due to their undisputed failure to timely file answers to the complaint and/or for other alleged procedural delays that occurred in the proceedings before the Bankruptcy Court; (2) the Defendants' jury demands should be stricken as sanctions in lieu of the entry of default judgments; (3) the Defendants' jury demands were not timely filed; (4) the Defendants waived their jury trial rights in exchange for the Trustee's agreement to excuse their defaults; (5) the Bank Defendants waived their jury trial rights in a clause in their debt contracts with the Debtors; and (6) one of the Noteholder Defendants and several of the Bank Defendants waived their rights to jury trial by submitting proofs of claims in the bankruptcy case. *See* Plaintiff's Response and Supplemental Response in Opposition to Defendants' Motion to Withdraw the Reference (Bankr.D.I. 70 and D.I. 5, respectively).

FN6. The court recognizes that some inefficiency could result from this ruling, since the Bankruptcy Court's ruling may be appealed to this court pursuant to 28 U.S.C. § 158. *See In re Washington Manufacturing Co., 133 B.R. 113, 116 & n. 1 (M.D.Tenn.1991).* If the Defendants' jury trial rights turned on "purely legal" issues, such potential inefficiency might warrant this court's deciding the jury trial issue as part of its ruling on Defendants' motion to withdraw. As already noted, however, the jury trial issue in this case may turn largely on factual issues with which the Bankruptcy Court is likely to be familiar. Indeed, one of the disputed factual issues concerns what the Bankruptcy Court did or did not order in a June 1, 1999 teleconference. If the jury trial issue does reach this court on appeal, the court would greatly benefit from the Bankruptcy Court's factual findings in its ruling on the Default Motion.

**B. The Bankruptcy Court's "Joint Insolvency Trial" Order**

The Defendants have also argued that withdrawal should be granted immediately to prevent the Bankruptcy Court from prejudicing any jury trial

rights they may ultimately be able to establish. The cause of Defendants' concern is an Order issued by the Bankruptcy Court on September 16, 1999. *See* Reply Br. of Noteholder Defendants (Bankr.D.I.72) at 3 and Ex. A.

In that Order, the Bankruptcy Court established procedures for a "joint insolvency trial" to determine certain issues of law and fact ("the insolvency issues") common to the instant adversary proceeding and more than thirty other adversary proceedings in which the Trustee seeks to recover preferential or fraudulent transfers allegedly made by the Debtors. The Order provides for joint discovery with respect to the insolvency issues and requires a joint pretrial stipulation to be filed by March 3, 2000. The Order anticipates that the joint trial will be held later that month, subject to modification as to defendants that request and are entitled to a jury trial.

The Defendants do not object to participating in joint discovery, but they do not wish to participate in the joint insolvency trial. They contend that they cannot be ordered to do so because, as discussed above, they claim to be entitled to a jury trial in the District Court. They further argue that because such jury trial might not occur until well after March 2000, they should not be bound by the Bankruptcy Court's timetable for discovery and pretrial stipulations with respect to the insolvency issues.

Of particular concern to the Defendants is a provision in the Order stating that all defendants in the avoidance actions "whether or not they elect to participate in discovery or trial (except any defendants as to whom another Court has taken jurisdiction of the Insolvency Issues) shall be bound by the findings of fact and conclusions of law made by the Court in connection with the Joint Insolvency Trial."Defendants construe this provision to mean that they will be bound by the Bankruptcy Court's findings unless this court *first* takes jurisdiction of this adversary proceeding by withdrawing the reference to bankruptcy. *See* Reply Br. of Noteholder Defendants at 3, 9. Given the anticipated joint trial in March 2000, the Defendants assert that this court must grant their motion immediately in order to protect their jury trial rights. *See id.* at 9.

**\*3** The Order, however, does not purport to prejudice any jury trial rights that the Defendants may have. Indeed, the final paragraph of the Order provides that:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 1999 WL 33220040 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

nothing herein shall prejudice the rights of any party (I) to demand a jury trial or to oppose such a demand, or (ii) to seek or enforce, or to oppose the seeking or enforcement, of any asserted substantive or procedural right.

Moreover, the court does not understand the Bankruptcy Court's Order to be as rigid as the Defendants suggest with respect to timing matters. Indeed, the Order expressly contemplates modification of the anticipated joint trial date for any defendants that are entitled to a jury trial. The court sees no reason to assume that the Bankruptcy Court intends to bind the Defendants to the outcome of the joint insolvency trial without first ruling on the Defendants' rights to a jury trial and allowing adequate opportunity for an appeal of such ruling.

Defendants need not be concerned that they will be bound by the outcome of the joint insolvency trial, even if they are found to be entitled to a jury trial, unless this court *first* takes jurisdiction over this proceeding. If necessary to prevent such result, the Defendants are free to file a renewed motion to withdraw the reference once their jury trial right has been established (either by the Bankruptcy Court's ruling on the Default Motion or upon appeal therefrom).

That is not to say that the court would, in that event, withdraw the reference to bankruptcy immediately. The Order provides that the Bankruptcy Court will retain jurisdiction over all pretrial issues relating to the insolvency trial, whether or not a defendant is entitled to a jury trial. The court finds nothing improper with that approach. *See, e.g., In re Delaware & Hudson,* 122 B.R. 887, 897 (D.Del.1991) (concluding that adversary proceeding in which defendant was entitled to a jury trial should be withdrawn just prior to trial to promote judicial economy); *In re Hardesty,* 190 B.R. 653, 656-57 (D.Kan.1995) ("Even if a jury trial may constitute cause for withdrawal, the district court may decline to withdraw the reference until the case is ready for trial."). This court would, however, "take jurisdiction" of this adversary proceeding if necessary to prevent the Defendants from being bound by the joint insolvency trial even though they had already established their rights to a jury trial in the District Court.[FN7]

    [FN7.] The court does not believe that the Bankruptcy Court intended for this step to

be necessary. The court notes its willingness to "take jurisdiction" in the circumstances noted above only to allay the Defendants' concerns that their jury trial rights, if such rights exist, will be effectively lost unless the court withdraws the reference to bankruptcy immediately.

### III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The Noteholder Defendants' request for withdrawal of the reference to bankruptcy is DENIED;

2. The Bank Defendants' request for withdrawal of the reference to bankruptcy is DENIED;

3. Such denials are without prejudice to the Defendants' ability to renew their requests for withdrawal if the Bankruptcy Court rules that the Defendants are entitled to a jury trial in the District Court, or if such right to a jury trial is established upon appeal from the Bankruptcy Court's ruling.

D.Del.,1999.
In re Foxmeyer Corp.
Not Reported in F.Supp.2d, 1999 WL 33220040 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 318666 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

H
Cantor v. Perelman
D.Del.,2006.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Ronald CANTOR, Ivan Snyder and James A.
Scarpone, as Trustees of the Mafco Litigation Trust,
Plaintiffs,
v.
Ronald O. PERELMAN, et al., Defendants.
**No. Civ.A. 97-586-KAJ.**

Feb. 10, 2006.

Lawrence C. Ashby, Philip Trainer, Jr., Tiffany
Geyer Lydon, Ashby & Geddes, Wilmington,
Delaware, for Plaintiffs, Edward A. Friedman,
Andrew W. Goldwater, Daniel B. Rapport, Emily A.
Stubbs, Jonathan Gottfried, Friedman Kaplan Seiler
& Adelman LLP, New York, New York, of counsel.
Thomas J. Allingham, II, Anthony W. Clark, Paul J.
Lockwood, Skadden, Arps, Slate, Meagher & Flom
LLP, Wilmington, Delaware, for Defendants.

MEMORANDUM OPINION
JORDAN, J.

I. INTRODUCTION

*1 This case involves alleged breaches of fiduciary
duty by former directors of Marvel Entertainment
Co., Inc. ("Marvel"). The original complaint was
filed by Marvel, which was then a debtor-in-
possession in bankruptcy, against Ronald O.
Perelman, William C. Bevins, Donald G. Drapkin,
MAFCO Holdings Inc., MacAndrews & Forbes
Holdings Inc., and Andrews Group Incorporated
(collectively, "Defendants"). (Docket Item ["D.I."]
1.) Pursuant to the reorganization plan from the
bankruptcy proceeding, Marvel assigned the claims
in this case to the MAFCO Litigation Trust, and the
trustees ("Plaintiffs") have been substituted as the
plaintiffs in this action (D.I.120). In their Second
Amended Complaint (D.I. 149, Ex. A; the
"Complaint"), Plaintiffs alleged (1) that Perelman,
Bevins, and Drapkin breached their fiduciary duties

as directors of Marvel and (2) that the remaining
defendants aided and abetted those breaches.
Jurisdiction is proper under 28 U.S.C. § 1334.
Before me now is Defendants' Motion to Strike
Plaintiffs' Jury Demand. (D.I. 433; the "Motion.")
For the reasons that follow, the Motion will be
granted.

II. BACKGROUND

The background of this case has been set forth in
earlier opinions. Cantor v. Perelman, 414 F.3d 430,
433-35 (3d Cir.2005); Cantor v. Perelman, 235
F.Supp.2d 377, 378-80 (D.Del.2002). Because the
analysis of Plaintiffs' demand for a jury requires a
careful consideration of Plaintiffs' claims, I will
discuss that background in some detail again here.

A. *Allegations in the Complaint*

Perelman was a director of Marvel and Chairman of
Marvel's board. Cantor, 414 F.3d at 433. He also
owned a controlling interest in Marvel through the
following "chain of wholly-owned corporations":
Perelman owned 100% of defendant MAFCO
Holdings Inc., which owned 100% of defendant
MacAndrews & Forbes Holdings Inc., which owned
100% of Marvel III Holdings Inc. ("Marvel III"),
which owned 100% of Marvel (Parent) Holdings Inc.
("Marvel Parent"), which owned 100% of Marvel
Holdings Inc. ("Marvel Holdings") (collectively,
those five companies are referred to herein as the
"Marvel Holding Companies").*Id.* (Complaint, at ¶ ¶
18-19, 25.) The remaining defendant, Andrews
Group Incorporated, was a wholly-owned subsidiary
of MacAndrews & Forbes Holdings Inc. (*Id.* at ¶
20.)"Marvel Parent and Marvel Holdings together
held 60% to 80% of Marvel's publicly traded,
outstanding shares during the relevant
period."*Cantor,* 414 F.3d at 433. Bevins and Drapkin
were also directors of Marvel, and Perelman, Bevins,
and Drapkin comprised the entire board of each of
the Marvel Holding Companies. *Id.*

Plaintiffs alleged that, in 1993 and 1994, Defendants

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 318666 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

caused Marvel Holdings, Marvel Parent, and Marvel III to issue three tranches of notes. *Id.* Defendants received $553.5 million in proceeds and pledged all of their stock in Marvel as collateral. *Id.* "None of the proceeds went to Marvel or were used for Marvel's benefit." *Id.* Furthermore, in the note indentures, the issuing companies agreed, through Perelman's control of Marvel, to prevent Marvel from (1) issuing debt or preferred stock except under specified circumstances, (2) issuing stock that might dilute the holding companies' stake in Marvel, and (3) making "restricted payments," which were defined to include dividends and stock buybacks. *Id.* According to Plaintiffs, "[a]s a result of Perelman's agreement to these restrictions, Marvel's future access to the capital markets was inhibited, with no corresponding benefit to Marvel." (Complaint, at ¶ 34.)

**\*2** Plaintiffs further alleged that Defendants artificially inflated Marvel's earnings by making licensing agreements, booking the entire amount of the guaranteed license fees as income at the time the agreements were made, and later writing the fees off and never collecting them. (*Id.* at ¶ ¶ 40-45.) According to Plaintiffs, Defendants' accounting methods allowed them to maintain the price of Marvel stock, the only asset of the Marvel Holding Companies. (*Id.* at ¶ 36.) By artificially holding off a major decline in the price of Marvel stock, Defendants allegedly held off the bankruptcy of the Marvel Holding Companies and prevented the $553.5 million in note proceeds from being treated as preferential payments. (*Id.*) Plaintiffs further allege that, in executing that plan, Marvel employees made misrepresentations to potential licensees. (*Id.* at ¶ ¶ 41-45.)

