**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Oakwood Homes Corporation, et al., | ) Bankruptcy Case No. |
| | ) 02-13396 (PJW) |
| | ) |
| Debtors. | ) Jointly Administered |
| _____ | ) |
| OHC Liquidation Trust, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary Proceeding No. |
| | ) 04-57060 (PJW) |
| Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100, | ) |
| | ) Civil Case No. |
| | ) 07-00799 |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**DECLARATION OF WHITMAN L. HOLT IN SUPPORT OF THE**
**REPLY BRIEF IN SUPPORT OF THE**
**PLAINTIFF'S MOTION TO WITHDRAW THE REFERENCE**
**AND TO SET DATES FOR A PRE-TRIAL CONFERENCE AND JURY TRIAL**
**BEFORE THE DISTRICT COURT**

I, Whitman L. Holt, declare as follows:

1.    I am over 18 years of age, and I have personal knowledge of each of the facts stated in this declaration.  If called as a witness, I could and would testify as to the matters set forth below based upon my personal knowledge.

2.    I submit this declaration in support of the "Reply Brief In Support Of The Plaintiff's Motion To Withdraw The Reference And To Set Dates For A Pre-Trial Conference And Jury Trial Before The District Court" filed by the OHC Liquidation Trust (the "**Trust**") in the above-captioned adversary proceeding (the "**Adversary Proceeding**").

3.    I am an attorney at the law firm of Stutman, Treister & Glatt, P.C., special counsel for the Trust in the Adversary Proceeding.

4.    Attached hereto as Exhibit "A" is a true and correct copy of the "Plaintiff's Answer In Opposition To Defendants' Motion For Leave To Appeal" [Adv. Proc. D.I. No. 220], which was filed by the Trust on December 4, 2007.

5.    Attached hereto as Exhibit "B" is a true and correct copy of the "Transcript Of Status Conference Before The Honorable Peter J. Walsh United States Bankruptcy Judge" [Adv. Proc. D.I. No. 206], which relates to a status conference concerning the Adversary Proceeding that took place on October 4, 2007.

6.    During the course of the parties' pre-trial preparation in anticipation of a possible bench trial before the Bankruptcy Court, an issue arose about whether the sole

signatory/beneficiary of the purported contractual jury waiver – i.e., "Credit Suisse First Boston, New York Branch" ("**New York Branch**") – is among the defendant entities in this Adversary Proceeding.  Seeking clarity on the issue, my colleague, Scott H. Yun, Esq., and I had a telephone conference with two attorneys from Linklaters LLP (Mary K. Warren, Esq. and J. Justin Williamson, Esq.) on October 23, 2007.  During the course of this call, I expressly asked Ms. Warren whether New York Branch is or is not a defendant entity in the Adversary Proceeding.  Ms. Warren refused to answer the question.  In fact, Credit Suisse has, to date, steadfastly refused to adopt any definite position about whether New York Branch is or is not a party to this litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 10, 2007 at Los Angeles, California.

Whitman L. Holt

# Exhibit "A"

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Oakwood Homes Corporation, et al., | ) Case No. 02-13396 (PJW) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| _____ | ) |
| OHC Liquidation Trust, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adversary Proceeding No. |
| v. | ) 04-57060 (PJW) |
| | ) |
| Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100, | ) **Re: Adv. Proc. D.I. No. 215** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFF'S ANSWER IN OPPOSITION TO
DEFENDANTS' MOTION FOR LEAVE TO APPEAL**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..........................................1

ARGUMENT .......................................................4

   A.   Because There Is A Key Distinction Between
       Decisions Recognizing The Constitutional
       Jury Right And Decisions Denying That Right,
       The Jury Trial Opinion Involves No
       Controlling Question Of Law..........................5

   B.   Because The Bankruptcy Court Appropriately
       Considered And Applied Controlling Case Law,
       There Are No "Substantial Grounds" For
       Disagreement........................................8

       1.   Controlling Case Law Makes Clear That A
           Jury Right Exists Whenever Any "Legal"
           Claims Are Present Or "Legal" Relief Is
           Sought.........................................10

       2.   Controlling Case Law Makes Clear That A
           Claim Must Be A Necessary Part Of The
           "Claims-Allowance Process" In Order To
           Result In An Implied Waiver Of A Jury
           Right..........................................13

       3.   Controlling Case Law Rejects The Notion
           That A Jury Right Is Lost When A Legal
           Suit Is Brought In A Court Of Equity...............16

       4.   Controlling Case Law Requires That
           Contractual Jury Waivers Be Narrowly
           Construed; The Bankruptcy Court
           Properly Limited The Purported Waiver
           On The Facts Before It.........................18

   C.   An Appeal At This Juncture Will Not
       Materially Advance The Progress Of This
       Litigation, But Will Only Create Further
       Expense And Delay...................................22

   D.   This Case Does Not Involve Any "Exceptional
       Circumstances" That Could Justify An
       Immediate And Premature Appeal......................26

CONCLUSION ...................................................30

## TABLE OF AUTHORITIES

### CASES

*Aetna Ins. Co. v. Kennedy*,
301 U.S. 389 (1937) ................................... 19, 20

*Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*,
920 F.2d 1127 (3d Cir. 1990) ............................. 6

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) ..................................... 6, 7

*Billing v. Ravin, Greenberg & Zackin, P.A.*,
22 F.3d 1242 (3d Cir. 1994), *cert. denied*, 513
U.S. 999 (1994) ..................................... *passim*

*Bowie Produce Co. v. Magic Am. Cafe, Inc. (In re Magic Rests., Inc.)*,
202 B.R. 24 (D. Del. 1996) ........................... 5, 29

*Cantor v. Perelman*,
No. 97-586-KAJ, 2006 WL 318666 (D. Del. Feb. 10, 2006) ............................................. 11

*Chaplin v. Harbison Group*,
119 B.R. 433 (S.D.N.Y. 1990) ............................. 6

*Chauffeurs, Teamsters & Helpers v. Terry*,
494 U.S. 558 (1990) ...................................... 7

*City of New York v. Beretta U.S.A. Corp.*,
317 F. Supp. 2d 193 (E.D.N.Y. 2004) ...................... 7

*In re Crown Vantage, Inc.*,
No. 02-03836, 2002 U.S. Dist. LEXIS 26109 (N.D. Cal. Dec. 16, 2002) ..................................... 15

*Dairy Queen, Inc. v. Wood*,
369 U.S. 469 (1962) .................................. 10, 11

*Dal-Tile Intl., Inc. v. Color Tile, Inc.*,
203 B.R. 554 (D. Del. 1996) .............................. 5

*In re Del. & Hudson Ry. Co.*,
96 B.R. 469 (D. Del. 1989), *aff'd*, 884 F.2d
1383 (3d Cir. 1989) ..................................... 27

*Dimick v. Schiedt*,
293 U.S. 474 (1935) ...................................... 7

*EEOC v. Blue Star Foods, Inc.*,
    No. 78-5-W, 1980 U.S. Dist. LEXIS 11131 (S.D.
    Iowa Mar. 7, 1980) ......................................... 7

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ...................................... 19

*Educ. Testing Servs. v. Katzman*,
    670 F. Supp. 1237 (D.N.J. 1987) .......................... 7

*Enron Corp. v. Springfield Assocs., L.L.C. (In re
    Enron Corp.)*,
    No. M-47 (SAS), 2006 U.S. Dist. LEXIS 63223
    (S.D.N.Y. Sept. 5, 2006) ......................... 9, 25, 29

*First Fid. Bank, N.A. v. Hooker Invs., Inc. (In re
    Hooker Invs., Inc.)*,
    937 F.2d 833 (2d Cir. 1991) .............................. 25

*First Union Nat'l Bank v. United States*,
    164 F. Supp. 2d 660 (E.D. Pa. 2001) ...................... 20

*In re Franklin Towne Lodge Ltd. P'ship*,
    No. 91-2702, 1992 U.S. Dist. LEXIS 18817 (E.D.
    Pa. Nov. 25, 1992) ....................................... 16

*Germain v. Conn. Nat'l Bank*,
    988 F.2d 1323 (2d Cir. 1993) .................... 13, 15, 16

*In re Globe Parcel Serv., Inc.*,
    75 B.R. 381 (E.D. Pa. 1987) .............................. 16

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989) ................................... 10, 12

*Harriscom Svenska AB v. Harris Corp.*,
    947 F.2d 627 (2d Cir. 1991) .............................. 21

*Hays v. Equitex, Inc. (In re RDM Sports Group)*,
    260 B.R. 915 (Bankr. N.D. Ga. 2001) ...................... 16

*Hulmes v. Honda Motor Co.*,
    936 F. Supp. 195 (D.N.J. 1996) ........................ 9, 23

*Int'l Union, United Auto., Aerospace & Agric.
    Implement Workers of Am. v. Midland Steel
    Prods. Co.*,
    771 F. Supp. 860 (N.D. Ohio 1991) ....................... 27

*Kennard v. United Parcel Serv., Inc.*,
    531 F. Supp. 1139 (E.D. Mich. 1982) ..................... 24

*Langenkamp v. Culp*,
    498 U.S. 42 (1990) ....................................... 14

*Lauro Lines s.r.l. v. Chasser*,
    490 U.S. 495 (1989) ...................................... 27

*Link v. Mercedes-Benz of N. Am.*,
    550 F.2d 860 (3d Cir. 1977), *cert. denied*, 431
    U.S. 933 (1977) ........................................... 5

*MCI WorldCom Commc'ns v. Commc'ns Network Int'l,
    Ltd. (In re WorldCom, Inc.)*,
    358 B.R. 76 (S.D.N.Y. 2006) ........................... 21

*M&E Contractors v. Kugler-Morris Gen. Contractors*,
    67 B.R. 260 (N.D. Tex. 1986) .......................... 16

*McClelland v. Braverman Kaskey & Caprara, P.C. (In
    re McClelland)*,
    332 B.R. 90 (Bankr. S.D.N.Y. 2005) .................. 14

*Milbert v. Bison Labs.*,
    260 F.2d 431 (3d Cir. 1958) ............................. 5

