**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br>Oakwood Homes Corporation,<br>et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 02-13396 (PJW)<br><br>Jointly Administered |
| OHC Liquidation Trust,<br><br>Plaintiff,<br><br>v.<br><br>Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100,<br><br>Defendants. | Adv. Proc. No. 04-57060 (PJW)<br><br>Civil Action No. 07-799 (JJF) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE
PLAINTIFF'S JURY TRIAL DEMAND**

Of Counsel:
R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson
LINKLATERS
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9000

Dated: February 6, 2008

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

NATURE AND STAGE OF PROCEEDINGS ......................................................................... 2

STATEMENT OF FACTS .................................................................................................. 2

    A.    The Proof of Claim and the Objection
            and Counterclaims ............................................................................... 2

    B.    The Damages Disclosures .................................................................... 4

    C.    Proceedings Before the Bankruptcy Court ............................................ 5

ARGUMENT ................................................................................................................. 7

I.    THE COURT SHOULD STRIKE PLAINTIFF'S JURY TRIAL DEMAND ...................... 7

    A.    Plaintiff is Not Entitled to a Jury Trial on Any Claim ............................ 7

          1.    The Trust's Adversary Proceeding is Part and Parcel of the
                Claims Allowances Process ......................................................... 8

          2.    None of the Plaintiff's Claims Give Rise to a Jury Trial ............... 13

    B.    Plaintiff Has Waived All Jury Trial Rights ........................................... 18

          1.    Plaintiff Waived Any Jury Trial Rights by Filing This
                Proceeding Before the Bankruptcy Court .................................... 18

          2.    Plaintiff Has Waived Its Jury Trial Rights by Contract ............... 20

CONCLUSION .............................................................................................................. 23

## TABLE OF AUTHORITIES

**Page**

### CASES

Andrews v. AmSouth Bank (In re Andrews),
No. 06-40016, 2007 WL 2819523 (Bankr. N.D. Ala. Sept. 26, 2007) ...............................19

Baltimore & Carolina Line, Inc. v. Redman,
295 U.S. 654 (1935) ...............................................................................................................7

Billing v. Ravin, Greenberg & Zackin P.A.,
22 F.3d 1242 (3d Cir. 1994) .............................................................................................8, 10

Cantor v. Perelman,
No. Civ. A. 97-586-KAJ, 2006 WL 318666 (D. Del Feb. 10, 2006) ...................14, 15, 16

Citicorp N. Am. v. Finley (In re Wash. Mfg. Co.),
133 B.R. 113 (M.D. Tenn. 1991) .........................................................................................9

Clark v. Teeven Holding Co., Inc.,
625 A.2d 869 (Del. Ch.1992) .............................................................................................14

Dairy Queen, Inc. v. Wood,
369 U.S. 469 (1962) ............................................................................................................16

Dimitri v. Granville Semmes,
Civ. No. 00-2448, 2000 WL 1843495 (E.D. La. Dec. 14, 2000) .......................................20

Doyle v. Mellon Bank Nat'l Ass'n (In re Globe Parcel Serv., Inc.),
75 B.R. 381 (E.D. Pa. 1987) ..............................................................................................14

EXDS, Inc. v. RK Elec., Inc. (In re EXDS, Inc.),
301 B.R. 436 (Bankr. D. Del. 2003) ..............................................................................12, 13

In re Evangelist,
760 F.2d 27 (1st Cir. 1985) .................................................................................................13

Frost, Inc. v. Miller, Canfield, Paddock & Stone (In re Frost),
145 B.R. 878 (Bankr. W.D. Mich. 1992) ..............................................................................9

Germain v. Conn. Nat'l Bank,
988 F.2d 1323 (2d Cir. 1993) ..................................................................................10, 11, 19

Granfinanciera, S.A. v. Nordberg,
492 U.S. 33 (1989) ..........................................................................................................7, 8, 9

Haile Co. v. R.J. Reynolds Tobacco Co. (In re Haile Co.),
132 B.R. 979 (Bankr. S.D. Ga. 1991) .............................................................19, 20

Harman v. Masoneilan Int'l, Inc.,
442 A.2d 487 (Del. Sup. Ct. 1982) ..............................................................14

Hays v. Equitex, Inc. (In re RDM Sports Group),
260 B.R. 915 (Bankr. N.D. Ga. 2001) ..........................................................11

Hopkins v. Pusey,
475 F. Supp. 2d 479 (D. Del. 2007)..............................................................17

In re Jensen,
946 F.2d 369 (5th Cir. 1991) .......................................................................19

Katchen v. Landy,
382 U.S. 323 (1966)......................................................................................9

Langenkamp v. Culp,
498 U.S. 42 (1990).......................................................................................9

Longo v. McLaren (In re McLaren),
3 F.3d 958 (6th Cir. 1993) ...........................................................................19

Markman v. Westview Instruments, Inc.,
517 U.S. 370 (1996).....................................................................................7

NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.),
203 B.R. 905 (D. Del. 1996).........................................................................19

N.I.S. Corp v. Hallahan (In re Hallahan),
936 F.2d 1496 (7th Cir. 1991) .....................................................................19

Official Comm. of Unsecured Creditors of Integrated Health Servs. v. Elkins (In re
Integrated Health Servs.), 291 B.R. 615 (Bankr. D. Del. 2003) ......................6

Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark
(In re Nat'l Forge Co.), 326 B.R. 532 (W.D.Pa. 2005) ..................................7

Omnicare, Inc. v. NCS Healthcare, Inc.,
809 A.2d 1163 (Del. Ch. 2002).....................................................................14

Parrot v. Wells, Fargo & Co. (The Nitro-Glycerine Case),
82 U.S. 524 (1872).......................................................................................17

Parsons v. United States (In re Parsons),
153 B.R. 585 (M.D. Fla. 1993) .................................................................................20

Pereira v. Farace,
413 F.3d 330 (2d Cir. 2005).....................................................................................15

Schubert v. Lucent Techs., Inc. (In re Winstar Commc'ns, Inc.),
Civ. No. 04-928 (JJF) 2004 WL 2713101 (D. Del. Nov. 16, 2004) ...........................9

Schwartz v. Prudential Ins. Co. of Am. (In re Kridlow),
No. 97-35168DAS, 1999 WL 97939 (Bankr. E.D. Pa. Feb. 19, 1999) .................18, 19

Stalford v. Blue Mack Transp. (In re Lands End Leasing, Inc.),
193 B.R. 426 (Bankr. D. N.J. 1996) ......................................................................13, 14

Telum, Inc. v. E.F. Hutton Credit Corp.,
859 F.2d 835 (10th Cir. 1988) ..............................................................................20, 21

