# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oakwood Homes Corporation, et al., | ) | Case No. 02-13396 (PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| OHC Liquidation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0799 (JJF) |
| | ) | |
| Credit Suisse (f/k/a Credit Suisse First Boston, a | ) | |
| Swiss banking corporation), Credit Suisse | ) | |
| Securities (USA), LLC (f/k/a Credit Suisse First | ) | |
| Boston LLC), Credit Suisse Holdings (USA), Inc. | ) | |
| (f/k/a Credit Suisse First Boston, Inc.), and Credit | ) | |
| Suisse (USA), Inc. (f/k/a Credit Suisse First Boston | ) | **Re: Civil Docket Nos. 30 & 31** |
| (U.S.A.), Inc.), the subsidiaries and affiliates of | ) | |
| each, and Does 1 through 100, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ANSWERING BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S JURY TRIAL DEMAND

Tony Castañares (CA SBN 47564)    -&-    Marla Rosoff Eskin (No. 2989)
Stephan M. Ray (CA SBN 89853)            Kathleen Campbell Davis (No. 4229)
Scott H. Yun (CA SBN 185190)             Kathryn S. Keller (No. 4660)
Whitman L. Holt (CA SBN 238198)          CAMPBELL & LEVINE, LLC
STUTMAN, TREISTER & GLATT, P.C.          800 N. King Street, Suite 300
1901 Avenue of the Stars, 12th Floor     Wilmington, DE 19801
Los Angeles, CA 90067                    (302) 426-1900
(310) 228-5600

*Special Counsel for the OHC Liquidation Trust*

Dated: February 19, 2008

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ................................................................. 1

SUMMARY OF ARGUMENT ................................................................................................ 1

RELEVANT BACKGROUND FACTS .................................................................................. 5

    1.    CSS's Proofs Of Claim And The Objection/Counterclaims. ..................................... 5

    2.    Recent Proceedings Before Judge Walsh And This Court. ....................................... 6

ARGUMENT ........................................................................................................................... 8

    A.    THE MOTION TO STRIKE IS PLAGUED BY A MULTITUDE
           OF PROCEDURAL DEFECTS. ....................................................................... 8

          1.    The Motion To Strike Is An Impermissible Collateral
               Attack On The Jury Trial Opinion. ................................................................ 9

          2.    The Jury Trial Opinion Represents "Law Of The Case." ........................... 11

          3.    The Motion To Strike Offends Fundamental Principles Of
               Issue Preclusion And Public Policy. ........................................................... 13

          4.    Even Under Defendants' "Reconsideration" Paradigm, The
               Motion To Strike Fails On Its Face .............................................................. 15

    B.    PLAINTIFF HAS A BASIC CONSTITUTIONAL RIGHT TO A
           JURY TRIAL. ................................................................................................. 17

          1.    A Jury Right Exists Where, As Here, Any "Legal" Claims
               Are Present Or "Legal" Relief Is Sought. .................................................... 19

          2.    Since Several Claims And Issues Are Logically Distinct
               From Allowance Of CSS's Proofs Of Claim, The "Claims-
               Allowance Process" Is Not Implicated. ....................................................... 24

          3.    Controlling Case Law Rejects The Idea That Jury Rights
               Are Lost When Suits Are Brought In A Court Of Equity ........................... 32

          4.    Contractual Jury Waivers Are Narrowly Construed; The
               Bankruptcy Court Properly Limited The One Before It. ............................. 35

          5.    To The Extent That The Court Considers This To Be A
               Close Question, It Should Err On The Side Of Protecting
               Plaintiff's Core Constitutional Rights. ........................................................ 39

    CONCLUSION ................................................................................................................. 40

## TABLE OF AUTHORITIES

### CASES

*Aetna Ins. Co. v. Kennedy*,
   301 U.S. 389 (1937).................................................................................. 35, 37

*Am. Universal Ins. Co. v. Pugh*,
   821 F.2d 1352 (9th Cir. 1987) ...................................................................... 9

*AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*,
   117 B.R. 789 (Bankr. S.D.N.Y. 1990) ..................................................... 9, 10

*Arizona v. California*,
   460 U.S. 605 (1983)..................................................................................... 12

*Balaber-Strauss v. N.Y. Tel. (In re Coin Phones, Inc.)*,
   203 B.R. 184 (Bankr. S.D.N.Y. 1996) ....................................................... 21

*Beacon Theatres, Inc. v. Westover*,
   359 U.S. 500 (1959)........................................................................... 4, 17, 39

*Billing v. Ravin, Greenberg & Zackin, P.A.*,
   22 F.3d 1242 (3d Cir.), *cert. denied*, 513 U.S. 999 (1994)...................*passim*

*Brambles USA, Inc. v. Blocker*,
   735 F. Supp. 1239 (D. Del. 1990)................................................................ 16

*Brown v. Citicorp USA, Inc. (In re FoxMeyer Corp.)*,
   No. 99-705, 1999 WL 33220040 (D. Del. Dec. 1, 1999) .......................... 9, 11

*CDX Liquidating Trust v. Venrock Assocs.*,
   No. 04-7236, 2007 U.S. Dist. LEXIS 41439 (N.D. Ill. June 4, 2007) .......... 12, 13

*Cantor v. Perelman*,
   No. 97-586, 2006 WL 318666 (D. Del. Feb. 10, 2006)............................... 23

*Celotex Corp. v. Edwards*,
   514 U.S. 300 (1995)......................................................................... 2, 10, 11

*Chauffeurs, Teamsters & Helpers v. Terry*,
   494 U.S. 558 (1990)..................................................................................... 17

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988)..................................................................................... 12

*City of Monterey v. Del Monte Dunes*,
   526 U.S. 687 (1999)..................................................................................... 19

*City of New York v. Beretta U.S.A. Corp.*,
   317 F. Supp. 2d 193 (E.D.N.Y. 2004) ........................................................ 39

*Corzin v. Harvey (In re Commercial Maint. & Repair)*,
    No. 06-46, 2007 U.S. Dist. LEXIS 71408 (N.D. Ohio Sept. 25, 2007)................................ 9

*In re Crown Vantage, Inc.*,
    No. 02-03836, 2002 U.S. Dist. LEXIS 26109 (N.D. Cal. Dec. 16, 2002).................... 31, 33

*Dairy Queen, Inc. v. Wood*,
    369 U.S. 469 (1962)..............................................................................................*passim*

*Dastgheib v. Genentech, Inc.*,
    457 F. Supp. 2d 536 (E.D. Pa. 2006) ........................................................................... 23

*Design Strategies, Inc. v. Davis*,
    367 F. Supp. 2d 630 (S.D.N.Y. 2005) .......................................................................... 21

*Dietert v. Dietert (In re Dietert)*,
    271 B.R. 499 (Bankr. S.D. Tex. 2002) ........................................................................ 26

*Dimick v. Schiedt*,
    293 U.S. 474 (1935) .................................................................................................... 17

*Donovan v. Robbins*,
    579 F. Supp. 817 (N.D. Ill. 1984) ............................................................................... 19

*Educ. Testing Servs. v. Katzman*,
    670 F. Supp. 1237 (D.N.J. 1987) ................................................................................ 39

*EEOC v. Blue Star Foods, Inc.*,
    No. 78-5-W, 1980 U.S. Dist. LEXIS 11131 (S.D. Iowa Mar. 7, 1980)............................ 39

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) .................................................................................................... 36

*First Union Nat'l Bank v. United States*,
    164 F. Supp. 2d 660 (E.D. Pa. 2001) ..................................................................... 37, 38

*In re Franklin Towne Lodge Ltd. P'ship*,
    No. 91-2702, 1992 U.S. Dist. LEXIS 18817 (E.D. Pa. Nov. 25, 1992) ........................... 33

*Germain v. Conn. Nat'l Bank*,
    988 F.2d 1323 (2d Cir. 1993)..................................................................................*passim*

*In re Globe Parcel Serv., Inc.*,
    75 B.R. 381 (E.D. Pa. 1987) ....................................................................................... 33

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989)................................................................................................*passim*

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) ............................................................................................... 21, 22

*Grewe v. United States (In re Grewe)*,
    4 F.3d 299 (4th Cir. 1993) .......................................................................................... 12

*Hamilton v. Leavy*,
    322 F.3d 776 (3d Cir. 2003)........................................................................ 12

*Hays v. Equitex, Inc. (In re RDM Sports Group)*,
    260 B.R. 915 (Bankr. N.D. Ga. 2001) .............................................. 19, 21, 33

*Henglein v. Colt Indus. Operating Corp.*,
    260 F.3d 201 (3d Cir. 2001), *cert. denied*, 535 U.S. 955 (2002)........................ 14

*Hulsey v. West*,
    966 F.2d 579 (10th Cir. 1992) .................................................................. 36

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*,
    458 F.3d 244 (3d Cir. 2006), *cert. denied*, 127 S. Ct. 1878 (2007).............. 13, 14

*Jennings v. McCormick*,
    154 F.3d 542 (5th Cir. 1998) .................................................................. 35

*Katchen v. Landy*,
    382 U.S. 323 (1966) .............................................................................. 25

*Langenkamp v. Culp*,
    498 U.S. 42 (1990)........................................................................... 25, 27

*Lee Pharm. v. Mishler*,
    526 F.2d 1115 (2d Cir. 1975)................................................................... 39

*Lee Way Holding Co. v. Liberty Mut. Ins. Co. (In re Lee Way Holding Co.)*,
    118 B.R. 544 (Bankr. S.D. Ohio 1990)................................................... 30, 31

*Lindsey v. Ipock*,
    732 F.2d 619 (8th Cir. 1984) .................................................................. 10

*Liquidation Trust of Hechinger Inv. Co. v. Fleet Retail Fin. Group (In re*
    *Hechinger Inv. Co.)*,
    327 B.R. 537 (D. Del. 2005)............................................................*passim*

*In re L.T. Ruth Coal Co.*,
    66 B.R. 753 (Bankr. E.D. Ky. 1986)......................................................... 10

*M&E Contractors v. Kugler-Morris Gen. Contractors*,
    67 B.R. 260 (N.D. Tex. 1986).................................................................. 33

*Max's Seafood Cafe v. Quinteros*,
    176 F.3d 669 (3d Cir. 1999)..................................................................... 3

*McClelland v. Braverman Kaskey & Caprara, P.C. (In re McClelland)*,
    332 B.R. 90 (Bankr. S.D.N.Y. 2005)..................................................... 25, 29

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)............................................................................. 21

*Metromedia Co. v. Fugazy*,
    983 F.2d 350 (2d Cir. 1992), *cert. denied*, 508 U.S. 952 (1993)....................... 14

*Mirant Corp. v. Southern Co.*,
337 B.R. 107 (N.D. Tex. 2006)..................................................................*passim*

*Montana v. United States*,
440 U.S. 147 (1979)..................................................................... 13

*NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*,
203 B.R. 905 (D. Del. 1996) ....................................................... 33

*Nat'l Acceptance Co. v. Myca Prods., Inc.*,
381 F. Supp. 269 (W.D. Pa. 1974)..........................................35, 37

*Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.*,
913 F. Supp. 1088 (N.D. Ill. 1995)............................................ 37

*Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.)*,
336 B.R. 39 (Bankr. S.D.N.Y. 2006).......................................... 36

*In re Nw. Cinema Corp.*,
49 B.R. 479 (Bankr. D. Minn. 1985) .......................................... 12

*OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*,
340 B.R. 510 (Bankr. D. Del. 2006) ........................................ 5, 15

*OHC Liquidation Trust v. Credit Suisse (In re Oakwood Homes Corp.)*,
378 B.R. 59 (Bankr. D. Del. 2007)...........................................*passim*

*Official Comm. of Unsecured Creditors v. TSG Equity Fund L.P. (In re EnvisioNet Comput. Servs.)*,
276 B.R. 1 (D. Me. 2002) ........................................................... 9

*Official Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.)*,
326 B.R. 532 (W.D. Pa. 2005)................................................15, 16

*Paracor Fin., Inc. v. GE Capital Corp.*,
96 F.3d 1151 (9th Cir. 1996) ..................................................... 36

*Parsons v. Bedford*,
3 Pet. 433 (1830)........................................................................ 19

*Pereira v. Farace*,
413 F.3d 330 (2d Cir. 2005), *cert. denied*, 126 S. Ct. 2286 (2006)...........................21, 22

*Pratt v. Ventas, Inc.*,
365 F.3d 514 (6th Cir. 2004) ..................................................9, 10

*Prudential Oil Corp. v. Phillips Petrol. Co.*,
392 F. Supp. 1018 (S.D.N.Y. 1975)............................................ 39

*Reboy v. Cozzi Iron & Metal, Inc.*,
9 F.3d 1303 (7th Cir. 1993) ....................................................... 35

*Redmond v. Hassan (In re Hassan)*,
    376 B.R. 1 (Bankr. D. Kan. 2007) ............................................................... 21

*Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)*,
    320 B.R. 513 (Bankr. S.D.N.Y. 2005) ......................................................... 33

