IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br>Oakwood Homes Corporation,<br>et al.,<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 02-13396 (PJW)<br><br>Jointly Administered |
| OHC Liquidation Trust,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>Credit Suisse (f/k/a Credit Suisse First Boston,<br>a Swiss banking corporation), Credit Suisse<br>Securities (USA), LLC (f/k/a Credit Suisse First<br>Boston LLC), Credit Suisse Holdings (USA),<br>Inc. (f/k/a Credit Suisse First Boston, Inc.), and<br>Credit Suisse (USA), Inc. (f/k/a Credit Suisse<br>First Boston (U.S.A.), Inc.), the subsidiaries and<br>affiliates of each, and Does 1 through 100,<br><br>　　　　　　　　　Defendants. | Adversary Proceeding<br>No. 04-57060 (PJW)<br><br>Civil Action No. 07-799 (JJF) |

**REPLY MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S JURY TRIAL DEMAND**

Of Counsel:
R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson
LINKLATERS
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9000

Dated: February 26, 2008

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

ARGUMENT .............................................................................................................................. 1

I. THE COURT SHOULD STRIKE PLAINTIFF'S JURY TRIAL DEMAND ................ 3

    A. Plaintiff Cannot Demonstrate a Jury Right in This Action ............................... 3

        1. Plaintiff Cannot Disown Its Own Pleading, Which Forecloses a Jury Trial Right in This Action ................................................... 3

        2. None of the Plaintiff's Claims Give Rise to a Jury Trial ................. 7

    B. Plaintiff Has Waived All Jury Trial Rights ....................................................... 9

        1. Plaintiff Waived Any Jury Trial Rights by Filing This Proceeding Before the Bankruptcy Court ........................................ 9

        2. Plaintiff Has Waived Its Jury Trial Rights by Contract ................. 10

CONCLUSION ......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Pages**

## CASES

Billing v. Ravin, Greenberg & Zackin P.A.,
22 F.3d 1242 (3d Cir. 1994)..................................................................................................9

Cantor v. Perelman,
No. Civ. A. 97-586-KAJ, 2006 WL 318666 (D. Del Feb. 10, 2006) ...................................8

In re Crown Vantage, Inc.,
No. 02-03836, 2002 U.S. Dist. LEXIS 26109 (N.D. Cal. Dec. 16, 2002) ....................1, 2, 6

Germain v. Conn. Nat'l Bank,
988 F.2d 1323 (2d Cir. 1993)................................................................................................5

Goldstein v. K-Swiss, Inc (In re Just for Feet, Inc.),
No. 99-4110, 2002 WL 550035 (Bankr. D. Del. Apr. 4, 2002)...........................................10

Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,
458 F.3d 244 (3d Cir. 2006), cert. denied, 127 S. Ct. 1878 (2007) ......................................3

Liquidation Trust of Hechinger Inv. Co. v. Fleet Retail Fin. Group
(In re Hechinger Inv. Co.), 327 B.R. 537 (D. Del. 2005) .....................................................6

Martin v. Port Auth. Transit of Allegheny County,
115 F.App'x 556 (3d Cir. 2004) ...........................................................................................2

Mirant Corp. v. Southern Co.,
337 B.R. 107 (N.D. Tex. 2006).............................................................................................5

Official Comm. of Unsecured Creditors of Integrated Health Servs. v. Elkins (In re
Integrated Health Servs.), 291 B.R. 615 (Bankr. D. Del. 2003) ...........................................1

Pereira v. Farace,
413 F.3d 330 (2d Cir. 2005)..............................................................................................7, 8

Pratt v. Ventas, Inc.,
365 F.3d 514 (6th Cir. 2004) .................................................................................................2

Ross v. Bernhard,
396 U.S. 531 (1970)..............................................................................................................9

Defendants Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.) (collectively, "Defendants" or "Credit Suisse"), respectfully submit this Reply Memorandum of Law in Support of Defendants' Motion to Strike Plaintiff's Jury Trial Demand.