Eventually, "Marvel filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on December 27, 1996. The Note holders have not been repaid." *Cantor, 414 F.3d at 434.* Marvel's bankruptcy was followed by the bankruptcy of Marvel Holdings, Marvel Parent, and Marvel III. (Complaint, at ¶ 36.)

Plaintiffs set forth two "Causes of Action" in their Complaint. First, Plaintiffs alleged that Perelman, Bevins, and Drapkin "breached their fiduciary duties of loyalty, care, and good faith, and are liable to plaintiffs for damages, including all benefits received as a result of their breaches of fiduciary duty, in an amount to be determined at trial, but believed to be not less than $553.3 million plus pre-judgment interest." (*Id.* at ¶ 49.) Second, Plaintiffs alleged that the other defendants "knowingly participated in and aided and abetted those breaches by, *inter alia,*

facilitating the receipt and distribution of the improperly obtained bond proceeds for the benefit of Perelman, Bevins and Drapkin." (*Id.* at ¶ 54.) As a result, those Defendants "are liable for knowingly participating in and aiding and abetting the foregoing breaches of duty in amounts to be determined at trial, but believed to be not less than $553.5 million plus pre-judgment interest." (*Id.* at ¶ 55.)

Plaintiffs requested the following remedies:
(i) compensatory damages, including all benefits obtained by defendants as a result of their breaches of fiduciary duty or participation in breaches of fiduciary duty, in an amount to be determined at trial, but believed to be no less than $553.3 million plus pre-judgment interest, and punitive damages in an amount to be determined at trial; and
(ii) such other and further relief as the Court deems just and proper.

(*Id.* at 16-17.)

### B. *Procedural History*

#### 1. *District Court Proceedings*

This case was referred to Magistrate Judge Mary Pat Thynge on March 21, 2002.[FN1] (D.I.262.) In response to the parties' motions, Judge Thynge issued a Memorandum and Order recommending that summary judgment be granted for Defendants on the claims of breach of fiduciary duty related to the note transactions and the accompanying restrictions on Marvel. *Cantor, 235 F.Supp.2d at 381-83.* Judge Thynge determined that Delaware law required Plaintiffs to show "that Perelman caused Marvel to take action which benefitted Perelman and harmed Marvel." *Id. at 382* (citing *Bragger v. Budacz, C.A. No. 13376, 1994 WL 698609, at \*4 (Del. Ch. Dec. 7, 1994)*). "Since Marvel was not a party to the note agreements, and did not attempt to perform or refrain from one of the prohibited acts, Perelman's potential conflicting loyalties between Marvel and the holding companies never materialized and cannot form the basis of a breach of fiduciary duty claim." *Cantor, 235 F.Supp.2d at 382-83.*

FN1. This case was originally assigned to the Honorable Roderick R. McKelvie. When he retired from the court in 2002, the case was referred to Magistrate Judge Thynge.

Not Reported in F.Supp.2d                                                                                   Page 3
Not Reported in F.Supp.2d, 2006 WL 318666 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

(D.I.262.) On January 6, 2003, the case was reassigned to me. (D.I.387.)

**\*3** While Plaintiffs argued that Marvel had been harmed because the note restrictions prevented it "from restructuring its debt, and ultimately contributed to its bankruptcy," Judge Thynge found that the evidence showed that Marvel was prevented from financial restructuring by covenants in other credit agreements that "were more restrictive than those in the note agreements."*Id.* at 383.Thus, Plaintiffs had failed to show that Marvel was harmed, and the potential conflicts raised by the note restrictions never materialized and so could not support a claim for breach of fiduciary duty.*Id.*

As to the claimed breaches of fiduciary duty based on Defendants' alleged inflation of Marvel's earnings, Judge Thynge recommended that summary judgment be granted for the Defendants because, by relying on the expertise of professional accountants, the directors "met [their] fiduciary duties with regard to accounting."*Id.* at 387-88.However, for claims related to misrepresentations by Marvel employees, Judge Thynge recommended that summary judgment be denied, *id.* at 388-89, noting that the record lacked sufficient evidence to decide whether Defendants had failed in their oversight duties pursuant to *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch.1996).

I adopted Judge Thynge's recommendations in all respects and issued an order granting summary judgment in part for Defendants, pursuant to those recommendations. (D.I.404.) Summary judgment was later granted for Defendants on the *Caremark* claim as well.[FN2](D.I.417.)

> **FN2.** Plaintiffs acknowledged (D.I. 415; D.I. 419) that they could not adduce any evidence to support the remaining *Caremark* claim. Thus, summary judgment was granted for the Defendants on that claim. (D.I.417.)

### 2. *Third Circuit Decision*

Plaintiffs appealed the decision as to the alleged breaches of fiduciary duty related to the note restrictions,[FN3] and the United States Court of Appeals for the Third Circuit reversed in part. *Cantor,* 414 F.3d at 442. First, in a discussion section entitled "The Unjust Enrichment Claim," the Third Circuit held that it was not necessary for Plaintiffs to

show that Marvel was harmed by the note restrictions. *Id.* at 435-37.Instead, if Defendants "exploited their fiduciary position for personal gain," that would support a claim for breach of fiduciary duty, as well as a remedy for unjust enrichment, even if Defendants' gain did not come at Marvel's expense. *Id.* at 435.The Court noted that an unjust enrichment award for the entire $553.5 million benefit "could result in a windfall," suggesting that an award would be appropriately based on "what the defendants would have had to pay Marvel, after arm's length bargaining, for the restrictions defendants secured without compensation."*Id.* at 437 (citing *Boyer v. Wilmington Materials, Inc.,* 754 A.2d 881 (Del. Ch.1999)).

> **FN3.** The *Caremark* claim was not addressed by the Third Circuit.

Second, in a discussion section entitled "The Damages Claims," the Third Circuit held that there was a genuine issue of material fact as to whether the note restrictions harmed Marvel. *Cantor,* 414 F.3d at 437-38. While Defendants presented evidence that Marvel's credit agreements had restrictions that were more constraining than those accompanying the notes, the record also contained evidence from Plaintiffs' expert that Marvel's capital structure would have been different without the note restrictions and that Marvel was indeed prevented from pursuing more favorable financing by those restrictions.*Id.* That evidence was sufficient to raise a genuine issue for trial. *Id.* at 438.

**\*4** Finally, in a discussion that again used the titles "The Unjust Enrichment Claims" and "The Damages Claims," the Court held that the Plaintiffs were time-barred from seeking damages arising from the issuance of notes by Marvel Holdings, because this action was filed after the limitations period.*Id.* at 439-41.Plaintiffs' remaining claims[FN4] were remanded. *Id.* at 442.

> **FN4.** Because the damages remedy based on the Marvel Holdings notes was time-barred, the remaining claims relate to the Marvel Parent and Marvel III notes and to remedies other than damages for the Marvel Holdings notes. *Cantor,* 414 F.3d at 442.

### III. APPLICABLE LAW

Plaintiffs base their demand for a jury trial on the

Not Reported in F.Supp.2d                                                          Page 4
Not Reported in F.Supp.2d, 2006 WL 318666 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Seventh Amendment, which provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."U.S. Const. amend. VII. "[T]he thrust of the Amendment was to preserve the right to jury trial as it existed in 1791."Curtis v. Loether, 415 U.S. 189, 193 (1974). In defining the scope of that protection, the Supreme Court has "consistently interpreted the phrase 'Suits at common law' to refer to 'suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.' '' *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 31, 41 (1989) (emphasis in original) (quoting *Parsons v. Bedford,* 28 U.S. (3 Pet.) 433, 447 (1830)). Whether a suit is legal or equitable is a question of federal law, even in a diversity case based on substantive state law. *Simler v. Conner,* 372 U.S. 221, 222 (1963).

In addition to causes of action that were decided in courts of law in 1791, the Seventh Amendment protects the right to a jury trial for causes of action that did not exist at that time but "are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty."*Granfinanciera,* 492 U.S. at 42 (citing *Curtis,* 415 U.S. at 193). To decide whether a jury trial is required for a modem cause of action,[FN5] courts must balance two factors:

> FN5. By its literal terms, the *Granfinanciera* test applies to *statutory* actions. I will use that test here, in a case based on Delaware common-law, because the parties, as well as courts in other cases, have so framed their analyses. *See Pereira v. Farace,* 413 F.3d 330, 337 (2d Cir.2005) (using *Granfinanciera* factors to decide whether the Seventh Amendment requires a jury for a claim of breach of fiduciary duty under Delaware law); *Liquidation Trust of Hechinger Inv. Co. of Del., Inc. v. Fleet Retail Fin. Group (In re Hechinger Inv. Co. of Del.),* 327 B.R. 537, 543-45 (D.Del.2005) (same).

First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.
Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important

than the first.

*Granfinanciera,* 492 U.S. at 42 (citing *Tull v. United States,* 481 U.S. 412, 417-18, 421 (1987)) (internal quotations and citations omitted).[FN6]

> FN6. "If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment," the court must then decide whether Congress has properly assigned the claim "to a non-Article III adjudicative body that does not use a jury as a factfinder."*Granfinanciera,* 492 U.S. at 42. Because I conclude, after balancing the two factors, that Plaintiffs have no right to a jury trial in this case, the third prong is not relevant here.

### IV. DISCUSSION

#### A. *Definition of Plaintiffs' Claims*

Before I analyze Plaintiffs' claims according to the *Granfinanciera* factors, I must address a preliminary dispute as to what those claims are. Plaintiffs contend that they have set forth separate claims for unjust enrichment and for compensatory damages, (D.I. 444 at 2-3, 5-6.) Because that contention is not supported by the law or by the Complaint itself, I conclude that the claims to be analyzed are the two claims set forth as causes of action in the Complaint, one for breach of fiduciary duty and one for aiding and abetting that breach.

**\*5** Plaintiffs note (*id.* at 6) that, "where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims."*Ross v. Bernhard,* 396 U.S. 531, 537-38 (1970). That proposition, while undisputed, does not settle the question as to whether there are indeed separate legal and equitable claims in this action. In *Ross,* the Court held that a legal claim does not transform into an equitable one simply because it is presented in the form a derivative suit, a procedure with historical roots in equity. *Id.* at 538-43.That case does not stand for the proposition that a particular *remedy* is an issue that must be examined separately to determine whether it is legal or equitable.

While Plaintiffs' right to a jury will not be denied

Not Reported in F.Supp.2d                                                                                    Page 5
Not Reported in F.Supp.2d, 2006 WL 318666 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

based on a lack of precision in their pleadings, a careful reading of the Complaint as a whole shows that there are not separate claims for unjust enrichment and compensatory damages. *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962) ("[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."). First, Plaintiffs have stated two claims in their First and Second Causes of Action, one for breach of fiduciary duty and one for aiding and abetting a breach of fiduciary duty, (Complaint at ¶ ¶ 47-56.) Second, Plaintiffs' request for relief for unjust enrichment is intertwined with the request for compensatory damages. Plaintiffs ask for "compensatory damages, including all benefits obtained by defendants as a result of their breaches of fiduciary duty or participation in breaches of fiduciary duty."(*Id.* at 16.)The unjust enrichment, i.e., the "benefits obtained by defendants," is affirmatively included as a part of the "compensatory damages." (*Id.*) Third, beyond the wording and organization of the Complaint, Plaintiffs do not allege separate breaches, some of which support an award for unjust enrichment and some of which support an award of compensatory damages. Rather, the alleged breach is based on the note transactions as a group. (*Id.* at ¶ ¶ 30-35, 49, 54-55.)Therefore, the Complaint appears to state a claim for breach of fiduciary duty and a claim for aiding and abetting that breach, with multiple forms of possible relief. It does not state separate claims for unjust enrichment and compensatory damages.

When read as a whole, the Third Circuit's decision is not to the contrary. According to Plaintiffs, because the Third Circuit entitled part of its discussion "The Damages Claims," *Cantor, 414 F.3d at 437,* the Complaint states a claim for compensatory damages that must be analyzed separately under the Seventh Amendment. (D.I. 444 at 5.) I disagree, since the issue of whether a compensatory damages claim exists separately from the unjust enrichment claim does not appear to have been addressed to or by the Court of Appeals. Indeed, there are other more reasonable explanations for the Court's choice of section titles.