*Mirant Corp. v. Southern Co.*,
    337 B.R. 107 (N.D. Tex. 2006) ......................... 15

*NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*,
    203 B.R. 905 (D. Del. 1996) ........................... 16

*Official Comm. of Unsecured Creditors v. Qwest
    Commc'ns Corp. (In re A.P. Liquidating Co.)*,
    350 B.R. 752 (E.D. Mich. 2006) ........................ 6

*Orson, Inc. v. Miramax Film Corp.*,
    867 F. Supp. 319 (E.D. Pa. 1994) ....................... 5

*Parsons v. Bedford*,
    3 Pet. 433 (1830) ...................................... 10

*Pereira v. Farace*,
    413 F.3d 330 (2d Cir. 2005), *cert. denied*, 126
    S. Ct. 2286 (2006) ..................................... 11

*Rafoth v. Nat'l Union Fire Ins. Co. (In re Baker &
    Getty Fin. Servs., Inc.)*,
    954 F.2d 1169 (6th Cir. 1992) ......................... 27

*Ross v. Bernhard*,
    396 U.S. 531 (1970) ............................... 16, 17

*Thermo-Stitch, Inc. v. Chemi-Cord Processing Corp.*,
    294 F.2d 486 (5th Cir. 1961) .......................... 10

*Tracinda Corp. v. DaimlerChrysler AG*,
    502 F.3d 212 (3d Cir. 2007) ....................... 18, 20

*Urban Outfitters, Inc. v. 166 Enter. Corp.*,
    136 F. Supp. 2d 273 (S.D.N.Y. 2001) ....................... 20

*United States v. Kramer*,
    19 F. Supp. 2d 273 (D.N.J. 1998) ......................... 28

*United States v. McAlister*,
    630 F.2d 772 (10th Cir. 1980) ............................. 7

*Vodusek v. Bayliner Marine Corp.*,
    71 F.3d 148 (4th Cir. 1995) ............................... 6

*Williston v. Eggleston*,
    410 F. Supp. 2d 274 (S.D.N.Y. 2006) ...................... 18

*Zygmuntowicz v. Hospitality Invs., Inc.*,
    828 F. Supp. 346 (E.D. Pa. 1993) ......................... 22

## STATUTES AND RULES

28 U.S.C. § 157(e) ............................................ 27

28 U.S.C. § 158(a) ....................................... *passim*

28 U.S.C. § 1292(b) .......................................... 24

FED. R. BANKR. P. 8003(a) ..................................... 1

## OTHER AUTHORITIES

U.S. CONST. amend. VII .................................... *passim*

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged
    2002) .................................................... 28

Pursuant to Federal Rule of Bankruptcy Procedure 8003(a), Plaintiff OHC Liquidation Trust ("**Plaintiff**"), by and through its duly appointed trustee, Alvarez & Marsal, LLC, hereby submits this answer in opposition to the "Defendants' Motion For Leave To Appeal" (the "**Motion**") filed on November 26, 2007 by the Defendants in the above-captioned adversary proceeding (collectively, "**Defendants**" or "**Credit Suisse**").

## PRELIMINARY STATEMENT

This would-be interlocutory appeal arises out of a thoughtful and comprehensive memorandum opinion (the "**Jury Trial Opinion**"[1]) issued by the United States Bankruptcy Court for the District of Delaware, Walsh, J. (the "**Bankruptcy Court**") on November 15, 2007.  In the Jury Trial Opinion, which was rendered after substantial briefing by the parties, the Bankruptcy Court cogently explained why controlling Supreme Court and Third Circuit cases lead to the conclusion

---

[1]  A true and correct copy of the Jury Trial Opinion [Adv. Proc. D.I. No. 207] is attached as Exhibit "A" to the accompanying Declaration of Whitman L. Holt (the "**Holt Declaration**").  All capitalized terms used but not otherwise defined herein have the meaning set forth in the Jury Trial Opinion.  Further, rather than burden this Court with yet another summary of the proceedings below, Plaintiff respectfully refers the Court to the background material provided by the Bankruptcy Court on pages 3-7 of the Jury Trial Opinion, as well as that set forth on pages 3-11 of the pending motion to withdraw the reference (the "**Motion to Withdraw Reference**," a copy of which is attached as Exhibit "B" to the Holt Declaration) that Plaintiff filed on November 19, 2007 based upon the Jury Trial Opinion.

that Plaintiff has a constitutional right to a jury trial as
to three of its counterclaims against Credit Suisse.  In the
process, the Bankruptcy Court expressly considered and
rejected all of the unjustifiable theories that Credit Suisse
now attempts to repackage for this Court's consideration.

Frustrated by their loss before the Bankruptcy
Court, Defendants go to desperate lengths – including
mischaracterizing cases, obfuscating the record, and griping
about aspects of the proceedings below that have no relevance
to their requested relief – to convince this Court that the
Jury Trial Opinion is one of those rare decisions that meets
the stringent standards for interlocutory review.  Defendants'
efforts fall flat, however, because they cannot demonstrate
that all four of the conditions necessary for an interlocutory
appeal exist here.  In fact, not even one of those required
conditions is satisfied.

First, Defendants improperly conflate the
distinction between a lower court opinion ***denying*** a jury right
and one ***recognizing*** a jury right.  The difference is crucial
because, as the Supreme Court has explained, the right to a
jury is a fundamental one, enshrined in the Constitution, but
there is no corresponding right to a non-jury trial.

Second, Defendants attempt to manufacture the
"substantial ground for a difference of opinion" necessary to

indict the Jury Trial Opinion.  Yet the Bankruptcy Court merely referenced and applied the Supreme Court and Third Circuit decisions that control the outcome of this dispute. The fact that Defendants may be unhappy with the Bankruptcy Court's analysis, or that there may be non-binding cases which are allegedly not in accord with the Jury Trial Opinion, is simply not enough to establish the *substantial* judicial disagreement required for an interlocutory appeal.

Third, Defendants hardly bother to argue that an appeal at this juncture will materially advance the ultimate termination of the adversary proceeding.  Defendants' feeble attempt is easily explained by the fact that their proposed interlocutory appeal: (i) will not resolve even a single disputed issue, but rather will merely determine the fact-finder for a static body of issues; (ii) will generate lengthy and time-consuming briefing that will unnecessarily increase the costs to the parties and delay a trial on the merits; and (iii) raises questions that could be reanimated by either of the parties following the entry of a final order.  Moreover, the case law is clear that where, as here, discovery has concluded and the parties are ready for trial, interlocutory appeals do not advance the litigation's ultimate termination.

Fourth, Defendants cite no truly "exceptional circumstances" that merit a piecemeal appeal.  The fact that a

corporate defendant disputes a plaintiff's Seventh Amendment right to a jury and threatens to raise that issue in a future appeal from a final judgment is a fact-pattern presented by legions of high-stakes commercial cases.  Such a timeless tale hardly embodies the "exceptional" case – one that threatens fundamental rights or entire markets – for a premature appeal.

In sum, none of the factors courts consider when analyzing whether to grant leave to appeal under 28 U.S.C. § 158(a) are present.  As such, the Motion should be denied.

## ARGUMENT

The Jury Trial Opinion and the associated order represent an interlocutory decision by a bankruptcy court, which means Credit Suisse cannot appeal as a matter of right. Rather, Credit Suisse may appeal only "with leave of the court" under 28 U.S.C. § 158(a).

Section 158(a) does not provide criteria for determining whether "leave" should be granted, but the Motion properly recites the applicable standards; in order to justify their requested relief, Defendants must establish that:

1.  The Jury Trial Opinion involves a controlling issue of law;

2.  There is a ***substantial*** ground for difference of opinion about the Bankruptcy Court's rulings;

3.  An immediate appeal will materially advance the ultimate termination of this adversary proceeding; ***and***

    4.   This case involves some "exceptional circumstances" that justify departing from the general policy against piecemeal appeals.[2]

*See* Motion at pp. 8-9; *see also, e.g.*, *Dal-Tile Intl., Inc. v. Color Tile, Inc.*, 203 B.R. 554, 557 (D. Del. 1996); *Bowie Produce Co. v. Magic Am. Cafe, Inc. (In re Magic Rests., Inc.)*, 202 B.R. 24, 26 (D. Del. 1996).

Because the test for interlocutory appeal is conjunctive, Defendants bear the burden of proving that **all four** criteria have been satisfied.  This is fatal since, as detailed below, not even one of these factors is present here.

**A.   Because There Is A Key Distinction Between Decisions Recognizing The Constitutional Jury Right And Decisions Denying That Right, The Jury Trial Opinion Involves No Controlling Question Of Law.**

In a desperate attempt to clear the hurdles of pursuing an interlocutory appeal, Defendants baldly assert that the Jury Trial Opinion raises a controlling question of law because "the allowing of a jury trial where no jury right exists would plainly be reversible error."  (Motion at p. 9.) Rather than cite a single authority that actually supports

---

[2]   In this Circuit there exists a strong policy against piecemeal appeals, and interlocutory relief should be "sparingly applied" and "used only in exceptional cases."  *Milbert v. Bison Labs.*, 260 F.2d 431, 433 (3d Cir. 1958); *see also, e.g.*, *Link v. Mercedes-Benz of N. Am.*, 550 F.2d 860, 863 (3d Cir. 1977) ("[W]e cannot sanction an erosion of the prohibition against 'piecemeal' appellate review."), *cert. denied*, 431 U.S. 933 (1977); *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 321 (E.D. Pa. 1994).

this position, Defendants cite *Official Committee of Unsecured Creditors v. Qwest Communications Corp. (In re A.P. Liquidating Co.*), 350 B.R. 752 (E.D. Mich. 2006), and *Chaplin v. Harbison Group*, 119 B.R. 433 (S.D.N.Y. 1990). Defendants, however, have completely misapplied the holdings of each case; both *A.P. Liquidating Co.* and *Chaplin* hold that the **denial** of the constitutional right to a jury trial raises a controlling question of law. There is no corresponding right to a bench trial. *See, e.g.*, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959) (explaining that "the right to jury trial is a constitutional one," and "no similar requirement protects trials by the court"); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 152-53 (4th Cir. 1995) ("While the Seventh Amendment guarantees a jury trial in cases 'at common law,' no constitutional provision guarantees, or indeed prohibits, jury trials for cases tried in equity or in admiralty.").