Tracinda Corp. v. DaimlerChrysler AG (In re DaimlerChrysler AG Sec. Litig.),
Civ. No. A 00-993-JJF, 2003 WL 22769051 (D. Del. Nov. 19, 2003), aff'd,
502 F.3d 212 (3d Cir. 2007)....................................................................................20

WSC, Inc. v. Home Depot, Inc. (In re WSC, Inc.),
286 B.R. 321 (Bankr. M.D. Tenn. 2002) .................................................................11

Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson),
5 F.3d 750 (4th Cir. 1993) ......................................................................................13

## STATUTES & RULES

Fed. R. Bankr. P. 9015(a) .........................................................................................7

Fed. R. Civ. P. 38(a) .................................................................................................7

Fed. R. Civ. P. 39(a)(2).............................................................................................7

iv

Defendants Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.) (collectively, "Defendants" or "Credit Suisse"), respectfully submit this Memorandum of Law in Support of Defendants' Motion to Strike Plaintiff's Jury Trial Demand.

## INTRODUCTION AND SUMMARY OF ARGUMENT

More than three years ago, Plaintiff commenced this adversary proceeding by filing an Objection and Counterclaims in the Bankruptcy Court (the "Adversary Proceeding"), a court which as a matter of law in this District may not conduct jury trials. The Objection and Counterclaims was unambiguous in the relief it sought: disallowance or equitable subordination of proofs of claim filed by a Credit Suisse Defendant based on certain alleged counterclaims on which the Trust also sought damages. The import of Plaintiff's choice of forum and action is clear. Plaintiff submitted all its claims, as the basis for disallowance or equitable subordination of the Credit Suisse proofs of claim, to the equitable jurisdiction of the claims allowance process in the Bankruptcy Court. From day one, there has never been a jury trial right in this action.

After almost three years of fact and expert discovery in the Bankruptcy Court, faced with bad facts and an impending bench trial date, Plaintiff recollected its supposed right to a jury just in time to avert adjudication by Judge Walsh. As a pure matter of litigation tactics, Plaintiff walked away from the Objection and Counterclaims it filed and recharacterized its case as two different actions: affirmative claims and the objection to the proof of claim, the former supposedly carrying a right to a jury, and the latter admittedly not. Now the case is before this

1

Court, which should reject Plaintiff's wholesale recasting of its own pleadings, which, not incidentally, Plaintiff has never moved to amend.

Separate and apart from Plaintiff's submission of this dispute to the claims allowance process, Plaintiff's jury trial demand is fatally flawed for other equally dispositive reasons: (i) the Trust's counterclaims involve a mixture of legal and equitable claims and remedies; (ii) Plaintiff voluntarily chose to commence this Adversary Proceeding in the Bankruptcy Court, a forum that cannot hold jury trials; and (iii) Plaintiff is bound by an express contractual jury trial waiver that applies to this action. Each of these factors independently forecloses a jury trial in this action. The Court should therefore strike Plaintiff's jury trial demand and hold a bench trial in this Court.

## NATURE AND STAGE OF PROCEEDINGS

This Adversary Proceeding was commenced in November 2004 by the filing of the Objection and Counterclaims with the Bankruptcy Court. (Adv. Proc. D.I. No. 1.) Motion practice and discovery proceeded before the Bankruptcy Court over the course of the following three years. On December 7, 2007, Plaintiff filed a Motion to Withdraw the Reference. (Civ. D.I. No. 1.) Following briefing on the Motion to Withdraw the Reference and a status conference before this Court on January 22, 2008, the Court issued an order withdrawing the reference of this Adversary Proceeding to the Bankruptcy Court on the basis of judicial economy. (Civ. D.I. No. 23.) The present motion by Defendants respectfully requests that the Court strike Plaintiff's jury trial demand.

## STATEMENT OF FACTS

### A.    The Proof of Claim and the Objection and Counterclaims

Defendant Credit Suisse Securities (USA), LLC ("CSS") filed four identical proofs of claim in the Oakwood Homes Corporation bankruptcy proceeding (the "Proof of

2

Claim").[1]   The Proof of Claim sought payment of fees and expenses under an agreement between CSS and Oakwood Homes that was executed on August 19, 2002 (the "Financial Advisory Agreement").

On November 15, 2004, the Trust filed an Objection to the Proof of Claim and Counterclaims for (1) Breach of Fiduciary Duty; (2) Negligence; (3) Unjust Enrichment; (4) Equitable Subordination; (5) Avoidance and Recovery of 90 Day Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550; (6) Avoidance and Recovery of One Year Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550; (7) Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548 and 550; (8) Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544 and 550 and Applicable State Law; (9) Breach of Implied and Express Contract; and (10) Deepening Insolvency (the "Objection and Counterclaims"). (Murphy Decl. Ex. B., hereinafter cited as "Objection/Counterclaims ¶ __ or at __.".)

The Objection and Counterclaims sought recovery of almost $600 million in alleged preferential payments and fraudulent transfers, and sought disallowance or equitable subordination of CSS's claims.

The Objection and Counterclaims specified the relief sought as: (A) "For disallowance in its entirety of the [Credit Suisse] Claims"; (B) "That [Credit Suisse's] Claims be subordinated for all purposes to the claims of all other creditors in the Bankruptcy Case"; (C) "Disgorgement of all fees, sums, payments to [Credit Suisse] and any profits derived unjustly thereon by all the Oakwood Companies"; and (D) "[D]amages according to proof"; as well as avoidance of certain alleged preferential and fraudulent transfers. (Objection/Counterclaims at 36-37.)  With the exception of the breach of express contract and equitable subordination claims,

---

[1]     Exhibit A to the Declaration of Brendan J. Murphy filed herewith (hereinafter cited "Murphy Decl. Ex. __.").

all counterclaims are asserted against all Defendants, and all Defendants are alleged to be one unitary organization operating under the moniker "CSFB" (now Credit Suisse).

(Objection/Counterclaims ¶¶ 10-11.)

## B.    The Damages Disclosures

On May 1, 2006, pursuant to an order of the Bankruptcy Court, the Trust served a supplemental damages disclosure pursuant to Federal Rule 26(a)(1). With respect to its fiduciary duty claim, the Trust asserted it was "entitled to recover from [Credit Suisse] all fees and other remuneration paid to [Credit Suisse] and to recover actual and consequential damages" and listed millions of dollars worth of fees paid to Credit Suisse, including fees associated with a loan assumption program, fees paid in order to maintain a loan purchase facility, the fees and costs of securitizations, among others. (Murphy Decl. Ex. C at 4-6.)