*Ross v. Bernhard*,
    396 U.S. 531 (1970) ................................................................................ *passim*

*Seemann v. Nat'l Bank of Commerce*,
    112 F.2d 378 (5th Cir. 1940) ....................................................................... 10

*Shipley v. Orndoff*,
    No. 04-1530, 2007 U.S. Dist. LEXIS 76462 (D. Del. Oct. 12, 2007) ................ 16

*Shubert v. Lucent Techs., Inc. (In re Winstar Commc'ns, Inc.)*,
    No. 04-928, 2004 WL 2713101 (D. Del. Nov. 16, 2004) ............................... 27

*Simler v. Conner*,
    372 U.S. 221 (1963) .................................................................................... 19

*Southern Pac. Ry. Co. v. United States*,
    168 U.S. 1 (1897) ........................................................................................ 13

*Stalford v. Blue Mack Transp. (In re Lands End Leasing)*,
    193 B.R. 426 (Bankr. D.N.J. 1996) .............................................................. 21

*Tracinda Corp. v. DaimlerChrysler AG*,
    502 F.3d 212 (3d Cir. 2007) ..............................................................4, 35, 37, 38

*Tray-Wrap, Inc. v. Six L's Packing Co.*,
    984 F.2d 65 (2d Cir. 1993) ........................................................................... 33

*Turner v. Johnson & Johnson*,
    809 F.2d 90 (1st Cir. 1986) ......................................................................... 39

*United States v. McAlister*,
    630 F.2d 772 (10th Cir. 1980) .................................................................... 39

*Urban Outfitters, Inc. v. 166 Enter. Corp.*,
    136 F. Supp. 2d 273 (S.D.N.Y. 2001) ......................................................... 37

*Valley Nat'l Bank v. Needler (In re Grantham Bros.)*,
    922 F.2d 1438 (9th Cir. 1991) .................................................................... 11

*Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In re Big V Holding Corp.)*,
    No. 01-233, 2002 U.S. Dist. LEXIS 12609 (D. Del. July 11, 2002) ........... 14, 15

*West Elecs., Inc. v. Nat'l Union Fire Ins. Co. (In re West Elecs., Inc.)*,
    No. 91-3781, 1992 U.S. Dist. LEXIS 10957 (D.N.J. Jan. 9, 1992) .................. 13

*In re White Farm Equip. Co.*,
    38 B.R. 718 (N.D. Ohio 1984) ..................................................................... 10

*Williams Elecs. Games, Inc. v. Garrity*,
  366 F.3d 569 (7th Cir. 2004) ........................................................ 23

*XL Sports, Ltd. v. Lawler*,
  No. 01-5363, 49 Fed. Appx. 13 (6th Cir. Oct. 8, 2002) ................... 12

## <u>STATUTES AND RULES</u>

11 U.S.C. § 502(d) ........................................................................ 27

11 U.S.C. § 541(a) ........................................................................ 26

28 U.S.C. § 151 ........................................................................ 2, 12

28 U.S.C. § 157(d) ......................................................................... 7

28 U.S.C. § 157(e) ....................................................................... 33

28 U.S.C. § 158 ..................................................................... 8, 10, 11

Fed. R. Bankr. P. 7013 .................................................................. 26

Fed. R. Bankr. P. 9015(a) ............................................................. 17

Fed. R. Civ. P. 13 ......................................................................... 26

Fed. R. Civ. P. 38(a) .................................................................... 17

Fed. R. Civ. P. 39 ......................................................................... 33

## <u>OTHER AUTHORITIES</u>

U.S. Const. amend. VII ............................................................. *passim*

8 Moore's Federal Practice § 39.12[2] (Matthew Bender 3d ed. rev. 2007) ............................ 19

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff, by and through its duly appointed trustee, Alvarez & Marsal, LLC, respectfully submits this Answering Brief in opposition to the motion to strike Plaintiff's jury demand (the "**Motion to Strike**" [D.I. #30]) filed by the defendants in the above-captioned proceeding (collectively, "**Defendants**" or "**Credit Suisse**") and in response to the memorandum filed in support thereof (the "**Defendants' Brief**" [D.I. #31]; cited herein as "Def. Br. at __ ").

## SUMMARY OF ARGUMENT

This Court's analysis of the Motion to Strike should begin and end with one reported decision, issued in this very case:  *OHC Liquidation Trust v. Credit Suisse (In re Oakwood Homes Corp.)*, 378 B.R. 59 (Bankr. D. Del. 2007) (hereinafter, "***Oakwood Homes***" or the "**Jury Trial Opinion**").  In that opinion, the United States Bankruptcy Court for the District of Delaware, Walsh, *J.* (the "**Bankruptcy Court**") expressly considered and cogently rejected *every* single argument that is raised yet again (and almost verbatim) by the Defendants' Brief.

Rather than directly confront the Bankruptcy Court's legal and factual analysis, Defendants opted to essentially ignore the Jury Trial Opinion in all their briefing before this Court, as if the proceedings before Judge Walsh were an absolute nullity.  This strategy not only demonstrates a stubborn unwillingness to accept an adverse decision on the merits, but also has produced another motion that is deeply flawed, both as a matter of procedure and substance.

-Procedural Deficiencies.

Defendants' attempt to subvert the Jury Trial Opinion via an indirect attack before this Court runs afoul of at least three well-established doctrines.  As Plaintiff has previously stated, we believe that these procedural issues – detailed on pages 8-17, *infra* – are dispositive here.  Thus, if the Court concurs with any of Plaintiff's arguments, then it need read no further.

1

<u>First</u>, in *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), the Supreme Court made clear that when a party disputes a valid bankruptcy court ruling, it must follow standard appellate procedures and cannot pursue an inappropriate collateral attack.  Indeed, Credit Suisse was well aware that a direct challenge is the proper route for relief, as demonstrated by their motion to this Court requesting "leave" for a premature interlocutory appeal of the Jury Trial Opinion.  As Plaintiff has set forth in other responsive briefing, not even one of the four ***required*** conditions for such an appeal exists here, but that fact does not change the rule that a proper appeal remains the only recourse available to Defendants if they wish to challenge the Jury Trial Opinion.

<u>Second</u>, because the Jury Trial Opinion has not been reversed or superseded, it should be treated as "law of the case" and given preclusive effect vis-à-vis the Motion to Strike. This result not only finds concrete support in the doctrinal framework charted by the Supreme Court and Third Circuit, but also advances broader policy objectives.  After all, if the rule in this District is that adversary proceedings involving jury rights remain before bankruptcy judges until they are "trial ready," then pre-trial rulings by those judges must have some permanence and carry the full weight of law unless reversed on appeal.  The alternative model Defendants advance – under which every decision made by a bankruptcy judge can be revisited on a wholesale basis before a district judge following withdrawal of the reference – is a recipe for chaos which perverts the principles of judicial economy and efficient allocation of responsibility that justify making bankruptcy judges "a unit of the district court" in the first instance.  *See* 28 U.S.C. § 151.  Put simply, Plaintiff believes the Jury Trial Opinion has meaning and is not the result of an academic exercise that can be disregarded whenever it is convenient for Defendants.

<u>Third</u>, recognizing the procedural predicament they face, Defendants argue that the Court should treat their Motion to Strike as a motion for reconsideration of the Jury Trial

Opinion.  While this strategy should be foreclosed by basic preclusion doctrines, Defendants'

Brief remains facially inadequate even under Defendants' proposed paradigm.  Under controlling

Third Circuit law, to prevail on a motion for reconsideration, Credit Suisse must (i) present new,

previously unavailable evidence; (ii) demonstrate intervening changes in the law; or (iii) explain

why the Bankruptcy Court committed a "manifest error" in the Jury Trial Opinion.  *See Max's

Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  Yet the Defendants' Brief does not

even ***attempt*** to do any of these things.  Rather, Defendants simply parrot the four identical,

threadbare arguments they presented to Judge Walsh – using the same documents, analysis, and

legal authority – without ever addressing the reasons why all of those arguments were rejected.

Thus, because Defendants never outline any argument that could theoretically support a motion

for reconsideration, immediate denial of the Motion to Strike would be proper even were the

Court to accept the shaky procedural construct that Defendants ask the Court to use here.

-Deficiencies on the Merits.

If the Court sweeps aside all of the previously identified deficiencies and goes

further than it must by examining Defendants' recurrent arguments on the merits, then it should

reject each one of them, for exactly the reasons the Bankruptcy Court did.

First, Defendants' attempt to implode two of Plaintiff's claims, as support for a

"mixed relief" theory, is unwarranted.  Defendants cannot rewrite the borders of Plaintiff's claims

and remedies or erase their inherently "legal" nature.  Further, even on its own terms, this "mixed

relief" theory is akin to the "incidental" construct rejected long ago by *Dairy Queen, Inc. v.

Wood*, 369 U.S. 469 (1962).  Thus, Plaintiff would enjoy firm jury rights outside of bankruptcy.

Second, Defendants' categorical "waiver" theory, under which there are ***no*** jury

rights when debtors or trustees sue in bankruptcy court, is likewise contrary to Supreme Court

precedent, as well as case law in this Circuit.  *See, e.g.*, *Ross v. Bernhard*, 396 U.S. 531, 538

(1970) ("legal claims are not magically converted into equitable issues by their presentation to a

court of equity").  The proper inquiry is whether ***every one*** of Plaintiff's counterclaims is

***necessarily*** part of the "claims-allowance process."  *See Billing v. Ravin, Greenberg & Zackin,*

*P.A.*, 22 F.3d 1242, 1251-52, n.14 (3d Cir. 1994).  Here, Credit Suisse simply ignores the

Bankruptcy Court's astute analysis about why three of Plaintiff's counterclaims are logically and

legally unrelated to proofs of claim filed under a contract covering just 88 days of a multi-year

relationship.  Defendants' obvious attempt to make those limited proofs of claim the tail that

wags the constitutional rights dog cannot overcome the facts or analogous case law.

> Third, Defendants also try to seek asylum in a contractual jury waiver.  But they

overlook the inconvenient truth that the waiver is limited in scope and signed by only a handful

of the parties.  Plus, even if that contractual waiver could somehow be read to apply here, Credit

Suisse failed ***yet again*** to meet their burden of proving that the purported waiver was enforceable

in the first place.  Since the waiver is strictly construed against Defendants, this final argument

also fails.  *See, e.g.*, *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007).

> In sum, Credit Suisse made the very same arguments to the Bankruptcy Court,

and that court rejected ***them all***.  In so doing, the Bankruptcy Court devoted judicial resources to

crafting a detailed opinion explaining why Defendants' position is contrary to controlling case

law.  While Credit Suisse would prefer to ignore them, the reasons outlined by the Bankruptcy

Court make clear that this is not a close case.  Even if it were, however, the Bankruptcy Court

correctly deferred to the long-standing principle that every "close case" must be resolved in favor

of ***protecting*** the fundamental right to a jury trial.  *See, e.g.*, *Beacon Theatres, Inc. v. Westover*,

359 U.S. 500, 510-11 (1959).  Accordingly, the Motion to Strike should be denied in its entirety.

## RELEVANT BACKGROUND FACTS

**1.    CSS's Proofs Of Claim And The Objection/Counterclaims.**

Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC) ("**CSS**") filed four identical proofs of claim in the jointly-administered bankruptcy cases of Oakwood Homes Corporation and certain of its affiliates (collectively, the "**Debtors**" and together with non-debtor affiliates, the "**Oakwood Companies**").  In those proofs of claim CSS asserted liquidated and unliquidated claims for various amounts, ***all*** of which stemmed from a certain letter agreement dated August 19, 2002 (the "**August 19 Contract**").

Plaintiff commenced this proceeding on November 13, 2004 via an objection to CSS's claims, which was coupled with ten counterclaims (the "**Objection/Counterclaims**" [D.I. #32, Ex. B]).  The Objection/Counterclaims contained numerous allegations of fact that pre-date the execution of the August 19 Contract.  (*See, e.g.*, Objection/Counterclaims at ¶¶ 11, 18-32 & 49-51.)  The Objection/Counterclaims' cover explicitly stated "**JURY TRIAL DEMANDED**," a point reiterated in its text (*see id.* at ¶ 3), as well as via a separately attached document entitled "**DEMAND FOR JURY TRIAL**" (*id.* at p. 38).  Defendants moved to dismiss the Objection/Counterclaims, but that motion was denied.[1]  *See OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510 (Bankr. D. Del. 2006).

The Objection/Counterclaims presented, and the discovery process honed, the case Plaintiff is now prepared to try, which consists of two conceptually distinct parts.

First, Plaintiff will try several causes of action that stem from Credit Suisse's misconduct unrelated to the August 19 Contract, most of which occurred prior to August 19,

---

[1]    Even though Defendants could have made many of the arguments they now make at that juncture, Defendants did not attack Plaintiff's jury demand in their motion to dismiss.  Nor did Defendants ***ever*** bring a motion to strike the jury demand before the Bankruptcy Court.