## ARGUMENT

As a preliminary and procedural matter, Plaintiff's Opposition asserts a number of arguments grounded in the theory that the Bankruptcy Court's initial determination concerning jury trial rights is somehow binding on this Court and therefore the Court should decline to consider Defendants' Motion. (Opp. Br. at 8-17.) Of course, Plaintiff's own authority contradicts such a point. (Opp. Br. at 31 (citing In re Crown Vantage, Inc., No. 02-03836, 2002 U.S. Dist. LEXIS 26109 (N.D. Cal. Dec. 16, 2002) (motion to strike jury demand determined by district court following initial determination by bankruptcy court and holding that bankruptcy court determination not binding on district court).) Moreover, Defendants have not "ignored" the initial determination of jury rights by the Bankruptcy Court, but rather have noted the Bankruptcy Court's decision and consistently maintained that decision is not binding on this Court. The non-binding nature of that decision should be self-evident from the fact that although the reference of Chapter 11 and related cases in this District has been made to the Bankruptcy Court, the District Court has not specially designated the Bankruptcy Court to conduct jury trials. See Official Comm. of Unsecured Creditors of Integrated Health Servs. v. Elkins (In re Integrated Health Servs.), 291 B.R. 615, 622 (Bankr. D. Del. 2003) ("[i]n this District, the Bankruptcy Judges have not been specially designated by the District Court to conduct a jury

trial. Therefore, even if the parties consent, we may not conduct a jury trial."). Although not a subtle point, it finds no mention in Plaintiff's "procedural defects" analysis.

This issue is not driven by whether a Bankruptcy Court's determination of any particular issue should be accorded weight in the District Court. If the question of a party's entitlement to a jury trial were not a constitutional question concerning a constitutional function, authority over which has not been vested in the Bankruptcy Court, the Trust's procedural arguments might be relevant here, although even then it seems unlikely. However, the right to a jury trial is a constitutional question, and Bankruptcy Courts in this District have been granted no power or authority over jury trials and matters related thereto. The Bankruptcy Court's determination of the existence of jury trial rights cannot be the final determination of jury trial rights in this action.

Plaintiff's arguments suffer from other fatal flaws as well. First, the doctrine of collateral attack concerns the challenge of a ruling rendered by one court where the issues underlying that judgment are sought to be re-litigated in a *different action* in a *different court*. See Pratt v. Ventas, Inc., 365 F.3d 514, 519 (6th Cir. 2004) ("A 'collateral attack' is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court."). Second, the law of the case doctrine is wholly inapplicable as, contrary to the Trust's assertion, "[i]nterlocutory orders remain open to reconsideration and do not constitute the law of the case." Martin v. Port Auth. Transit of Allegheny County, 115 F.App'x 556, 560 (3d Cir. 2004). See also In re Crown Vantage, Inc., No. 02-03836, 2002 U.S. Dist. LEXIS 26109 (N.D. Cal. Dec. 16, 2002) (determining that law of the case did not apply to bankruptcy court's determination of jury rights on subsequent motion to strike jury demand before district court). Third, issue preclusion does not affect this motion as the Bankruptcy Court's

interlocutory determination plainly was not a valid final judgment as is required for application of issue preclusion. See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 254 (3d Cir. 2006) (noting required element of issue preclusion is valid final judgment on the merits), cert. denied, 127 S. Ct. 1878 (2007). Finally, Plaintiff's "reconsideration" argument (see Opp. Br. at 15-17) is baseless as Defendants' have not moved for reconsideration of the Bankruptcy Court's decision. As Defendants asserted in the Opening Brief, the Bankruptcy Court's decision is entitled to neither deference nor binding effect in this Court.

Given that the Bankruptcy Court's initial determination of jury rights has no binding effect on this Court, Defendants respectfully submit that, for the reasons discussed below, the Court should strike Plaintiff's jury demand.

## I. THE COURT SHOULD STRIKE PLAINTIFF'S JURY TRIAL DEMAND

### A. Plaintiff Cannot Demonstrate a Jury Right in This Action

#### 1. Plaintiff Cannot Disown Its Own Pleading, Which Forecloses a Jury Trial Right in This Action

Defendants' Opening Brief asserted the simple proposition that because the Trust asserted *all* counterclaims as the basis for its objection seeking disallowance or equitable subordination of the Proof of Claim, *all* of the counterclaims necessarily fall within the equitable claims allowance process such that no jury rights exist. (Opening Br. at 8-13.) The Trust concedes, as it must, that to the extent any counterclaims implicate the claims allowance process, no jury trial rights exist. (Opp. Br. at 24.) The Trust, however, ignores its own pleading in this case and focuses on its wishful *characterization* of its claims rather than the claims and procedural posture pleaded in the Objection and Counterclaims. In fact, the Trust relies entirely on its fictional description of its counterclaims as relating to conduct prior to, or post, the execution of the August 19, 2002 Restructuring and Financial Advisory Agreement. (Opp. Br. at

3

26-27.) That distinction has no foundation in the Objection and Counterclaims – indeed, the Trust never once cites its own pleading to support its characterizations. That is because the Objection and Counterclaims asserts all claims on which a jury trial is demanded here against all Defendants and makes no distinction among the timing of services, particular entities, or particular contracts. The Trust's entire argument on this point – that certain counterclaims fall outside the claims allowance process – is grounded in an impermissible rewriting of its own pleading and should be rejected.