**\*6** First, Judge Thynge's report made two conclusions: (1) that Plaintiffs needed to show that Marvel was forced to act to its detriment as a result of the note restrictions, and (2) that the evidence failed to show such harm.*Cantor, 235 F.Supp.2d at 382-83.* The Third Circuit disagreed with both conclusions, stating (1) that Plaintiffs did not need to show harm to recover a remedy based on unjust enrichment, and

(2) that a genuine issue of material fact remained as to whether Marvel was harmed. *Cantor, 414 F.3d at 435-38.* Thus, the Third Circuit's discussion appears to have simply tracked the issues on appeal, with corresponding section titles to organize that discussion.

Second, the Third Circuit partially affirmed the summary judgment, because Plaintiffs were time-barred from seeking damages arising from the issuance of notes by Marvel Holdings. *Id.* at 440.The Court followed the Delaware rule that the statute of limitations, rather than the doctrine of laches, applies when the action is for "damages or other relief which is legal in nature."*Id.* at 439 (quoting *Laventhol, Krekstein, Horwath & Horwath v. Tuckman,* 372 A.2d 168, 169-70 (Del.1976)). But the application of the statute of limitations only indicates that the *relief* is legal in nature and not that the *claim* is legal. Under Delaware law, "whether the claim asserted is legal in nature or equitable, whenever plaintiff seeks money in a derivative suit, her claim is subject to the statute of limitations."*Kahn v. Seaboard Corp., 625 A.2d 269, 274 (Del. Ch.1993).* Thus, since the Third Circuit held that some money damages were time-barred, the discussion appears to have been separated and titled to reflect the different treatment of the types of relief and not to say anything at all about the nature of the claims themselves.

I conclude that the Complaint does not state separate claims for compensatory damages and unjust enrichment. Furthermore, the Third Circuit likely did not intend to decide that issue when it placed titles on its discussion sections. The Plaintiffs' claims are for breach of fiduciary duty and for aiding and abetting a breach, and the *Granfinanciera* test will be applied to those claims. Since the legal or equitable nature of the aiding and abetting claim appears to be indistinguishable from that of the underlying claim for breach, and since the parties make no distinction between the two claims for purposes of this Motion, the following analysis focuses on the breach of fiduciary duty claim, and the conclusions apply to the aiding and abetting claim as well.

### B. *Historical Roots of a Corporate Fiduciary Duty Claim*

Defendants argue (D.I. 434 at 7-9; D.I. 450 at 12), and Plaintiffs apparently concede (D.I. 444 at 9-10), that Plaintiffs' breach of fiduciary claim under Delaware corporate law is historically equitable. Plaintiffs' concession is understandable, since the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2006 WL 318666 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

point is inarguable. "Directors of Delaware corporations are fiduciaries who owe duties of due care, good faith and loyalty to the company and its stockholders."*Skeen v. Jo-Ann Stores, Inc., 750 A.2d 1170, 1172 (Del.2000)* (citing *Malone v. Brincat, 722 A.2d 5, 10 (Del.1998)*)."Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests. While technically not trustees, they stand in a fiduciary relation to the corporation and its stockholders."*Guth v. Loft, Inc., 5 A.2d 503, 510 (Del.1939)*. Thus, a violation of those duties is treated as a breach of fiduciary duty analogous to that owed by a trustee to a beneficiary. Here, the Complaint alleges such a breach.

**\*7** That type of claim was historically "within the exclusive jurisdiction of courts of equity."*Chauffeurs, Local No. 391 v. Terry, 494 U.S. 558, 567 (1990)* (citing 2 J. Story, Commentaries on Equity Jurisprudence § 960, p. 266 (13th ed. 1886)). Because they "are almost uniformly actions 'in equity,'' 'such claims historically carry with them "no right to trial by jury." *In re Evangelist, 760 F.2d 27, 29 (1st Cir.1985)*; *accord In re Hechinger, 327 B.R. at 544*. That treatment is consistent with the fact that, "[i]n Delaware, breach of fiduciary duty claims are routinely heard in chancery court, which is a court of equity." *In re Hechinger, 327 B.R. at 544*. Thus, "[w]hile federal, not state law, governs whether ... [a] claim is entitled to a jury trial, the well-established precedent in Delaware ... reinforces the common law tradition affording courts of equity jurisdiction over these matters." *Id.*

Plaintiffs point to several cases (D.I. 444 at 5) where courts looked underneath the claim for breach of fiduciary duty claim and found an underlying legal claim, based, for example, on fraud or negligence.[FN7]*Design Strategies, Inc. v. Davis, 367 F.Supp.2d 630, 638 (S.D.N.Y.2005); Resnick v. Resnick, 763 F.Supp. 760, 767 (S.D.N.Y.1991); Doyle v. Mellon Bank (East) Nat'l Ass'n (In re Globe Parcel Serv.), 75 B.R. 381, 385 n. 9 (E.D.Pa.1987); Stalford v. Blue Mack Transp., Inc. (In re Lands End Leasing, Inc.), 193 B.R. 426, 433 (Bankr.D.N.J.1996); Luper v. Banner Indus., Inc. (In re Lee Way Holding Co.), 118 B.R. 544, 549 (Bankr.S.D.Ohio 1990)*. According to those analyses, a breach of fiduciary duty claim may be historically legal. The Second Circuit recently rejected that approach, reasoning that to analyze claims that way "would effectively permit every breach of fiduciary duty claim to be recast as an action at law such that parties seemingly would be entitled to a jury trial on

any and all breach of fiduciary duty claims."*Pereira v. Farace, 413 F.3d 330, 338 (2d Cir.2005)* (internal quotations omitted). Given the deep historical roots of such claims in equity, that result seems contrary to the Seventh Amendment mandate to "preserve the right to jury trial as it existed in 1791."*Curtis, 415 U.S. at 193*. Therefore, like the Second Circuit, I decline to parse Plaintiffs' fiduciary duty claims in search of legal elements.

> FN7. In the same string of citations, Plaintiffs point to two other cases where courts refused to strike a jury demand because legal claims were joined with equitable claims. *Hays v. Equitex, Inc. (In re RDM Sports Group, Inc.), 260 B.R. 915, 919-20 (Bankr.N.D.Ga.2001); Miller v. Weber (In re Anchor/Davis-Jay Container Co.), Bankr.No. 92-11720S, Adv. No. 93-0042S, 1993 WL 119818, at \*2 (Bankr.E.D.Pa. Apr. 15, 1993)*. Those cases are only relevant here if at least one of Plaintiffs' claims is legal rather than equitable, and Plaintiffs' reliance on them simply begs that question.

Instead, I conclude that Plaintiffs' claims are historically equitable, which weighs against Plaintiffs' right to a jury.

### C. Balancing History with Remedies

The second *Granfinanciera* factor focuses on the remedy sought for Plaintiffs' claims. Since that factor is more important than the first, *Granfinanciera,* 492 U.S. at 42, the parties spend considerable effort to show that the compensatory damages sought here constitute the type of relief, legal or equitable, that favors their respective positions. (D.I. 434 at 9-12; D.I. 444 at 5-8; D.I. 450 at 3-12.) I conclude, for purposes of this Motion, that, even if Plaintiffs are correct that such relief is legal, Plaintiffs' claims nevertheless seek both equitable and legal relief.

**\*8** Defendants argue that the remedy for a Delaware breach of fiduciary duty claim is equitable, regardless of whether it includes compensatory damages. (D.I. 450 at 3-12.) They point out that, under Delaware law, "significant discretion is given to the Court in fashioning an appropriate remedy" for a breach of fiduciary duty. *Bomarko, Inc. v. Int'l Telecharge, Inc., 794 A.2d 1161, 1184 (Del. Ch.1999); see also Cantor Fitzgerald, L.P. v. Cantor, C.A. No. 16297,*

Not Reported in F.Supp.2d                                                                 Page 7
Not Reported in F.Supp.2d, 2006 WL 318666 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

2001 WL 536911, at *5 (Del. Ch. May 11, 2001) ("[T]he Court has broad discretion to craft a remedy for a breach of the duty of loyalty."). Thus, according to Defendants, the remedy here is equitable, even if it compensates Plaintiffs for harm done to Marvel.

Plaintiffs argue (D.I. 444 at 7-8) that under federal law, which must apply to this analysis, *Simler,* 372 U.S. at 222, equitable relief is narrowly defined as remedies that "restore to the plaintiff particular funds or property *in the defendant's possession"* and not those remedies that "impose personal liability on the defendant."*Pereira,* 413 F.3d at 340 (emphasis in original) (quoting *Great-West Life & Annuity Ins. Co. v. Knudsen,* 534 U.S. 204, 214 (2002)). So, according to Plaintiffs, a remedy for the harm done to Marvel is a legal remedy, regardless of how it is treated in Delaware.

In *Pereira,* the Second Circuit agreed with that proposition. In that case, the Court used the narrow definition of "equitable relief" from the Supreme Court's decision in *Great-West* to show that the plaintiff's claims for breach of fiduciary duty under Delaware law sought a legal remedy, because that remedy was not for money that was unjustly possessed by defendants, but was instead a measure of the harm to the corporation. *Pereira,* 413 F.3d at 340 (applying *Great-West,* 534 U.S. at 214). Because the remedy was legal, the Court reasoned, and because the second *Granfinanciera* factor must be afforded greater weight, the factors weighed in favor of a Seventh Amendment jury right, even though the claims were historically equitable. *Id.* Plaintiffs argue for a similar conclusion here, but I cannot agree.

To begin with, there is some reason to doubt whether the Second Circuit's conclusion is correct. The Supreme Court's *Great-West* decision, on which the Second Circuit's opinion in *Pereira* depends, defined the term "equitable relief" as it is found in section 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3). The Supreme Court's analysis began with the statement that, because ERISA is a "comprehensive and reticulated statute," the Court has been "especially reluctant to tamper with the enforcement scheme ... by extending remedies not specifically authorized by its text."*Great-West,* 534 U.S. at 209 (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 251 (1993); *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 147 (1985)) (internal quotations omitted). Applying the narrow definition of "equitable relief" crafted in that particular context to a common law breach of fiduciary duty claim such

as this tears that definition from a key logical underpinning. Moreover, in deciding that "equitable relief" in that case only applied when the plaintiff sought "particular funds or property in the defendant's possession,"*Great-West,* 534 U.S. at 214, the Supreme Court expressly held that trust remedies did not apply to "define the reach of § 502(a)(3)."*Id.* at 219.By contrast, the claims here are directly analogous to claims against a trustee by a beneficiary. *See supra* Section IV.B. It thus appears that the Second Circuit may have taken the *Great-West* decision out of context.

**\*9** However, I need not decide here whether *Pereira* was correctly decided. Even if Plaintiffs are correct that compensatory damages are a form of legal relief under federal law, both claims here also seek equitable relief for Defendants' alleged unjust enrichment.

Plaintiffs seek to recover "the benefits obtained by defendants as a result of their breaches of fiduciary duty or participation in breaches of fiduciary duty, in an amount to be determined at trial, but believed to be no less than $553.5 million."(Complaint at 16.) The dollar amount here refers directly to the proceeds received by Defendants from the note transactions at issue. That remedy for unjust enrichment is equitable even under the narrow definition used in *Great-West.*

Thus, even under a narrow definition of equitable relief, the second *Granfinanciera* factor leads to a mixed result: the claims seek both legal and equitable relief. When I consider the long history of treating breach of fiduciary duty claims as equitable and balance that with the mixed equitable and legal remedies sought here, the scales tip in favor of Plaintiffs' claims being judged equitable. To weigh the factors differently would effectively ignore the historical factor, contrary both to the Seventh Amendment's purpose to "preserve the right to jury trial as it existed in 1791,"*Curtis,* 415 U.S. at 193, and to the express holding of *Granfinanciera,* 492 U.S. at 42, that history is to be accorded weight in the balancing. Therefore, I will strike Plaintiffs' demand for a jury trial of their claims.[FN8]

> FN8. Because I conclude there is no right to a jury in this case, I need not address the parties' arguments over whether Plaintiffs have waived that right. (D.I. 434 at 12-14; D.I. 444 at 11-15; D.I. 450 at 16-17.)