The obvious distinction between **recognizing** a fundamental right and **denying** that right is crucial when considering whether to exercise discretionary judicial powers. For instance, the Third Circuit has explained that the "drastic" remedy of a writ of mandamus is an appropriate method of **protecting** a party's right to a jury trial. *See, e.g.*, *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*,

6

920 F.2d 1127, 1133-34 (3d Cir. 1990).[3]  No comparable relief

exists with respect to the non-right to a non-jury trial.

In fact, the constitutional character of the jury

right has led courts affirmatively to conclude that they

should commit Credit Suisse's allegedly "reversible error" in

close cases.  As powerfully explained by one court:

> the right to a trial by jury is one of the most
> precious of the rights guaranteed by the
> Constitution, and should be one of the most
> jealously guarded.  In view of this, if the Court
> is to err in its holding, it chooses to err in
> favor of granting a right to trial by jury, as
> opposed to denying such an important right.

*EEOC v. Blue Star Foods, Inc.*, No. 78-5-W, 1980 U.S. Dist.

LEXIS 11131, at *11 (S.D. Iowa Mar. 7, 1980).[4]  The Bankruptcy

---

[3]  Likewise, the Supreme Court has repeatedly emphasized that the
"'[m]aintenance of the jury as a fact-finding body is of such
importance and occupies so firm a place in our history and
jurisprudence that any seeming curtailment of the right to a jury
trial should be scrutinized with the utmost care.'"  *Chauffeurs,
Teamsters & Helpers v. Terry*, 494 U.S. 558, 565 (1990) (quoting
*Beacon Theatres*, 359 U.S. at 501 (quoting *Dimick v. Schiedt*, 293
U.S. 474, 486 (1935))).

[4]  *See also, e.g.*, *Beacon Theatres,* 359 U.S. at 510 ("Since the
right to jury trial is a constitutional one . . . [judicial]
discretion is very narrowly limited and must, wherever possible,
be exercised to preserve jury trial."); *United States v.
McAlister*, 630 F.2d 772, 774 (10th Cir. 1980) (noting how if a
decision will "require too many jury trials, we properly err on
the side of protecting a constitutional right"); *City of New York
v. Beretta U.S.A. Corp.*, 317 F. Supp. 2d 193, 196 (E.D.N.Y. 2004)
("One guiding beacon has been lit by the Supreme Court: when in
doubt, grant a jury trial."); *Educ. Testing Servs. v. Katzman*,
670 F. Supp. 1237, 1243 (D.N.J. 1987) (Barry, J.) (concluding
that if court erred by denying motion to strike, it "erred on the
side of protecting an important constitutional right, fundamental
to the fair administration of justice").

Court analyzed the instant dispute in a fashion wholly consistent with principle. (*See* Jury Trial Opinion at p. 9.)

Defendants have failed to cite even a single case where the granting of a jury trial has been held to raise a controlling question of law for the purposes of pursuing an interlocutory appeal. Accordingly, Defendants are unable to carry their burden of proving this first criterion.

**B.    Because The Bankruptcy Court Appropriately Considered And Applied Controlling Case Law, There Are No "Substantial Grounds" For Disagreement.**

The Jury Trial Opinion unfolded in several phases, each of which rejected arguments made in Defendants' lengthy briefing before the Bankruptcy Court. First, the Bankruptcy Court scrutinized the historical nature of Plaintiff's claims and the character of its requested relief, concluding that a jury right would obtain outside of bankruptcy. (*See* Jury Trial Opinion at pp. 10-17.) Second, the Bankruptcy Court juxtaposed the counterclaims as to which Plaintiff requests a jury with Plaintiff's substantive objections to the proofs of claim filed by a Defendant, reasoning that those counterclaims were not a ***necessary*** part of the "claims-allowance process." (*See id.* at pp. 17-20.) Third, the Bankruptcy Court considered and rejected Credit Suisse's radical suggestion that a debtor or bankruptcy trustee may never file suit in a bankruptcy court without losing its jury rights. (*See id.* at

20-22.)  Fourth and finally, the Bankruptcy Court held that a purported contractual jury waiver did not bind Plaintiff, either as a matter of law **or of fact**.  (*See id.* at 22-28.)

Defendants aver that there are substantial grounds for difference of opinion about all four parts of the Jury Trial Opinion.  Defendants are wrong.  As explained below, the Bankruptcy Court carefully considered and applied the controlling Supreme Court and Third Circuit authorities and reached a proper result with respect to each issue before it. Defendants proffer no new case law that went unconsidered by the Bankruptcy Court; rather, they simply want a second bite at the apple.  Credit Suisse's own confusion about the Bankruptcy Court's analysis is not the litmus test for whether the **substantial** legal uncertainty required for interlocutory appeals exists, however.  *See, e.g.*, *Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, No. M-47 (SAS), 2006 U.S. Dist. LEXIS 63223, at *19 (S.D.N.Y. Sept. 5, 2006) (explaining that an interlocutory appeal will not lie merely because "the relevant case law is 'less than clear' or allegedly 'not in accord' or that there is a 'strong disagreement among the parties'" (footnotes omitted)); *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 208 (D.N.J. 1996) ("A party's disagreement with the district court's ruling does not constitute a 'substantial ground for difference of

opinion' . . . . Rather, the difference of opinion must arise
out of genuine doubt as to the correct legal standard.").

1.    **Controlling Case Law Makes Clear That A Jury
      Right Exists Whenever Any "Legal" Claims Are
      Present Or "Legal" Relief Is Sought.**

As the Supreme Court explained in *Dairy Queen, Inc.
v. Wood*, "[i]t would make no difference if the equitable cause
clearly outweighed the legal cause so that the basic issue of
the case taken as a whole is equitable. ***As long as _any_ legal
cause is involved the jury rights it creates control***." 369
U.S. 469, 473 n.8 (1962) (emphasis added) (quoting *Thermo-
Stitch, Inc. v. Chemi-Cord Processing Corp.*, 294 F.2d 486, 491
(5th Cir. 1961)); *see also Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33, 41 (1989) (underscoring the key distinction
between "suits in which *legal* rights were to be ascertained
and determined, in contradistinction to those where ***equitable
rights _alone_*** were recognized, and equitable remedies were
administered" (bolded emphasis added) (quoting *Parsons v.
Bedford*, 3 Pet. 433, 447 (1830))). The Bankruptcy Court
correctly recognized and applied *Dairy Queen* and
*Granfinanciera* by rejecting Defendants' "mixed relief" theory.

Unable to argue that there is substantial
disagreement about whether *Dairy Queen* and *Granfinanciera* are
controlling law and mean what they say (or dispute that their
"mixed relief" thesis parallels the "incidental" construct

forcefully rejected in *Dairy Queen*), Defendants resort to mischaracterization of both the law and the facts.  Such intellectual sleight-of-hand clearly cannot create the "substantial" disputes required for leave to appeal.

First, Defendants state that both *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005), *cert. denied*, 126 S. Ct. 2286 (2006), and *Cantor v. Perelman*, No. 97-586-KAJ, 2006 WL 318666 (D. Del. Feb. 10, 2006), involved "a mixture of legal and equitable claims."  (*See* Motion at p. 10.)  This is an issue of reading comprehension, if not deliberate misstatement; the **only** claims at issue in both cases related to alleged breaches of fiduciary duty, which both courts concluded were "equitable" in nature.  In fact, Judge Jordan expressly noted how the analysis in *Cantor* would have been different "if at least one of Plaintiffs' claims [had been] legal rather than equitable."  2006 WL 318666, at *7 n.7.  Indeed, the Bankruptcy Court distinguished *Cantor* from the instant case on precisely those grounds.  (*See* Jury Trial Opinion at pp. 15-16.)  This was the proper result because two of Plaintiff's claims – negligence and breach of implied contract – are wholly "legal" claims.  Credit Suisse's misreading of the case law should not change this conclusion.

Second, Defendants improperly suggest that Plaintiff's complaint and subsequent damages requests have

been focused on "disgorgement" and not compensatory damages.
(*See* Motion at p. 5, p. 11 n.6.)  But Defendants know better,
for at least three reasons:

> 1.   Plaintiff's initial recitation of each of the
>      relevant claims expressly included requests for
>      damages, including compensatory damages (*see*
>      Motion Ex. "B" at ¶¶ 51 (seeking "to recover
>      consequential and actual damages" for Credit
>      Suisse's breach of fiduciary duty), 54 (seeking
>      "damages in an amount to be proved at trial"
>      for the negligence claim), 96 (same for the
>      breach of implied contract claim));
>
> 2.   Plaintiff provided Defendants with a 10-page
>      supplemental Rule 26(a)(1) initial disclosure
>      of its claimed damages, which supplement
>      described forms of compensatory damages sought
>      for each of the relevant claims (*see* Holt
>      Declaration Ex. "C"); and
>
> 3.   During the process of preparing for a possible
>      bench trial before the Bankruptcy Court,
>      Plaintiff's counsel expressly informed
>      Defendants' counsel that Plaintiff intends to
>      seek compensatory damages of at least $50
>      million at trial (*see* Holt Declaration ¶ 7).

Defendants' attempt to impugn the Bankruptcy Court's analysis
of the Plaintiff's requested relief thus rings quite hollow.

    In sum, the Bankruptcy Court followed the precise
analytic process prescribed by the Court in *Granfinanciera*.
The undisputedly "legal" character of two of Plaintiff's
claims, combined with the "legal" nature of its requested
relief, creates no question – let alone a "substantial" one –
that the Bankruptcy Court reached the correct result.