With respect to damages associated with its claim for negligence, the Trust stated:

> Damages for this Counterclaim are substantially similar to the damages sought for breach of fiduciary duty, which are discussed above. The same facts that support the breach of fiduciary Counterclaim may support this Counterclaim. Nevertheless, this Counterclaim is a separate Cause of Action on which the Trust may recover damages.

(Murphy Decl. Ex. C at 6.)

With respect to the breach of implied contract claim, the Trust stated:

> The Trust asserts that well before the date of its written contract, CSFB acted as the financial advisor to the Debtors. The damages for breaching this implied contract include consequential damages suffered by the Debtors as a result of CSFB's failure to advise the Debtors to stop the asset-backed securitizations, which did not benefit the Debtors but only deepened their insolvency. The amount sought for CSFB's breach of the implied contract is substantially similar to the damage calculation for the Tenth Counterclaim (i.e., Deepening Insolvency), which is discussed below.

(Murphy Decl. Ex. C at 8.)

4

## C.    Proceedings Before the Bankruptcy Court

Following the filing of the Objection and Counterclaims, Defendants moved to dismiss the case. (Adv. Proc. D.I. No. 22.)  The Bankruptcy Court denied Defendants' motion. (Adv. Proc. D.I. No. 128.)  Shortly after the Bankruptcy Court's denial of Defendants' motion to dismiss, the Court entered a Scheduling Order (Adv. Proc. D.I. No. 42) to govern certain fact discovery issues.  The Scheduling Order provided that fact discovery would begin in August 2005 and conclude in November 2006.  Over the ensuing year, the parties substantially complied with the Scheduling Order, completing the majority of fact discovery by November 2006.  Even after the close of discovery, Plaintiff never sought leave to amend the Objection and Counterclaims.

At a status conference on September 25, 2006, Plaintiff requested that the Bankruptcy Court set a date for trial.  (Murphy Decl. Ex. D at 33-34.)  Plaintiff did not raise the issue of a jury trial, but rather represented to the Bankruptcy Court that the need to set a trial date well in advance was driven by Plaintiff's counsel's need to schedule non-party witnesses' appearance for the trial.  The Bankruptcy Court scheduled the trial for approximately one year later, the week of November 5, 2007, with a status conference to be held on September 25, 2007 (id. at 35-36) (which was subsequently rescheduled to October 4, 2007 (Adv. Proc. D.I. No. 193)).  The Bankruptcy Court also approved a new schedule for completion of expert discovery and the filing of summary judgment motions before the bench trial was to commence. (Adv. Proc. D.I. No. 200.)

A year later, in connection with the October 4, 2007 status conference, the parties submitted a joint status conference report to the Bankruptcy Court.  In that report, literally 30 days before the scheduled bench trial, Plaintiff announced that it intended to demand a jury trial

5

and acknowledged that a jury trial could not be held in the Bankruptcy Court. (Adv. Proc. D.I.
No. 195.) Defendants argued in response that Plaintiff did not have a right to a jury trial on any
of its claims, and in any event, the Bankruptcy Court — Plaintiff's chosen forum — could not
conduct jury trials because the Bankruptcy Court has not been specially designated to conduct
jury trials by the District Court. (Murphy Decl. Ex. E at 2-3; Ex. K at 6-9)

All parties and the Bankruptcy Court recognized and acknowledged that the
consequence of any jury trial right was the need for Plaintiff to move for withdrawal of the
reference. (See id. at 3.)

At the October 4 status conference the Bankruptcy Court requested expedited
briefing on Plaintiff's right to a jury trial. Briefing was completed on October 17, 2007. (Adv.
Proc. D.I. Nos. 198, 201, 203.) On October 25, 2007, the Bankruptcy Court held a telephonic
conference at which Judge Walsh informed the parties of his intention to rule that Plaintiff was
entitled to a jury trial on certain claims.

Following the telephonic conference, the parties stipulated that pretrial deadlines
in the Bankruptcy Court were suspended as a result of the ruling and the required future
proceedings before the District Court. Consequently, no pre-trial order was ever filed.

On November 15, 2007, the Bankruptcy Court issued a Decision & Order
concerning the jury trial issue.[2] (Adv. Proc. D.I. No. 207, 208; Murphy Decl. Exs. F, G.)

---

[2]     Plaintiff has suggested in correspondence with the Court that the Bankruptcy Court's
Decision and Order concerning jury trial rights is somehow binding on this Court. Plaintiff is
wrong. While the reference of Chapter 11 and related cases in this District has been made to the
Bankruptcy Court, the District Court has not specially designated the Bankruptcy Court to
conduct jury trials. See Official Comm. of Unsecured Creditors of Integrated Health Servs. v.
Elkins (In re Integrated Health Servs.), 291 B.R. 615, 622 (Bankr. D. Del. 2003) ("In this
District, the Bankruptcy Judges have not been specially designated by the District Court to
conduct a jury trial. Therefore, even if the parties consent, we may not conduct a jury trial.")
Because the Bankruptcy Court has no authority over jury trials and matters related thereto, the

**ARGUMENT**

Federal Rule of Civil Procedure 38(a) provides that the "right of trial by jury as declared by the Seventh Amendment to the Constitution . . . is preserved to the parties inviolate." Federal Rule 39(a)(2) further provides that when a proper demand has been made, a jury trial shall occur on all issues so demanded unless "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial."[3] As explained below, Plaintiff is not entitled to a jury trial on any claim in this action as a matter of law.

## I.    THE COURT SHOULD STRIKE PLAINTIFF'S JURY TRIAL DEMAND

### A.    Plaintiff is Not Entitled to a Jury Trial on Any Claim

The Seventh Amendment preserves the right to a jury trial as it "existed under the English common law when the Amendment was adopted." Markman v. Westview Instruments, Inc., 517 U.S. 370, 376 (1996) (quoting Baltimore & Carolina Line, Inc. v. Redman, 295 U.S. 654, 657 (1935)). In the bankruptcy context, the right to a jury trial must be determined through two primary inquiries: (i) whether the claims and remedies sought are legal or equitable in nature; and (ii) whether Congress may or has assigned resolution of the relevant claim to a non-Article III court that does not use a jury as a fact finder. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989). Plaintiff's demand for a jury trial in this action fails on both accounts.

First, irrespective of whether Plaintiff's claims are legal or equitable, all of Plaintiff's claims were pleaded as the basis for an objection to, and equitable subordination of,

---

Bankruptcy Court cannot be the final arbiter of who has the right to a jury trial. In any event, the District Court has the inherent power pursuant to its original jurisdiction to revisit any such issue de novo following withdrawal of the reference. Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.), 326 B.R. 532, 541 (W.D.Pa. 2005) (concluding district court, following withdrawal of the reference, may reconsider bankruptcy court's interlocutory orders in exercise of its inherent power to reconsider interlocutory orders).