2002. More specifically, the evidence will demonstrate that Credit Suisse enjoyed a close and intimate relationship with the Oakwood Companies. This trust and confidence between the parties gave rise to extra-contractual fiduciary duties for Credit Suisse, as well as an implied advisory contract. The evidence will further show that Credit Suisse behaved in a fashion at odds with its clear duties – indeed, a fashion that violated even the traditional "reasonable" standard of care applied to negligence claims. Plaintiff will seek to remedy the harm caused by Credit Suisse's habitual misconduct at trial via an award of compensatory money damages.

Second, Plaintiff will try several other causes of action relating directly to the quality of performance under the August 19 Contract. These latter counterclaims flow from CSS's failure to fulfill obligations under that contract, which breaches prevent the allowance of CSS's claims, entitle Plaintiff to additional damages, and trigger certain avoidance claims.

Both sets of counterclaims stem from Credit Suisse's malfeasance, but a bright-line divides them: The first is based upon conduct not arising from the August 19 Contract, and has no logical relationship to the allowance of CSS's claims; the second is based upon conduct occurring after August 19, 2002, and is inextricably linked to the allowance of CSS's claims.[2]

   2.    **Recent Proceedings Before Judge Walsh And This Court.**

In anticipation of a status conference before the Bankruptcy Court on October 4, 2007, the parties negotiated a status conference report (the "**2007 SCR**" [D.I. #32, Ex. E]). Since discovery would soon close, thereby making the case "trial ready," Plaintiff affirmatively sought to enforce the jury demand it had properly made. Hence, the 2007 SCR made clear Plaintiff's

---

[2]   In the Jury Trial Opinion, the Bankruptcy Court made clear that its understanding of the bifurcated nature of Plaintiff's case comports with Plaintiff's understanding of its own case. *See Oakwood Homes*, 378 B.R. at 64 (describing how Plaintiff's case arises "from two sets of distinct nucleus of operative facts," only one of which relates to the August 19 Contract).

desire to enforce its jury rights, willingness to consent to a jury trial before the Bankruptcy

Court, and intent to put the predicate question of its rights to a jury trial to the Bankruptcy Court

in light of Defendants' decision never to file a motion to strike Plaintiff's jury demand.  (*See* 2007

SCR at pp. 2-3.)  In contrast, Credit Suisse emphasized that they "do not consent to a jury trial

conducted by this [Bankruptcy] Court" and sought an immediate bench trial.  (*See id.* at p. 2.)

Per the Bankruptcy Court's instructions, the parties filed lengthy briefs presenting

their positions about Plaintiff's rights to a jury trial.  In their briefing before the Bankruptcy

Court, Defendants made the ***exact same*** arguments now made in support of their Motion to

Strike – indeed, they relied on virtually identical analysis, documents, and legal authorities.[3]

On November 15, 2007, the Bankruptcy Court issued the Jury Trial Opinion, in

which it (i) held that Plaintiff has the constitutional right to a jury trial with respect to three of its

counterclaims; and (ii) rejected each of the four arguments Credit Suisse then made, and now

makes again, to contest that right.  *See Oakwood Homes*, 378 B.R. at 64-65 (listing arguments

made by Defendants); *cf.* Def. Br. at 1-2 (reciting the very same arguments).

Promptly following the close of discovery and the issuance of the Jury Trial

Opinion – i.e., once "cause" crystallized for a motion under 28 U.S.C. § 157(d) – Plaintiff moved

to withdraw the reference and schedule a jury trial before this Court.  (*See* D.I. #1.)  Defendants

opposed that motion, principally on the grounds that "the Trust has no jury trial rights in this

action."  (*See* D.I. #2 at p. 9.)  In support of this position, Defendants repeated, for the second

time, the same set of arguments that had been considered and rejected by the Bankruptcy Court –

again relying on virtually identical analysis, documents, and authority.  (*See id.* at pp. 12-30.)

---

[3]    In order to let the Court compare the pleadings and fully appreciate their duplicative nature, a
true and correct copy of the brief Defendants filed before the Bankruptcy Court is attached as
Exhibit "A" to the accompanying Declaration of Whitman L. Holt (the "**Holt Decl.**").

To buttress their initial collateral attack in this Court, Defendants also brought a motion for "leave" to take an interlocutory appeal of the Jury Trial Opinion under 28 U.S.C. § 158, which remains open and pending as Civil Case No. 07-mc-00215-JJF.  In their motion for "leave" to appeal, Defendants again, for the third time, made the same arguments that they put before the Bankruptcy Court and now seek to revive in support of the Motion to Strike.  Plaintiff filed a timely answer in opposition to Defendants' motion, explaining why Defendants cannot satisfy *even one* of the four conditions that are required for a premature interlocutory appeal.

Following a January 22, 2008 status conference, this Court entered an Order granting Plaintiff's motion to withdraw the reference and schedule a jury trial [D.I. #24].  In that Order, the Court (i) recited that it had "considered Plaintiff's request for a jury trial"; and (ii) provided that, absent a written stipulation by both sides, "a Jury Trial will commence" on June 17, 2008.  During the next week, the parties exchanged a series of *ex parte* letters relating to Defendants' request for an order setting a briefing schedule for the Motion to Strike (which was never entered) and the scope of the Court's January 23, 2008 Order.  (*See* D.I. #25-27.)

## ARGUMENT

The Jury Trial Opinion not only is completely correct on the merits, but also is a valid judgment entered by a federal court after full and fair briefing.  These two truths doom the Motion to Strike, both as a matter of basic procedure and substance, as discussed in turn below.  Once again, we note that the Court will likely only need to expend its limited judicial resources analyzing the procedural arguments, because those arguments should be outcome-determinative.

**A.    THE MOTION TO STRIKE IS PLAGUED BY A MULTITUDE OF PROCEDURAL DEFECTS.**

Although Defendants already had their day before the Bankruptcy Court, and presented the same arguments to this Court twice before, they seek to ignore the learned Jury

Trial Opinion and get a ***fourth bite*** at the apple.  Indeed, the Motion to Strike ultimately turns on Defendants' apparent belief that the Jury Trial Opinion is a legal nullity.[4]  Such tactics not only are procedurally improper, as Defendants recognize, but also are extraordinary in that they effectively make believe that Judge Walsh did not consider and reject ***all*** Defendants' arguments.

As detailed below, the Motion to Strike is precluded at the fore by three separate, yet equally fundamental, legal doctrines.  Plus, even taken on its own terms – as a putative motion for reconsideration of the Jury Trial Opinion – the motion never tries to demonstrate the new facts or "manifest error" that could justify a wholesale uprooting of the Jury Trial Opinion.

1.    **The Motion To Strike Is An Impermissible Collateral Attack On The Jury Trial Opinion.**

"A 'collateral attack' is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court."  *Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004).  The long-standing bar on using this tactic stems from the need for federal court orders to carry the full force of law unless and until they are reversed ***on appeal***. *See, e.g.*, *AP Indus., Inc. v. SN Phelps & Co. (In re AP Indus., Inc.)*, 117 B.R. 789, 797 (Bankr. S.D.N.Y. 1990) ("The rationale underlying the bar against collateral attack is twofold: (1) that there be finality to matters administered by the judicial system; and (2) that the integrity of the appellate procedure is not circumvented.").  Unfortunately for Defendants, the Jury Trial Opinion is such a ruling, and it cannot be collaterally attacked via the instant motion practice.

---

[4]    Defendants never claim the Bankruptcy Court lacked jurisdiction to decide the jury issue, nor could they in light of the abundant case law supporting such authority.  *See Brown v. Citicorp USA, Inc. (In re FoxMeyer Corp.)*, No. 99-705, 1999 WL 33220040, at *1 (D. Del. Dec. 1, 1999) ("Either this court or the Bankruptcy Court can determine whether [parties] are entitled to a jury trial.").  *Accord, e.g.*, *Am. Universal Ins. Co. v. Pugh*, 821 F.2d 1352, 1355 (9th Cir. 1987); *Corzin v. Harvey (In re Commercial Maint. & Repair)*, No. 06-46, 2007 U.S. Dist. LEXIS 71408, at *6-10 (N.D. Ohio Sept. 25, 2007); *Official Comm. of Unsecured Creditors v. TSG Equity Fund L.P. (In re EnvisioNet Comput. Servs.)*, 276 B.R. 1, 6-7 (D. Me. 2002).

In fact, the Supreme Court previously rejected just such a play in *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), in which parties attempted to collaterally attack a bankruptcy court order in a different federal court. The Court strongly rebuked these tactics, noting that if the parties were "dissatisfied with the Bankruptcy Court's ultimate decision," then they should follow the appellate procedures in 28 U.S.C. § 158. *See id.* at 313. The parties' choice "not to pursue this course of action, but instead to collaterally attack the Bankruptcy Court's [order]" threatened to "seriously undercut[] the orderly process of the law." *Id.*[5] *Celotex* articulates no new rule; rather, it reaffirms principles that have been part of bankruptcy practice for decades.[6]

The Motion to Strike is an analogous threat to the rule of law. After receiving an unfavorable ruling from a federal court, Defendants hope either to ignore or to attack that ruling before this Court. In fact, as in *AP Industries*, "Defendants' Motion constitutes a *de facto* appeal taken in obvious disregard of Bankruptcy Rule 8001, *et seq.* and of 28 U.S.C. § 158 and is no more than an improper collateral attack." *See* 117 B.R. at 797. If Defendants disagree with the Bankruptcy Court's legal analysis, the correct remedy is to seek proper appellate review. Indeed,

---

[5]     *See also, e.g.*, *Pratt*, 365 F.3d at 520 (discussing how *Celotex* requires "that litigants must go through the proper channels of the statutorily-defined appellate process to challenge a bankruptcy court's judgment" (citation and quotation marks omitted)); *Lindsey v. Ipock*, 732 F.2d 619, 622 (8th Cir. 1984) (refusing to allow collateral attack on bankruptcy court orders in subsequent proceedings; objecting party either had to appeal or "was obligated to obey these orders even if they were in error"); *In re White Farm Equip. Co.*, 38 B.R. 718, 722-23 (N.D. Ohio 1984) (failure to appeal bankruptcy court's unfavorable ruling "constitutes a waiver of the issue and a bar to a collateral attack" in later motions before the district court).

[6]     *See In re L.T. Ruth Coal Co.*, 66 B.R. 753, 777 (Bankr. E.D. Ky. 1986) ("Even in cases and proceedings under the Bankruptcy Act where jurisdiction exercised by the bankruptcy judge was subject *always* to review by the district judge, the rule of law was that absent timely appeal the decision of the bankruptcy judge had the force and effect of an order of the district court, was *res judicata* as to the merits, and was not subject to collateral attack in the district court." (internal punctuation and citations omitted)); *see also, e.g.*, *Seemann v. Nat'l Bank of Commerce*, 112 F.2d 378, 380 (5th Cir. 1940) (attack brought in "ancillary proceedings [was] nothing more than a collateral attack on the orders of the primary bankruptcy court").

Credit Suisse knows this, as demonstrated by their motion for "leave" to appeal under section 158(a).  Unable to wait for the Court to rule on that motion (which should be denied), Credit Suisse chose a prohibited path.  *Cf. Valley Nat'l Bank v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1442 (9th Cir. 1991) (affirming sanctions against counsel who knowingly brought "an impermissible collateral attack upon [a] bankruptcy court order").  The appellate procedures carefully crafted by Congress should not be short-circuited via Defendants' collateral attack.

*Brown v. Citicorp USA, Inc. (In re FoxMeyer Corp.)*, No. 99-705, 1999 WL 33220040 (D. Del. Dec. 1, 1999), further undermines Credit Suisse's disregard of the Jury Trial Opinion.  In *FoxMeyer*, several parties argued, like Credit Suisse here, that the District Court is the only court that can decide jury rights.  Judge Sleet disagreed, holding "that the Bankruptcy Court should determine, at least in the first instance, whether the [parties] are entitled to a jury trial."  *See id.* at *2.  Further, Judge Sleet highlighted how the standard practice after a disputed jury ruling would be to appeal pursuant to 28 U.S.C. § 158.  *See id.* at *2 n.7 [7]  Consequently, *FoxMeyer* makes clear that courts in this District expect losing parties to follow customary appellate procedures if they wish to contest a bankruptcy court's ruling about jury rights.

At bottom, Defendants' thinly-disguised collateral attack on the Jury Trial Opinion should be quickly rejected as contrary to decades of settled case law, including *Celotex*.

## 2.    The Jury Trial Opinion Represents "Law Of The Case."

The Motion to Strike is also procedurally defective for reasons independent of the collateral attack doctrine.  "As most commonly defined, the doctrine [of the law of the case]

---

[7]    While Judge Sleet did remark that "potential inefficiency ***might*** warrant" consideration of disputed bankruptcy rulings along with a motion for withdrawal, this comment was limited to rulings based on "purely legal" issues.  *See id.* at *2 n.6 (emphasis added).  This possible exception to the standard practice could not apply here in any event since Judge Walsh made several factual findings in the Jury Trial Opinion, as discussed at pages 36-38, *infra*.

posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (brackets in original) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). This discretionary "doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation," and should be applied "with the intent that it will promote finality, consistency, and judicial economy." *See, e.g.*, *Hamilton v. Leavy*, 322 F.3d 776, 786-87 (3d Cir. 2003) (citation and quotation marks omitted).