        The Trust argues that its claims for breach of fiduciary duty, negligence and breach of implied contract are "based upon a pattern of behavior starting long before August 19, 2002 and are not 'necessarily part of the process of determining whether CSS's claims' should be allowed." (Opp. Br. at 26.) That characterization misses the point. Each of the breach of fiduciary duty, negligence and breach of implied contract claims was pleaded as the underlying basis for disallowance and/or equitable subordination of the Proof of Claim. Whether Plaintiff now characterizes the facts as adduced in discovery as "logically separate" has no bearing on this analysis. The fact that the Objection and Counterclaims expressly ties the objection to the Proof of Claim to the counterclaims asserting the counterclaims as the basis for disallowance and equitable subordination controls the outcome here.[1] As pleaded, the Court cannot resolve the allowance or disallowance or equitable subordination of the Proof of Claim without resolving the issues raised in the counterclaims because the counterclaims are the basis for disallowance or equitable subordination.

---

[1] In the Trust's description of its claims, conspicuously absent is any citation or reference to the Objection and Counterclaims. It is as if that pleading does not exist. A cursory review of the claims and relief sought in the Objections and Counterclaims reveals the rationale behind this absence: Plaintiff's new characterization of the case it filed bears no resemblance to the actual pleading.

4

Plaintiff's continued reliance on the handful of cases holding that a debtor or trustee is entitled to a jury trial on certain counterclaims is fundamentally misplaced, as the claims at issue in those cases were determined to be wholly unrelated to the claims allowance process.[2] Specifically, Plaintiff's reliance on Germain v. Conn. Nat'l Bank, 988 F.2d 1323 (2d Cir. 1993), is inexplicable. As Defendants explained in their Opening Brief, in Germain the court found that, although the creditor had filed a proof of claim, the trustee's action was "not part of the claims-allowance process" and was not "integral to the reordering of relations among the parties" because the claims at issue were common law causes of action originally filed in an entirely separate state court proceeding, were not the underlying basis for the trustee's objection to a proof of claim, and therefore did not implicate the claims allowance process. Id. at 1325-29.

More important, though, is the court's equitable subordination analysis, which Plaintiff attempts to glide past in a footnote. (Opp. Br. at 28, n.22.) The Germain court

---

[2] Although finding less emphasis in Plaintiff's Opposition Brief, Plaintiff's continued reliance on authority finding that a creditor maintained a right to a jury trial on certain counterclaims asserted by debtors or trustees is equally misplaced. The Trust seeks to explain away the difference between a creditor-defendant seeking to preserve its jury trial right and a trustee-plaintiff by arguing that a "pleading method" should not make "legal" claims part of the claims allowance process. (Opp. Br. at 30.) However, this difference in procedural posture is fundamental. The cases addressing a creditors' right to a jury trial on claims unrelated to the proof of claim are focused on whether a creditor can be denied its constitutional right to a jury trial with respect to claims it never intended to resolve through the equitable powers of the bankruptcy court. By contrast, the Trust, as the counterclaims-plaintiff, is the master of its own proceeding, and it chose to pursue an adversary proceeding in this Court by objecting to the Proof of Claim and seeking equitable subordination based on certain counterclaims. The Trust affirmatively chose to bundle its counterclaims into the objection to the Proof of Claim and to submit the entire controversy to the bankruptcy court for resolution in connection with the claims allowance process, knowing not only that it was invoking equity but that it filed the case in a court that is not permitted to conduct jury trials. The creditors in the cases cited by Plaintiff had no similar ability to select a forum or style of relief with respect to claims unrelated to a proof of claim. Authority addressing this issue is therefore inapposite. See Mirant Corp. v. Southern Co., 337 B.R. 107, 121 (N.D. Tex. 2006) (finding creditor's right to jury trial not forfeited for claims unrelated to the proof of claim and claims allowance process).