V. CONCLUSION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 8
Not Reported in F.Supp.2d, 2006 WL 318666 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

For the reasons set forth herein, I will grant Defendants' Motion (D.I.433). An appropriate order will issue.

For the reasons set forth in the Memorandum Opinion issued in this matter today.

IT IS HEREBY ORDERED that the Motion to Strike Plaintiffs' Jury Demand (D.I.433) is GRANTED.

D.Del.,2006.
Cantor v. Perelman
Not Reported in F.Supp.2d, 2006 WL 318666 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2002 U.S. Dist. LEXIS 26109, *

**In re: CROWN VANTAGE, INC., Debtor. Employer I.D. # 54-1752384**

**No. C 02-03836 WHA Consolidated Cases**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**2002 U.S. Dist. LEXIS 26109**

**December 16, 2002, Decided**
**December 16, 2002, Filed**

**SUBSEQUENT HISTORY:** Motions ruled upon by, Claim dismissed by In re Crown Vantage, Inc., 2004 U.S. Dist. LEXIS 13810 (N.D. Cal., July 12, 2004)

**DISPOSITION:** Motion to strike jury demand denied.

**COUNSEL:** [*1]

For Crown Paper Liquidating Trust, Plaintiff: Allan Steyer, Lowenthal & Boodrookas LLP, San Francisco, CA. David D. Rodgers, Leo R. Beus, Malcolm Loeb, Beus Gilbert, Scottsdale, AZ. Edward Egan Smith, Steyer Lowenthal Boodrookas Alvarez, San Francisco, CA. Richard Thomas, Beus Gilbert PLLC, Pheonix, AZ.

For Coopers and Lybrand, Defendant: Kenyoon Wooley, O'Melveny & Meyers LLP, Los Angeles, CA.

For Ernst & Young, LLP, Defendant: Dale L. Bratton, Hillary E. Ware, Laurence Andrew Weiss, Michael L. Rugen, Heller, Ehrman, White & McAuliffe, San Francisco, CA.

For McGuire, Woods, Battle & Booth, Defendants: John V. Cogbill, III, Richmond, VA.

For Merril Lynch & Co., Defendant: David Zonana, George B. Curtis, Scott A. Fink, Gibson Dunn & Crutcher LLP, San Francisco, CA.

For Merrill, Lunch, Pierce Fenner & Smith, Salomon Bros., Defendant: Robert Fraley, New York, NY.

For Donaldson, Lufkin & Jenrette, Houlihan Lokey Howard & Zukin, Defendants: Blaine I. Green, Bruce A. Ericson, Pillsbury Winthrop LLP, San Francisco, CA. Scott Solomon, Los Angeles, CA.

For Clifford Cutchins, Defendant: John V. Cogbill, III, Richmond, VA.

For Stephen Hare, Ernest [*2] Leopold, Defendants: Benjamin K. Riley, David E. Garrett, Cooley Godward, San Francisco, CA.

For E. Lee Showalter, William Daniel, Joseph T. Piedmont, Defendants: A. William Urquhart, Loren Kieve, Quinn Emanuel Urquhart Oliver & Hedges L, Los Angeles, CA.

Robert C. Williams, Defendant, Pro se, Maidens, VA.

For Credit Suisse First Boston Corporation, Defendant: David P. Chiappetta, Stephen D. Hibbard, Bingham McCutchen LLP, San Francisco, CA.

For Fort James Corporation, Fort James International Holdings, LTD, Fort James Operating Company, Fort James Fiber Company, Defendants: David Boies, Philip C. Korologos, Boies Schiller & Flexner, Armonk, NY. Joseph F. Coyne, Jr., Kenneth A. O'Brien, Michelle Sherman, Sheppard Mullin Richter & Hampton, Los Angeles, CA.

For PricewaterhouseCoopers LLP, Defendant: James M. Pearl, Kenyon Woolley, Linda J. Smith, O'Melveny & Myers LLP, Los Angeles, CA.

For McGuire Woods LLP, Defendants: James C. Krieg, Stan G. Roman, Krieg Keller Sloan Reilley & Roman LLP, San Francisco, CA.

Randall J. Newsome, Pro se, U.S. Bankruptcy Court, Oakland, CA.

USBC Manager, Pro se, USBC Manager, U.B. Bankruptcy Court, Oakland, CA.

**JUDGES:** William [*3] Alsup, United States District Judge.

**OPINIONBY:** William H. Alsup

**OPINION:**

## ORDER DENYING DEFENDANT FORT JAMES'S MOTION TO STRIKE PLAINTIFF'S JURY DEMAND

### INTRODUCTION

Defendants Fort James Corporation, Fort James Operating Company, and Fort James International Holdings, Ltd. (collectively, "Fort James") move to strike the jury demand of plaintiffs Crown Vantage, Inc. and Crown Paper Company (collectively, "Crown") in an action for intentional fraudulent conveyance, constructive fraudulent conveyance, violations of the Virginia Conspiracy Act, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence, negligent misrepresentation, unjust enrichment, conversion, common law fraud, aiding and abetting fraud, fraudulent deceit, and tortious breach of the covenant of good faith and fair dealing.

### STATEMENT

This action arises from Crown's spin-off from Fort James in 1995. The spin-off took place pursuant to an August 1995 agreement between the parties. In accordance with the terms of the agreement, the newly-incorporated Crown received certain assets and liabilities from Fort James associated with the latter's communication papers and food and consumer packaging [*4] businesses. In return, Fort James received from Crown approximately $ 500 million in cash, derived substantially from a $ 250 million public offering of high-yield notes and a $ 350 million credit facility from a syndicate of lenders. Crown also issued to Fort James $ 100 million in pay-in-kind notes.

On March 15, 2000, Crown voluntarily filed a petition for bankruptcy. According to Crown, Fort James was largely responsible for Crown's financial troubles. Crown alleges that Fort James, along with various associated professionals, conspired to destroy Crown's business for their own gain.

As a creditor of Crown, Fort James filed several proofs of claim against the Crown estates. On April 14, 2001, Fort James filed in the Bankruptcy Court for the Northern District of California an action against Crown (Case No. C 02-3838, the "*Fort James* case") seeking a declaration that the spin-off transaction and Fort James's claims are neither avoidable nor recoverable under the Bankruptcy Code or any other law. The bankruptcy court granted Crown's motion to stay the proceeding on the condition that Crown file against Fort James any case it had arising from the spin-off by September 28, 2001. [*5]

Crown accordingly filed suit against Fort James in the Bankruptcy Court for the Northern District of California on September 26, 2001 (Case No. C 02-3839, the "*Crown Vantage* case"). The *Fort James* case and the *Crown Vantage* case were consolidated pursuant to Federal Rule of Bankruptcy Procedure 7042(a) on November 19, 2001.

On March 14, 2002, Crown filed a complaint in state court against various professionals, alleging that they were also responsible for Crown's financial downfall (Case No. C 02-3836, the "*Liquidating Trust* case"). The action was removed to bankruptcy court on April 19.

The bankruptcy court certified the *Fort James, Crown Vantage,* and *Liquidating Trust* cases for automatic withdrawal of the reference. In district court, pursuant to this Court's September 20 case management order, the three actions were consolidated for pretrial purposes.

Fort James now moves to strike Crown's jury demand in the *Fort James* and *Crown Vantage* actions. Previously, Fort James moved to strike Crown's jury demand when the cases were in bankruptcy court. After a hearing, Bankruptcy Court Judge Randall Newsome denied Fort James's motion to strike the jury [*6] demand in an order dated April 23, 2002.

### ANALYSIS

This case concerns Crown's right under the Seventh Amendment to a jury trial for its claims of intentional fraudulent conveyance, constructive fraudulent conveyance, violations of the Virginia Conspiracy Act, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, negligence, negligent misrepresentation, unjust enrichment, conversion, common law fraud, aiding and abetting fraud, fraudulent deceit, and tortious breach of the covenant of good faith and fair dealing.

#### 1. The Law-of-the-Case Doctrine

As a preliminary matter, Crown argues that because Bankruptcy Judge Newsome previously denied a motion by Fort James to strike the jury demand, the law-of-the-case doctrine compels the denial of Fort James's instant motion as well. "Under the law-of-the-case doctrine, a court will not reexamine an issue previously decided by the same or higher court in the same case." *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 275 F.3d 762, 766, (9th Cir.2001). Irrespective of the fact that the bankruptcy court is neither the same as nor higher than this Court, the law-of-the-case doctrine does not [*7] dispose of defendant's motion automatically, It is well established that the doctrine "is not a limitation of a tribunal's power, but rather a guide to discretion." *Rebel Oil Co. v. Atlantic Richfield Co.*, 146 F.3d 1088, 1093 (9th Cir. 1998) (quoting *United States v. Alexander*, 106 F.3d 874, 876 (9th cit. 1997)); see also *Arizona v. California*, 460 U.S. 605, 619, n.8, 75 L. Ed. 2d 318, 103 S. Ct. 1382 (1983). Nevertheless, even upon reconsideration of whether Crown is entitled to a jury trial, this order ar-

rives at the same conclusion that Judge Newsome did. Accordingly, defendant's motion to strike plaintiff's jury demand is, once again, denied.

## 2. The *Granfinanciera* Test

The Seventh Amendment guarantees the right to a jury trial for the determination of legal, as opposed to equitable, rights and remedies. *Feltner v. Columbia Pictures TV*, 523 U.S. 340, 347-48, 140 L. Ed. 2d 438, 118 S. Ct. 1279 (1998). In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 106 L. Ed. 2d 26, 109 S. Ct. 2782 (1989), the Supreme Court set forth a three-part test for determining whether a party asserting a statutory [*8] cause of action is entitled to a jury trial under the Seventh Amendment in the context of bankruptcy litigation, First, a court must "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id*. at 42. Second, it must "examine the remedy sought and determine whether it is legal or equitable in nature." *Ibid*. "If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment," the third step is to "determine whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder." *Ibid*. Elaborating on this last step, the Court explained that Congress may assign resolution of a claim to a non-Article III body that does not use a jury as a factfinder only if the claim is based on a public, rather than private, right. *Id*. at 51. Not every claim that arises from a bankruptcy proceeding necessarily implicates a public right. *See id*. at 55-58. A claim is a matter of public right only when it arises "as part of the process [*9] of allowance and disallowance of claims." *Id*. at 58 (quoting *Katchen v. Landy*, 382 U.S. 323, 336, 15 L. Ed. 2d 391, 86 S. Ct. 467, (1996)).

Here, it is beyond dispute that the first two inquiries favor a jury trial. The controversy centers on the third part of the *Granfinanciera* test. Fort James contends that Crown's claims are inextricably intertwined with Fort James's' proof of claim and that the bankruptcy court, a non-Article III adjudicative body, has jurisdiction to decide all of Crown's claims against Fort James without a jury. Crown, on the other hand, maintains that it is entitled to a jury trial for its claims against Fort James because they are not part of the claims-allowance process and do not affect the hierarchical reordering of creditor claims.

Of these opposing arguments, Crown's is the more persuasive. Bankruptcy Judge Newsome rightly concluded that the resolution of Crown's numerous claims against Fort James will have only a "negligible impact" on the claims-allowance process (Order dated Apr. 23, 2002 at 20). Crown is not disputing the validity of Fort James's claim to the paid-in-kind-notes; rather, Crown is making the analytically [*10] distinct argument that the notes' issuance was fraudulently induced (Hearing Tr. dated Apr. 3, 2002 at 55-58). Even if Fort James's proof of claim and Crown's claims against Fort James arose from the same agreement or are otherwise related, this does not deprive Crown of the right to a jury trial. When, as here, the resolution of a party's legal claims arising from a bankruptcy proceeding will have but a negligible impact on the claims-allowance process, the right to a jury trial is preserved. n1

> n1 The Supreme Court's holdings in *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 77 L. Ed. 185, 53 S. Ct. 50 (1932), *Katchen v. Landy*, 382 U.S. 323, 15 L. Ed. 2d 391, 86 S. Ct. 467 (1966), and *Langenkamp v. Culp*, 498 U.S. 42, 112 L. Ed. 2d 343, 111 S. Ct. 330 (1990) are consistent with this result. As Fort James concedes, these rulings concern the rights of creditors, not debtors (Fort James Br. at 9). Moreover, *Schoenthal* and *Katchen* do not undermine the *Granfinanciera* test, as it is described above, as much as they inform it. *See Granfinanciera*, 492 U.S. at 56-59 (deriving from *Schoenthal* and *Kaidien* the rule that a claim is based on a public right when it arises as part of the process of allowance and disallowance of claims).