2.    **Controlling Case Law Makes Clear That A Claim Must Be A Necessary Part Of The "Claims-Allowance Process" In Order To Result In An Implied Waiver Of A Jury Right.**

The case law is clear that when a cause of action "falls within the process of the allowance and disallowance of claims," neither the debtor's estate nor the defendant has a Seventh Amendment right to trial by jury "because [the] claim has been converted from a legal one into an equitable dispute over a share of the estate." *See Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1253 (3d Cir. 1994), *cert. denied*, 513 U.S. 999 (1994). In contrast, when a legal cause of action is not integrally related to the claims-allowance process, but instead seeks to garner additional funds that will "augment" the bankruptcy estate, both the debtor and the defendant retain their constitutional right to have a jury try such an action. *See, e.g.*, *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1327 (2d Cir. 1993) (explaining how "suits . . . which would augment the estate but which have no effect on the allowance of a creditor's claim simply cannot be part of the claims-allowance process").

Credit Suisse suggests that the claims-allowance process is implicated merely by the procedural posture of this case, i.e., because the proceeding involves "counterclaims filed by a liquidation trust in response to a proof of claim."

13

(*See* Motion at p. 11.)  But this paints with *far* too broad a brush; the critical task for any court faced with this issue is to "ask whether the resolution of the particular dispute at issue is *necessarily part of the process* of the disallowance and allowance of claims" against the bankruptcy estate. *Billing*, 22 F.3d at 1252 n.14 (emphasis added).[5]

---

[5]  Beyond being facially inconsistent with *Billing*, Credit Suisse's blunderbuss argument has been roundly rejected by courts outside of the Third Circuit.  As one court explained:

> Unlike the act of filing a proof of claim, *the assertion of a counterclaim by the debtor does not automatically result in waiver of the right to trial by jury on those counterclaims*.  Moreover, counterclaims such as the ones in this case often go beyond the mere allowance or disallowance of the filed claim to seek affirmative recovery against the claimant.  The Court must consider whether the counterclaims are "integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction," which would dispense with [the] right to a jury trial on those counterclaims.

*McClelland v. Braverman Kaskey & Caprara, P.C. (In re McClelland)*, 332 B.R. 90, 95 (Bankr. S.D.N.Y. 2005) (emphasis added) (quoting *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990)).  In *McClelland*, the estate's counterclaims were "integrally related to the allowance or disallowance of the [creditor-Claimants'] claims" because "[t]he very services for which Claimants seek compensation in their proofs of claim are the same services, for the same time periods during which the Debtor counterclaims that the Claimants engaged in negligence and malpractice."  *See id.* at 97-98.  As explained in the text and as found by the Bankruptcy Court, that clearly is not the case here; the relevant proofs of claim are based solely upon "services" allegedly provided to the Oakwood Companies between August 19, 2002 and November 15, 2002, but Plaintiff's counterclaims as to which the Bankruptcy Court held it has a jury right stem from other "services" provided to the Oakwood Companies in a different time period.  (*See* Jury Trial Opinion at pp. 19-20.)

When applying this rule, courts approach the issue claim-by-claim, in each instance asking whether a particular cause of action bears a necessary logical relationship to the allowance or disallowance of a creditor's claim in bankruptcy. *See, e.g.*, *Germain*, 988 F.2d at 1327-32; *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 120-22 (N.D. Tex. 2006); *In re Crown Vantage, Inc.*, No. 02-03836, 2002 U.S. Dist. LEXIS 26109, at *9-12 (N.D. Cal. Dec. 16, 2002). This is precisely what the Bankruptcy Court did here; there are no "substantial grounds" for concluding it applied the wrong legal standard.

Nor can there be any real dispute about whether the Bankruptcy Court made the proper finding. The basic problem with Defendants' position below was their inability to explain why common law claims – negligence, breach of fiduciary duty, and breach of implied contract – based upon a pattern of misconduct beginning years before the contract underlying the relevant proofs of claim was executed have a necessary logical relationship to whether claims based on that contract should be allowed in bankruptcy. The Motion makes no better effort to address this obvious problem – or to explain why *all* aspects of a multi-year relationship must be crammed into a contract covering only the last 88 days of that relationship – because it cannot be solved; the counterclaims as to which the Bankruptcy Court affirmed Plaintiff's jury rights could be

resolved apart from the proofs of claim, and thus they are not necessarily part of the "claims-allowance process."[6]

### 3. Controlling Case Law Rejects The Notion That A Jury Right Is Lost When A Legal Suit Is Brought In A Court Of Equity.

The Supreme Court has clearly instructed that "legal claims are not magically converted into equitable issues by their presentation to a court of equity." *Ross v. Bernhard*, 396 U.S. 531, 538 (1970).[7]  The Third Circuit has similarly

---

[6]  Indeed, as a purely logical matter, the counterclaims that encompass pre-August 19, 2002 conduct are utterly separate from the proofs of claim; it is conceivable that Plaintiff could succeed on some or all of those claims yet fail in its claim objections, or vice versa.  As explained in the pending Motion to Withdraw Reference, judicial economy strongly favors withdrawing the reference as to all of the Plaintiff's counterclaims and then conducting one trial – with a jury resolving issues of fact and law pertaining to the claims as to which Plaintiff has a Seventh Amendment right, and this Court resolving the remaining issues. (*See* Motion to Withdraw Reference at pp. 16-21.)  Nevertheless, such a process is not ***strictly*** necessary; the pre-August 19, 2002 counterclaims could in theory be tried as a completely separate action, which trial could occur either before or after the proofs of claim are resolved.  Absent compelling reasons to favor this plainly inefficient result, it is proper to advance judicial economy and minimize unnecessary cost and delay to the parties.

[7]  Numerous district courts in this Circuit similarly reject Credit Suisse's rigid forum-based rule, often using *Ross*'s clear guidance as a foothold.  *See, e.g.*, *NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 912-13 (D. Del. 1996); *In re Franklin Towne Lodge Ltd. P'ship*, No. 91-2702, 1992 U.S. Dist. LEXIS 18817, at *8-10 (E.D. Pa. Nov. 25, 1992); *In re Globe Parcel Serv., Inc.*, 75 B.R. 381, 383 (E.D. Pa. 1987).  These decisions are in accord with circuit-, district-, and bankruptcy-level authority from other circuits.  *See, e.g.*, *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1330 (2d Cir. 1993); *M&E Contractors v. Kugler-Morris Gen. Contractors*, 67 B.R. 260, 266-67 (N.D. Tex. 1986); *Hays v. Equitex, Inc. (In re RDM Sports Group)*, 260 B.R. 915, 920-25 (Bankr. N.D. Ga. 2001).

expressed its belief that a waiver theory based solely on a bankruptcy forum "raises as many questions as it answers," and the mere "fact that the debtor may have voluntarily submitted itself to the bankruptcy court's equitable jurisdiction does not complete the analysis. ***A court must also ask whether the resolution of the particular dispute at issue is necessarily part of the process of the disallowance and allowance of claims***." *See Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1251-52, n.14 (3d Cir. 1994) (emphasis added), *cert. denied*, 513 U.S. 999 (1994). As discussed above, the Bankruptcy Court properly followed this structure by analyzing whether each of the Plaintiff's counterclaims is a **necessary** component of the "claims-allowance process."

Moreover, the Bankruptcy Court also correctly followed the teachings of *Ross* and *Billing* and rejected Credit Suisse's *per se* "waiver" theory. (*See* Jury Trial Opinion at pp. 21-22.) There can be no dispute that *Ross* and *Billing* are controlling law here or that Credit Suisse's extreme suggestion is obviously foreclosed by those opinions. Credit Suisse's disagreement with Plaintiff about how to read those cases (even combined with a reference to a handful of decisions, virtually all from other circuits, which arguably support some other result) does not give rise to "substantial" questions about whether the Bankruptcy Court is correct on

17

this issue. *See, e.g.*, *Williston v. Eggleston*, 410 F. Supp. 2d 274, 277 (S.D.N.Y. 2006) (noting how "the fact that the parties themselves disagree as to the interpretation of persuasive authority [does not] constitute 'a difference of opinion' sufficient to warrant certification").

### 4. Controlling Case Law Requires That Contractual Jury Waivers Be Narrowly Construed; The Bankruptcy Court Properly Limited The Purported Waiver On The Facts Before It.

Credit Suisse further argues that "the Bankruptcy Court's conclusion that [a purported] contractual waiver is wholly inapplicable provides substantial ground for difference of opinion." (Motion at p. 15.) Yet Credit Suisse conveniently neglects to mention that the Bankruptcy Court rejected their contractual waiver argument *for three separate reasons*, any one of which would be sufficient to render that waiver inoperative. (*See* Jury Trial Opinion at pp. 22-28.)

As explained below, all three prongs of the Bankruptcy Court's waiver analysis are well-supported. Perhaps most importantly, however, all of the Bankruptcy Court's analysis was performed through the lens of the repeated instruction that, "[b]ecause the 'right of jury trial is fundamental, *courts indulge every reasonable presumption against waiver.*'" *Tracinda Corp. v. DaimlerChrysler AG*, 502

F.3d 212, 222 (3d Cir. 2007) (emphasis added) (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)).

The Bankruptcy Court's first problem with the purported waiver was that the relevant contracts were not executed by even close to all the parties to this litigation, either on Plaintiff's side or on Defendants' side. (*See* Jury Trial Opinion at pp. 22-25.) It is difficult to understand how Defendants could dispute this conclusion, which likely explains why it goes unmentioned in the Motion.[8] *See, e.g.*, *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").