[3]    Federal Rule of Bankruptcy Procedure 9015(a) provides that Rules 38 and 39 of the Federal Rules of Civil Procedure apply in cases and proceedings in the Bankruptcy Court.

7

the Proof of Claim. In order to avoid having to put on its case before a judge, Plaintiff belatedly

disavowed the Objection and Counterclaims it filed and attempted to recast its claims in an

entirely new, "legal" light. The Court should reject this tactic, as the operative pleading in this

action is the Objection and Counterclaims, not Plaintiff's self-serving description of its

substance. Second, even if Plaintiff were permitted to recharacterize this action, the claims on

which Plaintiff demands a jury trial are equitable in nature and are not entitled to a jury trial.

### 1.    The Trust's Adversary Proceeding is Part and Parcel of the Claims Allowance Process

Plaintiff's decision to assert counterclaims as the underlying basis for

disallowance and equitable subordination of the Proof of Claim forecloses the existence of a jury

trial right in this case. The Supreme Court has recognized that certain matters which might have

carried entitlement to a jury can still be "assigned" by Congress to a non-Article III court for

resolution without a jury as, for instance, when they must be resolved as part of the "core"

bankruptcy functions. Granfinanciera, S.A., 492 U.S. at 42.

Granfinanciera's limitation on the right to a jury trial in the bankruptcy context

"has [typically arisen] in connection with a creditor's demands for a jury trial in actions brought

by the trustee in bankruptcy." Billing v. Ravin, Greenberg & Zackin P.A., 22 F.3d 1242, 1247

(3d Cir. 1994). When a cause of action "falls within the process of the allowance and

disallowance of claims," neither the debtor's estate nor the defendant has a Seventh Amendment

right to trial by jury "because [the] claim has been converted from a legal one into an equitable

dispute over a share of the estate." Billing v. Ravin, Greenberg & Zackin P.A., 22 F.3d 1242,

1253 (3d Cir. 1994). From this general principle, courts have concluded that counterclaims filed

by a liquidation trust in response to a proof of claim that affect the allowance of a proof of claim

are inextricably linked to the claims allowance process, and are therefore subject to the

8

bankruptcy court's equitable jurisdiction with no jury trial rights. <u>Langenkamp v. Culp</u>, 498 U.S.

42, 44-45 (1990); <u>Granfinanciera, S.A.</u>, 492 U.S. at 58-59; <u>Katchen v. Landy</u>, 382 U.S. 323, 330

(1966); <u>Billing</u>, 22 F.3d at 1252; <u>Frost, Inc. v. Miller, Canfield, Paddock & Stone (In re Frost)</u>,

145 B.R. 878, 882 (Bankr. W.D.Mich. 1992); <u>Citicorp N. Am. v. Finley (In re Wash. Mfg. Co.)</u>,

133 B.R. 113, 115-17 (M.D. Tenn. 1991).

The sole issue is thus whether the counterclaims at issue here implicate the claims

allowance process. The answer to that question is clearly yes. The Objection and Counterclaims

as filed by the Trust invoked the equitable jurisdiction of the Bankruptcy Court to disallow or

equitably subordinate the Proof of Claim and submitted all of its claims to the claims allowance

process for adjudication. <u>See</u> <u>Schubert v. Lucent Techs., Inc. (In re Winstar Commc'ns, Inc.)</u>,

Civ. No. 04-928 (JJF) 2004 WL 2713101 (D. Del. Nov. 16, 2004) (concluding no jury trial rights

existed in adversary proceeding asserting preference and common law claims where defendant

filed proof of claim triggering claims allowance process).

The Trust specifically objected to the Proof of Claim on the following grounds:

- "The CSFB-LLC Claims should be disallowed in their entirety pursuant to Bankruptcy Code section 502(b)(1) for the reasons set forth in the Counterclaims below;" (Objection/Counterclaims ¶ 45.a.)

- "The CSFB Claims should be disallowed in their entirety pursuant to 502(b)(4) based on the conduct above. CSFB-LLC's claim exceeds the reasonable value of its purported services;" (Objection/Counterclaims ¶ 45.b.)

- "The CSFB LLC Claims should be disallowed in their entirety because CSFB breached the Financial Advisory Agreement and caused significant harm to the Debtors including, but not limited to, grossly unnecessary fees, expenses and interest on the alternate DIP financing and other expenses. Alternatively, the contingency under which a fee for Financial Advisory Services would be paid was not satisfied;" (Objection/Counterclaims ¶ 45.d.)

- "In the alternative, the Plaintiff requests that the CSFB-LLC Claims, in part or in total, be equitably subordinated to all other claims against the Debtors, pursuant to the Bankruptcy Code section 510(c) for the reasons set forth in the Counterclaims below." (Objection/Counterclaims ¶ 45.e.)

9

There can thus be no dispute that the Objection and Counterclaims invoked the equitable jurisdiction of the Bankruptcy Court to disallow or otherwise equitably subordinate the Proof of Claim – the Trust requested such relief no less than four times. In each such demand, the Trust expressly tied the equitable relief it sought to the conduct underlying the counterclaims.

Plaintiff itself chose to use the claims process – by means of a self-styled "Objection and Counterclaims" – to sue several defendants which had not filed proofs of claim and to contend that the conduct of all named Defendants was the basis for objecting to the Proof of Claim. Plaintiff's case, as pleaded, is therefore inextricably linked to the claims allowance process insofar as allowance or disallowance of the Proof of Claim cannot be resolved without reference to the Defendants' alleged conduct that underpins the Counterclaims. The fact that Plaintiff seeks affirmative recovery on certain of those Counterclaims does not affect this conclusion. See Billing, 22 F.3d at 1252 n.17.