The Jury Trial Opinion should be treated as "law of the case" here because it is a valid judicial ruling issued earlier in this litigation, which was rendered after full and fair briefing, and has not been reversed or superseded.[8] The Jury Trial Opinion's interlocutory nature does not change the analysis since courts have recognized that even interlocutory bankruptcy rulings function as "law of the case" in later district court proceedings. *See, e.g.*, *XL Sports, Ltd. v. Lawler*, No. 01-5363, 49 Fed. Appx. 13, 21 (6th Cir. Oct. 8, 2002) (bankruptcy court's denial of motion for judgment on the pleadings was law of the case before district court). Of particular importance is that this same result obtains in the *very* procedural context presented here – i.e., a dissatisfied litigant attempting to reargue a bankruptcy court's previous ruling about jury rights during related district court proceedings. *See, e.g.*, *CDX Liquidating Trust v. Venrock Assocs.*,

---

[8]    Defendants have previously suggested that the Bankruptcy Court is a "lower" or "inferior" court. This argument reflects a deep misunderstanding of the structure codified in 28 U.S.C. § 151, which clearly provides that bankruptcy courts "shall constitute a unit of the district court." *See also, e.g.*, *Grewe v. United States (In re Grewe)*, 4 F.3d 299, 304 (4th Cir. 1993) ("bankruptcy courts are not separate from, but rather units or divisions of the district court"); *In re Nw. Cinema Corp.*, 49 B.R. 479, 480 (Bankr. D. Minn. 1985) ("The term 'bankruptcy court' is solely a phrase that is applied to the bankruptcy judges for a district insofar as those judges together are a unit of the district court. Thus while functionally there may appear to be a separate bankruptcy court, for jurisdictional purposes there is only one court, i.e., the district court." (citation omitted)). Under this structure, bankruptcy courts should be treated as coordinate courts vis-à-vis district courts since they ultimately are part of *the same court*.

No. 04-7236, 2007 U.S. Dist. LEXIS 41439, at *9 (N.D. Ill. June 4, 2007) (bankruptcy judge's "determination that the Trustee has not waived his right to a jury trial by voluntarily filing for bankruptcy protection establishes the law of the case on that issue" before district judge); *West Elecs., Inc. v. Nat'l Union Fire Ins. Co. (In re West Elecs., Inc.)*, No. 91-3781, 1992 U.S. Dist. LEXIS 10957, at *28-29 (D.N.J. Jan. 9, 1992) (bankruptcy court's rejection of attack on party's jury rights was law of the case when attacker did not successfully appeal).  There is no reason for the Court to depart from these cogent authorities.  To the contrary, this Court should join the existing case law by holding that the Jury Trial Opinion serves as "law of the case" here.

### 3.    The Motion To Strike Offends Fundamental Principles Of Issue Preclusion And Public Policy.

A third procedural deficiency is Defendants' failure to grapple with key rules of issue preclusion.  For centuries it has been "[a] fundamental precept of common-law adjudication . . . that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies.'"  *Montana v. United States*, 440 U.S. 147, 153 (1979) (quoting *Southern Pac. Ry. Co. v. United States*, 168 U.S. 1, 48-49 (1897); alteration omitted).  This rule is grounded in the notion that precluding "parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."  *Id.* at 153-54.  Or, as the Third Circuit recently put it, preclusion rules advance "the systemic interest that courts and litigants have in ensuring that the identical parties receive only 'one bite at the apple' on a given issue."  *See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 254 (3d Cir. 2006), *cert. denied*, 127 S. Ct. 1878 (2007).

The Motion to Strike ought to be barred by this basic preclusion doctrine.[9]  By their Motion to Strike, Defendants seek to get not only more than "one bite" at an issue which was already fully briefed and decided, but also a ***third*** chance to present their flawed arguments to this Court.  At some point, Defendants must accept their (rightful) loss before the Bankruptcy Court and be denied any further opportunity to subvert the Jury Trial Opinion prior to a final judgment on the merits.  That time is now; the Motion to Strike should be rejected *in toto*.

The problems with the Motion to Strike extend beyond pure legal doctrine and into the realm of practical policy considerations.  As outlined by Judge Sleet in *Wakefern Food Corp. v. C&S Wholesale Grocers, Inc. (In re Big V Holding Corp.)*, No. 01-233, 2002 U.S. Dist. LEXIS 12609, at *17-19 (D. Del. July 11, 2002), the prescribed practice in this District when a party to an adversary proceeding has a jury right is for the case to remain before the bankruptcy court until it is "trial ready," with the bankruptcy court resolving all pre-trial matters until that point (subject, of course, to the ability to seek immediate appellate review in appropriate circumstances), at which point the bankruptcy reference should be withdrawn for the jury trial.

---

[9]    As a formal matter, even though the instant case is not a separate "suit" from that pending before the Bankruptcy Court, all of the "standard requirements for the application of collateral estoppel" nevertheless are satisfied here; to wit: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  *See Jean Alexander Cosmetics*, 458 F.3d at 249 (citation and quotation marks omitted).  The fact that the Jury Trial Opinion is interlocutory in nature, rather than a "final" order giving Defendants the option to appeal as a matter of right, does not alter the analysis; for purposes of issue preclusion, the Jury Trial Opinion involved a dispute that was fully litigated and a ruling that was in no way tentative, which makes the decision sufficiently final now to preclude the Motion to Strike.  *See, e.g.*, *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 209-10 (3d Cir. 2001) (discussing how preclusive effect may be given to rulings that are not subject to immediate appeal), *cert. denied*, 535 U.S. 955 (2002); *Metromedia Co. v. Fugazy*, 983 F.2d 350, 366-67 (2d Cir. 1992) (giving preclusive effect to non-final bankruptcy order where party "had a full and fair opportunity to litigate [the] issues in the bankruptcy court" and "[t]here was nothing tentative about the bankruptcy court's decision"), *cert. denied*, 508 U.S. 952 (1993).

The tactics underlying the Motion to Strike would contaminate this system, if not eviscerate it entirely.  After all, if the Jury Trial Opinion can be revisited on a wholesale basis upon withdrawal of the reference, then so too can every other decision the Bankruptcy Court rendered in the more than three years in which this case was before it, including a multitude of discovery rulings and a comprehensive opinion denying Defendants' motion to dismiss.  *See OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.*), 340 B.R. 510 (Bankr. D. Del. 2006).  Yet this is a prescription for utter chaos; if a bankruptcy court is to have the ability to adjudicate disputes prior to a case becoming "trial ready," then its rulings must have the force of law unless and until they are reversed following a proper appeal.  Motions like the Motion to Strike undermine the considerations of judicial economy, finality, and efficient allocation of pre-trial authority that drove *Big V Holding Corp.*  Because those considerations signify important policy goals, this Court should be quite hesitant to countenance any litigation strategy – such as the Motion to Strike – that would move the law in precisely the opposite way.

**4.    Even Under Defendants' "Reconsideration" Paradigm, The Motion To Strike Fails On Its Face.**

Reflecting an awareness of the procedural defects with their Motion to Strike, Defendants argue that the Court should treat it as a motion for reconsideration of the Jury Trial Opinion pursuant to this Court's "inherent power to reconsider interlocutory orders," citing *Official Committee of Unsecured Creditors v. Clark (In re National Forge Co.)*, 326 B.R. 532 (W.D. Pa. 2005),[10] as authority.  (*See* Def. Br. at 6-7 n.2.)  Plaintiff respectfully submits that the framework adopted in *National Forge* and now advocated by Credit Suisse is inconsistent with

---

[10]    In *National Forge*, upon withdrawal of the reference, District Judge Sean J. McLaughlin construed arguments made in regards to pending appeals of an interlocutory bankruptcy court order "as motions to reconsider the Bankruptcy Court's ruling."  *See* 326 B.R. at 541.

the doctrines discussed in detail above (none of which were considered in *National Forge*).

Nevertheless, even if the Court agrees with Defendants' proposal and treats the Motion to Strike

as a request for reconsideration of the Jury Trial Opinion, it is clear that the motion still fails.

As explained in *National Forge*, "[r]econsideration is appropriate as a mechanism

by which to correct manifest errors of law or fact or to present newly discovered evidence," 326

B.R. at 541 (quotation marks omitted), and such motions will be denied absent that showing. *See*

*id.* at 563. This Court recently set forth a similar standard of review for reconsideration motions:

> The purpose of a motion for reconsideration is to correct manifest errors of law or
> fact or to present newly discovered evidence. A motion for reconsideration may be
> granted if the moving party shows: (1) an intervening change in the controlling
> law; (2) the availability of new evidence that was not available when the court
> issued its order; or (3) the need to correct a clear error of law or fact or to prevent
> manifest injustice.

*Shipley v. Orndoff*, No. 04-1530, 2007 U.S. Dist. LEXIS 76462, at *2 (D. Del. Oct. 12, 2007)

(citation omitted). Thus, a motion for reconsideration "should not be granted where it would

merely allow wasteful repetition of arguments already briefed, considered and decided."

*Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990) (quotation marks

omitted). Nor ought such a motion be used "to allow for endless debate between the parties and

the Court" about previously decided issues. *See id.* Once again, finality is the general rule.

Measured against this standard,[11] the Motion to Strike and the Defendants' Brief

fall short. Credit Suisse has pointed to no new evidence or intervening case law, nor to any facts

or decisions purportedly overlooked by the Bankruptcy Court. Rather, Credit Suisse simply

---

[11]  Defendants fallaciously assert that this Court should apply a *de novo* standard of review
under their reconsideration model. (*See* Def. Br. at 6-7 n.2.) This is, at best, a striking
misreading of *National Forge*; that court repeatedly stated how it measured the bankruptcy
court's ruling with the standard "manifest error" test. *See* 326 B.R. at 541, 544, 547 & 563.
Not once did that court use the phrase "*de novo*," let alone suggest it is the right standard, and
Credit Suisse offers no other authority using a *de novo* standard for a reconsideration motion.

regurgitates the same threadbare arguments, for the fourth time in less than four months, which were considered and rejected by the Bankruptcy Court.  In fact, with the exception of a passing reference in their background facts (*see* Def. Br. at 6), Defendants **never** mention the Jury Trial Opinion.  This abject failure to engage the Bankruptcy Court's analysis – let alone to critically dissect the Jury Trial Opinion and detail purported errors – cannot be the foundation for a motion to reconsider; one can never identify "manifest error" in a judicial decision if one simply ignores what the court wrote therein.  As such, even under Defendants' "reconsideration" paradigm, the profound, facial failings of their pleadings should prompt a rapid denial of the Motion to Strike.

**B.     PLAINTIFF HAS A BASIC CONSTITUTIONAL RIGHT TO A JURY TRIAL.**

In the event that the Court does not deny the Motion to Strike because of its numerous procedural defects, Plaintiff repeats below similar responses to Defendants' arguments on the merits that it has presented three times before, using the Jury Trial Opinion as an anchor. A review of the Jury Trial Opinion and related case law shows that Judge Walsh committed no "manifest error" of law or fact, but rather reached the proper result under controlling authorities.

\* \* \* \* \*

The Seventh Amendment's guarantee that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved," is "preserved to the parties inviolate" by Federal Rule of Civil Procedure 38(a), made applicable here by Federal Rule of Bankruptcy Procedure 9015(a).  As the Supreme Court has repeatedly emphasized, "'[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care.'" *Chauffeurs, Teamsters & Helpers v. Terry*, 494 U.S. 558, 565 (1990) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 501 (1959) (quoting *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935))).

The seminal decision regarding parties' rights to a jury trial in bankruptcy remains *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). *See, e.g.*, *Liquidation Trust of Hechinger Inv. Co. v. Fleet Retail Fin. Group (In re Hechinger Inv. Co.)*, 327 B.R. 537, 543-46 (D. Del. 2005) (adopting and applying the *Granfinanciera* test); *Oakwood Homes*, 378 B.R. at 65 (same). In *Granfinanciera*, Justice Brennan outlined the following analytic framework:

> The form of our analysis is familiar. First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. ***The second stage of this analysis is more important than the first.*** [Third, if], on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

492 U.S. at 42 (emphasis added) (citations and quotation marks omitted). The third inquiry turns on whether a cause of action is part of "the restructuring of debtor-creditor relations in bankruptcy," such as in the claims-allowance process, or whether it is a "claim[] brought by a bankrupt corporation to augment the bankruptcy estate." *See id.* at 56.

The Bankruptcy Court sequentially applied *Granfinanciera*'s factors in the Jury Trial Opinion, while also considering (and rejecting) Defendants' four arguments against a jury. In the Bankruptcy Court's words, the central arguments that Defendants make are as follows:

> First, the types of claims and forms of relief Plaintiff is raising are equitable rights, thus there is no right to a jury trial attached. Second, even if Plaintiff has the right to jury trial it is unenforceable because the claims are part of the "claims-allowance process." Third, in connection with the Note Purchase Agreement, several of the Oakwood Companies executed contracts in which they waived the right to a jury trial. Finally, Defendants argue that because Plaintiff brought these actions in a court of equity, Plaintiff has forfeited its right to a jury trial.