5

concluded that its jury trial determination would be inconsistent with the assertion of an equitable subordination claim founded on claims that are tried to a jury. Id. at 1332. That is precisely the situation in this case. As pleaded, Plaintiff's counterclaims are asserted as the basis and foundation for the objection to the Proof of Claim, including equitable subordination, and that fact forecloses a jury trial in this action just as it would have in Germain if equitable subordination had been claimed.[3]

Plaintiff's reliance on In re Crown Vantage, Inc., No. 02-03836, 2002 U.S. Dist. LEXIS 26109 (N.D. Cal. Dec. 16, 2002) is equally misplaced. Similar to Germain, that case involved affirmative claims asserted in separate state court proceedings that were eventually consolidated. Crown Vantage, 2002 U.S. Dist. LEXIS 26109, at *3-5. The court's analysis focused appropriately on the fact that the claims asserted were neither counterclaims to a proof of claim nor were they pleaded as a basis for disallowance or equitable subordination. Id., at *11-13. Although a proof of claim had been filed, the court correctly concluded the affirmative claims of the trust were wholly unrelated to the proof of claim and the claims allowance process.[4] Id., at *13.

---

[3] Plaintiff argues that a "process" can be used to avoid the conflict between a jury tried counterclaim supporting an equitable subordination claim. (Opp. Br. at 28, n.22.) However, this conflict is avoided not by a process developed by courts to remedy problematic pleading, but rather by not pleading counterclaims on which a jury trial is sought as the basis for equitable subordination and disallowance of proofs of claim.

[4] Plaintiff's reliance on Liquidation Trust of Hechinger Inv. Co. v. Fleet Retail Fin. Group (In re Hechinger Inv. Co.), 327 B.R. 537 (D. Del. 2005) is similarly puzzling. (Opp. Br. at 31-32.) There the court appropriately determined that, in addition to the specific claims asserted by the Trust being equitable in nature, the Trust's objection to the proof of claim had triggered the claims allowance process even with respect to the counterclaims for fraudulent transfer and breach of fiduciary duty. Id. at 545-46. Defendants agree with the Hechinger court in that the pleading of an objection to a proof of claims will trigger the claims allowance process and foreclose any jury trial rights, particularly with respect to any counterclaims that are asserted as the basis for that objection.

Those cases on which the Trust primarily bases its argument fully support Defendants' position. The courts in Germain and Crown Vantage were addressing common law or statutory claims, wholly unrelated and untethered to any claim for disallowance or equitable subordination of a proof of claim. That is a fundamentally different scenario than the claims asserted in the Objections and Counterclaims. Because the Objection and Counterclaims pleaded the counterclaims as the basis for disallowance and equitable subordination of the Proof of Claim, the claims allowance process is necessarily implicated, thereby foreclosing any jury trial rights in this action.

### 2. None of Plaintiff's Claims Give Rise to a Jury Trial

As Defendants explained in their Opening Brief, even if this action had not been pleaded to affect the claims allowance process, Plaintiff's claims on which a jury trial is demanded are equitable in nature, thus separately foreclosing any right to a jury trial. (Opening Br. at 13-18.) The Trust concedes that the most important aspect of the Granfinanciera analysis is that of the remedy sought (Opp. Br. at 21), yet fails to acknowledge the mixed relief it seeks in its pleadings. Given that this action presents a mixed form of equitable and legal relief based primarily on the equitable claim of breach of fiduciary duty, the law is clear there are no jury trial rights here.

First, Plaintiff's application of Granfinanciera's remedy analysis is simply wrong. By analogizing to the Second Circuit's opinion in Pereira, a case in which the plaintiff sought exclusively legal damages, Plaintiff misunderstands a critical distinction between the purely legal relief sought by the plaintiffs in that case and the mixed relief the Trust is seeking here. Pereira v. Farace, 413 F.3d 330, 339 (2d Cir. 2005). In Pereira, the defendants were directors who had allegedly permitted the CEO to enrich himself (the CEO was not a defendant). Id. at 334. The

Second Circuit's holding depended entirely on the fact that since the director defendants had not themselves been enriched, the damages remedy was purely legal. Id. at 339 – 41.