[*11]

## 3. Submission to the Court's Equitable Jurisdiction

Fort James's various arguments concerning waiver and the submission to the equitable jurisdiction of the court are unconvincing. To the extent that the Ninth Circuit has expressed any opinion regarding the issue of whether and how parties' submission to a court's equitable jurisdiction affects a debtor's right to a jury trial, its view seems to comport with that expressed in *Germain v. Connecticut National Bank*, 988 F.2d 1323 (2d Cir. 1993). In *Germain*, the Second Circuit concluded that "a creditor or debtor who submits to the equity jurisdiction of the bankruptcy court thereby waives any right to a jury trial for the resolution of disputes vital to the bankruptcy process," retaining the right to a jury trial for disputes "only incidentally related to the bankruptcy process." *Id*. at 1329-30. The Ninth Circuit utilized this standard when it noted that by filing a proof of claim, a creditor "waived any right to a jury trial for the resolution of disputes vital to the bankruptcy process of allowance and disallowance of the claims." *In re Conejo Enters.*, 96 F.3d 346, 354 n.6 (9th Cir. 1996) [*12] (citing

*Germain*); *see also In re Hashemi*, 104 F.3d 1122, 1125 (9th Cir. 1996) (quoting *Conejo*).

Applying this standard to the instant case confirms the result of the *Granfinanciera* analysis above. Because the resolution of Crown's legal claims has only a "negligible impact" on the bankruptcy process of allowance and disallowance of claims (Order dated Apr. 23, 2002 at 20), Crown cannot be said to have waived the right to a jury trial for those claims.

Fort James's reliance on In re Hallahan, 936 F.2d 1496 (7th Cir. 1991) and *In re Jensen*, 946 F.2d 369 (5th Cir. 1991) is misplaced. Citing *Halahan*, Fort James argues that a debtor loses the right to a jury trial simply by filing for bankruptcy. Similarly, citing *Jensen*, Fort James posits that a creditor's filing of a proof of claim deprives the debtor of the right to have claims against that creditor tried by a jury. n2. These propositions are by no means settled law. *See Jensen*, 946 F.2d at 373-74 (disagreeing with the reasoning of *Hallahan*); *Billing v. Ravin, Greenberg & Zackin, P.A.,* 22 F.3d 1242, 1252 (3rd Cir. 1994) (declining [*13] to adopt the *Jensen* holding); *Germain*, 998 F.2d at 1330 (rejecting *Jensen*). More importantly, they have not been adopted by the Ninth Circuit. Following the Ninth Circuit's *Conejo* and *Hashemi* rulings, this order concludes, as did Judge Newsome (Hearing Tr. at 51), that it is the *Germain* standard that applies.

n2 Fort James also argues that Crown's claims should be disposed of in an equitable proceeding because they are essentially counter-claims to Fort James's proof of claim. This analogy is questionable. Furthermore, Fort James offers no Ninth Circuit precedent confirming that this analysis applies on these facts. *In re Simon*, 153 F.3d 991 (9th Cir. 1998) concerned a creditor's right to a jury trial, not a debtor's.

### 4. Retention of Jurisdiction

Because this order denies Fort James's motion to strike Crown's jury demand, it need not reach the issue of whether the Court should retain jurisdiction after the jury demand has been struck.

**CONCLUSION** [*14]

For the foregoing reasons, Fort James's motion to strike the jury demand is **DENIED** without prejudice to bring a motion to strike the jury demand with regard to individual claims at the pretrial conference.

**IT IS SO ORDERED.**

Dated: December 16, 2002.

/s/ WILLIAM ALSUP

UNITED STATES DISTRICT JUDGE

Case 1:07-cv-00799-JJF    Document 5-2    Filed 12/10/2007    Page 18 of 28

Page 1

1980 U.S. Dist. LEXIS 11131, *; 22 Fair Empl. Prac. Cas. (BNA) 504

### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION v. BLUE STAR FOODS, INC.,

### No. 78-5-W Civil.

### United States District Court for the Southern District of Iowa

### 1980 U.S. Dist. LEXIS 11131; 22 Fair Empl. Prac. Cas. (BNA) 504

### March 7, 1980

**COUNSEL:** **[*1]** James R. Neely, Jr., Regional Attorney, St. Louis, Mo., for plaintiff.

William T. Oakes, Omaha, Neb., and Philip J. Willson, Council Bluffs, Iowa, for defendant.

**OPINION BY:** O'BRIEN

**OPINION**

O'BRIEN, District Judge: -- This is an action brought by the Equal Employment Opportunity Commission (EEOC) [1] on behalf of two individuals, alleging violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq. On September 10, 1979, plaintiff filed its demand for a trial by jury. Defendant moved to strike plaintiff's jury demand on September 24, 1979. Plaintiff has resisted defendant's motion to strike. For the reasons set out herein, the Court finds that plaintiff is entitled to a trial by jury of all questions of fact in this case and that defendant's motion to strike should therefore be denied.

> 1   As enacted, the ADEA and the Fair Labor Standards Act provided that the Secretary of Labor could initiate suit on behalf of an aggrieved individual. All functions vested in the Secretary of Labor under the ADEA pursuant to 29 U.S.C. § 626 were transferred to the EEOC by § 2 of the 1978 Reorganization Plan #1, 43 F.R. 19807. Therefore the EEOC is the named plaintiff in this action. All references to the Secretary herein apply equally to the EEOC.

**[*2]** Defendant's basic contention is that there is no right to trial by jury when the EEOC brings suit for violations of the ADEA. Defendant submits that the right to trial by jury attaches only when an action is brought for legal relief under common law. Defendant urges that the right to jury trial does not necessarily arise in actions for equitable relief or in actions brought pursuant to a statute under which there is no comparable cause of action provided by common law. See the Seventh Amendment to the United States Constitution. Defendant claims that this is such a suit and that there is no right to trial by jury. The Court does not agree.

The ADEA broadly prohibits arbitrary discrimination in the work place based upon age. 29 U.S.C. § 623(a). The enforcement scheme for the statute is complex. Basically, § 626(b) provides that the provisions of the ADEA shall be enforced in accordance with the powers, remedies, and procedures set out in the enforcement provisions of the Fair Labor Standards Act (FLSA), specifically, 29 U.S.C. § 211(b), § 216 (except (a)), and § 217. A further enforcement provision is contained within the ADEA itself at § 626(c). "Amounts owing" **[*3]** under the ADEA are treated as unpaid minimum wages or unpaid overtime compensation under the FLSA (except that liquidated damages are available under the ADEA only for willful violations). A summary of each of these enforcement provisions sections appears in the following paragraphs.

Section 211(b) provides that the Secretary may utilize the services of state and local agencies to assist in the enforcement of the FLSA.

Section 216(b) provides that an employee may bring suit on behalf of himself or himself and all others similarly situated against his employer. The employee may recover damages in the form of unpaid minimum wages or unpaid overtime compensation, plus a like amount as liquidated damages. Legal or equitable relief is available, including reinstatement, promotion, payment of wages lost, and an additional equal amount as liquidated damages, attorney's fees and costs. The right of an employee to bring such an action ends when the Secretary brings an action under § 217 in which the Secretary seeks either (a) that the employer be restrained from withholding unpaid compensation or (b) seeks legal or equitable relief.

Section 216(c) provides that the Secretary **[*4]** may bring suit against an employer on behalf of an employee to recover unpaid minimum wages or for unpaid overtime compensation and an additional amount as liquidated damages. If the Secretary brings such an action, the

Case 1:07-cv-00799-JJF     Document 5-2     Filed 12/10/2007     Page 19 of 28

Page 2

1980 U.S. Dist. LEXIS 11131, *; 22 Fair Empl. Prac. Cas. (BNA) 504

employee's right to bring an action under § 216(b) is terminated.

Section 217 provides that the district courts have jurisdiction to restrain violations of the FLSA. This section specifically includes the power to restrain employers from withholding payment or overtime compensation.

Rather than being "borrowed" from the FLSA, § 626(c) is contained within the ADEA itself. That section provides that a civil action for legal or equitable relief may be brought by any person aggrieved. This section will be taken up in more detail later in this opinion.

The Court has studied cases brought for violations of the FLSA and the ADEA with regard to the right to a trial by jury. If there is a pattern, it appears to be that a jury trial is generally available for cases seeking legal relief, Murphy v. American Motors Sales Company, 570 F.2d 1226, 17 FEP Cases 180 (5th Cir. 1978); Kennedy v. Mountain States Tel. and Tel. Company, 449 F.Supp. 1008, 17 FEP Cases 616 (D. **[*5]** Colo. 1978); Quinn v. Bowmar Pub. Company, 445 F.Supp. 780, 18 FEP Cases 1468 (D. Md. 1978), but not in actions seeking equitable relief, Paradise Valley Investigation and Patrol Services v. U.S. District Court, 521 F.2d 1342 (9th Cir. 1975); Hodgson v. Stewart In-Fra-Red Commissary, Inc., 370 F.Supp. 503, 21 WH Cases 193 (E. D.Pa. 1973); Usery v. Venagngo Diagnostic and Training Center, Inc., 72 F.R.D. 469, 23 WH Cases 3 (W. D.Pa. 1976). A possibly related generalization that may be drawn from these cases is that a jury trial is more frequently available in suits under § 216 than those under § 217. The EEOC in the present action seeks both legal and equitable relief (monetary damages in the way of back wages and reinstatement) and brings its action pursuant to both § 216 and § 217 as well as other sections.

Prior to 1978, the Circuit Courts were divided on whether there was a right to a jury trial in an action brought by an individual under the ADEA. See Morelock v. NCR Corp., 546 F.2d 682, 14 FEP Cases 65 (8th Cir. 1976) (holding there was no right to a jury trial), and Rogers v. Exxon Research & Engineering Company, 550 F.2d 834, 14 FEP Cases 518 (3d Cir. 1977) (holding **[*6]** there was a right to a jury trial). This issue was resolved by the Supreme Court in Lorillard v. Pons, 434 U.S. 575, 16 FEP Cases 885 (1978), which held that there was a right to a trial by jury in a private civil action for lost wages under the ADEA. The Supreme Court moved away from the traditional legal relief-equitable relief distinction [2] in this area by interpreting the terms "legal or equitable relief" in 29 U.S.C. § 626(b), reasoning that:

2    Concerning the difference between legal and equitable remedies under the ADEA, the Su-

preme Court in Lorillard stated in a footnote at 434 U.S. 583, n. 11, 16 FEP Cases 888:

29 U.S.C. § 626(b) does not specify which of the listed categories of relief are legal and which are equitable. However, since it is clear that judgments compelling "employment, reinstatement or promotion" are equitable, see 5 J. Moore, Federal Practice P38.21 (1977), Congress must have meant the phrase "legal relief" to refer to judgments "enforcing... liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation."

This inference is buttressed by the examination of the language Congress chose to describe the available remedies **[*7]** under the ADEA. Section 7(b), 29 U.S.C. § 626(b), empowers a court to grant "legal or equitable relief" and § 7(c), 29 U.S.C. § 626(c), authorizes individuals to bring actions for "legal or equitable relief" (emphasis added). The word "legal" is a term of art: in cases in which legal relief is available and legal rights are determined, the Seventh Amendment provides a right to jury trial..." [Where] words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary."... We can infer, therefore, that by providing specifically for "legal" relief, Congress knew the significance of the term "legal" and intended that there would be a jury trial on demand to "enforce... liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation."

434 U.S. at 583, 16 FEP Cases at 888.

Shortly after the Supreme Court decided Lorillard, its decision was legislatively approved when Congress amended § 626(c) to add subsection (2) thereof.

Section 626(c) provides in full that:

(1) Any person aggrieved may bring a civil **[*8]** action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: provided, that the right of any person to bring such action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this chapter.