The Bankruptcy Court's second problem with the purported waiver was that it only applies to actions relating to a single financing transaction, whereas the gravamen of this litigation "is about whether Defendants breached far broader duties, not arising from any written contract, by partaking in a myriad of alleged illicit transactions with the Oakwood Companies," which falls far outside the scope of the purported waiver. (*See* Jury Trial Opinion at p. 25.) Beyond

---

[8]  Among the Bankruptcy Court's conclusions was that the sole beneficiary of the purported waiver – "Credit Suisse First Boston, New York Branch" – is separate from the other Defendants, and may not even be a party to the action. The Motion makes no mention of this issue, perhaps because Defendants' counsel is unwilling definitively to state whether "New York Branch" is or is not a party to this litigation. (*See* Holt Declaration ¶ 8.)

merely asserting "that the waiver is both broad and explicit"
(Motion at p. 15), Credit Suisse makes no attempt to explain
why there are substantial grounds for disagreement about this
conclusion.  In fact, there are no such grounds since the
Bankruptcy Court's narrow reading of the purported waiver was
required under *Aetna Insurance Co.* and *Tracinda.  See also,
e.g.*, *Urban Outfitters, Inc. v. 166 Enter. Corp.*, 136 F. Supp.
2d 273, 275 (S.D.N.Y. 2001) ("Courts are to strictly construe
jury waiver clauses, as the right to a jury trial is
fundamental and protected by the Seventh Amendment.").

     The third part of the Bankruptcy Court's waiver
analysis also goes unmentioned in the Motion, for reasons that
will be clear shortly.  This part of the Jury Trial Opinion
applied the framework of *First Union National Bank v. United
States*, 164 F. Supp. 2d 660 (E.D. Pa. 2001), to this case's
facts.  (*See* Jury Trial Opinion at pp. 26-28.)  Under *First
Union*, the party seeking to enforce a purported waiver must
proffer some "evidence that there was not a gross disparity in
bargaining power between" the parties, which is particularly
important when the signatory corporation is in poor "financial
straits at the time the documents were executed, [since] it is
highly likely that there was a severe disparity in bargaining
power" in such circumstances.  *See* 164 F. Supp. 2d at 665.
Here, the Bankruptcy Court reviewed testimony from the record

and concluded that "there is a good argument that the two Oakwood Companies were at a severely disadvantaged bargaining [position]" when they negotiated the purported waiver, and because "Defendants did not offer any evidence to the contrary," they had failed to meet their burden of proof on this issue. (*See* Jury Trial Opinion at p. 28.)

The Bankruptcy Court's factual finding and stated need for more evidence is critically important, because it can be reversed on appeal only if Credit Suisse offers contrary evidence. Questions of fact, or mixed issues of law and fact, do not satisfy the requirements for an interlocutory appeal, however. *See, e.g.*, *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991) ("Where, as here, the controlling issues are questions of fact, or, more precisely, questions as to whether genuine issues of material fact remain to be tried, the federal scheme does not provide for an immediate appeal solely on the ground that such an appeal may advance the proceedings in the district court."); *MCI WorldCom Commc'ns v. Commc'ns Network Int'l, Ltd. (In re WorldCom, Inc.)*, 358 B.R. 76, 79 (S.D.N.Y. 2006). Thus, granting leave for an interlocutory appeal would not provide a venue in which Credit Suisse could obtain a reversal on this issue in any event, even assuming *arguendo* that the evidentiary burden unmet

before the Bankruptcy Court could somehow be satisfied on appeal (which Credit Suisse never contends in the Motion).

In sum, the Bankruptcy Court's rejection of Defendants' contractual waiver argument – like all of the Jury Trial Opinion – was based on a cogent analysis and application of the applicable authorities.  There simply is no **substantial** ground upon which to question the Bankruptcy Court's reasoning, and Credit Suisse fails to persuade otherwise.

**C.    An Appeal At This Juncture Will Not Materially Advance The Progress Of This Litigation, But Will Only Create Further Expense And Delay.**

In the Motion, Defendants make a half-hearted attempt to explain why granting leave for interlocutory appeal at this time will advance the litigation.  (*See* Motion at p. 15 ¶ 34.)  This conclusory effort fails for several reasons.

First, Defendants' entire argument on this point rests on the unsupported and completely self-serving allegation that the United States District Court for the District of Delaware (the "**District Court**") is too busy to schedule the jury trial required in this adversary proceeding, whereas the Bankruptcy Court can supposedly schedule a bench trial at any time.  Unfortunately for Defendants, mere conjectures or hypotheses about a court's schedule or imagined savings of time and expense are inadequate to justify an interlocutory appeal.  *See Zygmuntowicz v. Hospitality Invs.,*

*Inc.*, 828 F. Supp. 346, 353-54 (E.D. Pa. 1993).  Furthermore, Defendants' proposed appeal would only add to the Court's schedule.  Defendants, therefore, have simply failed to carry their initial burden of proof on this criterion.

Second, even a cursory review of the established facts demonstrates that allowing Defendants to take an interlocutory appeal at this juncture will only create further expense and delay, including potentially subjecting the parties to two trials.  Shortly before the entry of the Jury Trial Opinion, both Plaintiff and Defendants emphatically informed the Bankruptcy Court that they were ready for trial. (*See* Motion to Withdraw Reference at pp. 8-9.)  Furthermore, Plaintiff has requested in the Motion to Withdraw Reference that the District Court schedule a pre-trial conference and a trial date at the earliest opportunity.  (*See id.* at p. 16.)

Thus, the best way to materially advance the termination of this adversary proceeding is to expeditiously proceed with ***an actual jury trial*** before the District Court instead of potentially staying the litigation in order to allow Defendants to appeal an interlocutory order.  In fact, numerous courts have held that where discovery has been concluded and the parties are ready for trial, a request to pursue an interlocutory appeal should be denied.  *See, e.g.*, *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 212 (D.N.J.

1996); *Kennard v. United Parcel Serv., Inc.*, 531 F. Supp. 1139, 1149 (E.D. Mich. 1982) ("[D]iscovery has closed in this matter and the parties are currently preparing summary judgment motions and a final pretrial order.  This case could be tried in its entirety before appellate review of the proposed interlocutory appeal takes place.").

Although the proximity of this case to trial is determinative regarding this criterion, it is important not to forget the expense and delay attendant to ***any*** appeal before this Court.[9]  If leave to take an interlocutory appeal is granted, a meaningful appellate briefing schedule will have to be set.  Both sides will undoubtedly incur material costs preparing their appellate briefs and arguing the appeal.  During this very same period of time, however, the parties' resources and effort could be directed toward trying the case on the merits, the results of which trial could eliminate either party's desire to appeal and provide a forum in which any number of alleged errors could be addressed.  Defendants'

---

[9]  Additionally, it is unlikely that this dispute will stop at this Court if leave to appeal is granted.  Regardless of the result on appeal, it seems likely that the losing party will seek certification under 28 U.S.C. § 1292(b) or otherwise attempt to put the issue to the U.S. Court of Appeals for the Third Circuit.  While the disagreement between the parties may be the sort that ultimately must be resolved by the Third Circuit, it seems best to allow that lengthy and costly process to unfold ***after*** a verdict on the merits, rather than at this point in the case.

proposed alternative would merely complicate the litigation and waste the resources of both the Court and the parties.

Third, the specific issues presented by this would-be appeal are even less worthy than many other potential interlocutory issues (such as the denial of motions to dismiss or for summary judgment) insofar as a reversal here would not dispose of **even one** of Plaintiff's claims.  As explained by the Second Circuit, a determination of the parties' jury rights "merely prescribes the method of fact-finding to be applied to the underlying dispute; it obviously does not dispose of the dispute." *First Fid. Bank, N.A. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 837 (2d Cir. 1991).  In other words, the precise universe of issues will exit Credit Suisse's proposed appeal as entered it, and all those issues will still remain to be tried following the appeal; the sole effect of a reversal on appeal would be to shift the form of fact-finder from a jury to a bankruptcy judge.  Thus, the potential ramifications of this appeal (tabling, for the moment, the constitutional implications vis—a-vis Plaintiff) are of a notably lesser degree than those of other cases where leave has been granted.  *Cf. Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, No. M-47 (SAS), 2006 U.S. Dist. LEXIS 63223, at *37-38 (S.D.N.Y. Sept. 5, 2006) ("The third prong is easily met, because granting

leave to appeal both the subordination and disallowance opinions may result in the disposition of the Adversary Proceedings in their entirety. . . .  If both of these opinions are reversed, Enron's case may be dismissed.").

In the final analysis, it is very clear what will materially advance the resolution of this litigation: to promptly set a jury trial so that this case may proceed apace toward the entry of a final judgment on the merits.  Then, when that process is over, either party may appropriately raise whatever issues it wishes on appeal.  Critically, the jury trial required by the Jury Trial Opinion could occur during the exact same time-frame as Credit Suisse's proposed appellate briefing.  The intractable problems this fact presents for Defendants' position likely explains why they devote a mere two sentences of the Motion to developing the argument.  This tepid effort is not nearly enough to satisfy Defendants' affirmative burden on this element – which **must** be met in order to justify their requested relief – and this conclusion alone is sufficient reason to deny the Motion.

**D.    This Case Does Not Involve Any "Exceptional Circumstances" That Could Justify An Immediate And Premature Appeal.**

Defendants argue that "exceptional circumstances" exist to justify an immediate appeal because, if the Jury Trial Opinion is ultimately reversed on appeal, the parties

may have to incur the expenses of re-trying some things before the Bankruptcy Court.  (*See* Motion at pp. 15-16.)  Courts, however, universally reject this argument as a justification for an interlocutory appeal.  *See, e.g.*, *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 499 (1989) (declining "to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pretrial order"); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Midland Steel Prods. Co.*, 771 F. Supp. 860, 862 (N.D. Ohio 1991) (possibility that the parties may have to incur the expense of another trial is insufficient to justify an interlocutory appeal); *In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 473 (D. Del. 1989) (budgetary restriction of a party does not constitute exceptional circumstances to justify an interlocutory appeal), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). An interlocutory appeal simply is not a proper vehicle for an early review of the Jury Trial Opinion, and Defendants fail to cite any case law that supports their position.[10]

_____

[10] The solitary case Defendants cite – *Rafoth v. National Union Fire Insurance Co. (In re Baker & Getty Financial Services, Inc.)*, 954 F.2d 1169 (6th Cir. 1992) – involved a totally different issue and is not relevant here.  The underlying dispute in *Rafoth* related to the constitutional question of whether bankruptcy judges, as non-Article III courts, could constitutionally conduct jury trials.  This problem was resolved by Congress's codification of 28 U.S.C. § 157(e) in 1994, but was still an open and important issue when *Rafoth* was decided.  *See id.* at 1172 ("We have not decided whether bankruptcy courts may conduct jury

Other than the hypothetical costs of retrying some matters before the Bankruptcy Court, Defendants have offered no other example of "exceptional circumstances."[11]  In fact, there is nothing exceptional or extraordinary about the underlying adversary proceeding or about the Jury Trial Opinion.  Litigation against investment banks and/or financial advisory firms is hardly uncommon in the District of Delaware, and disputes over the right to a jury trial often arise in adversary proceedings relating to large chapter 11 bankruptcy cases.  In addition, Plaintiff's counterclaims against Credit

---

trials, and the three circuits which have decided this issue are split.").  The Sixth Circuit concluded that the resolution of this thorny issue of constitutional import merited interlocutory review, *see id.*, but its decision had nothing to do with whether any party actually had jury rights since it was clear **a jury trial would be conducted regardless of the court's ultimate conclusion** about whether that trial could be supervised by a bankruptcy judge or had to go to the district court.  *See id.* This is a very different issue than whether interlocutory relief ought to be based on Defendants' non-right to a non-jury trial.