Before the Bankruptcy Court, Plaintiff relied on a handful of cases holding that a debtor or trustee is entitled to a jury trial on certain counterclaims, but Plaintiff's reliance on that authority was fundamentally misplaced, as the claims at issue in those cases were determined to be wholly unrelated to the claims allowance process. Specifically, in Germain v. Conn. Nat'l Bank, 988 F.2d 1323 (2d Cir. 1993), the court found that, although the creditor had filed a proof of claim, the trustee's action was "not part of the claims-allowance process" and was not "integral to the reordering of relations among the parties." Id. at 1329. The court reached this conclusion on the grounds that (i) the claims at issue were not only common law causes of action but were originally filed in an entirely separate state court proceeding, and (ii) the claims were not the underlying basis for the trustee's objection to a proof of claim, and therefore did not implicate the claims allowance process. Id. at 1325. This distinction was in fact critical to the

court's analysis, as it distinguished the Supreme Court precedent in <u>Katchen</u> and <u>Langenkamp</u> on that basis. <u>Id.</u> at 1327. The <u>Germain</u> court reasoned that "[t]he very phrase 'claims-allowance process' suggests that the resolution of the dispute in which a jury trial is sought must affect the allowance of the creditor's claim in order to be part of that process." <u>Id.</u> The court concluded that the common law affirmative claims, which were not tied to any objection to a claim, were entirely unrelated to the claims allowance process. That is clearly not the case in this Adversary Proceeding, which Plaintiff commenced in the Bankruptcy Court and in which Plaintiff presented its counterclaims as the basis for its objection to the Proof of Claim and for disallowance and equitable subordination of the Proof of Claim.

Moreover, the <u>Germain</u> court went out of its way to observe that the trustee's claims in that case had no effect on the claims allowance process, noting in a separate holding that it felt compelled to assume that the trustee would bring no claim for equitable subordination because such an action would be *inconsistent* with the trustee's demand for a jury trial on the affirmative claims. <u>Id.</u> at 1332. The court noted that if the trustee wished to seek equitable subordination of the proof of claim based on the facts alleged in the counterclaim, it could do so and *waive any jury trial rights on the underlying claims*. <u>Id.</u>

Other courts finding a jury trial right for claims asserted by a debtor or trustee are grounded in similar reasoning to that of the <u>Germain</u> court. <u>See</u> <u>WSC, Inc. v. Home Depot, Inc. (In re WSC, Inc.)</u>, 286 B.R. 321, 329 (Bankr. M.D. Tenn. 2002) (finding claims asserted against non-creditor defendants were properly triable to jury, but claims asserted against creditor defendant that filed a proof of claim were not triable to jury because they were integrally related to the proof of claim); <u>Hays v. Equitex, Inc. (In re RDM Sports Group)</u>, 260 B.R. 915, 925 (Bankr. N.D. Ga. 2001) (finding jury trial right held by trustee where claims "have [nothing] to

do with the claims process and/or the restructuring of the debtor-creditor relationship" because they were asserted against third party non-creditor defendants solely to augment the estate).

By contrast, the Trust freely elected to bring this Adversary Proceeding in the form of "Objection and Counterclaims" seeking to disallow or equitably subordinate the Proof of Claim based on the allegations made in the counterclaims. This is precisely the situation described by the Germain court as foreclosing the right to a jury trial: The Trust unquestionably invoked the equitable jurisdiction of the Bankruptcy Court and submitted all of its claims against Defendants for resolution within the claims allowance process. We need not be concerned with whether there would be a different result had the Trust initially brought its affirmative claims in some other forum or chosen not to assert the counterclaims as the basis for disallowing the Proof of Claim or equitable subordination. The Trust, represented by sophisticated bankruptcy litigation counsel, must have given consideration to its choice of forum and action, and determined that it would benefit most by bringing this litigation in the way that it did.

In its briefing on the jury trial issue in the Bankruptcy Court, and as it will likely do here, the Trust essentially rewrote the Objection and Counterclaims to support an otherwise baseless jury demand. The Court should reject this tactic. Once a dispute has been submitted to the equitable jurisdiction of the Bankruptcy Court in the claims allowance process, jury trial rights cannot be revived by disavowing the submission of the controversy to the Bankruptcy Court's jurisdiction. This rule of law has been explicitly held by the Bankruptcy Court in the context of a creditor seeking to claim jury trial rights by withdrawing its proof of claim. EXDS, Inc. v. RK Elec., Inc. (In re EXDS, Inc.), 301 B.R. 436 (Bankr. D. Del. 2003) (creditor having filed proof of claim cannot withdraw claim to obtain jury trial in later adversary proceeding). The same must be true here. The Trust cannot erase from the record its initial strategic choice to

assert all of its causes of action against all Defendants as part of the claims allowance process simply because it now regrets that original tactical decision. See EXDS, Inc., 301 B.R. at 443 (holding that "by filing its proof of claim [creditor] has caused its disputes . . . to be subject to the exclusive jurisdiction of this bankruptcy court and a withdrawal of the proof of claim would not change that result").

### 2.    None of Plaintiff's Claims Give Rise to a Jury Trial

Even if this action had not been filed to affect the claims allowance process, Plaintiff's claims on which a jury trial is demanded are equitable in nature thus separately foreclosing any right to a jury trial. The Trust asserts a jury trial right on only three claims in this action: breach of fiduciary duty, breach of contract and negligence.[4] Essentially, in its Objection and Counterclaims and subsequent pleadings, the Trust has asserted that by virtue of providing underwriting services relating to Oakwood's securitization program, CSS assumed "duties" – fiduciary or otherwise – to Oakwood and its creditors, and breached those duties by not forcing Oakwood into bankruptcy before the company's own board of directors decided to take that course of action.

"[A]ctions for breach of fiduciary duty, historically speaking, are almost uniformly actions 'in equity'--carrying with them no right to trial by jury." In re Evangelist, 760 F.2d 27, 29, 31 (1st Cir. 1985) (Breyer, J.); Yadkin Valley Bank & Trust Co. v. McGee (In re Hutchinson), 5 F.3d 750, 757 (4th Cir. 1993); Stalford v. Blue Mack Transp. (In re Lands End

---

[4]    In the Bankruptcy Court, the Trust conceded that it is not entitled to a jury trial on any objection to the Proof of Claim or issues directly related thereto, including breach of contract and the recovery of pre-petition payments relating to the Financial Advisory Agreement from which the Proof of Claim arose. (Jury Trial Mot. at 3-4.) The Trust has apparently elected to abandon the remaining preference, fraudulent transfer, and other common law claims pleaded in the Objection and Counterclaims, although it has never sought leave to amend the Objection and Counterclaims.

Leasing, Inc.), 193 B.R. 426, 433 (Bankr. D. N.J. 1996); Doyle v. Mellon Bank Nat'l Ass'n (In re Globe Parcel Serv., Inc.), 75 B.R. 381, 385 n.9 (E.D. Pa. 1987).[5]

        The second prong of Granfinanciera – the remedy sought – further undercuts the Trust's right to a jury trial. Plaintiff's Objection and Counterclaims and subsequent pleadings allege that the Defendants wrongfully enriched themselves and seek classically equitable remedies, including disgorgement and equitable subordination in addition to their claims for compensatory money damages. Such a mix of equitable and legal relief, when coupled with a historically equitable claim, strips the Plaintiff of any right to a jury trial.