*Oakwood Homes*, 378 B.R. at 64-65. Although the Defendants' Brief has rearranged these four points, the basic arguments remain exactly the same. We discuss the fundamental flaws with each argument in turn below, following the order used by Judge Walsh in the Jury Trial Opinion.

**1.    A Jury Right Exists Where, As Here, Any "Legal" Claims Are Present Or "Legal" Relief Is Sought.**

As the Supreme Court explained in *Dairy Queen, Inc. v. Wood*, "[i]t would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. ***As long as <u>any</u> legal cause is involved the jury rights it creates control***." 369 U.S. 469, 473 n.8 (1962) (emphasis added) (citation and quotation marks omitted); *see also Granfinanciera*, *supra*, 492 U.S. at 41 (underscoring the key distinction between "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where ***equitable rights <u>alone</u>*** were recognized, and equitable remedies were administered" (bolded emphasis added) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830))). The Bankruptcy Court properly recognized and applied *Granfinanciera* and *Dairy Queen* by rejecting Defendants' "mixed relief" theory. *See Oakwood Homes*, 378 B.R. at 65-68. After all, this case includes both "legal" claims ***and*** "legal" remedies,[12] either of which requires a jury.

Defendants simply cannot contest that claims for negligence and breach of implied contract are historically "legal" claims, which would have been put before a court of law in 18th-century England.[13] Instead, Credit Suisse desperately tries to recast Plaintiff's whole case

---

[12]  While Defendants often act as if the jury analysis is applied to the proceeding as a whole, that clearly is incorrect:  "The right to jury trial attaches to specific issues, rather than to an entire action."  8 MOORE'S FEDERAL PRACTICE § 39.12[2] (Matthew Bender 3d ed. rev. 2007). Also, while the counterclaims at issue here arise from state law, their classification as "legal" or "equitable" remains an issue of federal law. *See, e.g., Simler v. Conner*, 372 U.S. 221, 222 (1963) ("[T]he characterization of [a] state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law."); *Hechinger Inv. Co.*, *supra*, 327 B.R. at 543.  Nevertheless, their pre-petition, state law origins are very relevant to the "claims-allowance process" analysis, as discussed in Part B.2., *infra*.

[13]  *See, e.g., City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 709-10 (1999) (the Seventh Amendment encompasses all claims that "sound basically in tort"); *Ross v. Bernhard*, 396 U.S. 531, 542 (1970) (corporation "would have been entitled to a jury's determination, at a

by asserting that these two claims "exactly track" or "are duplicative and superfluous" of

Plaintiff's (historically "equitable") breach of fiduciary duty claim.  (*See* Def. Br. at 16-18.)  This

is a grave mistake; as the Bankruptcy Court held, the three counterclaims are not coextensive.[14]

> As the Bankruptcy Court observed, "[t]he notion that a single act of malfeasance
can violate several distinct equitable and legal duties is a fundamental principle of Angelo-
American jurisprudence."  *Oakwood Homes*, 378 B.R. at 66.  Thus, the fact that a backdrop of
historical malfeasance gives rise to multiple causes of action against Credit Suisse does not cause
them all to collapse into a single claim.[15]  Furthermore, there are crucially important substantive
differences among the three claims.  For instance, the trier-of-fact could conclude that although
Credit Suisse and the Oakwood Companies enjoyed an intimate relationship, it did not rise to a
fiduciary level.  Such a finding would not preclude the existence of an implied advisory contract,
however.  Nor would such a factual finding preclude relief on a negligence theory, because, as

---

minimum, . . . of its rights against its own directors because of their negligence"); *Donovan v. Robbins*, 579 F. Supp. 817, 822 (N.D. Ill. 1984) (claims seeking "money damages for breach of express or implied contracts . . . . are clearly legal and [] the Seventh Amendment would require a jury trial as to them"); *Hays v. Equitex, Inc. (In re RDM Sports Group)*, 260 B.R. 915, 919 (Bankr. N.D. Ga. 2001) ("Negligence and malpractice are legal claims.").

[14]  Defendants' analysis is also extremely question-begging: Why should *everything* collapse *into* the fiduciary duty claim?  Assuming *arguendo* that there is some "duplicative" aspect to the claims, why should they not collapse into the negligence claim?  In fact, since that claim is unquestionably "legal" and because the law favors preservation of constitutional rights, *see* Part B.5., *infra*, the latter result is required, which further undermines Defendants' position.

[15]  Similarly, the case law, from the Supreme Court on down, is crystal clear that even if "legal" and "equitable" claims each arise from the same set of facts, the jury right is retained as to *every* "legal" claim.  *See, e.g.*, *Ross*, 396 U.S. at 537-38 ("[W]here equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims."); *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1329 (2d Cir. 1993) ("[I]f some claims are legal, a party will not be denied a jury trial just because other claims arising out of the same facts are equitable."); *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 120 (N.D. Tex. 2006) (same).

the Bankruptcy Court noted, "Defendants always owed [the] Oakwood Companies a duty of reasonable care in rendering their services, the breach of which could give rise to damages even in the absence of any fiduciary relationship." *Id.* at 66 (citing *Balaber-Strauss v. N.Y. Tel. (In re Coin Phones, Inc.)*, 203 B.R. 184, 200-01 (Bankr. S.D.N.Y. 1996)).  Ultimately, just as Judge Walsh, concluded, "the claims are each separate and independent, and must be characterized individually." *Id.*  As such, Credit Suisse's overt attempt to avoid the fact that two-thirds of Plaintiff's pre-August 19, 2002 counterclaims are "legal" in nature falls flat, and those separate claims' existence is alone enough to create jury rights under *Dairy Queen* and *Granfinanciera*.

The Bankruptcy Court also properly performed the "remedy" analysis under *Granfinanciera*'s second prong, which "is more important than the first," 492 U.S. at 42.  In this case, Plaintiff does not seek "equitable" relief – such as an accounting, constructive trust, or injunction – but rather an award of fungible damages, which is "the classic form of *legal* relief." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993)); *see also, e.g.*, *Dairy Queen*, 369 U.S. at 477 ("[W]e think it plain that [a] claim for a money judgment is a claim wholly legal in its nature however the complaint is construed.").  Many courts have held that claims seeking this relief, ***including for breach of fiduciary duty***, are "legal" claims falling within the Seventh Amendment's scope.[16]

As the Bankruptcy Court found, the Second Circuit's recent opinion in *Pereira v.*

---

[16]  *See, e.g.*, *Mirant*, 337 B.R. at 120 ("Generally, claims for breach of fiduciary duty are within the exclusive jurisdiction of courts of equity.  However, when a legal remedy, such as monetary relief, is sought for breach of a fiduciary duty, the action assumes legal attributes." (citations omitted)); *Design Strategies, Inc. v. Davis*, 367 F. Supp. 2d 630, 641-43 (S.D.N.Y. 2005); *Redmond v. Hassan (In re Hassan)*, 376 B.R. 1, 19 (Bankr. D. Kan. 2007) ("Although claims for breaching fiduciary duties were traditionally, as a general rule, equitable ones tried in the equity courts, where the remedy sought is compensatory damages, the entire claim is a legal one carrying a jury trial right."); *RDM Sports Group*, 260 B.R. at 919-20; *Stalford v. Blue Mack Transp. (In re Lands End Leasing)*, 193 B.R. 426, 433-34 (Bankr. D.N.J. 1996).

*Farace*, 413 F.3d 330 (2d Cir. 2005), *cert. denied*, 126 S. Ct. 2286 (2006), is a particularly instructive example. *Pereira* involved a bankruptcy trustee's suit for breach of fiduciary duty. The trustee sought money damages, including for amounts improperly transferred under the defendants' watch. The defendants argued "that they were entitled to a jury trial on the Trustee's breach of fiduciary duty claim because the nature of the underlying action was legal and the remedy sought was compensatory damages, not equitable restitution." *Id.* at 337. On appeal, the Second Circuit applied *Granfinanciera*'s test and concluded that the defendants did have a right to a jury trial. Because the fiduciary duty claim "would have been equitable in 18th century England," the outcome-determinative issue was the nature of the relief sought. *See id.* at 339-41. Since the trustee sought to recover fungible money damages, rather than particular property in the defendants' possession, the second prong of the *Granfinanciera* test rendered the suit "legal" in nature and required a jury trial. *See id.* at 341. So too here; as the Bankruptcy Court noted, "the relief Plaintiff is seeking is to impose personal liability on Defendants for the damage they have caused" by recovering "fees and other remuneration paid to Defendants, *and* actual and consequential damages." *See Oakwood Homes*, 378 B.R. at 68. "This relief is very similar to the relief the trustee in *Pereira* sought," *id.*, which makes that case very weighty authority here.[17]

At the end of the day, Defendants are well aware that Plaintiff does not care from where Credit Suisse gets the money to pay a final judgment. Moreover, during the process of

---

[17]  Defendants make a feeble attempt to distinguish *Pereira* on the grounds that Plaintiff will request at trial, *inter alia*, disgorgement of all the massive fees Credit Suisse received while breaching duties to the Debtors. (*See* Def. Br. at 15-16.) This fact is irrelevant, however, since that species of damages is not contingent on the "tracing" or other identification of ***particular funds*** in Defendants' possession, and since fungible damages are "legal" damages. *See Great-West Life & Annuity Ins. Co.*, 534 U.S. at 212-14 (detailing how truly "equitable" remedies are limited and are "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession")*.*

preparing for a possible bench trial before the Bankruptcy Court, Plaintiff's counsel expressly informed Defendants' counsel that Plaintiff intends to seek compensatory damages of at least $50 million at trial. (*See* Holt Decl. ¶ 7.) Thus, as Judge Posner explained in *Williams Electronics Games, Inc. v. Garrity*, Plaintiff's requested relief is "a legal remedy for a legal wrong, not [] an equitable remedy for a legal or an equitable wrong." *See* 366 F.3d 569, 578 (7th Cir. 2004); *see also, e.g.*, *Dastgheib v. Genentech, Inc.*, 457 F. Supp. 2d 536, 543-46 (E.D. Pa. 2006) (detailing why a request for return of unjust profits via fungible dollars is a "legal" remedy that carries a jury right). After thoroughly discussing the authorities and weighing the history of a proceeding pending before him for three years, Judge Walsh reached the same conclusion. *See Oakwood Homes*, 378 B.R. at 67-68. Credit Suisse offers no reason to believe the Bankruptcy Court erred.

Finally, Defendants' perpetual reliance on *Cantor v. Perelman*, No. 97-586, 2006 WL 318666 (D. Del. Feb. 10, 2006) – a case properly distinguished by the Bankruptcy Court – is puzzling. (*See* Def. Br. at 14-16.) Just two claims were at issue in *Cantor* – breach of fiduciary duty and aiding and abetting the same – both of which are historically "equitable." Here, in contrast, there are additional causes of action that have always been "legal" in nature. Indeed, Judge Jordan expressly noted how the analysis in *Cantor* would have been different "if at least one of Plaintiffs' claims [had been] legal rather than equitable." *See id.* at *7 n.7. Additionally, the plaintiffs in *Cantor* clearly were focused on the recovery of ***specific*** sums received by three directors in connection with certain note transactions, *see id.* at *1, which gave their requested remedy a distinctly equitable flavor. *See id.* at *9. Here, in contrast, Plaintiff's goal is to remedy the substantial harm suffered by the Oakwood Companies as a result of Defendants' misconduct. These notable differences led the Bankruptcy Court to conclude that "*Cantor* is distinguishable from the present case." *See Oakwood Homes*, 378 B.R. at 68. As with all of the Jury Trial

Opinion, Defendants unfortunately just ignore the Bankruptcy Court's insightful reasoning.

In summary, Plaintiff's counterclaims against Credit Suisse are plainly "legal" pursuant to the *Granfinanciera* test.  Under the first prong, Plaintiff has asserted several "legal" claims; under the second – weightier – prong, the form of relief sought is purely "legal."  Since Credit Suisse cannot unilaterally transmute the central nature of Plaintiff's case, their myopic attempt to avoid its many "legal" aspects must fail.  Indeed, as *Dairy Queen* makes clear, **any** "legal" features, even those supposedly "incidental" to equitable claims, control the result and require a jury trial.  Plaintiff thus has a basic constitutional right to have a jury try all three of the counterclaims which are unrelated to the August 19 Contract.  This inviolate right would be fully enforceable outside of bankruptcy, or if Credit Suisse were a non-creditor.  As explained below, the fact that CSS filed proofs of claim under the August 19 Contract does not alter the analysis.