In Cantor this Court specifically questioned the wisdom of the Second Circuit's overly expansive reasoning in Pereira, stating that its limited view of the scope of equitable relief "tears that definition from [its] key logical underpinning[s]." Cantor v. Perelman, No. Civ. A. 97-586-KAJ, 2006 WL 318666, at *8 (D. Del. Feb. 10, 2006). Plaintiff seeks to do the same thing here. However Plaintiff has articulated its form of mixed equitable relief in virtually every pleading in this case, including the Objection and Counterclaims (Objection/Counterclaims at 36-37), the Supplemental Rule 26(a)(1) Disclosures (Murphy Decl. Ex. C at 4-6, 8); and briefing before the Bankruptcy Court (Bankr. D.I. No. 198). All of those pleadings inform the type of remedy sought, not Plaintiff's self-serving descriptions of its remedies.

Second, although Plaintiff continues to assert that its negligence and breach of implied contract claims are separate and distinct from its breach of fiduciary duty claim, Plaintiff's attempt to articulate the difference fails. There is no evidence whatsoever in the record that would support the existence of any duty other than the fiduciary duty alleged by Plaintiff. There cannot be a separate duty arising from contract or negligence because Plaintiff does not allege that the actual transactions Credit Suisse provided Oakwood were completed in a negligent manner. Rather, Plaintiff claims that Credit Suisse should have either advised Oakwood to file for bankruptcy at an earlier date against the wishes of Oakwood's board of directors, or should have forced Oakwood into bankruptcy. There is no evidence of an implied contract in the record, much less one that would impose such a duty. Nor will any theory of negligence support such a duty. Breach of fiduciary duty is the only operative claim.

### B. Plaintiff Has Waived All Jury Trial Rights

#### 1. Plaintiff Waived Any Jury Trial Rights by Filing This Proceeding Before the Bankruptcy Court

Citing authority from this Circuit as well as others, Defendants' Motion argued that even if the Objection and Counterclaims were not the controlling pleading that disposes of the jury trial question, Plaintiff's decision to assert its claims in a court of equitable jurisdiction that cannot utilize a jury bars any jury trial in this action. (Opening Br. at 18-20.) Plaintiff makes no attempt to distinguish the authorities cited by Defendants, but rather argues that two decisions from the Third Circuit and the Supreme Court respectively dispose of any waiver argument. (Opp. Br. at 32-35.) Plaintiff is wrong.

Neither the Third Circuit's decision in Billing v. Ravin, Greenberg & Zackin P.A., 22 F.3d 1242 (3d Cir. 1994) nor the Supreme Court's decision in Ross v. Bernhard, 396 U.S. 531, 538 (1970), address the issue of whether a liquidation trust may assert common law claims under the equitable jurisdiction of the bankruptcy court as counterclaims to a proof of claim with no effect on potential jury trial rights. In fact, Billing addressed the specific holdings of other courts that take a far more expansive view of the exclusive nature of the Bankruptcy Court's equitable jurisdiction and hold that a debtor (and its subsequent successors in interest) waives any jury trial rights upon the filing of the bankruptcy petition. The Third Circuit disagreed with such an expansive waiver theory and suggested an approach similar to that presented by Defendants, specifically that the when counterclaims are part and parcel of the claims allowance process no jury trial rights exist. Billing, 22 F.3d at 1251-52. The Supreme Court's decision in Ross is irrelevant on its facts and the legal issues considered by the Court. Ross v. Bernhard, 396 U.S. 531, 538 (1970) (considering whether a derivative action brought by

9

a stockholder on behalf of a corporation has jury trial rights by reference to the equitable nature of the derivative action compared to the legal nature of the underlying claims).

As Defendants have established, the same principles that apply to creditors should apply to a debtor or trustee in this context. (Opening Br. at 20.) When parties elect the Bankruptcy Court and its exclusive equitable jurisdiction for resolution of claims and controversies where other forums exist, those parties should be held to the implications of those decisions. This is particularly the case given that creditors are routinely found to have waived jury trial rights on the basis of filing proofs of claim in the bankruptcy courts. See, e.g., Goldstein v. K-Swiss, Inc (In re Just for Feet), No. 99-4110, 2002 WL 550035 (Bankr. D. Del. Apr. 4, 2002) ("[T]he Third Circuit Court of Appeals has held that by submitting a proof of claim to the debtor's estate, the creditors effectively waive their right to a jury trial and instead submit themselves to the equitable jurisdiction of the bankruptcy court."). There is simply no reason, either in law or logic, to provide a debtor or trustee greater latitude in the implications of such decisions. As to Plaintiff's argument that allowing the choice of forum to inform a jury trial analysis will cause the Seventh Amendment to be "transient and ephemeral" (Opp. Br. at 34-35), that is simply not the case – Defendants' Motion and argument seek only to hold Plaintiff to the same standard to which Defendants would be held if the roles were reversed.