(2) In an action brought under paragraph (1), a person shal be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action.

Defendant concedes that an individual bringing suit on his own behalf is entitled to a trial by jury, pursuant to Lorillard and § 626(c)(2). Nevertheless, defendant con-

1980 U.S. Dist. LEXIS 11131, *; 22 Fair Empl. Prac. Cas. (BNA) 504

tends that there is no such right when an action is commenced by the Secretary.  The Court does not agree.

In § 626(c), the words "person", "Secretary", "employee" and "party" are used.  It is not clear from the face of the statute whether "person" refers to only the individual employee of whether it includes the "Secretary" as a party entitled to a trial by jury.  Perhaps more importantly, the statute does not explicitly **[*9]** forbid a trial by jury in actions brought by the Secretary.  The Court cannot say that the Secretary is not a "person" within the meaning of the Statute.  For this and other reasons set out herein, the Court holds that there is a right to trial by jury in actions commenced by the Secretary for violation of the ADEA.

As noted, § 626(c)(2) provides for a jury trial in actions to recover amounts owing regardless of whether equitable relief is sought.  In the Court's view, this significantly impairs the distinction between equitable and legal relief previously mentioned.  At a minimum, § 626(c)(2) provides for a jury trial when legal relief is sought in addition to equitable relief. This is further supported by § 626(b), which provides in part that: "In any action brought to enforce this chapter, the Court shall have jurisdiction to grant such legal or equitable relief as may be appropriate." The Court can discern no reason to deny a party a right to trial by jury as to issues of fact merely because he seeks reinstatement or other equitable relief in addition to the "legal" remedies such as back wages and monetary damages.

The Court had an additional reason for holding that a **[*10]** right to trial by jury exists in actions brought by the Secretgary.  As shown above, an individual bringing suit on his own behalf is entitled to a trial by jury.  How-

ever, before an individual may commence such an action, he must file a charge of unlawful discrimination with the Secretary. 29 U.S.C. § 626(d).  The Secretary must then attempt to eliminate the allegedly unlawful practice by informal means.  § 626(b) and (d).  Failing such informal resolution, the Secretary may file a suit against the employer.  Presumably this may be done without the individual's consent and conceivably against his wishes.  Once the Secretary has filed suit, the individual's right to commence his own action is terminated. § 216(b), § 216(c), and § 626(c).  If there is no right to trial by jury in actions brought by the Secretary, the individual's right to a jury trial curt be circumvented merely by commencement of an action by the Secretary, a procedure designed to benefit and not hinder the individual. This Court is of the opinion that Congress could not have intended such a result.

In closing, the Court notes the lack of case law on this subject.  The Court has found no other case concerning **[*11]** the right of trial by jury in actions commenced by the Secretary for violations of the ADEA.  The Court further notes that there is some merit to defendant's argument.  However, the right to a trial by jury is one of the most precious of the rights guaranteed by the Constitution, and should be one of the most jealously guarded.  In view of this, if the Court is to err in its holding, it chooses to err in favor of granting a right to trial by jury, as opposed to denying such an important right.

For all of the reasons set ut herein, the Court holds that plaintiff in this case is entitled to a trial by jury of all issues of fact in this action.  Accordingly,

IT IS ORDERED that defendant's motion to strike plaintiff's jury demand is denied.

1992 U.S. Dist. LEXIS 18817, *

**IN RE: FRANKLIN TOWNE LODGE LIMITED PARTNERSHIP, d/b/a QUALITY INN CENTER CITY; FEDOR CORPORATION, trading as FRANKLIN TOWNE LODGE LIMITED PARTNERSHIP, d/b/a QUALITY INN CENTER CITY v. COHEN, SHAPIRO, POLISHER, SHIEKMAN & COHEN v. LAWRENCE GOLDBERG, ESQUIRE and GOLDBERG and DICKMAN, P.C.**

**Civil Action No. 91-2702**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**1992 U.S. Dist. LEXIS 18817**

**November 25, 1992, Decided
November 25, 1992, Filed and Entered**

**PRIOR HISTORY:**    **[\*1]**  CHAPTER 11 No. 90-12608S. Adversary No. 91-0095S

**DISPOSITION:**    IT IS ORDERED that defendant's motion is denied.

**COUNSEL:** For FEDOR CORPORATION d/b/a FRANKLIN TOWNE LEDGE LIMITED d/b/a QUALITY INN CENTER CITY, PLAINTIFF: JOSEPH F. RODA, RONALD C. MESSMANN, JOSEPH F. RODA, P.C., 36 E. KING ST., 301 CIPHER BLDG, LANCASTER, PA 17602, USA.

For COHEN, SHAPIRO, POLISHER, SHIEKMAN, & COHEN, DEFENDANT: MICHAEL FALLON BROWN, BROAD AND CHESTNUT STS., 1100 P.N.B. BLDG., PHILA, PA 19107, USA. ALFRED W. PUTNAM, JR., DRINKER, BIDDLE & REATH, BROAD & CHESTNUT STREETS, 1100 P.N.B. BUILDING, PHILA, PA 19107, USA. JOSEPH F. RIGA, 1100 PHILADELPHIA NATIONAL BANK BLDG., BROAD & CHESTNUT ST., PHILADELPHIA, PA 19107.

For COHEN, SHAPIRO, POLISHER, SHIEKMAN, & COHEN, THIRD-PARTY PLAINTIFF: MICHAEL FALLON BROWN, BROAD AND CHESTNUT STS., 1100 P.N.B. BLDG., PHILA, PA 19107, USA.

For LAWRENCE GOLDBERG, THIRD-PARTY DEFENDANT: JAMES B. DOUGHERTY, JR., CARL ANTHONY MAIO, MARGOLIS, EDELSTEIN, SCHERLIS, SAROWITZ & KRAEMER, THE CURTIS CTR., 4TH FL., INDEPENDENCE SQ. WEST, PHILA, PA 19106-3304, USA.

**JUDGES:** BECHTLE

**OPINION BY:** LOUIS C. BECHTLE

**OPINION**

***MEMORANDUM and ORDER***

Presently before the court is the motion of defendant Cohen, Shapiro, Polisher, Shiekman **[\*2]** & Cohen ("Cohen, Shapiro") to strike plaintiff's demand for a jury trial. For the reasons set forth below, defendant's motion will be denied.

*Background*

In this case, the Fedor Corporation ("Fedor"), trading as Franklin Towne Lodge Limited Partnership, employed the services of Cohen, Shapiro in its effort to secure a bond refinancing from Home Unity Savings Bank ("Home Unity") for a property owned by Fedor.

On June 25, 1990, Fedor filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code. Thereafter, on February 4, 1991, Fedor initiated an adversary proceeding against Cohen, Shapiro by filing a complaint with the bankruptcy court alleging breach of contract and legal malpractice. Fedor's complaint alleges that Cohen, Shapiro failed in its duty to provide in a timely manner an environmental report that was necessary to secure Home Unity's commitment to refinance the bond and that such failure was a factor in Home Unity's decision to deny refinancing.

On February 12, 1991, Fedor filed an amended complaint, which incorporated the original complaint by reference and also contained an expanded statement of jurisdiction pursuant to Bankruptcy **[\*3]** Rule 7008(a). Both the complaint and amended complaint included a demand for a jury trial.

On or about March 5, 1991, Fedor filed a motion with the bankruptcy court seeking to have the reference

1992 U.S. Dist. LEXIS 18817, *

of its adversary proceeding withdrawn and to have the action reassigned to the district court pursuant to 28 U.S.C. § 157(d). Fedor's unopposed motion to withdraw the reference was granted, and the adversary proceeding was assigned to this court.

### Discussion

To determine whether the Seventh Amendment right to a jury trial attaches to a particular claim, the court must conduct an examination into the historical treatment of the plaintiff's claims at common law. [1] *Ross v. Bernhard,* 396 U.S. 531, 542-43 (1970). In addition, the court, in order to ascertain whether a proceeding is brought at law or lies in equity, must examine the nature of the remedies sought, resolving all ambiguities in favor of providing a jury trial. *Id.*

> 1   The Seventh Amendment reads:
>
>    In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by jury shall be otherwise reexamined in any Court of the United States, than according to the rules of common law.

**[*4]** The pleadings, in this case, contain no claims for equitable relief, but, rather, assert only monetary damages for breach of contract and legal malpractice. *See Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477-78 (1962). A claim for breach of contract was customarily treated as legal in nature. *Id.* at 479. Moreover, a claim for legal malpractice is traditionally considered an action at law and thus the Seventh Amendment applies. *See Hodgeson v. Bigelow,* 7 A.2d 338, 342 (Pa. 1939) (professional malpractice is grounded in common law negligence principles); *Brennan v. Reed, Smith, Shaw & McClay,* 450 A.2d 740, 747 (Pa. Super. 1982) (legal malpractice liability to be determined upon common law negligence theories). Fedor, therefore, absent an express waiver, would have a Seventh Amendment right to a jury trial on its state law claims brought in this adversary proceeding.

The crux of Cohen, Shapiro's argument, however, is that a debtor, who files an adversary proceeding in bankruptcy court, simply waives its Seventh Amendment right to a jury trial solely on the basis **[*5]** that the debtor initiated the petition or adversary proceeding in the bankruptcy court. In support of this argument, Cohen, Shapiro cites to *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (1989), in which the Supreme Court explained that by filing a claim against a bankruptcy estate, a creditor triggers the "process of allowance and disallowance of claims" that is integral to the restructuring of debtor-creditor relations, thereby subjecting himself to the bankruptcy court's equitable power. *Id.* at 58 and 59 n.14. *See*

*also Langenkamp v. Culp,* 498 U.S. 42 (1990) (claims against bankruptcy estate are integral to restructuring of debtor-creditor relationship through bankruptcy court's equity jurisdiction and thus no right to jury trial exists). By consenting to the equity jurisdiction of the bankruptcy court, the Supreme Court ruled that the creditor waived its right to a jury trial.

Cohen, Shapiro argues that the "waiver" principle of *Granfinanciera* [2] should logically apply to a debtor who files a petition in bankruptcy court and then subsequently brings an adversary proceeding alleging state **[*6]** law claims. In specific, Cohen, Shapiro cites to *In re Haile,* 132 Bankr. 979 (Bkrtcy. S.D. Ga. 1991), where the court held that the debtor voluntarily selected the bankruptcy court rather than state court and thereby waived its right to a jury trial. *Id.* at 980-81. To support its ruling, the *Haile* court applied the "waiver" principle of *Granfinanciera* and *Langenkamp* to a debtor who had filed an adversary proceeding alleging state law claims. *Id.* Other courts have similarly ruled that a party, whether a creditor or debtor, waives its right to a jury trial solely on the basis of having submitted itself to the equity jurisdiction of the bankruptcy court. *See, e.g., Matter of Hallahan,* 936 F.2d 1496 (7th Cir. 1991) (debtor, who voluntarily filed for bankruptcy, has no right to a jury trial where he is a defendant in an adversary proceeding brought by plaintiff creditor).

> 2   The *Granfinanciera* Court made an important distinction that the creditor did not waive his right to a jury trial as much as he consented to the equitable jurisdiction of the bankruptcy court to hear his claim as part of the claims allowance process. *Granfinanciera,* 492 U.S. at 59 n.14.

**[*7]** However, Cohen, Shapiro, the *Haile* court and the other decisions cited by Cohen, Shapiro in its motion, fail to acknowledge that the Supreme Court in *Granfinanciera* and *Langenkamp* found no Seventh Amendment right to a jury because the claims asserted by the creditor were "integral to the restructuring of the debtor-creditor relations," and thus uniquely within the equity jurisdiction of the bankruptcy court. *See Granfinanciera,* 492 U.S. at 58; *Langenkamp,* 498 U.S. at 43-44. Other courts have recognized this principle underlying the Supreme court decisions. *See, e.g., In re Glen Eagle Square, Inc.,* 132 Bankr. 106, 112 (Bkrtcy. E.D. Pa. 1991) ("the filing of a proof of claim constitutes a creditor's complete submission to bankruptcy court jurisdiction"); *In re McLaren,* 129 Bankr. 480, 483 (Bkrtcy. N.D. Ohio 1991) (debtor not entitled to jury trial where creditor sought determination that claims were nondischargeable and such determination was integral to restructuring of debtor-creditor relations); *In re Marshland Dev., Inc.,* 129 Bankr. 626, 630 (Bkrtcy. N.D. Cal. 1991)

**[\*8]** ("adversary proceeding was the functional equivalent of a claims objection proceeding, and thus involves public rights rather than private rights"); *In re Lion Country Safari, Inc.,* 124 Bankr. 566, 572 (Bkrtcy. N.D. Cal. 1991) (debtor voluntarily submitted to equitable jurisdiction of bankruptcy court to adjust debtor's financial relations with its creditors).