[11]  Indeed, the facts that Defendants allege are "exceptional" – i.e., a corporate defendant, who has failed in its attempt to repudiate a plaintiff's constitutional right to a jury trial, raising the specter of rearguing that issue in a post-trial appeal – are a common occurrence in contentious litigation.  If such a scenario justifies interlocutory review **in this case**, then **every case** involving a similar set of facts would necessarily be an "exceptional" one.  Such a construct does extreme violence to the plain meaning of "exceptional."  *See, e.g.*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 791 (unabridged 2002) (defining "exceptional" as, among other things, "being out of the ordinary" and "uncommon, rare").  *Cf. United States v. Kramer*, 19 F. Supp. 2d 273, 282 n.12 (D.N.J. 1998) ("[I]f most settling parties nonetheless believe they are paying more than their fair shares, [defendant]land is a bit like Garrison Keillor's Lake Wobegon, 'where all the children are above average.'").

Suisse do not implicate fundamental human rights, risk irreparable injury, or carry the potential to undermine billion dollar markets. *Cf. Enron Corp. v. Springfield Assocs., L.L.C. (In re Enron Corp.)*, No. M-47 (SAS), 2006 U.S. Dist. LEXIS 63223, at *5 (S.D.N.Y. Sept. 5, 2006) (granting leave to appeal in part "because of the uncertainty that [the bankruptcy court's] rulings – if left undisturbed – would inject into the market for the sale of postpetition claims"). Instead, the adversary proceeding is mainly about monetary damages, and Plaintiff has a cardinal right to try three of its counterclaims to redress those damages before a jury.

Rather than providing an "exceptional" set of facts, the proceedings below and the Jury Trial Opinion represent what ought to be the norm under the pertinent authorities. Defendants failed to persuade the Bankruptcy Court otherwise, and their desire for a premature second bite at the apple before this Court does not come anywhere close to the standards required to justify interlocutory relief. *See, e.g.*, *Bowie Produce Co. v. Magic Am. Cafe, Inc. (In re Magic Rests., Inc.)*, 202 B.R. 24, 26 (D. Del. 1996) ("Although [a defendant] asserts that determining this issue now would save time and avoid having to resolve other factual and legal matters, [the defendant] has not sufficiently established an urgency that sets this case apart from the typical case.").

Finally, even Defendants are uncertain about whether their requested relief is justified.  Rather than allow the Motion to proceed in due course, Credit Suisse has mounted a thinly-disguised collateral attack on the Jury Trial Opinion.[12] Defendants' fear of a jury trial on the merits neither compels a premature appeal nor excuses an improper collateral attack.

### CONCLUSION

For the reasons and based on the authorities presented above, the Motion should be denied in its entirety.

Respectfully submitted,

Dated:  December 4, 2007
Wilmington, Delaware

/s/ *Marla Rosoff Eskin*
MARLA ROSOFF ESKIN (No. 2989)
KATHLEEN CAMPBELL DAVIS (No. 4229)
CAMPBELL & LEVINE, LLC
800 N. King Street, Suite 300
Wilmington, DE 19801
(302) 426-1900

-and-

TONY CASTAÑARES (CA SBN 47564)
STEPHAN M. RAY (CA SBN 89853)
SCOTT H. YUN (CA SBN 185190)
WHITMAN L. HOLT (CA SBN 238198)
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Fl.
Los Angeles, CA 90067
(310) 228-5600

Special Counsel for the
OHC Liquidation Trust

---

[12]  Plaintiff's forthcoming Reply Brief in support of the Motion to Withdraw Reference will detail the problems with this strategy.

# Exhibit "B"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
                              .
IN RE:                        .        Chapter 11
                              .
Oakwood Homes Corporation,    .
et al.,                       .
                              .
         Debtor(s).           .     Bankruptcy #02-13396(PJW)
...........................................................
                              .
OHC Liquidation Trust,        .
                              .
         Plaintiff,           .
                              .
         vs.                  .
                              .
Credit Suisse First Boston,   .
et al.,                       .
                              .
         Defendants.          .     Adversary #04-57060(PJW)
...........................................................
```

Wilmington, DE
October 4, 2007
9:30 a.m.

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE PETER J. WALSH
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For The OHC Liquidating          Marla Eskin, Esq.
Trust:                           Campbell & Levine, LLC
                                 800 N. King St.-Ste. 300
                                 Wilmington, DE 19801

                                 Anthony Castanares, Esq.
                                 Stutman, Treister & Glatt, P.C.
                                 1901 Avenue of the Stars
                                 12th Floor
                                 Los Angeles, CA 90067

2

```
                              Whitman Holt, Esq.
                              Stutman, Treister & Glatt, P.C.
                              1901 Avenue of the Stars
                              12th Floor
                              Los Angeles, CA 90067

        For Credit Suisse:    Russell C. Silberglied, Esq.
                              Richards Layton & Finger, P.A.
                              One Rodney Square
                              920 N. King St.
                              Wilmington, DE 19899

                              R. Paul Wickes, Esq.
                              Linklaters, LLP
                              1345 Avenue of the Americas
                              New York, NY 10105

                              Justin Williamson, Esq.
                              Linklaters, LLP
                              1345 Avenue of the Americas
                              New York, NY 10105

                              Michael Osnato, Esq.
                              Linklaters, LLP
                              1345 Avenue of the Americas
                              New York, NY 10105

        Audio Operator:       Leslie Murin

        Transcribing Firm:    Writer's Cramp, Inc.
                              6 Norton Rd.
                              Monmouth Jct., NJ 08852
                              732-329-0191