        The District of Delaware's opinion in Cantor v. Perelman is particularly instructive as the plaintiff in that case sought a mix of equitable and legal remedies similar to what the Trust is seeking in this case. No. Civ. A. 97-586-KAJ, 2006 WL 318666 (D. Del Feb. 10, 2006) (Jordan, J.). In Cantor, the court examined the plaintiff's pleadings and prayer for relief and determined that its prayer for "compensatory damages, including all benefits obtained by defendants as a result of their breaches of fiduciary duty" constituted a request for at least two forms of relief. One, "compensatory damages," was legal in nature, while the other, "unjust enrichment, i.e., the 'benefits obtained by the defendants,'" was equitable. Id., at * 5. Applying Granfinanciera, the court determined that plaintiff's breach of fiduciary duty claim was equitable

---

[5]    When assessing courts' traditional reluctance to convert classic equitable claims (such as breach of fiduciary duty) into legal claims, the law of Delaware is instructive. In Delaware, breach of fiduciary duty claims are exclusively heard in its Chancery Court, which is a constitutionally ordained court of equity. Omnicare, Inc. v. NCS Healthcare, Inc., 809 A.2d 1163 (Del. Ch.2002); Clark v. Teeven Holding Co., Inc., 625 A.2d 869, 878 (Del. Ch. 1992) (Chancery "still retains jurisdiction to hear nearly all claims for breach of a fiduciary duty"). The Chancery Court is charged with resolving breach of fiduciary duty claims because the broad, flexible and discretionary remedy analysis mandated by Delaware law upon a finding a breach of fiduciary duty is far removed from the traditional province of the jury. Id. Given this degree of discretion, any remedy imposed for a breach of fiduciary duty claim will inherently be equitable, even if it takes the form of a money judgment. Harman v. Masoneilan Int'l, Inc., 442 A.2d 487, 498 (Del. Sup. Ct. 1982).

and its requested relief was mixed law and equity. The district court further held that where a party seeks both equitable and legal relief for an equitable claim, the party's entire claim must be judged equitable, and no right to a jury trial should attach: "[t]o weigh the factors differently would effectively ignore the historical factor, contrary both to the Seventh Amendment's purpose to 'preserve the right to a jury trial as it existed in 1791', and to the express holding of Granfinanciera that history is to be accorded weight in the balancing." Id., at *9 (internal citations omitted).

Cantor's holding is distinguishable from the Second Circuit's opinion in Pereira v. Farace because the plaintiffs in that action sought exclusively legal damages. 413 F.3d 330 (2d Cir. 2005). In Pereira, the defendants were directors who had allegedly permitted the company's chief executive to enrich himself (the chief executive was not a defendant). Id. at 334. The Second Circuit's holding depended entirely on the fact that since the director defendants had not themselves been enriched, the damages remedy was purely legal. [6] Id. at 339 – 41.

Here, the Trust has alleged that Credit Suisse's breach of fiduciary duty resulted in Credit Suisse "unjustly enrich[ing] itself at the expense of [Oakwood]" and as such, the Trust has "demand[ed] [Credit Suisse]'s disgorgement of all fees and other remuneration unjustly paid to [Credit Suisse] … and to recover consequential and actual damages." (Murphy Decl. Ex. B ¶ 51.) In its Supplement to its Rule 26(a)(1) Initial Disclosures the Trust further emphasized the mixed nature of the relief it seeks, stating that the Trust is "entitled to recover from [Credit Suisse] all fees and other remuneration paid to [Credit Suisse] and to recover consequential and actual damages." (Murphy Decl., Ex. C at 4.) As to its disgorgement relief, the Trust listed

---

[6]     The Cantor court also questioned the wisdom of the Second Circuit's overly expansive reasoning in Pereira, stating that its limited view of the scope of equitable relief "tears that definition from [its] key logical underpinning[s]." Cantor, 2006 WL 318666, at *8. Plaintiff seeks to do the very same thing here.

millions of dollars worth of fees paid to Credit Suisse including fees associated with the Loan

Assumption Program, fees paid in order to maintain the Credit Suisse Loan Purchase Facility

Facility and the Servicer Advance Facility and the fees and costs of securitizations. (Murphy

Decl. Ex. C at 4.) The remedy sought in this case – as described in the Trust's own pleadings –

is plainly a mixed form of equitable and legal relief.

   Before the Bankruptcy Court, Plaintiff expressly conceded its pursuit of mixed

relief while fruitlessly attempting to distinguish contrary authority. (Jury Motion at 14.) The

Trust argued that it is seeking:

> broader damages from Credit Suisse. While quantification may *include*
> Credit Suisse's ill-gotten fees, those fees are not the entirety of the Trust's
> damages claims; the Trust also seeks damages for harm caused by Credit
> Suisse's misconduct (such as the extent to which certain transactions –
> including the so-called "Lotus" transactions – increased the Oakwood
> Entities' indebtedness and caused significant losses).

(Jury Mot. at 14.) Under any reading of the record, the Trust seeks a mixed form of relief in this

Adversary Proceeding, which forecloses a jury trial on its breach of fiduciary duty claim. See

Cantor, 2006 WL 318666, at *9.

   As to Plaintiff's other claims – breach of contract and negligence – that

purportedly carry jury trial rights, the Court must look to the true nature of these claims to

determine jury trial rights rather than Plaintiff's unsupported characterization of the claims.

Dairy Queen, Inc. v. Wood, 369 U.S. 469, 477-78 (1962) ("[T]he constitutional right to trial by

jury cannot be made to depend upon the choice of words used in the pleadings.") Plaintiff's

claims for breach of implied contract and negligence are not separate causes of action but rather

are duplicative and superfluous reiterations of Plaintiff's breach of fiduciary duty claim.

   In its damages disclosures, Plaintiff made no attempt to segregate the negligence

claim from its breach of fiduciary duty claim, stating "[d]amages for this [negligence]

counterclaim are substantially similar to the damages sought for breach of fiduciary duty ....

**The same facts that support the breach of fiduciary [sic] Counterclaim may support this Counterclaim.**" (Murphy Decl. Ex. C at 6 (emphasis added).)