**2.    Since Several Claims And Issues Are Logically Distinct From Allowance Of CSS's Proofs Of Claim, The "Claims-Allowance Process" Is Not Implicated.**

The case law is clear that when a cause of action "falls within the process of the allowance and disallowance of claims," neither party has a Seventh Amendment right to trial by jury "because [the] claim has been converted from a legal one into an equitable dispute over a share of the estate."  *See Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1253 (3d Cir.), *cert. denied*, 513 U.S. 999 (1994).  In contrast, whenever a legal cause of action is not integrally related to the claims-allowance process, but instead seeks to garner additional funds that will "augment" the bankruptcy estate, both the debtor and a creditor-defendant retain their constitutional rights to a jury  *See, e.g.*, *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1327 (2d Cir. 1993) (explaining how "suits . . . which would augment the estate but which have no effect on the allowance of a creditor's claim simply cannot be part of the claims-allowance process").

Credit Suisse suggests that the claims-allowance process is implicated merely by

procedural posture, i.e., because this proceeding involves "counterclaims filed by a liquidation trust in response to a proof of claim."  (*See* Def. Br. at 8-9.)  But this paints with *far* too broad a brush; the critical task for any court faced with this issue is to "ask whether the resolution of the particular dispute at issue is *necessarily part of the process* of the disallowance and allowance of claims" against the bankruptcy estate.  *Billing*, 22 F.3d at 1252 n.14 (emphasis added).[18]  In fact, the Supreme Court made clear long ago how this rule requires that an estate's claim objections be *congruent* with affirmative claims for relief in order for those affirmative claims to be triable without a jury.  *See Katchen v. Landy*, 382 U.S. 323, 334 (1966) (the fact that "in passing on a [statutory preference] objection a bankruptcy court *must necessarily* determine the amount of preference" means that "once a bankruptcy court has dealt with the preference issue *nothing remains for adjudication in a plenary suit*" (emphasis added)).  Under *Katchen* and *Billing*, then, the "claims-allowance process" is implicated only if it would be *impossible* in all events for

---

[18]  Beyond being facially inconsistent with *Billing*, Credit Suisse's blunderbuss argument has been roundly rejected by courts outside of the Third Circuit.  As one court explained:

> Unlike the act of filing a proof of claim, *the assertion of a counterclaim by the debtor does not automatically result in waiver of the right to trial by jury on those counterclaims*.  Moreover, counterclaims such as the ones in this case often go beyond the mere allowance or disallowance of the filed claim to seek affirmative recovery against the claimant.  The Court must consider whether the counterclaims are "integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction" . . . .

*McClelland v. Braverman Kaskey & Caprara, P.C. (In re McClelland)*, 332 B.R. 90, 95 (Bankr. S.D.N.Y. 2005) (emphasis added) (quoting *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990)).  In *McClelland*, the estate's counterclaims were "integrally related to the allowance or disallowance of the [creditor-Claimants'] claims" because "[t]he very services for which Claimants seek compensation in their proofs of claim are the same services, for the same time periods during which the Debtor counterclaims that the Claimants engaged in negligence and malpractice."  *See id.* at 97-98.  As the Bankruptcy Court found, that clearly is not the case here; CSS's claims are based solely upon "services" allegedly provided to the Oakwood Companies between August 19, 2002 and November 15, 2002, but Plaintiff's counterclaims for which it has a jury right stem from other "services" provided to the Oakwood Companies in a different time period.  *See Oakwood Homes*, 378 B.R. at 69-70.

a court to resolve a claim's allowance without also resolving everything else in the case.[19]  Thus, the analysis must advance beyond the "counterclaim" label and examine actual substance.[20]

Here, the Bankruptcy Court found that Plaintiff's three counterclaims based upon a pattern of behavior starting long before August 19, 2002 are not "necessarily part of the process" of determining whether CSS's claims should be allowed.  *See Oakwood Homes*, 378 B.R. at 69-70 ("Plaintiff's subject counterclaims only augment the estate.  Plaintiff may raise the counterclaims in a separate trial, under applicable state law, and succeed on some or all of the counterclaims, yet it would not affect the allowance of Defendants' claims.").  This ruling is correct since Plaintiff's claims for breach of contractual and fiduciary duties, as well as negligence, arise out of separate transactions and conduct, undertaken during a much longer period of time, and by corporate entities other than CSS.  Moreover, Plaintiff's causes of action unrelated to the August 19 Contract are not products of the Bankruptcy Code; they are state law claims that could have been asserted by the Oakwood Companies against Credit Suisse prior to August 19, 2002, and later became property of Oakwood's bankruptcy estate pursuant to 11 U.S.C. § 541(a).  Hence, those three counterclaims are even further removed from the "claims-allowance process" than was the fraudulent transfer action in *Granfinanciera* or the preference

---

[19]  *See also, e.g.*, *Dietert v. Dietert (In re Dietert)*, 271 B.R. 499, 507 (Bankr. S.D. Tex. 2002) (explaining how a counterclaim to a proof of claim "can be adjudicated by the bankruptcy judge without a jury and the bankruptcy judge can award a judgment for affirmative relief against the creditor if, ***and only if***, __all__ elements necessary to adjudication of the counterclaim are part of the adjudication of the objection to claim" (emphasis added)).

[20]  Put somewhat more formally, the issue is whether each of Plaintiff's counterclaims is "compulsory" (i.e., arising from the same transaction or occurrence as CSS's proofs of claim) or "permissive" (i.e., arising from facts unrelated to those proofs of claim).  Either type of "counterclaim" may be asserted in this adversary proceeding pursuant to Federal Rule of Civil Procedure 13, made applicable here by Federal Rule of Bankruptcy Procedure 7013, but only "compulsory" counterclaims should be part of the "claims-allowance process."

action in *Langenkamp* since Plaintiff's success on such causes of action could not even

theoretically be grounds for disallowance of CSS's claims under 11 U.S.C. § 502(d).

As a purely logical matter, the counterclaims that encompass pre-August 19, 2002

conduct are utterly separate from CSS's proofs of claim since it is conceivable that Plaintiff could

succeed on some or all of those counterclaims yet fail in its objection to CSS's claims, or vice

versa.  Although judicial economy requires that the whole case be tried at one time – with a jury

resolving issues of fact and law pertaining to Plaintiff's three counterclaims as to which it retains

a Seventh Amendment right, and the Court resolving the remaining issues – such a process is not

strictly necessary; the pre-August 19, 2002 counterclaims could be tried as a separate action,

which trial could occur either before or after CSS's proofs of claim are resolved.  This reality

shows that such counterclaims are not part of "the restructuring of debtor-creditor relations in

bankruptcy," but rather "claims brought by a bankrupt corporation to augment the bankruptcy

estate."  *Granfinanciera*, 492 U.S. at 56.[21]  As such, the procedural posture of this proceeding

does not affect Plaintiff's Seventh Amendment rights – Plaintiff retains the sacrosanct right to a

jury. This conclusion is further buttressed by a brief review of three cases involving similar facts.

First, in *Germain v. Connecticut National Bank*, 988 F.2d 1323 (2d Cir. 1993), the

bankruptcy trustee asserted several "lender liability" claims against a large bank ("CNB" or the

---

[21]    Despite Defendants' suggestion, this Court's decision in *Shubert v. Lucent Technologies, Inc. (In re Winstar Communications, Inc.)*, No. 04-928, 2004 WL 2713101 (D. Del. Nov. 16, 2004), is not to the contrary.  In *Winstar*, the Court applied the *Billing* framework to several affirmative claims against a creditor-defendant, and concluded that any determination of the creditor's proofs of claim depended on the prior determination of the affirmative claims.  *See id.* at *3.  This necessary logical dependency is not present here, which makes *Winstar* factually inapposite.  In any event, the Court in *Winstar* denied a motion to withdraw the reference that, like Plaintiff's motion here, was based exclusively on a claimed jury right. *See id.* at *1.  Thus, the fact that the Court granted Plaintiff's withdrawal motion only highlights how the instant case is different from *Winstar* with respect to the jury issue.

"Bank") that had filed proofs of claim against the estate. The trustee argued "that because his claims are legal in nature and because he seeks only legal relief in the form of money damages, he is entitled to a jury trial under the Seventh Amendment." *See id.* at 1325. CNB disagreed, insisting that the bankruptcy estate forever lost its rights to a jury trial when CNB filed its proofs of claim. The Second Circuit firmly rejected CNB's position:

> Resolution of the Trustee's action is not required in order to determine whether to allow CNB's claim as a creditor in the bankruptcy proceeding. The Trustee asks for money damages to compensate the estate for the destruction of the debtor's business. If he wins, the estate is enlarged, and this may affect the amount the Bank and its fellow creditors ultimately recover on their claims, but it has no effect whatever on the allowance of the Bank's claims. Thus, a court could allow the Bank's claim before hearing argument on the Trustee's complaint, and this chronology would be both logical and consistent with the Bankruptcy Code.

*Id.* at 1327. Since CNB's proofs of claim and the trustee's causes of action were based on different sets of facts, the latter did "not involve any other creditor's rights or the relationship among the creditors as a group or between the debtor and another creditor," which meant they had "nothing to do with the essence of the bankruptcy regulatory scheme of allowing or reordering claims." *See id.* at 1331. Consequently, the Second Circuit concluded that the trustee's "action involves private rights and should be tried before a jury, if that is the Trustee's choice," because doing so would not affect the bankruptcy court's power "to readjust debtor-creditor relations and reorder creditor claims equitably and completely." *See id.* at 1332. [22]

The Second Circuit's analysis in *Germain* applies here with incredible force and should be outcome-determinative. Like CNB, CSS filed proofs of claim against the estate and is

---

[22] Defendants suggest that the Second Circuit's equitable subordination analysis distinguishes *Germain* and defeats Plaintiff's position here. (*See* Def. Br. at 11-12.) That is incorrect; the Second Circuit merely noted that the trustee could not use the results of a jury trial as a basis for equitable subordination. *See* 988 F.2d at 1332. A similar framework could easily be used here; e.g., the Court might rule that if Plaintiff tries certain counterclaims to a jury, it may not subsequently use that jury's factual findings as a basis to equitably subordinate CSS's claims.

the target of litigation based upon facts unrelated to its proofs of claim. As a result, *Germain* shows why all of Plaintiff's counterclaims that are based on events beginning long before the August 19 Contract was ever executed simply are not part of the "claims-allowance process."[23]

Second, in *Mirant Corp. v. Southern Co.*, 337 B.R. 107 (N.D. Tex. 2006), Southern – a defendant in an adversary proceeding initiated by the debtors and the creditors' committee – moved to withdraw the reference based on, *inter alia*, its jury right. The underlying complaint asserted six counts against Southern, including (i) a count seeking compensatory damages for Southern's alleged assistance with various destructive transactions and (ii) a count objecting to proofs of claims Southern filed in the debtors' bankruptcy cases. *See id.* at 110-11 (describing "Count IV" and "Count V"). Southern asserted that "it has a right to a jury trial with respect to the fraudulent transfer and conveyance claims, the fiduciary duty claims, and the illegal dividend claims." *Id.* at 112. The debtors argued in response, and the bankruptcy court agreed below, that "any right Southern might have had to a jury trial was lost upon the filing of its claims against debtors in the chapter 11 cases." *See id.* at 113. The district court reversed.

---

[23] The Third Circuit discussed *Germain* at some length in *Billing* and ultimately distinguished the Second Circuit's decision **on the facts**. *See* 22 F.3d at 1251-52. Specifically, in *Billing*, the estate's malpractice action had such a "close connection" to a law firm's proof of claim for attorneys' fees – i.e., the proof of claim and the suit arose from the same operative transactions and facts, and "the debtors' malpractice suit mirror[ed] its objection to the allowance of attorneys' fees" – "that 'the merits of the malpractice claims **must be resolved before** there can be a resolution of the fee dispute.'" *Id.* at 1252 (emphasis added) (quoting *Billing v. Ravin Greenberg & Zackin, P.A. (In re Billing)*, 150 B.R. 563, 570 n.2 (D.N.J. 1993)). That "the interrelated nature of the actions" led the Third Circuit "to conclude that the debtors' allegations of malpractice are part of the process of allowance and disallowance of claims," *id.*, is consistent with the mode of analysis deployed in the *McClelland* case discussed *supra* note 18. Critically, both *Billing* and *McClelland* are inapposite here because several of Plaintiff's counterclaims are based on a different, and earlier, set of facts than those undergirding CSS's proofs of claim. As such, the grounds on which the Third Circuit distinguished *Germain* are absent, and the Second Circuit's well-reasoned decision should be controlling here – just like Germain, Plaintiff may choose to try certain claims before a jury.

The district court first examined the plaintiffs' requested relief – monetary damages – and concluded that such a request gave Southern jury rights, including as to the fiduciary duty claim.  *See id.* at 120-21.  The court then addressed whether Southern's jury trial rights were eliminated because it had filed proofs of claim to which the debtors objected:

> Resolution of the legal claims raised in this action will not directly affect the liability or priority of Southern's proofs of claim in the bankruptcy cases, nor do the legal claims asserted in this action arise as part of the process of allowance or disallowance of claims in bankruptcy.  Rather, they essentially are claims brought by the debtors and Committee to augment the bankruptcy estate.  The determinations of the legal claims in this action simply will not directly implicate the bankruptcy claim resolution process, nor will the power of the bankruptcy court to readjust the debtor-creditor relations and reorder creditor claims equitably and completely be diminished if the legal claims in this action are tried to a jury.