  2. **Plaintiff Has Waived Its Jury Trial Rights by Contract**

In their Opening Brief, Defendants demonstrated that Oakwood's express contractual waiver of jury trial rights in any action relating directly or indirectly to the Loan Purchase Facility barred any jury trial rights in this action. (Opening Br. at 20-22.) Plaintiff

responds with two arguments that the waiver is inoperative here:[5] (i) the Loan Purchase Facility agreements were not executed by all parties to this action; and (ii) the contractual waiver only applies to one financing transaction. (Opp. Br. at 35-37.) Neither point is compelling.

First, although Plaintiff makes much of the fact that the only parties to both this action and the Loan Purchase Facility are Oakwood, OAC, and Credit Suisse, Plaintiff fails to explain why Credit Suisse, a named defendant in this action,[6] must have claims asserted against it tried to a jury solely because Credit Suisse Securities, another named defendant, is not a party to the Loan Purchase Facility documentation. Such a result simply makes no sense. Instead, the proper result should be that Oakwood and OAC, which are the primary entities for which all services were provided by Credit Suisse,[7] waived all jury trial rights relating directly or indirectly to the Loan Purchase Facility including those claims in this action. Such a waiver plainly encompasses the claims at issue in this case and the fact that a defendant was not a party to the transaction cannot nullify the operation of the waiver.

---

[5] Plaintiff's third argument that an evidentiary showing must be made in connection with a contractual jury trial waiver argument (Opp. Br. at 37-38) has no particular relevance here in that the analysis advanced by Plaintiff is one employed by the Eastern District of Pennsylvania and Plaintiff has not even suggested that analysis has been adopted by either the Third Circuit or the District of Delaware.

[6] Plaintiff's confusion over the difference between Credit Suisse and the New York Branch is surprising. The first paragraph of the Note Purchase Agreement, which contains one version of the jury trial waiver at issue here, notes that Credit Suisse, a Swiss banking corporation, enters the agreement acting through its New York Branch. (Murphy Decl. Ex. H, at 2.) There should be no dispute that as to who the parties to these transactions and defendants in this action are.

[7] Plaintiff argues that additional debtors that did not execute jury trial waivers had claims that were transferred to the Trust and therefore no jury trial waiver can be asserted with respect to those debtors. (Opp. Br. at 36.) That might be the case if Plaintiff could identify a single claim by any debtor other than Oakwood or OAC against any Credit Suisse entity. Plaintiff does not identify any such claims because no such claim exists. Credit Suisse provided services almost exclusively to Oakwood and/or OAC. While there may be debtors who did not sign an agreement with a jury trial waiver, those debtors have no claims against any Credit Suisse entity and therefore do not affect the analysis.

Second, Plaintiff's attempt to downplay the relevance and importance of the Loan Purchase Facility (Opp. Br. at 36-37) is flatly inconsistent with its own case and proffered testimony. As Defendants noted in their Opening Brief, Plaintiff's liability expert characterized the Loan Purchase Facility as so "vital to providing liquidity for Oakwood's securitization business" that if Credit Suisse "did not take over the role as lender, [Oakwood's] securitization business would have immediately collapsed" (Murphy Decl. Ex. J at 16-17, 36-39), and that in addition to the "breach" at the inception of the Loan Purchase Facility, Credit Suisse allegedly breached its "duties" *every* time it allowed Oakwood to use the facility to enable another securitization (Murphy Decl. Ex. J at 16-17, 36-39).

In short, Plaintiff offers no real justification as to why the broad, express jury trial waiver contained in the transaction documents for a primary financing facility that, according to Plaintiff's liability expert, was of critical importance, should not operate to foreclose a jury demand here. Accordingly, the Court should strike Plaintiff's demand for a jury trial.

## CONCLUSION

For all the reasons stated above, Defendants respectfully request that the Court strike Plaintiff's demand for a jury trial and conduct a bench trial before this Court.

DATED:    February 26, 2008
          Wilmington, Delaware

/s/ Mark D. Collins
Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

-and-

R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson
LINKLATERS
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9000

Attorneys for Defendants