In contrast, this adversary proceeding is not equitable in nature, but rather, asserts an action at law. Both parties agree that the adversary proceeding involves non-core related issues, defined by 28 U.S.C. § 157(c), that was brought with the hope of augmenting the bankrupt estate. The claims presented by the adversary proceeding in this case are not "integral to the restructuring of the debtor-creditor relations." Moreover, the adversary proceeding presently before the court does not involve "public rights" that are part of a public regulatory scheme whose adjudication congress has assigned to a specialized court of equity, but rather, private rights that involve a dispute between private parties, Fedor and Cohen, Shapiro. *See Granfinanciera,* 492 U.S. at 51 n.8 and 55 n.10. **[\*9]** By asserting its private rights, Fedor has not implicitly waived its jury right by commencing an adversary proceeding in the bankruptcy court, as legal claims cannot be magically converted into equitable claims by their presentation to a court of equity. [3] *See Ross,* 396 U.S. at 538.

> 3    Similarly, the United States Court of Appeals for the Fifth Circuit has affirmed this principle. In *In re Jensen,* 946 F.2d 369 (5th Cir. 1991), the Fifth Circuit ruled that a debtor, by filing a petition in bankruptcy, does not waive its right to a jury trial for pre-petition state-law claims that are brought against a non-creditor third party to augment the bankruptcy estate. *Id.* at 374. *Accord In re Globe Parcel Serv., Inc.,* 75 Bankr. 381, 383 (Bkrtcy. E.D. Pa. 1987) (forum chosen as an arena for litigation is not dispositive on issue of whether seventh Amendment right to jury trial is waived).
>
> The Fifth Circuit distinguished another Court of Appeals decision, *In re Hallahan,* 936 F.2d 1496 (7th Cir. 1991), which was relied on by Cohen, Shapiro in its motion. The *Hallahan* court had ruled that a debtor was not entitled to a jury trial in an action brought by a creditor to determine the "dischargeability" of a debt. The court's holding was two-fold. First, *Hallahan* ruled that the dischargeability claim was "a type of equita-

ble claim for which a party cannot obtain a jury trial." *Id.* at 1505. Second, *Hallahan* ruled that, even if the proceeding were to present a legal claim, the debtor, as a defendant to an action at law, would still not have a right to a jury trial because the debtor had voluntarily submitted the petition in bankruptcy court. *Id.*

> The *Jensen* Court, though agreeing with *Hallahan's* result, disagreed with the second half of the *Hallahan* reasoning that the act of filing a petition in bankruptcy somehow waived the debtor's rights to a jury trial for any subsequent actions at law. Rather, *Jensen* held that the touchstone of whether a party waived its right to a jury trial is whether the proceedings are "integral to the restructuring of debtor-creditor relations" and, thus, intimately entwined with the bankruptcy court's equity jurisdiction. *Id. See also Ross v. Bernhard,* 396 U.S. 531, 538 (1970) ("The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action.")

**[\*10]** Nor has Fedor affirmatively waived its Seventh Amendment right to a jury trial. There are significant constitutional concerns that govern a waiver of a constitutional right. *See Beacon Theaters, Inc. v. Westover,* 359 U.S. 500, 510 (1959) (courts must indulge in every reasonable presumption against waiver of seventh Amendment right to jury trial); *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938) (waiver of a constitutional right must be knowing, voluntary, and intelligent). This court is not satisfied that those concerns have been answered.

Upon consideration of the constitutional issues, and the reasoning set forth above, this court is unwilling to hold that Fedor has waived its Seventh Amendment right to a jury trial for the state law claims brought in the adversary proceeding. These claims constitute actions at law that are not integral to the process of allowance and disallowance of claims. For these reasons, Cohen, Shapiro's motion is *denied.*

### ORDER

AND NOW, TO WIT, this 25th day of November, 1992, upon consideration of defendant's motion to strike plaintiff's demand for a jury trial, and plaintiff's response **[\*11]** filed thereto, IT IS ORDERED that defendant's motion is *denied.*

LOUIS C. BECHTLE, CH. J.

2002 U.S. Dist. LEXIS 12609, *

**In re: BIG V HOLDING CORP., et al., Debtors. WAKEFERN FOOD CORP., Plaintiff, v. C&S WHOLESALE GROCERS, INC., Defendant.**

**Chapter 11, Case No. 00-04372 (RTL), (Jointly Administered), Adversary Proceeding No. 01-758, Civil Action No. 01-233 (GMS)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

**2002 U.S. Dist. LEXIS 12609**

**July 11, 2002, Decided**

**DISPOSITION:** Plaintiff's motion to withdraw reference to bankruptcy was denied.

**COUNSEL: [*1]** For BIG V HOLDING CORP., debtor: Gregg Mattisen Galardi, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE.

For WAKEFERN FOOD CORP., plaintiff: Daniel J. DeFranceschi, Richards, Layton & Finger, Wilmington, DE.

For C & S WHOLESALE GROCERS, INC., defendant: Gregory W. Werkheiser, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Gregory Moneta Sleet

**OPINION**

MEMORANDUM AND ORDER

I. INTRODUCTION

On November 22, 2000, the Debtors, Big V Holding Corp., *et al.*, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. Pursuant to 28 U.S.C. § 157(a), the bankruptcy cases were referred from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware ("the Bankruptcy Court"). [1] Since the petition date, the Debtors have continued in possession of their properties and the management and operation of their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On December 6, 2000, an Official Committee of Unsecured Creditors ("the Creditors' Committee") was **[*2]** appointed by the United States Trustee pursuant to § 1102 of the Bankruptcy Code. Presently before the court is the Creditors' Committee's March 20, 2001 motion to withdraw the reference to the Bankruptcy Court. Since Wakefern has yet to assert a proper jury demand, and since considerations of judicial economy favor leaving the adversary proceeding in the Bankruptcy Court until it is ready for trial, Wakefern's motion to withdraw the reference will be denied at this time.

1    Referral of Title 11 proceedings from the United States District Court for the District of Delaware to the United States Bankruptcy Court for the District of Delaware is automatic pursuant to a Standing Order of Reference dated July 23, 1984.

II. FACTS

Wakefern Food Corporation ("Wakefern"), the plaintiff in this adversary proceeding (the "C&S Action"), is a food cooperative wholesaler that centralizes the purchasing of inventory and supplies for its members. The Debtors have been a member of the Wakefern cooperative since 1959. **[*3]** Pursuant to the stockholder agreement and by-laws governing Wakefern members, the Debtors are obligated to purchase approximately 85% of their products from Wakefern.

On August 3, 2000, the Debtors decided that their continued participation in Wakefern was detrimental to their business and, as a result, entered into a supply agreement with C&S Wholesale Grocers, Inc. ("C&S"), a direct competitor of Wakefern. On November 28, 2001, six days after the Debtors filed for relief under chapter 11, Wakefern filed suit against C&S in New Jersey state court. The complaint alleged that C&S, by executing an agreement with the Debtors, had engaged in tortious interference with Wakefern's contractual relations and had aided and abetted the Debtors' breach of fiduciary duty. The complaint seeks preliminary and permanent injunctions as well as damages. The C&S Action was removed to the United States Bankruptcy Court for the District of New Jersey and was subsequently transferred to the United States Bankruptcy Court for the District of Delaware, the Honorable Raymond T. Lyons presiding. [2]

2   Judge Lyons is a visiting United States Bankruptcy Judge from the District of New Jersey.

[*4]  On March 20, 2001, Wakefern filed a motion to withdraw the reference of the C&S Action to the Bankruptcy Court. C&S objected, arguing that Wakefern had failed to make a simultaneous motion to the Bankruptcy Court for a determination of whether the C&S Action was a "core" or "non-core" proceeding as required by Delaware Local Bankruptcy Rule 5011-1. On May 25, 2001, the Bankruptcy Court issued an order designating the C&S Action as a "non-core" proceeding. Therefore, C&S withdrew its objection to Wakefern's motion to withdraw the reference. The Debtors and the Creditors' Committee, however, have continued to oppose the motion. On January 31, 2001, the Creditors' Committee filed a motion to intervene in the C&S Action, which was granted by the bankruptcy court on February 15, 2001. The court has no record of a motion to intervene being filed by the Debtors.

Central to the C&S Action is the Debtors' termination of the Wakefern supply agreement and execution of the C&S Supply agreement. Before proceeding with the C&S supply agreement, the Debtors sought a declaratory judgment from the Bankruptcy Court in order to determine whether the Debtors would owe a large withdrawal payment to Wakefern [*5]  if they proceeded with the C&S supply agreement. On September 14, 2001, in Big V Supermarkets, Inc. v. Wakefern Food Corp., 267 B.R. 71, 111 (Bankr. D. Del. 2001), the Bankruptcy Court held that the Debtors would be obligated to make the withdrawal payment. The Bankruptcy Court also made specific findings as to what would constitute a breach of good faith and fair dealing with regards to the Debtors' attempts to abandon the Wakefern supply agreement.

Apart from the declaratory judgment action, the Bankruptcy court has presided over numerous scheduling and pretrial conferences and disputes, including Wakefern's February 9, 2001 motion to compel the Debtors' assumption/rejection of the Wakefern Agreement and C&S's March 28, 2001 motion to dismiss, or in the alternative, to stay proceedings. In sum, the C&S Action is intertwined with several proceedings and matters which are or were before the Bankruptcy Court. Furthermore, Bankruptcy Court Judge Lyons stated that he believes the C&S Action should be adjudicated together with the other actions relating to the bankruptcy case. During a March 28, 2001 scheduling conference, Judge Lyons stated, "I think this is a three [*6]  party dispute that should be dealt with together."

One final fact is crucial to the court's analysis of Wakefern's motion. To date, Wakefern has not made any formal demand for a jury trial. However, Wakefern has indicated that they plan to file an amended complaint with the formal jury trial demand after the court decides this motion to withdraw the reference. Wakefern refuses to file the amended complaint for fear that filing a claim in the Bankruptcy Court could constitute consent to the jurisdiction of the Bankruptcy Court and consequently, waiver of the right to a jury trial.

III. DISCUSSION

A. Intervention

Neither the Debtors or the Creditors' Committee are parties to the C&S Action. Therefore, in order for their objection to be heard, they must have properly intervened in the adversary proceeding.

Federal Rule of Civil Procedure 24(a)(1) provides that upon timely application anyone shall be permitted to intervene in an action "when a statute of the United States confers an unconditional right to intervene." Both the Debtors and the Creditors Committee believe that they have an unconditional right to be heard under 11 U.S.C. § 1109 [*7]  (b), which states, in part, "A party in interest, including the debtor, . . . [or] a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter." Wakefern argues that the C&S Action, an adversary proceeding, is not a "case under this chapter" as required by the statute. Although the circuits are split on whether section 1109(b) confers an unconditional right to intervene, [3] the Third Circuit has taken a clear position on the issue. In Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1241 (3d Cir. 1994), the Third Circuit held that section 1109(b) gives a creditors' committee an unconditional right to intervene in a non-core adversarial proceeding in federal district court which is "related to" a bankruptcy case.

3   The Fourth, Fifth, and Eleventh Circuits have held that § 1109(b) does not create an absolute right of intervention in any adversary proceedings, not even those that are brought "under" chapter 11. See Fuel Oil Supply and Terminaling v. Gulf Oil Corp., 762 F.2d 1283, 1286-1287 (5th Cir. 1985); In re Charter Co., 876 F.2d 866, 871 (11th Cir. 1989); Matter of Richman, 104 F.3d 654, 658 (4th Cir. 1997).