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
```

3

1            THE CLERK:  Please rise.

2            THE COURT:  Please be seated.  Ready to proceed?  What

3   is it, a status conference?

4            MR. CASTANARES:  Yes, Your Honor.

5            MS. ESKIN:  Good morning, Your Honor, Marla Eskin,

6   Campbell & Levine, for the OHC Liquidation Trust.  We're here

7   today for the status conference in OHC Liquidation Trust versus

8   CSFB, Adversary 04-57060.  Mr. Castanares will be addressing

9   the Court this morning.

10            THE COURT:  Okay.

11            MR. CASTANARES:  Thank you, Your Honor.  As the status

12   conference report states, Your Honor, I think we are pretty

13   close to ready in this case and the one -- there were two

14   issues that were left unresolved in the status conference

15   report.  Before I begin, I'd like to -- if the Court is not

16   familiar with Mr. Matt Kvarda of Alvarez & Marsal, the

17   Liquidation Trustee in the case, he's also present in the Court

18   today.

19            THE COURT:  Okay.

20            MR. CASTANARES:  One issue that was left -- stated to

21   be left unresolved in the status conference report was the

22   issue of expert discovery, and I'm happy to report to the Court

23   that seems to be resolved.  The Defendants have advised us that

24   they do not intend to submit a rebuttal witness, so the only

25   thing that really remains to be done is to conduct the

4

1   deposition of our expert witness who is the subject of Your

2   Honor's recent letter ruling.  The other side has requested

3   that that deposition occur on the 22nd of October, which is

4   acceptable to us, but our expert is out of the country at the

5   moment.  So I'm verifying that, and I expect to have an answer

6   for him by very early next week.  But I anticipate no problem.

7       And subject to the next thing I'm about to say, then, I

8   think the matter is entirely ready for trial.  The next thing

9   I'd like to say, though, is the question of a jury trial.  The

10  Plaintiff has demanded a jury trial in this case, and as the

11  status conference report states, Plaintiff is willing to

12  consent to the holding of such a jury trial in this Court.  At

13  least as of the moment, the Defendant is not.  So that means if

14  there's going to be a jury trial, it would have to occur in

15  District Court.

16      And we are aware, Your Honor, that there is an issue as to

17  whether we are entitled to a jury trial or not.  The Defendant

18  did file a Proof of Claim on this matter; nonetheless, many of

19  the claims that we assert in this case are not specifically

20  related to the allowance or disallowance of that Proof of Claim

21  but relate to conduct prior to the events that gave rise to

22  that Proof of Claim.  We believe that will give us a right to a

23  jury trial.  And we are prepared to brief that issue.

24      And if I may state what our preferences would be, Your

25  Honor, it would be to conduct a trial on the date now set for

5

1  trial, but I understand that if the matter has to go to

2  District Court, that isn't going to happen.

3      My second preference would be, given the fact that we

4  recognize that there is an issue as to whether we're entitled

5  to a jury trial, if it is -- if the Court could accommodate an

6  expedited briefing schedule, we'd be prepared to file an

7  opening brief on this almost -- today or tomorrow so that the

8  Court could resolve the issue of whether we're entitled to a

9  jury trial.  And if we don't prevail on that issue, it would

10 still be our preference to go to trial on the date now

11 scheduled in November, if that is possible and the Court can

12 accommodate it.

13     The only other thing -- I think that means, Your Honor,

14 that we're completely concluded on al discovery issues.  The

15 only really remaining issue is the jury trial, and then I think

16 there are a couple other housekeeping matters that the Court

17 might wish to consider and that is the submission of a pre-

18 trial order and the conduct of a pre-trial conference if the

19 Court desires a face-to-face conference.  And since the other

20 side has no experts, we don't anticipate making any Daubert

21 Motions, and I don't know whether they do or not, but it might

22 make some sense, if they plan to do so, to try to figure out

23 what a briefing schedule ought to be, given the current

24 schedule.  Thank you, Your Honor.

25     I would just say also on the jury trial issue, Your Honor,

6

1   I don't know whether the Defendant's changed position or not.

2   I do know that in early drafts of the status conference report

3   the Defendant had requested language to the effect that they

4   objected or denied our right to a jury trial.  They removed

5   that language from the copy that was submitted -- the final

6   version that was submitted to the Court.  I don't know whether

7   that indicated a change of position on that point on their part

8   or simply a change of language.  But in any case, we're

9   prepared to brief the issue instantly if the Court were to

10  accommodate it.  Thank you, Your Honor.

11          THE COURT:  Okay.

12          MR. WICKES:  Good morning, Your Honor, Paul Wickes for

13  the Defendants.  I agree, Your Honor, with Mr. Castanares to

14  the extent that he says that the case is essentially trial

15  ready.  We have had this trial date of November 5th set for

16  over a year and the parties have worked to resolve discovery

17  disputes and to complete discovery in anticipation of that

18  date.

19      I am frankly, Your Honor, baffled by the procedural stance

20  of the Plaintiffs at this point.  There has been no mystery, so

21  far as I know, ever since the Plaintiffs chose to file suit in

22  this Court that this Court cannot try a jury case.  Further, as

23  I understand it, the procedure, the proper procedure to resolve

24  that question would be for the Plaintiffs, if they wanted to

25  raise that issue, to move to withdraw the reference to the

7

1    District Court -- to move in the District Court to withdraw the

2    reference, arguing as a basis for that their entitlement to the

3    jury trial.  And it's in the context of such a motion, as I

4    understand the procedure, that we would address and resolve the

5    question of entitlement to a jury, which, so there be no doubt

6    about it, we contest.  We don't believe that there's a right to

7    a jury in this counter-claim against claims filed in the

8    Bankruptcy Court.

9        But I simply don't understand the proposition that we

10   should begin briefing in this Court on the question of whether

11   there's entitlement to a jury trial on the basis that if the

12   Plaintiff -- as I understand the procedure, if the Plaintiff

13   wants to raise that issue, they've had lots and lots and lots

14   of time to go to the District Court to assert the inability of

15   this Court to conduct a jury trial, to assert that as a grounds

16   for withdrawal of the reference and to have had that issue

17   resolved.

18       Now, I understand it's the preference in this District, as

19   many others -- as in many others for withdrawal of the

20   reference itself not to take place until the eve of trial; that

21   is, to let pre-trial proceedings take place in the Bankruptcy

22   Court.  But none of that is a reason why this issue could not

23   have been resolved well in advance.  To be frank, Your Honor, I

24   think this is a transparent attempt on the part of the

25   Plaintiffs to delay a trial in order to continue the pendency

8

1    of this litigation in the hopes of getting a settlement from

2    Credit Suisse.

3         The fact of the matter is that discovery has revealed that

4    this case is substantially without merit.  As discovery has

5    unfolded, of course, developments in the law in Delaware with

6    respect to the duty -- duties of directors with respect to

7    deepening insolvency have vitiated, if not eliminated

8    completely, some of the causes of action.

9         Your Honor may have -- may recall that when we were here a

10   year ago for a status conference you set a schedule for a

11   Summary Judgment Motion, which time has come and gone.  And you

12   may have noticed that we did not file a Summary Judgment

13   Motion.  The reason for that is we have a pending in this case

14   a kind of dog's breakfast of a complaint with 10 causes of

15   action -- or counter-claim, not a complaint -- 10 causes of

16   action, most of which have no vitality left at all as a result

17   of discovery.  And our view is that the most efficient way to

18   proceed was to keep ourselves focused on the November 5th trial

19   date that was set over a year ago, to get down to this

20   Courtroom and to let the Plaintiffs face the problem of having

21   to put witnesses on to try to prove their case, which I think

22   would bring things to a matter quickly -- to an end quickly.

23        I'm advised by our local counsel that if we were to have

24   proceedings before the District Court that it is likely, first

25   of all, that it would take many months to resolve, even a

9

1   Motion to Withdraw the Reference, and that if the reference

2   were withdrawn, it's unlikely that a trial of this length with

3   a jury would be able to be scheduled in the District Court for

4   at least a year.  So it's the strong preference of the

5   Defendants, Your Honor, to recognize that the case is trial

6   ready, that the Plaintiffs have simply waited too long to

7   attempt to take this case to a different Court and out of Your

8   Honor's hands, and to proceed forward towards that November 5th

9   date.

10       If, in the meantime, the Plaintiffs are able to get the

11  District Court's attention on some emergency basis and seek the

12  intervention of the District Court to withdraw the reference,

13  then we'll deal with those papers, and should it be taken out

14  of Your Honor's hands by November 5th, so be it.  But our

15  preference and we think the correct procedure at this point is

16  for us to focus on getting ready to hear the Plaintiffs attempt

17  to prove their case in this Court on the 5th of November.

18       THE COURT:  Let me ask you a question.  I don't think

19  I've ever addressed this issue.  Do I have authority to

20  determine whether a party is entitled to a jury trial --

21       MR. WICKES:  Your Honor --

22       THE COURT:  -- or can only the District Court do that?

23       MR. WICKES:  Your Honor, I think the answer to that is

24  no.  I think that for the same reasons that a jury trial cannot

25  be held in this Court, that the determination of right to a

1  jury trial or not must be made in the -- in an Article III

2  Court.  And I further think as a matter of procedure that it's

3  a motion properly addressed to the Court that would actually

4  try the case.  So I think it has to be resolved in connection

5  with and as part of the Motion to Withdraw the Reference.  I

6  think an opinion -- {cough} excuse me, an opinion by this Court

7  suggesting that the Plaintiffs were entitled to a jury trial

8  under these circumstances I think would simply be an advisory

9  opinion that the District Court would no doubt take under

10  consideration as part of its consideration of a Motion to

11  Withdraw the Reference.  But I don't think this Court can

12  decide that question.

13      And I have to say, I'm not sure that the Plaintiffs think

14  so either.  What they've said in their status conference report

15  is that they think that the District Court may remand the jury

16  question to this Court in connection with the filing of a

17  Motion to Withdraw the Reference.  But it seems to me it would

18  be very odd for us to proceed through a briefing process in

19  this Court on the jury trial question and then have to take

20  that question again to the District Court.  That seems to me

21  just to set the procedure on its head.

22          THE COURT:  Well, why don't we simply take the first

23  question of whether I have authority and then go from there.

24  If I conclude that I don't have the authority, then it seems to

25  me that Plaintiffs should file a Motion to Withdraw the

1  Reference.

2        MR. WICKES:  Your Honor, I think that's fine, and I

3  actually don't think there is a dispute between the parties as

4  to whether you have the authority.  There might be a dispute if

5  both parties consented, although as I understand it in this

6  District, the District Court has repeatedly said that in the

7  District of Delaware consent of the parties is not the issue,

8  that the Bankruptcy Court is not designated, to use the word of

9  the statue, to --

10        THE COURT:  That's correct.

11        MR. WICKES:  -- conduct a jury trial.  So I don't

12  think there's any issue about that.  And therefore, the issue

13  is if -- are they entitled to a jury trial, and if so, does the

14  District Court want to withdraw the reference.  But I think, to

15  be frank, and meaning no disrespect, I think that's a question

16  that belongs across the street.

17        MR. CASTANARES:  May Mr. Holt address the Court on

18  this point?

19        THE COURT:  Yes.

20        MR. HOLT:  Good morning, Your Honor.  We think it's

21  clear that -- the notion that the District Court would remand

22  the predicate question of whether or not we had a right to a

23  jury trial is not just speculative that we think that that

24  might occur.  There are actual instances in which that

25  occurred.  We point to the case of <u>Official Committee of</u>

1  Unsecured Creditors versus TSG Equity Fund, In Re: Invidranet

2  Computer Services, which the published cite for that is 276

3  Bankruptcy Reporter 1 in which this is specific issue arose, a

4  party moved to withdraw the reference on the sole grounds that

5  there was a right to a jury trial.  And in the District Court,

6  the District of Maine said, you know, this is an interesting

7  debate but this is not an issue that we can resolve, this is an

8  issue that the Bankruptcy Court should resolve in the first

9  instance.  So your motion's not ripe until the predicate

10  question is resolved by the Bankruptcy Judge.  The specific

11  holding of that case was to remand the matter back to the

12  Bankruptcy Judge so the Bankruptcy Judge could determine the

13  right -- parties' rights to a jury trial, and then based upon

14  that decision the Plaintiff could decide whether or not to

15  withdraw the reference.

16      Similarly in Capital Associates, Incorporated versus Bank

17  One Leasing Corp., which is an unpublished case for the

18  Bankruptcy Court for the Northern District of Texas, the same

19  issue was raised.  And there I forget which particular

20  Bankruptcy Judge it was, but the Bankruptcy Judge clearly

21  stated that, {quote} "The Bankruptcy Court determines in the

22  first instance whether the parties to an adversary proceeding

23  are entitled to trial by jury."  So we think there's clearly

24  case law in support of the proposition that you're -- you're

25  the proper decider in this case.

13

1        And moreover, Your Honor, that clearly would be the case

2    if, for example, Credit Suisse had moved to strike our demand

3    for a jury trial.  The Trust demanded a jury trial on the base

4    page of the complaint.  The issue's been out there for nearly 3

5    years, and at any point, if they disagreed with that issue,

6    they could have moved to strike and clearly Your Honor would

7    have been the proper party to decide that motion.  That never -

8    - it's inconceivable that a Motion to Strike our jury demand

9    would have been kicked up to the District Court.

10        And indeed, there's a decision Your Honor's written, I

11   forget the specific name of the case at this point, where the

12   Debtor moved to strike the jury demand of a Creditor that had

13   filed a Proof of Claim and was seeking to withdraw the Proof of

14   Claim, and Your Honor wrote a published decision saying that

15   the Creditor could not withdraw its Proof of Claim in order to

16   avoid the fact that it had waived its right to a jury trial by

17   filing a Proof of Claim.  So clearly that, again, is another

18   instance where this specific Court has decided and addressed

19   the predicate question of the parties' rights to a jury trial.

20        In some sense, Your Honor, I think it can be compared to

21   the core/non-core distinction.  If we, for example, moved to

22   withdraw the reference on the grounds that this was a non-core

23   dispute, that clearly would be an issue that the District Court

24   would remand back down to this Court for a determination, and

25   then based upon what this Court would do, that either would or

14

1  would not be grounds for withdrawal of the reference.  And we

2  think this jury trial question is precisely the same sort of

3  dispute, and we think there's ample case law to support that

4  which we'd be perfectly happy to submit to this Court.  Thank

5  you.

6          THE COURT:  You believe otherwise?  Do you have any

7  authority?

8          MR. WICKES:  Your Honor, the authority is simple.  In

9  28 United States Code Section 157(e) the statute provides that

10  if there is a right to a jury trial in a proceeding that may be

11  heard by a Bankruptcy Judge, the Bankruptcy Judge may conduct

12  the jury trial if specially designated to exercise such

13  jurisdiction by the District Court and with the express consent

14  of the parties.

15      We had -- having been sued in this Court, we had no need

16  to move to strike a jury demand that was simply surplus ink on

17  a page, given that absent a designation by the District Court

18  this Court simply cannot try a jury case.  And therefore the

19  burden should have been -- was on the Plaintiffs to do

20  something if they actually seriously wanted a jury trial.

21      In the cases that Mr. Holt cites, it is true that in the

22  District of Maine and the Northern District of Texas this

23  question has been sent back to the Bankruptcy Court by the

24  District Court in connection with a motion of the sort we're

25  contemplating here.  But what I think is important about that

15

1  is precisely that it was in those cases the District Court that

2  said in connection with a Motion to Withdraw the Reference you

3  go back down to the Bankruptcy Court and work out this jury

4  trial issue.  If the District Court were to want to do that in

5  this case, we can deal with that at the time.  But to be frank,

6  Your Honor, it seems to me it would be presumptuous of this

7  Court to be telling the District Court where the case would

8  eventually have to heard if there were a jury trial whether or

9  not there is a jury trial right.

10      So I think the procedure that needs to be followed here --

11  and it's too bad that it comes at this late date, but the

12  procedure that needs to be followed is that the Plaintiffs need

13  to ask the District Court to withdraw the reference on the

14  grounds that they're entitled to a jury trial.  In connection

15  with that motion, we can explain all the reasons why we think

16  there is no such entitlement and the District Court can decide

17  whether or not to seek to have this Court deal with some part

18  of that issue.  But this is a classic District Court issue

19  having to do with the District Court's management of its cases

20  and its decisions as to whether or not there is a jury trial

21  entitlement.  And I don't think we have any choice but for the

22  Plaintiffs, if they wish to raise this issue at this time, to

23  go to the District Court to do it.

24          THE COURT:  Well, let's take it one step at a time,

25  and I want you both in writing to address the issue of whether

16

1    I have authority to decide the jury trial issue.  And then

2    we'll go from there.  And I think we can do this on an

3    expedited basis.  I'll ask the Plaintiff to submit their

4    statement first and then the Defendants can respond, and I

5    think I can address that issue in short order, possibly in

6    consultation with the District Court Chief Judge.

7         MR. CASTANARES:  Your Honor, we have a brief that

8    address both that issue and the merits of the subject of

9    whether we have a right to a jury trial.  We'd be prepared to

10   file it in that form today or tomorrow at the very latest.  But

11   it addresses both the question of whether Your Honor has

12   authority as -- based upon what Mr. Holt just argued, and it

13   also addresses the merits of the question of whether we have a

14   right to a jury trial.  And I would suspect that if the Court

15   were to determine that this Court does have authority to decide

16   the underlying issue of whether there's a right to a jury

17   trial, it would be in the interest of the expedition of the

18   decision and preserving our existing trial date if the Court

19   decides it adversely to us, which is strongly our interest,

20   that we address the merits of the issue as well.  So if the

21   Court would accept a brief that addresses both the subject of

22   whether Your Honor can decide the issue and the merits of the

23   issue, we're prepared to file that right away and that will get

24   the ball rolling.

25         THE COURT:  Okay, let's do it that way.

17