Moreover, it is black letter law that a negligence claim cannot exist without a duty running from defendant to plaintiff. <u>Parrot v. Wells, Fargo & Co. (The Nitro-Glycerine Case)</u>, 82 U.S. 524, 537 (1872) (stating that a party charging negligence must prove it by showing the defendant has violated some duty incumbent upon him); <u>Hopkins v. Pusey</u>, 475 F. Supp. 2d 479, 482 (D. Del. 2007) (finding that in order to state a claim for negligence under Delaware law one must allege that defendant owed plaintiff a duty of care). Here, Plaintiff does not assert that the manner in which Credit Suisse conducted securitizations or provided financing was negligent. Rather, Plaintiff contends that Credit Suisse failed to stop Oakwood from engaging in securitizations and drawing against the Loan Purchase Facility. That claim can only be grounded in an alleged fiduciary duty arising from a relationship of trust and confidence, as no general duty to force Oakwood to cease engaging in its business transactions could possibly exist otherwise.

Plaintiff's breach of implied contract claim is similarly duplicative. Plaintiff has never alleged the traditional elements of an implied contract, such as offer, acceptance or consideration. Nor could it, as no evidence exists in the record of the terms or even the existence of any such implied agreement. Instead, Plaintiff relies exclusively on its broad allegation of a close relationship of trust and confidence that, according to Plaintiff, gave rise to Credit Suisse's obligation to provide financial advisory services when Oakwood had neither engaged nor even requested Credit Suisse provide such services. Leaving aside for the moment the improbability of this argument, for present purposes it clearly embraces the same facts and allegations as those

underpinning Plaintiff's cause of action for breach of the alleged fiduciary relationship of trust and confidence.[7]

In short, the substance of Plaintiff's claims for negligence and breach of implied contract are the same as the substance of its breach of fiduciary duty claim. The same alleged inactions and failings of Credit Suisse form their bases. The Court should look beyond the labels affixed to the claims by the Trust and hold that they are all equitable in nature as each claim is grounded in the alleged fiduciary relationship of trust and confidence.

### B.    Plaintiff Has Waived All Jury Trial Rights

#### 1.    Plaintiff Waived Any Jury Trial Rights by Filing This Proceeding Before the Bankruptcy Court

The Trust has waived any jury trial rights it might have had by asserting what the Trust now calls separate and distinct legal claims before the equitable jurisdiction of the Bankruptcy Court. See, e.g., Schwartz v. Prudential Ins. Co. of Am. (In re Kridlow), No. 97-35168DAS, 1999 WL 97939 (Bankr. E.D. Pa. Feb. 19, 1999) (a debtor/trustee plaintiff that chooses the bankruptcy forum when alternatives exist forfeits right to a jury trial).

In Schwartz, the Bankruptcy Court for the Eastern District of Pennsylvania addressed a request by a debtor/trustee plaintiff for a jury trial on certain claims in an adversary proceeding brought in the bankruptcy court. Relying upon authority that a creditor who asserts

---

[7]    In addition, the parties' relationship for the period after August 19, 2002, is governed by a specific contract, the Financial Advisory Agreement, and any breach of that agreement is not triable to a jury, as Plaintiff concedes. Therefore, the only implied contract that could exist would be for the period preceding the Financial Advisory Agreement, and any damages flowing from a breach of that implied contract during that period, would necessarily exactly track the allegations of the breach of fiduciary duty claim.

counterclaims against a debtor in an adversary proceeding waives its jury trial rights by electing

the bankruptcy court for resolution of such claims,[8] the court concluded:

> The same principles which apply to creditors should apply to a debtor or a
> trustee. Thus, if such parties choose the bankruptcy forum when alternative
> forums exist, they should be prepared to forfeit their right to a jury trial in
> this forum. The claims asserted in the instant Proceeding clearly could have
> been asserted in state court and possibly also in federal district court in the
> first instance. Moreover, even if we recognized the Plaintiffs' assertion of a
> jury demand, we would be compelled to relegate the Plaintiffs to the federal
> district court forum for trial as a result of our determination that this
> Proceeding is non-core. The only means for us to retain the Plaintiffs'
> chosen forum in this court is thus for us to strike their jury demand.

Schwartz, 1999 WL 97939, at *5 (citations omitted).[9]  Other courts outside this Circuit have

agreed with the reasoning or conclusion of the Schwartz court.  Andrews v. AmSouth Bank (In

re Andrews), No. 06-40016, 2007 WL 2819523, at *8 (Bankr. N.D. Ala. Sept. 26, 2007) (holding

debtor not entitled to jury trial on counterclaims because, among other reasons, she "submitted

her legal cause of action for resolution by a court of equitable jurisdiction"); Haile Co. v. R.J.

---

[8]    Although the District Court has expressed disapproval of the waiver concept, it has done
so in the context of a third-party, non-creditor defendant that files counterclaims to an adversary
proceeding brought by a debtor. In such cases, the critical distinction – which is plainly not at
issue here – is the fact that no action, such as the filing of a proof of claim, has triggered the
equitable claims allowance process. See, e.g., NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.),
203 B.R. 905, 912 (D. Del. 1996)(concluding non-creditor defendant had not waived jury trial
right by asserting counterclaims where no proof of claim had been filed and case would have no
effect on claims allowance or equitable distribution of estate).

[9]    In Schwartz, the court acknowledged the split among the Circuit Courts of Appeal
concerning whether a debtor, by filing a voluntary petition for bankruptcy and seeking equitable
resolution of the claims against it, effectively waives jury trial rights for its claims against other
parties. Compare Longo v. McLaren (In re McLaren), 3 F.3d 958 (6th Cir. 1993) (filing of
petition waives jury trial rights in debtor's claims against third parties); N.I.S. Corp v. Hallahan
(In re Hallahan), 936 F.2d 1496, 1505 (7th Cir. 1991) (same); with Germain v. Conn. Nat'l
Bank, 988 F.2d 1323, 1330 (2d Cir. 1993) (filing of petition does not waive debtor's jury trial
rights); In re Jensen, 946 F.2d 369, 373-74 (5th Cir. 1991) (same). The Third Circuit has
discussed but not resolved this split. But this issue is not implicated here. Plaintiff's waiver of its
jury trial rights in connection with this action arises not from the filing of a voluntary petition for
bankruptcy, but rather from Plaintiff's election to invoke the equitable jurisdiction of the
Bankruptcy Court by commencing litigation of state-law-based claims in the Bankruptcy Court
as part of the claims allowance process.

Reynolds Tobacco Co. (In re Haile Co.), 132 B.R. 979, 981 (Bankr. S.D. Ga. 1991) ("By voluntarily selecting the bankruptcy court rather than state court as the forum in which to assert its state-law cause of action, plaintiff consented to this court's equitable jurisdiction and thereby waived its right to trial by jury."); Parsons v. United States (In re Parsons), 153 B.R. 585, 588 (M.D. Fla. 1993) (debtor voluntarily submitted adversary action to equitable jurisdiction of bankruptcy court relinquishing right to jury trial); Dimitri v. Granville Semmes, Civ. No. 00-2448, 2000 WL 1843495 (E.D. La. Dec. 14, 2000) (debtor-plaintiff voluntarily brought adversary proceeding in bankruptcy court thereby waiving right to trial by jury).