*Id.* at 121 (citations omitted).  Thus, notwithstanding the fact that "Count V" of the ***very same pleading*** was an express objection to Southern's proofs of claim, Southern retained its right to a jury trial with respect to the other counts because those causes of action did not go "directly to the process of allowance and disallowance of claims."  *See id.* at 122; *see also id.* ("[T]he mere fact that the outcome of a dispute could have the effect of enlarging the estate does not mean that the dispute will have any effect on the allowance of a disputant's claims in bankruptcy.").

The principal difference between the instant case and *Mirant* is the juxtaposition of the parties – here Plaintiff seeks a jury trial, whereas in *Mirant* the creditor-defendant sought a jury trial.  Both cases involve an objection to proofs of claim that happened to be bundled in the same pleading with other, "legal" causes of action based upon different facts.  This pleading method is not sufficient to make the "legal" claims part of the claims-allowance process, which means that Plaintiff's right to a jury is at least as robust as Southern's right in *Mirant*.  *See also, e.g.*, *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962) ("[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."); *Lee Way Holding Co. v. Liberty Mut. Ins. Co. (In re Lee Way Holding Co.)*, 118 B.R. 544, 553 (Bankr.

30

S.D. Ohio 1990) (court noted that, even if it agreed that the bankruptcy trustee "had originally asserted an equitable claim, . . . the constitutional right to a jury trial does not rest solely on the words used in the pleadings," including in the plaintiff-trustee's complaint).

Third, in *In re Crown Vantage, Inc.*, No. 02-03836, 2002 U.S. Dist. LEXIS 26109 (N.D. Cal. Dec. 16, 2002), the debtor filed an adversary proceeding against a creditor ("Fort James") who had filed proofs of claim. The debtor's complaint included claims for breach of fiduciary duty and negligence based on prepetition misconduct. Fort James moved to strike the debtor's demand for a jury trial, asserting – just as Credit Suisse does here – that the adversary proceeding was "inextricably intertwined" with its proofs of claim and that the debtor waived its jury rights via "the submission to the equitable jurisdiction of the [bankruptcy] court." *See id.* at *9-11. The court quickly rejected both arguments. As to the first one, the court concluded that:

> Even if Fort James's proof of claim and Crown's claims against Fort James arose from the same agreement or are otherwise related, this does not deprive Crown of the right to a jury trial. When, as here, the resolution of a party's legal claims arising from a bankruptcy proceeding will have but a negligible impact on the claims-allowance process, the right to a jury trial is preserved.

*Id.* at *10. This conclusion only underscores how ***every one*** of Plaintiff's counterclaims must be a fundamental part of the claims-allowance process for a complete "waiver"; that some may have an incidental or negligible impact is an insufficient reason to obliterate Plaintiff's jury rights.

*Hechinger Investment Co.* is a useful contrast to *Germain*, *Mirant*, and *Crown Vantage*. There, a liquidation trust had objected to the claims filed by Chase Manhattan Bank ("Chase") and the Fleet Retail Financial Group ("Fleet") on the grounds that the related liens were avoidable fraudulent transfers. *See Liquidation Trust of Hechinger Inv. Co. v. Fleet Retail Fin. Group (In re Hechinger Inv. Co.)*, 327 B.R. 537, 545-46 (D. Del. 2005). That trust subsequently initiated litigation against Chase, Fleet, and others, whereby the plaintiff-trust alleged that payments made in connection with the secured debt were fraudulent conveyances.

*See id.* at 546. The trust demanded a jury trial on its fraudulent conveyance claims, but Judge Robinson concluded "that plaintiff's subsequently filed fraudulent conveyance suit mirrors its objection to" Chase and Fleet's claims, which meant those claims were "part of the process of allowance and disallowance of claims and are not entitled to a jury trial." *See id.* at 546 (citing *Billing*, 22 F.3d at 1252). This analysis once again highlights how there ***must*** be a ***congruent*** factual and legal overlap between the estate's claim objections and its affirmative litigation if the estate's jury trial rights are to be deemed implicitly waived. That overlap does not exist here.

In the final analysis, the basic problem with Defendants' position before Judge Walsh was their inability to explain why common law claims based upon misconduct beginning years before the contract underlying CSS's proofs of claim was executed have a necessary link to whether claims for amounts supposedly due under that August 19 Contract should be allowed against the Debtors' estates. While Defendants blithely contend that "allowance or disallowance of [CSS's] Proof of Claim cannot be resolved without reference to the Defendants' alleged conduct that underpins the counterclaims" (Def. Br. at 10), they fail ever to explain ***why*** this is so, either as a matter of logic or legal doctrine. This deep and obvious problem with the Defendants' Brief cannot be solved; all three of the counterclaims as to which the Bankruptcy Court affirmed Plaintiff's jury rights could be resolved in a plenary proceeding apart from CSS's proofs of claim, and thus they are not ***necessarily*** part of the "claims-allowance process."

**3.    Controlling Case Law Rejects The Idea That Jury Rights Are Lost When Suits Are Brought In A Court Of Equity.**

Defendants' third argument against Plaintiff's jury rights turns on the notion that Plaintiff's decision to file claims in the Bankruptcy Court, a forum they think cannot conduct jury trials under any circumstances, "even though alternative forums were available that would have permitted a jury trial" triggered some *per se* submission to "the equitable jurisdiction of the

Bankruptcy Court" and forever obliterated Plaintiff's constitutional jury rights.  (*See* Def. Br. at 18-20.)[24]  The Bankruptcy Court properly rejected this dangerous and overreaching theory.

The Supreme Court has plainly instructed that "legal claims are not magically converted into equitable issues by their presentation to a court of equity."  *Ross v. Bernhard*, 396 U.S. 531, 538 (1970).[25]  The Third Circuit has similarly expressed its worry that a waiver theory

---

[24]  Defendants make much of the fact that "the District Court **has not** specially designated the Bankruptcy Court to conduct jury trials" under 28 U.S.C. § 157(e).  (*See, e.g.*, Def. Br. at 1 & 6 n.2 (emphasis added).)  But the mere fact that such designation **has not** been made for all cases hardly means that it **can not** ever be made.  Indeed, if Defendants were willing to consent to a jury trial conducted by Judge Walsh, then the parties could have submitted a joint request for special designation.  Yet Credit Suisse did not make its position on that issue clear until September 2007, when the parties were negotiating the 2007 SCR.  Hence, prior to that point, it was not possible for Plaintiff to know with certainty that any jury trial could not proceed before the Bankruptcy Court *as a matter of law*.  Furthermore, despite Defendants' perpetual intimations about the fact that Judge Walsh set a preliminary date for a trial before the Bankruptcy Court, it is beyond dispute that "the meticulous provision made in [FRCP] 39 for jury waivers," which requires "a ritual that is almost sacramental" once timely demand is made, was **not** followed here. *See, e.g.*, *Tray-Wrap, Inc. v. Six L's Packing Co.*, 984 F.2d 65, 68 (2d Cir. 1993).  Thus, any alleged "informality" on Plaintiff's part is irrelevant.  *See id.*

[25]  District courts in this Circuit uniformly reject Credit Suisse's rigid forum-based rule, often using *Ross*'s guidance as a foothold.  *See, e.g.*, *NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 912-13 (D. Del. 1996) (rejecting notion that bankruptcy court actions must waive jury rights because "courts should not be eager to embrace an implied waiver of constitutional rights where there is an affirmative and timely assertion of those rights" and "[t]he constitutional right to a trial by jury is not so ephemeral" so as to turn on the forum); *In re Franklin Towne Lodge Ltd. P'ship*, No. 91-2702, 1992 U.S. Dist. LEXIS 18817, at *9-10 (E.D. Pa. Nov. 25, 1992) ("By asserting its private rights, [the debtor] has not implicitly waived its jury right by commencing an adversary proceeding in the bankruptcy court, as legal claims cannot be magically converted into equitable claims by their presentation to a court of equity."); *In re Globe Parcel Serv., Inc.*, 75 B.R. 381, 383 (E.D. Pa. 1987) ("The type of forum chosen as the arena for litigation is not dispositive on the question of whether a right to a jury trial exists.  The mere fact that a plaintiff raises his legal claims before a court of equity in the context of an equitable proceeding does not somehow convert claims that are otherwise legal . . . .").  These decisions are in accord with circuit-, district-, and bankruptcy-level authority from other circuits.  *See, e.g.*, *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1330 (2d Cir. 1993) (*per se* rule of waiver is supported by "neither precedent nor logic" and "[f]or a waiver to occur, the dispute must be part of the claims-allowance process or affect the hierarchical reordering of creditors' claims"); *M&E Contractors v. Kugler-Morris Gen.*

based solely on a bankruptcy forum "raises as many questions as it answers," and the mere "fact that the debtor may have voluntarily submitted itself to the bankruptcy court's equitable jurisdiction does not complete the analysis. *A court must also ask whether the resolution of the particular dispute at issue is necessarily part of the process of the disallowance and allowance of claims*." *See Billing*, *supra*, 22 F.3d at 1251-52, n.14 (emphasis added). As discussed in Part B.2., *supra*, Judge Walsh properly followed the Third Circuit's mandatory structure by analyzing whether each of Plaintiff's counterclaims is a *necessary* part of the "claims-allowance process."

The Bankruptcy Court also correctly followed the teachings of *Ross* and *Billing* by rejecting Credit Suisse's categorical "waiver" theory. *See Oakwood Homes*, 378 B.R. at 70 ("This Court believes that Defendants' core proposal flies in the face of the Supreme Court's clear instruction that 'legal claims are not magically converted into equitable issues by their presentation to a court of equity.'" (quoting *Ross*, 396 U.S. at 538)). There can be no dispute that *Ross* and *Billing* are controlling law here or that Credit Suisse's extreme suggestion is obviously foreclosed by those opinions; Defendants' theories, and the few lower court decisions they cite, work only if claims filed in the Bankruptcy Court are "magically" transmuted in nature. But any regime under which a party's choice of forum is conclusive renders the Seventh Amendment a

---

*Contractors*, 67 B.R. 260, 266-67 (N.D. Tex. 1986) (explaining why "[a] litigant does not abandon constitutional protections simply because the proceedings are in a bankruptcy court"); *In re Crown Vantage, Inc.*, No. 02-03836, 2002 U.S. Dist. LEXIS 26109, at *11 (N.D. Cal. Dec. 16, 2002) ("[A]rguments concerning waiver and the submission to the equitable jurisdiction of the court are unconvincing."); *Rickel & Assocs., Inc. v. Smith (In re Rickel & Assocs., Inc.)*, 320 B.R. 513, 517 (Bankr. S.D.N.Y. 2005) (rejecting "submission to equitable jurisdiction" theory, and noting how "a bankruptcy proceeding will 'transform' a legal claim into an equitable claim" only if it implicates the claims-allowance process); *Hays v. Equitex, Inc. (In re RDM Sports Group)*, 260 B.R. 915, 924-25 (Bankr. N.D. Ga. 2001) (detailing defects in forum-waiver theory; concluding that the Supreme Court cases focus on "the claims process and/or the restructuring of the debtor-creditor relationship," and thus a trustee's "commencement of [an] action in bankruptcy court does not constitute an automatic waiver of his right to a trial by jury," even if the trustee's claims may be brought elsewhere).

transient and ephemeral right.  The vast bulk of the case law, including controlling authority –

operating under basic common sense and due respect for the Constitution – correctly holds that a

more substantive inquiry must be used.  In the context of bankruptcy cases, that deeper inquiry

looks to the claims-allowance process and reviews each individual claim to see if it necessarily

affects that process.  Here, Plaintiff will try several counterclaims that have no bearing on the

allowance of CSS's proofs of claim, and that logical disconnect preserves Plaintiff's Seventh

Amendment rights to have a jury try all those claims.  Credit Suisse fails to persuade otherwise.