[*8]  A civil proceeding is "related to" bankruptcy when the outcome of that proceeding could conceivably have any effect on the estate being administered. See Halper v. Halper, 164 F.3d 830, 837 (3d Cir. 1999). The complaint in the adversary proceeding between Wakefern and C&S seeks an injunction against the Debtors' supply agreement with C&S. Thus the adversary proceeding clearly affects the Debtors' estate and their ability to reorganize. Moreover, the procedural history of the

Case 1:07-cv-00799-JJF     Document 5-2     Filed 12/10/2007     Page 26 of 28

Page 3
2002 U.S. Dist. LEXIS 12609, *

C&S Action indicates that it is "related to" the bankruptcy. The proceeding was removed from state court pursuant to 28 U.S.C. § 1452(a), which allows a party to remove a cause of action that is "related to" a bankruptcy case. Furthermore, the C&S Action was referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a), which mandates that proceedings "related to" a case under title 11 shall be referred to the bankruptcy judges for the district. Therefore, the C&S Action clearly satisfies the "related to" requirement.

Since the C&S Action is "related to" the bankruptcy, the *Phar-Mor* holding dictates that the Debtors and Creditors' Committee [*9] have an unconditional right to intervene under section 1109(b). [4] In the instant proceeding, the Creditors' Committee has properly filed a motion to intervene and has otherwise complied with the requirements for intervention pursuant to Rule 24(c). Therefore, since 11 U.S.C. § 1109(b) gives a creditors' committee an unconditional right to intervene in light of *Phar-Mor*, the Creditors' Committee is a proper intervenor in this matter pursuant to Rule 24(a)(1). [5]

> 4   Bankruptcy Rule 7024, the sole Bankruptcy rule governing intervention in an adversary proceeding, merely adopts Federal Rule of Civil Procedure 24.

> 5   Based upon the current record, the court has been unable to determine whether the Debtors have filed a timely motion to intervene. Therefore the Debtors will not be considered a proper intervenor in this proceeding for purposes of Wakefern's motion to withdraw the reference; however, the Creditors' Committee's opposition to the motion should adequately represent the interest of the Debtors.

**[*10]   B. Mandatory v. Permissive Withdrawal of the Reference**

The C&S Action was referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a). The procedure governing withdrawal of the reference to the Bankruptcy Court is stated in 28 U.S.C. § 157(d), which reads,

> "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organiza-

tions or activities affecting interstate commerce." 28 U.S.C. § 157(d).

The first sentence of this statute describes the conditions under which withdrawal is permissive, while the second sentence describes the conditions under which withdrawal is mandatory. Since the C&S Action involves only state law tort and contract claims, it clearly does not meet the requirements for mandatory withdrawal. Therefore, the permissive withdrawal standard [*11] applies. Under this standard, the court may withdraw the reference of the adversary proceeding "for cause shown." *See* 28 U.S.C. § 157(d).

As the movant in this case, Wakefern bears the burden to show cause. *NDEP Corp. v. Handl-It, Inc.*, 203 B.R. 905, 907 (D. Del. 1996). The statute does not define "cause," but guideposts exist to elucidate the meaning of the word. The Third Circuit has stated that a court should consider: "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990). However, the "factors listed in *Pruitt* were not designed to be exhaustive; they are only minimal standards." *NDEP Corp.*, 203 B.R. at 908. Relevant considerations might also include "the nature of the proceedings (*i.e.*, core or non-core) and judicial economy." *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*, 107 B.R. 34, 39 (D. Del. 1989). Another factor which should be considered is "whether the [*12] parties have requested a jury trial." *Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989). The court will now consider these factors.

C. Factors to Consider in Determining Whether to Withdraw the Reference

1. Core v. Non-Core and Judicial Economy

There are strictures upon the Bankruptcy Court's authority to hear and determine non-core proceedings that do not apply in the instance of core proceedings. *See* 28 U.S.C. § 157(b)(1). Thus, a determination of whether the C&S Action is a core or non-core proceeding is crucial to the determination of the Creditors' Committee's motion. In an Order dated May 25, 2001, the Bankruptcy Court declared that the current adversary proceeding is non-core. No party has challenged the Bankruptcy Court's ruling, therefore, the court concludes the C&S Action is a non-core proceeding.

Moving to the question of judicial economy, the court believes the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and con-

fusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process, as **[\*13]** set forth in *Pruitt*, 910 F.2d at 1168, would seem to be best served by leaving the C&S Action in the Bankruptcy Court. [6]

> [6] The court is aware that courts in this district have held that "judicial economy favors permissive withdrawal of the reference of a non-core proceeding, since the district court would still need to review the merits of the dispute when considering the bankruptcy court's proposed findings of fact and conclusions of law." *NDEP Corp.*, 203 B.R. at 908, (paraphrasing *Hatzel & Buehler, Inc. v. Orange & Rockland Utils., Inc.*, 107 B.R. 34, 39 (D. Del. 1989)). Given the facts and circumstances of this case, the court declines to follow this precedent.

The Bankruptcy Court is intimately familiar with the numerous complex issues surrounding the C&S Action. In fact, on September 14, 2001, the Bankruptcy Court issued a declaratory judgment in a separate adversary proceeding to this bankruptcy case which is interrelated with the C&S Action. *See Big V Supermarkets, Inc.*, 267 B.R. 71. **[\*14]** In that proceeding, the Bankruptcy Court held that Wakefern would be entitled to a withdrawal payment if the Debtors were to proceed with their supply agreement with C&S. *Id.* at 111. Furthermore, the Bankruptcy Court made specific findings as to what would constitute a breach of good faith and fair dealing with regard to the Debtors' attempts to abandon the Wakefern supply agreement. *Id.* Thus, it is apparent that the Bankruptcy Court is very familiar with the facts and issues which are crucial to the determination of the C&S Action. Specifically, the Bankruptcy Court has become familiar with important provisions of Wakefern's By-Laws and Stockholders' Agreement, all of which are crucial to the C&S Action. In sum, the Bankruptcy Court has already expended invaluable time and energy familiarizing itself with the facts and issues surrounding the C&S Action. Considerations of judicial economy thus weigh in favor of leaving the case with the Bankruptcy Court. *See Northwestern Institute of Psychiatry, Inc. v. Travelers Indem. Co.*, 272 B.R. 104, 109 (E.D. Pa. 2001) ("The bankruptcy court is familiar with the parties, the factual background of the case **[\*15]** and the legal issues involved. Therefore, this court finds no reason to disturb the present course and it declines to withdraw the reference as judicial economy will be served by allowing the adversary action to remain in bankruptcy court").

2. Right to a Jury Trial

The right to a jury trial is an important factor in determining a motion to withdraw the reference. This is so because absent the express consent of both parties and a special designation of jurisdiction by the district court, the Bankruptcy Court may not hold a jury trial in a non-core proceeding. *See* 28 U.S.C. § 157(e).

It is clear that Wakefern has a constitutional right to a jury trial in this case. The Seventh Amendment states, "In Suits at common law where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . ." U.S. CONST. amend. VII. In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 106 L. Ed. 2d 26, 109 S. Ct. 2782 (1989), the Supreme Court explained that "suits at common law" referred to controversies in which legal rights were to be determined, as distinguished from cases in which only equitable rights were **[\*16]** recognized and only equitable remedies were administered. Furthermore, the Court stated that the Seventh Amendment only requires a jury trial if a cause of action is legal in nature and it involves a matter of private right. *Id.* at 42 n.4. The C&S Action, a contract and tort action for damages, is clearly legal in nature and involves a matter of private right. *See NDEP Corp.*, 203 B.R. at 909.

However, although Wakefern has a right to a jury trial of the C&S Action, a proper jury demand has not been made. Wakefern has stated that upon the court's determination of this motion to withdraw the reference, it will file the amended complaint containing a demand for a jury trial. While Wakefern's intention to formally demand a jury trial is duly noted, the fact remains that they have not yet done so. Wakefern is reluctant to file an amended complaint with a jury demand because it believes, not without reason, that filing an amended complaint could quite possibly constitute waiver of their Seventh Amendment right to have their claims tried by jury. *See Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1250-1253 (3d Cir. 1993) (identifying **[\*17]** two theories whereby courts have divested parties of their rights to a jury in the bankruptcy context. Under the "waiver theory," a party can lose its right to a jury trial by voluntarily submitting to the jurisdiction of the bankruptcy court through the filing of a petition or claim in the bankruptcy court).

Although Wakefern may be entitled to a jury trial, their potential entitlement at some future date is not sufficient grounds to withdraw the reference at this time. Withdrawal of the reference based on the ground that a party is entitled to a jury trial should be deferred until the case is "trial ready." *See In re Northwestern Institute of Psychiatry, Inc.*, 268 B.R. 79, 84 (E.D. Pa. 2001) (citing *In re Commercial Financial Services, Inc.*, 239 B.R. 586, 596 (N.D. Okla. 1999); *see also Barlow & Peek, Inc. v. Manke Truck Lines, Inc.*, 163 B.R. 177, 179 (D. Nev. 1993) (refusing to withdraw reference until "it is clear that a jury trial will be necessary and that the case is prepared and ready for such trial to commence"). It would

be premature to withdraw the reference to the bankruptcy court based upon the unfixed proposition that **[*18]** a jury trial may occur in the future. At the present time, the case is not ready for trial. Assuming that Wakefern does file the amended complaint containing a proper jury demand, a jury trial may not be necessary in order to resolve the C&S Action. During the March 28, 2001 scheduling conference in connection with the C&S Action, Bankruptcy Court Judge Lyons stated that this case "cries out for settlement." Until Wakefern properly asserts their right to a jury trial, the C&S Action should remain in the Bankruptcy Court.

The court is persuaded that Wakefern's right to a jury trial, if properly asserted in the future, will not be adversely affected by having the Bankruptcy Court preside over pretrial matters until the case is ready to be tried in the District Court. Until that time, the bankruptcy judge can serve basically the same function as a magistrate. *See In re Delaware and Hudson Ry. Co.*, 122 B.R. 887, 897 (D. Del. 1991).

## IV. CONCLUSION

In this case, judicial economy weighs heavily in favor of leaving the C&S Action in the Bankruptcy Court, since that court has already issued a declaratory judgment in an adversarial proceeding which is factually

**[*19]** and legally interrelated with the C&S Action. Withdrawal of the reference at this point based on Wakefern's right to a jury trial would be premature, since Wakefern has yet to officially file a jury demand.

The court will deny Wakefern's motion to withdraw the reference, but will do so without prejudice. When the C&S Action is ready for trial, Wakefern may file a renewed motion to withdraw the reference.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Wakefern's request for withdrawal of the reference to bankruptcy is DENIED;

2. This denial is without prejudice to Wakefern's ability to renew its request for withdrawal of the reference at a later time, when a jury trial has been properly demanded and the case becomes ready for trial.

Dated: July 11, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oakwood Homes Corporation, et al., | ) | Case No. 02-13396 (PJW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |
| OHC Liquidation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 04-57060 (PJW) |
| | ) | |
| Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100, | ) | Civil Case No. 07-00799 |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Kathryn S. Keller, of Campbell & Levine, LLC, hereby certify that on December 10, 2007, I caused a copy of the ***Reply Brief in Support of the Plaintiff's Motion to Withdraw the Reference and to Set Dates for a Pre-Trial Conference and Jury Trial Before the District Court***, to be served upon the individuals listed below via the method indicated.

{D0096481.1 }

| | |
|---|---|
| Lee E. Kaufman, Esq.<br>Russell C. Silberglied, Esq.<br>Richards, Layton & Finger,<br>P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>**VIA HAND DELIVERY** | Mary K. Warren, Esq.<br>Michael Osnato, Esq.<br>J. Justin Williamson, Esq.<br>Paul R. Wickes, Esq.<br>Linklaters<br>1345 Avenue of the Americas<br>Nineteenth Floor<br>New York, NY 10105<br>**VIA FEDERAL EXPRESS** |

Dated: December 10, 2007        CAMPBELL & LEVINE, LLC


_/s/ Kathryn S. Keller_
Marla Rosoff Eskin (No. 2989)
Kathryn S. Keller (No. 4660)
800 N. King Street, Suite 300
Wilmington, DE 19801
(302) 426-1900