```
 1          MR. CASTANARES:  Okay.  We'll get -- would it be
 2   satisfactory to get that on file by tomorrow, Your Honor?
 3          THE COURT:  That's fine.
 4          MR. CASTANARES:  Okay.  And then whatever briefing
 5   schedule is acceptable to the Court and the Defendants is
 6   acceptable to us as well.
 7          MR. WICKES:  If it's acceptable to the Court, Your
 8   Honor, we'll respond to that by a week from tomorrow.
 9          THE COURT:  Okay.
10          MR. CASTANARES:  Your Honor, if we could have perhaps
11   until the middle of the following week, let's say the
12   Wednesday, in order to respond to -- to file a closing?
13          THE COURT:  Okay.
14          MR. CASTANARES:  Thank you, Your Honor.  And Your
15   Honor, I just want to dispel one thing.  My interest -- I
16   represent the Plaintiff here.  My interest is to get to trial
17   yesterday if I can, and I've heard Mr. Wickes suggest that this
18   is some sort of effort to delay the trial.  That is, in fact,
19   the last thing we want.  And I'm very hopeful that in the event
20   that the Court rules against us on the jury trial issue that we
21   actually do get to trial here on the 5th of November.  But I
22   recognize that if the Court rules for us on that issue that it
23   will involve a delay.  Our client strongly want to have a jury
24   trial in this matter if that's possible, so that is why we are
25   where we are.
```

1          THE COURT:  Well, we're certainly going to be bumping

2    up against the trial date of November 5 in addressing this

3    preliminary issue.  If it becomes impractical to start on

4    November 5, I'm reasonably certain -- and I have 5 days.  Is it

5    going to take 5 days?

6          MR. CASTANARES:  I think it will, Your Honor.

7          THE COURT:  I think I can move things around in my

8    calendar to make it later in November or early in December.

9          MR. CASTANARES:  Any day that's -- oh, I'm sorry, yes.

10   I'm advised to speak at the podium, Your Honor, excuse me.

11   That's certainly acceptable to us, Your Honor, and we

12   appreciate the Court's ability to accommodate us.

13         THE COURT:  Okay.  When these statements are filed,

14   make sure you send me a Chambers copy so I can maybe even start

15   looking at it before your briefing is completed on the issue.

16   Okay, is there anything else we should cover?

17         MR. CASTANARES:  Your Honor, I think since we're all

18   here and I think things are done better in person if we can,

19   it might make some sense to discuss the issue of a pre-trial

20   issue or a pre-trial conference if the Court wants a personal

21   appearance type Court -- pre-trial conference.  And also the

22   issue of if the Defendant is going to make Daubert Motions

23   maybe to try to agree upon a briefing schedule for those.

24         THE COURT:  Okay.  I typically have a pre-trial

25   conference about a week before the trial and a pre-trial order

19

1  several days before that conference.

2          MR. CASTANARES:  That's certainly fine with us, Your

3  Honor.

4          THE COURT:  And so why don't we simply -- why don't we

5  set that up for -- let's see, how about a pre-trial conference

6  October 31 and a pre-trial order by October 26?  The conference

7  on the 31st can be at, let's say -- how about 11:30?

8          MR. CASTANARES:  Thank you, Your Honor.

9          THE COURT:  Okay, anything else?

10          MR. CASTANARES:  Just if there are going to be Daubert

11  Motions, Your Honor, can we agree upon a --

12          THE COURT:  Same time.  Filed by the 26th.

13          MR. CASTANARES:  Okay, thank you, Your Honor.

14          MS. ESKIN:  Your Honor, counsel for Plaintiff will

15  submit a certification of counsel with an order with these

16  dates.

17          THE COURT:  Okay.  All right, we stand in recess.

18      (Court adjourned)

19

20                      CERTIFICATION
21  I certify that the foregoing is a correct transcript from the
22  electronic sound recording of the proceedings in the above-
23  entitled matter.
24
25  *Lewis Parham*                        11/2/07
26  _____      _____
27  Signature of Transcriber                 Date

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oakwood Homes Corporation, et al., | ) | Case No. 02-13396 (PJW) |
| | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| ——————————————— | ) | |
| OHC Liquidation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 04-57060 (PJW) |
| | ) | |
| Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Case No. 07-00799 |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

## CERTIFICATE OF SERVICE

I, Kathryn S. Keller, of Campbell & Levine, LLC, hereby certify that on December 10, 2007, I caused a copy of the *Declaration of Whitman L. Holt in Support of the Reply Brief in Support of the Plaintiff's Motion to Withdraw the Reference and to Set Dates for a Pre-Trial Conference and Jury Trial Before the District Court,* to be served upon the individuals listed below via the method indicated.

| | |
|---|---|
| Lee E. Kaufman, Esq.<br>Russell C. Silberglied, Esq.<br>Richards, Layton & Finger,<br>P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>**VIA HAND DELIVERY** | Mary K. Warren, Esq.<br>Michael Osnato, Esq.<br>J. Justin Williamson, Esq.<br>Paul R. Wickes, Esq.<br>Linklaters<br>1345 Avenue of the Americas<br>Nineteenth Floor<br>New York, NY 10105<br>**VIA FEDERAL EXPRESS** |

Dated: December 10, 2007     CAMPBELL & LEVINE, LLC


*/s/ Kathryn S. Keller*
Marla Rosoff Eskin (No. 2989)
Kathryn S. Keller (No. 4660)
800 N. King Street, Suite 300
Wilmington, DE 19801
(302) 426-1900