        The result in this case should be the same: The Trust voluntarily elected to bring state-law-based claims against multiple defendants in the Bankruptcy Court for resolution even though alternative forums were available that would have permitted a jury trial on those claims. See, e.g., Dimitri v. Granville Semmes, 2000 WL 1843495, at *5 (finding debtor's waiver of jury trial rights and noting importance that "[t]his is not a situation where [debtor] was involuntarily joined as a party by another participant in the bankruptcy proceeding"). Having done so, Plaintiff waived its right to a jury trial on such claims. Id.; Haile Co., 132 B.R. at 981 ("By voluntarily selecting the bankruptcy court rather than state court as the forum in which to assert its state-law cause of action, plaintiff consented to this court's equitable jurisdiction and thereby waived its right to trial by jury.").

### 2.    Plaintiff Has Waived Its Jury Trial Rights by Contract

        It is well settled that a jury trial right can be waived by contract if the waiver is knowing, voluntary and intelligent. Tracinda Corp. v. DaimlerChrysler AG (In re DaimlerChrysler AG Sec. Litig.), Civ. No. A 00-993-JJF, 2003 WL 22769051, at *2 (D. Del. Nov. 19, 2003), aff'd 502 F.3d 212 (3d Cir. 2007). See also Telum, Inc. v. E.F. Hutton Credit

Corp., 859 F.2d 835, 837 (10th Cir. 1988) (recognizing that "[a]greements waiving the right to trial by jury are neither illegal nor contrary to public policy").

In connection with the execution of the Loan Purchase Facility, Oakwood Acceptance Corporation, a debtor, agreed to be bound by the terms of the Class A Note Purchase Agreement dated February 8, 2001. That Agreement, which set forth the manner in which a Credit Suisse Defendant would lend funds to a bankruptcy remote trust that would in turn purchase loans from Oakwood Acceptance Corporation, was crucial to the flow of funds under the Loan Purchase Facility. Section 9.14 of the Note Purchase Agreement – which is entitled "WAIVERS OF JURY TRIAL" – provides:

> EACH OF THE SELLER, THE SERVICER, THE ISSUER, THE DEPOSITOR, THE TRANSFEROR, THE AGENT AND THE PURCHASERS HEREBY IRREVOCABLE AND UNCONDITIONALLY WAIVES, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING DIRECTLY OR INDIRECTLY TO THIS AGREEMENT OR ANY OTHER DOCUMENT OR INSTRUMENT RELATED HERETO AND FOR ANY COUNTERCLAIM THEREIN.

(Murphy Decl. Ex. H at 53.) In a side agreement dated February 9, 2001, Oakwood Homes Corporation – the principal debtor here – acknowledged its obligations in connection with the Loan Purchase Facility and related documents, and agreed to the express terms of an identical jury trial waiver. (Murphy Decl. Ex. I at 6.)

The Trust, as successor in interest to the debtors, is therefore foreclosed from seeking a jury trial on any claims "relating directly or indirectly to the Note Purchase Agreement or any of the contracts related thereto under the loan purchase facility." As outlined below, even assuming that Plaintiff's equitable claims carried a jury trial right (they do not), they nonetheless cannot be tried to a jury because Plaintiff has plainly waived a jury trial right against a Defendant that Plaintiff named in this action.

This contractual waiver is most germane to the breach of fiduciary duty claim, which, as discussed above, subsumes the other claims of negligence and breach of implied contract. Although Plaintiff's fiduciary duty claim has mutated substantially over time, one allegation has remained constant: by providing Oakwood with financing, Credit Suisse wrongfully perpetuated Oakwood's life and breached a "duty" to cause it to file for bankruptcy before its board of directors had made the decision that a filing would be in the best interests of Oakwood and its constituencies. (Objection/Counterclaims ¶¶ 19, 49, 53) The cornerstone of this theory is the Loan Purchase Facility, which Plaintiff's "standard of care" expert characterizes as so "vital to providing liquidity for Oakwood's securitization business" that if Credit Suisse "did not take over the role as lender, [Oakwood's] securitization business would have immediately collapsed." (Murphy Decl. Ex. J at 16-17, 36-39.) Plaintiff thus alleges that at the moment Credit Suisse began providing the Loan Purchase Facility in early 2001, Credit Suisse breached a purported duty by providing Oakwood with harmful and "value destructive" financing. Id. In addition to the "breach" at the inception of the Loan Purchase Facility, Credit Suisse is alleged to have breached its "duties" every time it allowed Oakwood to use the facility to enable another securitization. (Murphy Decl. Ex. J at 16-17, 36-39.)

The breach of fiduciary duty claim and those claims subsumed within it clearly relate to Credit Suisse's continued provision of the Loan Purchase Facility to Oakwood. So central to plaintiff's theory of its fiduciary duty claim is the Loan Purchase Facility that there could be no such claim absent those allegations about the Facility's "value destructive" financing. Consequently, the Trust must and should be held to the jury trial waiver contained in the Loan Purchase Facility documentation. The state law claims cannot be tried to a jury

because Plaintiff has waived any such jury trial right.  Consequently, this Court should hold a

bench trial itself to adjudicate Plaintiff's claims.

### CONCLUSION

For all the reasons stated above, Defendants respectfully request that the Court

strike Plaintiff's demand for a jury trial.

DATED:        February 6, 2008
              Wilmington, Delaware

_____
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700

                    -and-

R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson
LINKLATERS
1345 Avenue of the Americas
New York, New York  10105
(212) 903-9000

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2008, I caused to be served by electronic service and

hand delivery the foregoing document and electronically filed the same with the Clerk of Court

using CM/ECF which will send notification of such filing(s) to the following:

Marla R. Eskin, Esq.
Campbell & Levine
800 North King Street
Suite 300
Wilmington, DE 19801

I hereby certify that on February 6, 2008, the foregoing document was sent via electronic

mail, hand delivery (local) and first class mail (non-local) to the following non-registered

participants:

Kathleen Campbell Davis, Esq.
Campbell & Levine
800 North King Street
Suite 300
Wilmington, DE 19801

Tony Castanares, Esq.
Stephen M. Ray, Esq.
Carol Chow, Esq.
Whitman L. Holt, Esq.
Stutman, Treister & Glatt, PC
1901 Avenue of the Stars
12th Floor
Los Angeles, CA 90067

Lee E. Kaufman (#4877)
kaufman@rlf.com