### 4 .    Contractual Jury Waivers Are Narrowly Construed; The Bankruptcy Court Properly Limited The One Before It.

In a final effort to avoid trying any part of this case to a jury, Defendants again

point to a contractual jury waiver clause in the documentation for the "warehouse" credit facility

used by the Oakwood Companies.  (*See* Def. Br. at 20-23.)  The Bankruptcy Court rejected this

contractual waiver argument ***for three separate reasons***, any one of which would be individually

sufficient to render that waiver inoperative here.  *See Oakwood Homes*, 378 B.R. at 70-73.[26]

The Bankruptcy Court's first problem with the purported waiver was that the

relevant contracts were not executed by even close to all the parties to this litigation, either on

Plaintiff's side or on Defendants' side.  *See id.* at 71-72.  It is difficult to fathom how Defendants

---

[26]  As explained in the text, the Bankruptcy Court's waiver analysis finds support across the case law.  Critically, all the analysis was performed in light of the repeated dictate that, "[b]ecause the 'right of jury trial is fundamental, ***courts indulge every reasonable presumption against waiver***.'"  *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007) (emphasis added) (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)); *see also, e.g.*, *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998) ("The right to jury trial is too important . . . to find a knowing and voluntary relinquishment of the right in a doubtful situation."); *Reboy v. Cozzi Iron & Metal, Inc.*, 9 F.3d 1303, 1306 (7th Cir. 1993) ("The right to a jury trial is important and this Court will not find a waiver without clear, unequivocal evidence that the party intended to waive its right."); *Nat'l Acceptance Co. v. Myca Prods., Inc.*, 381 F. Supp. 269, 270 (W.D. Pa. 1974) ("Courts will narrowly construe any waiver of [the jury trial] right and will indulge in every reasonable presumption against waiver.").

could dispute this factual conclusion or contest its clear legal implications,[27] which likely explains why it just goes unmentioned in the Defendants' Brief.

Indeed, among the Bankruptcy Court's conclusions was that the **sole** beneficiary of the purported waiver – "Credit Suisse First Boston, New York Branch" ("**NY Branch**") – is distinct from other Defendants.  *See id.* at 71 ("None of Defendants here bear that name."); *see also id.* (noting that CSS "is not a party to the two agreements containing the jury waiver and thus it has no standing to enforce the waiver").  Credit Suisse has waffled on this point before, depending upon the context, but here they make **no** mention of this **factual** issue – perhaps because Defendants' counsel wants to continue their gamesmanship about whether NY Branch is a party[28] (*see* Holt Decl. ¶ 8) instead of stating facts that forthrightly respond to the Bankruptcy Court's ruling.  In any case, the right result remains clear:  Defendants "cannot all claim shelter in a waiver signed only by" NY Branch,[29] nor can that waiver limit "rights of thirteen Debtors that did not sign it – rights that now belong to [Plaintiff]."  *See Oakwood Homes*, 378 B.R. at 72.

---

[27]  *See, e.g.*, *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."); *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151, 1166 n.21 (9th Cir. 1996) (since "courts generally construe jury waivers narrowly," they "are even more hesitant to extend the protections of [a] jury waiver clause to a nonsignatory"); *Hulsey v. West*, 966 F.2d 579, 581 (10th Cir. 1992) ("Generally, a jury waiver provision in a contract or lease affects only the rights of the parties to that contract or lease.").

[28]  Since Defendants' counsel has now made affirmative representations to two courts that a jury waiver signed only by NY Branch could apply to the instant case, they should be deemed to have waived any argument, for the rest of the case, that NY Branch is not actually a party.

[29]  Defendants' efforts to apply NY Branch's waiver to CSS via osmosis conflict with their belief that the Credit Suisse entities' separateness should be respected – a theme one of the key CSS actors stressed at his deposition.  *See* Holt Decl., Ex. "B" at 70:18-71:4, 172:1-19, 389:9-391:12.  Although Plaintiff believes all the entities functioned as one unit or were otherwise "alter egos," this issue need not be resolved today because that fact still would not justify including a nonsignatory in a contractual jury waiver.  *See, e.g.*, *Nisselson v. Empyrean Inv. Fund, L.P. (In re MarketXT Holdings Corp.)*, 336 B.R. 39, 63 (Bankr. S.D.N.Y. 2006).

The Bankruptcy Court's second problem with the waiver was that it only applies to actions relating to one financing transaction, whereas this litigation "is about whether Defendants breached far broader duties, not arising from any written contract, by partaking in a myriad of alleged illicit transactions with the Oakwood Companies," which "falls outside the scope of the purported waiver." *See id.* at 72. Defendants offer no new reason to doubt the Bankruptcy Court's narrow reading of the purported waiver's scope, which was required under both *Aetna Insurance Co.* and *Tracinda. See also, e.g.*, *Urban Outfitters, Inc. v. 166 Enter. Corp.*, 136 F. Supp. 2d 273, 275 (S.D.N.Y. 2001) ("Courts are to strictly construe jury waiver clauses, as the right to a jury trial is fundamental and protected by the Seventh Amendment."). Nor do Defendants make any effort to distinguish the cases cited by the Bankruptcy Court.[30] Rather, Defendants attempt to twist Plaintiff's case so as to make the "warehouse" credit facility "central to plaintiff's theory of its fiduciary duty claim." (*See* Def. Br. at 22.) This distortion is unfortunate; the thrust of Plaintiff's case at trial will be that Credit Suisse failed to adequately investigate and advise the Oakwood Companies with respect to the many complex transactions Credit Suisse reviewed, structured, and implemented. These abject breaches of duty would give rise to strong damages claims even if some other, third-party lender provided the "warehouse" line; the fact that Credit Suisse *also* received massive lending fees on top of everything else is a small side dish here, not the main course, as the Bankruptcy Court correctly recognized.

The third part of the Bankruptcy Court's waiver analysis also goes unmentioned by Credit Suisse. This part applied the framework of *First Union National Bank v. United*

---

[30] *See Nichols Motorcycle Supply Inc. v. Dunlop Tire Corp.*, 913 F. Supp. 1088, 1146-47 (N.D. Ill. 1995) (broad jury waiver in agreement did not encompass any "claims that do not directly arise or have their basis in the [agreement]"); *Nat'l Acceptance Co. v. Myca Prods., Inc.*, 381 F. Supp. 269, 269-70 (W.D. Pa. 1974) (jury waiver in loan agreement purporting to affect "any action" between the parties did not apply to claim alleging breaches of a separate duty).

*States*, 164 F. Supp. 2d 660 (E.D. Pa. 2001), to this case's facts. *See Oakwood Homes*, 378 B.R. at 72-73. Under *First Union*, the proponents of purported waivers must offer "evidence that there was not a gross disparity in bargaining power between" the parties, which is particularly important when the signatory corporation is in poor "financial straits at the time the documents were executed, [since] it is highly likely that there was a severe disparity in bargaining power" in such circumstances. *See* 164 F. Supp. 2d at 665; *see also Tracinda*, 502 F.3d at 222 (favorably citing *First Union* model for analyzing jury rights). Here, the Bankruptcy Court reviewed record testimony[31] and concluded that "there is a good argument that the two Oakwood Companies were at a severely disadvantaged bargaining [position]" when they negotiated the purported waiver, and since "Defendants did not offer any evidence to the contrary," they failed to meet their burden of proof on this issue. *See Oakwood Homes*, 378 B.R. at 73. The Bankruptcy Court's ***factual*** finding and stated need for more evidence is critically important, because it can be reversed only if Credit Suisse offers contrary evidence. But Defendants proffer no such evidence. Rather, as with the rest of the Jury Trial Opinion, Defendants act as if the Bankruptcy Court's findings do not even exist. This evasion creates no reason for the Court to doubt the Bankruptcy Court's findings, and provides absolutely zero grounds for a contrary result.

In sum, the Bankruptcy Court found that the purported contractual jury waiver involves the wrong parties, is too narrow, and is not enforceable in any event. Credit Suisse has not even bothered to offer any fresh arguments on the other side. Given the skeptical eye with which courts must read such waivers, this flimsy one cannot eviscerate Plaintiff's basic rights.

---

[31] Specifically, the court considered testimony making obvious that the Oakwood Companies were insolvent at the time and had no practical choice but to sign whatever documents Credit Suisse presented. *See* Holt Decl., Ex. "C" at 50:6-52:16 (Oakwood officer explaining that the "warehouse" deal was "the only game in town" and "had to get done" no matter the terms).

**5.** **To The Extent That The Court Considers This To Be A Close Question, It Should Err On The Side Of Protecting Plaintiff's Core Constitutional Rights.**

As detailed above, the Jury Trial Opinion properly rejected all four of the strained arguments Credit Suisse tries to repackage here. Even so, any "close calls" must comport with the "guiding beacon . . . lit by the Supreme Court: when in doubt, grant a jury trial." *City of New York v. Beretta U.S.A. Corp.*, 317 F. Supp. 2d 193, 196 (E.D.N.Y. 2004). That guiding beacon stems from the constitutional nature of the jury right. As powerfully explained by one court:

> the right to a trial by jury is one of the most precious of the rights guaranteed by the Constitution, and should be one of the most jealously guarded. In view of this, if the Court is to err in its holding, it chooses to err in favor of granting a right to trial by jury, as opposed to denying such an important right.

*EEOC v. Blue Star Foods, Inc.*, No. 78-5-W, 1980 U.S. Dist. LEXIS 11131, at *11 (S.D. Iowa Mar. 7, 1980).[32] The Bankruptcy Court followed this guiding light, *see Oakwood Homes*, 378 B.R. at 65, and Defendants fail to provide any good reason for ***this Court*** now to change course and depart from such fundamental principles. Thus, to the extent the Court is uncertain about the right result, it should guard Plaintiff's Seventh Amendment rights and deny the Motion to Strike.

---

[32] *See also, e.g.*, *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959) ("Since the right to jury trial is a constitutional one, however, while no similar requirement protects trials by the court, [judicial] discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial." (footnote omitted)); *Turner v. Johnson & Johnson*, 809 F.2d 90, 99 (1st Cir. 1986) ("[I]f we must err, we choose to do so on the side of preserving plaintiffs' right to a jury trial."); *United States v. McAlister*, 630 F.2d 772, 774 (10th Cir. 1980) (noting how if a decision will "require too many jury trials, we properly err on the side of protecting a constitutional right"); *Lee Pharm. v. Mishler*, 526 F.2d 1115, 1117 (2d Cir. 1975) ("[W]e believe that the federal policy favoring jury decisions of disputed fact questions impels us to resolve any doubts in favor of the right to a jury trial." (citation and quotation marks omitted)); *Educ. Testing Servs. v. Katzman*, 670 F. Supp. 1237, 1243 (D.N.J. 1987) (Barry, *J.*) (stating that if court erred by denying motion to strike, it properly "erred on the side of protecting an important constitutional right, fundamental to the fair administration of justice"); *Prudential Oil Corp. v. Phillips Petrol. Co.*, 392 F. Supp. 1018, 1022 (S.D.N.Y. 1975) ("[T]he inescapable teaching of recent Supreme Court decisions is that there is a clear federal policy in light of the Seventh Amendment favoring jury trials and that, in doubtful cases, that policy should be favored.").

## CONCLUSION

For the reasons and based on the authorities set forth above, the Court should

deny the Motion to Strike in its entirety.

Respectfully submitted,

Dated:  February 19, 2008
Wilmington, Delaware

/s/ *Marla Rosoff Eskin*
MARLA ROSOFF ESKIN (No. 2989)
KATHLEEN CAMPBELL DAVIS (No. 4229)
KATHRYN S. KELLER (No. 4660)
CAMPBELL & LEVINE, LLC
800 N. King Street, Suite 300
Wilmington, DE 19801
(302) 426-1900

  -and-

TONY CASTAÑARES (CA SBN 47564)
STEPHAN M. RAY (CA SBN 89853)
SCOTT H. YUN (CA SBN 185190)
WHITMAN L. HOLT (CA SBN 238198)
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
(310) 228-5600

Special Counsel for the OHC
Liquidation Trust

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oakwood Homes Corporation, et al., | ) | Case No. 02-13396 (PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ——————————————— | ) | |
| OHC Liquidation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0799 (JJF) |
| | ) | |
| Credit Suisse (f/k/a Credit Suisse First Boston, a | ) | |
| Swiss banking corporation), Credit Suisse | ) | |
| Securities (USA), LLC (f/k/a Credit Suisse First | ) | |
| Boston LLC), Credit Suisse Holdings (USA), Inc. | ) | |
| (f/k/a Credit Suisse First Boston, Inc.), and Credit | ) | |
| Suisse (USA), Inc. (f/k/a Credit Suisse First Boston | ) | |
| (U.S.A.), Inc.), the subsidiaries and affiliates of | ) | |
| each, and Does 1 through 100, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

## CERTIFICATE OF SERVICE

I, Kathryn S. Keller, of Campbell & Levine, LLC, hereby certify that on February 19,

2008, I caused a copy of the **Answering Brief in Opposition to Defendants' Motion to Strike**

**Plaintiff's Jury Trial Demand**, to be served upon the individuals listed below via the method

indicated.

| | |
|---|---|
| Lee E. Kaufman, Esq.<br>Russell C. Silberglied, Esq.<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>**VIA HAND DELIVERY** | Mary K. Warren, Esq.<br>Michael Osnato, Esq.<br>J. Justin Williamson, Esq.<br>Paul R. Wickes, Esq.<br>Linklaters<br>1345 Avenue of the Americas<br>Nineteenth Floor<br>New York, NY 10105<br>**VIA FEDERAL EXPRESS** |

{D0106501.1 }

Dated: February 19, 2008                    CAMPBELL & LEVINE, LLC


                                            */s/ Kathryn S. Keller*
                                            Kathryn S. Keller (No. 4660)
                                            800 N. King Street, Suite 300
                                            Wilmington, DE 19801
                                            (302) 426-1900