**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------x

In re

Oakwood Homes Corporation,

et al.,

                                                          Debtors.

Chapter 11

Case No. 02-13396 (PJW)

---

OHC Liquidation Trust,

          Plaintiff,

v.

Credit Suisse (f/k/a Credit Suisse First Boston, a
Swiss banking corporation), Credit Suisse Securities
(USA), LLC (f/k/a Credit Suisse First Boston LLC),
Credit Suisse Holdings (USA), Inc. (f/k/a Credit
Suisse First Boston, Inc.), and Credit Suisse (USA),
Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.),
the subsidiaries and affiliates of each, and Does 1
through 100,

          Defendants.

Adversary Proceeding
No. 04-57060 (PJW)

Civil Action No. 07-799 (JJF)

  ORAL ARGUMENT REQUESTED

---------------------------------------------------------------x

**DEFENDANTS' REPLY TO PLAINTIFF'S**
**COUNTERSTATEMENT OF DISPUTED FACTS**

Of Counsel:

R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson

LINKLATERS LLP
1345 Avenue of the Americas
New York, New York  10105
(212) 903-9000

Dated:  March 31, 2008

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Lee E. Kaufman (No. 4877)

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700

*Attorneys for Defendants*

## Introduction

Plaintiff has utterly failed to show that factual disputes exist that would prohibit summary disposition. Indeed, Plaintiff's response demonstrates conclusively that there are no material facts in dispute. Plaintiff confuses fact issues with legal issues, and offers characterizations and conclusions drawn from facts that are not, themselves, in dispute. The case is now ripe for the completion of summary judgment briefing, without the need for the parties to incur the very substantial additional expenses that will be necessary to prepare for a jury trial. A short bench trial with respect to the non-jury issues will then be all that is required to bring this case to an end.

Plaintiff maintains that Oakwood was harmed by a delay of a year in the filing of its Chapter 11 case. Credit Suisse caused that harm, according to Plaintiff, by failing to advise Oakwood to file for bankruptcy in 2001, and by continuing to securitize Oakwood's Retail Installment Contracts, thus providing the liquidity that Oakwood's management required in order to run the business.

The facts are clear and undisputed: Oakwood's management and directors, facing a downturn in the market for manufactured housing, as well as a recession and disruption in the securities markets due in large part to the events of September 11th, struggled to keep the company operating in anticipation of a recovery. Oakwood's continuation of its securitization program allowed it to pursue that strategy. By late 2002, with the markets still difficult, Oakwood simply did not have enough cash to continue outside of bankruptcy, and it filed for Chapter 11 protection. Some creditors were paid less than the full amount of their claims.

Two independent arguments require summary judgment on all of Plaintiff's claims that are to be tried to a jury. The first is Plaintiff's failure to point to a shred of evidence in the record - or even a theory - demonstrating how Credit Suisse caused Oakwood's damages, which

failure requires dismissal under settled principles of law. The second is the *in pari delicto* doctrine: Oakwood, acting through its board and management, was undeniably in control of its own financing program, and Plaintiff's efforts to blame Credit Suisse for Oakwood's own strategic decisions is plainly barred by *in pari delicto*. Neither of these arguments requires the Court to parse the factual record.[1] In the case of causation, Plaintiff's problem is the complete absence of facts in the record, which by definition eliminates the possibility of any dispute of fact. In the case of *in pari delicto*, Plaintiff has not disputed that Oakwood was in charge of its own securitization program. Because there are no facts in dispute with respect to these two dispositive arguments, summary judgment is required.

**There Is No Dispute About Facts Requiring Summary Judgment
Based on the Absence of Causation**

1. Plaintiff's counterstatement <u>completely</u> ignores that portion of Credit Suisse's motion demonstrating that causation – *i.e.*, a direct and non-speculative causal link between Credit Suisse's conduct and Plaintiff's damages – is not established by the record. Rather than identify record facts showing how Credit Suisse caused any harm to Oakwood, Plaintiff's counterstatement asks the rhetorical question whether "substantial losses" to Oakwood were "reasonably foreseeable" to Credit Suisse. (Pl. Counterstmt. at 13). But foreseeability is not the same as causation. Foreseeability may be a limitation on damages that were in fact caused by some wrong, but the hypothesis that some harm to Oakwood was foreseeable does absolutely nothing to explain whether that harm was caused by Credit Suisse. *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235-36 (2d Cir. 1999) (observing

---

[1] Plaintiff's Counterstatement of Disputed Facts asserts disputes about facts that are not necessary for this motion. (See Plaintiff's Counterstatement ("Pl. Counterstmt.") at 13-15) (listing superfluous "Additional Disputed Facts" outside the scope of Credit Suisse's motion). The stack of supporting exhibits is comically oversized – a tactical decision to make this case look complicated and summary judgment unrealistic. Behind this faux complexity is a simple reality: Resolution of Credit Suisse's summary judgment motion depends upon only a small subset of facts and consideration of simple and straightforward legal issues arising from those facts.

that foreseeability is only one element of proximate cause which also includes requirement that plaintiff establish direct and substantial cause).

2. Open-ended questions are not a substitute for genuine disputed facts, particularly in a case where Plaintiff's own expert has admitted that he has absolutely no idea what might have happened if the company had stopped its securitization program in 2001. (Defs. Br. at 28-29). Indeed, the Seventh Circuit Court of Appeals recently concluded that the potentially harmful results of a business decision simply may not be laid at the feet of outside advisors where the harm to the company was caused by market forces and the company's strategic responses to those forces. *Maxwell v. KPMG LLP*, No. 07-2819, 2008 U.S. App. LEXIS 5896, at *7-8 (7th Cir. Mar. 21, 2008).

3. The *Maxwell* court analyzed the nature of proximate cause and the difference between necessary conditions for harm to occur ("but for" causation) and actual cause of the harm (proximate cause), elements particularly instructive in this case. The court observed that failing to properly differentiate between but for causation and proximate cause in cases involving outside advisors risks making outside advisors responsible for actions taken solely by the corporation or others. Discussing the analogous context of securities fraud cases, the court specifically noted that:

> The distinction between 'but for' causation and actual legal responsibility for a plaintiff's loss is particularly well developed in securities cases, where it is known as the distinction between 'transaction causation' and 'loss causation.' Suppose an issuer of common stock misrepresents the qualifications or background of its principals, and if it had been truthful the plaintiff would not have bought any of the stock. The price of the stock then plummets, not because the truth is discovered but because of a collapse of the market for the issuer's product wholly beyond the issuer's control. There is 'transaction causation,' because the plaintiff would not have bought the stock, and so would not have sustained the loss, had the defendant been truthful, but there is no 'loss causation,' because the kind of loss that occurred was not the kind that the disclosure requirement that the defendant violated was intended to prevent. To hold the defendant

3

liable for the loss would produce overdeterrence by making him an insurer against conditions outside his control . . . . Also, it is bad policy to encourage people harmed in some natural or financial disaster to cast about for someone on whom to lay off the consequences who had, however, committed only a technical breach of duty. The legal system is busy enough without shouldering the burden of providing insurance against business risks.

*Id.* at *9-10 (quoting *Movitz v. First Nat'l Bank of Chi.*, 148 F.3d 760, 763 (7th Cir. 1998)). That distinction is particularly important in this case as Plaintiff has failed to point to any facts other than that Credit Suisse's provision of securitization underwriting and related services allowed Oakwood's management to pursue its attempt to weather the industry downturn and therefore delay filing for bankruptcy until November 2002. Such facts do not establish that Credit Suisse caused any harm to Oakwood. To allow Plaintiff's case to proceed would transform Credit Suisse, the provider of securitization underwriting and related services, into the insurer of Oakwood's business strategy decisions, the very risk the Seventh Circuit warned against. Given that no facts have been presented to support causation in any form, summary judgment is required. *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 213 (3rd Cir. 2002) (affirming grant of summary judgment where "plaintiffs have failed to adduce evidence establishing genuine issues of material fact on causation"); *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) (affirming summary judgment on causation grounds because "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment").

**There Is No Dispute About the Facts that Require
Summary Judgment on *In Pari Delicto* Grounds**

4. Credit Suisse's first ground for summary judgment – the *in pari delicto* doctrine – turns on one undisputed factual proposition: **"All financing services provided by Credit Suisse were approved by Oakwood's Management and Board of Directors."** (Defs. Br. at 2).

Because Plaintiff stands fully in Oakwood's shoes, the trust cannot recover for "harm" caused by Oakwood's acts. *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 354 (3d Cir. 2001) ("*Lafferty*").

5. In its opening brief, Credit Suisse showed that Oakwood's financing techniques and transactions were authorized, directed and controlled by Oakwood's board of directors and management. (Defs. Br. at 17-18.) Stated simply, Oakwood generated liquidity through securitizations of its customers' mortgages, and its board and management fully approved and stood behind securitization as an element of the company's financing. Oakwood relied on securitizations during the period before it was in financial distress, during the period of financial distress, and during the company's bankruptcy proceedings. (*Id.* at 5-6, 17-18).[2]

6. Because it cannot dispute that Oakwood "participated" in its own allegedly harmful financing program, Plaintiff offers two diversions. First, it says that "all such approvals were done against the backdrop of Credit Suisse's negligent and self-interested advice and omissions." (Pl. Counterstmt. at 2.) Even if Plaintiff's position had any factual support whatsoever, that "backdrop" would not prevent the application of the doctrine of *in pari delicto*, which refers, of course, to "equal" fault.[3] An advisor does not become the insurer of a company's strategic

---

[2]    As noted in Credit Suisse's opening brief, in 1994 – some eight years before Oakwood's bankruptcy – Merrill Lynch underwrote Plaintiff's first securitization of mortgage receivables. (Defs. Br. at 5). After filing for bankruptcy protection in late 2002, Oakwood represented to the Bankruptcy Court that continuing its nearly decade-old securitization program, including by assuming the contract whereby liquidity was provided by the Credit Suisse "warehouse" facility, was critical to its ability to successfully reorganize. (Bankr. D.I. No. 86; Machan Decl. Ex. C) ("the warehousing and sale of the RICs . . . is a vital aspect of the Debtors' business, allowing the Debtors' to convert future revenue streams into immediate cash to support their cash-intensive manufacturing and retail operations."). The *in pari delicto* doctrine is presumptively established by these facts alone.

[3]    It is hard to know what point Plaintiff is really making when claiming Oakwood's approvals of the financings at issue were marred by Credit Suisse "self-interest" and negligence. On its face, it is a conclusory legal argument that is not adorned by even a single factual citation to the record. It also wrongly assumes that the *in pari delicto* doctrine comes into play only when a debtor has "approved" the conduct at issue. While that of course happened here, the doctrine is far broader, and applies any time a

success, even if the advisor's advice was consistent with the company's actions. *See HA2003 Liquidating Trust v. Credit Suisse Sec. (USA) LLC.*, 517 F.3d 454 (7th Cir. 2008) (concluding investment bank's issuance of fairness opinion did not render bank an insurer against company's business-risks).

7.    Second, the Trust argues that Credit Suisse was an "insider" of the company. (*See* Pl. Counterstmt. at 7-8). But the question of whether Credit Suisse was an "insider," and thus unprotected by the *in pari delicto* doctrine, can be decided by the Court on the record before it now, as the facts about the relationship between Credit Suisse and Oakwood are not in dispute. Only the application of law to those facts remains, and that is the proper province of the Court to decide on summary judgment. *See Marchand v. King (In re Lopresti)*, Nos. 03-48839, 04-2351, 2006 WL 2708605, at *5 (Bankr. D.N.J. Sept. 20, 2006) ("[O]n a summary judgment motion where the underlying facts are resolved or undisputed, the determination of insider status is a question of law for the Court to determine."); *Shearer v. Tepsic (In re Emergency Monitoring Techs., Inc.)*, 366 B.R. 476 (Bankr. W.D. Pa. 2007) (concluding that insider determination should properly be viewed as a mixed question of law and fact and trial court may make such determination on a motion for summary judgment motion when no factual disputes exist).

8.    One does not, as Plaintiff claims, become an insider merely because of a "sufficiently close relationship" that requires "close scrutiny." (Pl. Counterstmt. at 8 n.15). As numerous courts have recognized, the language selectively quoted by Plaintiff is just the *first* part of the

---

debtor has "participated in wrongdoing." Black's Law Dictionary 794 (7th ed.1999). *Lafferty*, 267 F.3d at 361 (citations omitted).

The notion that Oakwood's board was misinformed in overseeing the company's securitization financing techniques is likewise not supported by the record. The evidence – summarized at pp. 17-18 of Credit Suisse's opening brief – shows that an active and sophisticated board, assisted by senior management, approved of and oversaw Oakwood's generation of liquidity through securitization transactions.

test for insider status. *See Lucent Techs., Inc. v. Shubert (In re Winstar Commc'ns, Inc.)*, No. 06-147, 2007 WL 1232185, at *2-3 (D. Del. Apr. 26, 2007) (emphasis added). The *remainder* of the test requires a debtor to show that "the alleged insider [must have exercised] 'sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets.'" *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir. 1996) (despite the "close relationship" between the debtor and creditor, because the creditor "exercised no managerial authority over the debtor," "did not make personnel decisions," and was "otherwise uninvolved in management of the business," it was not an insider), *cited in Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 547 (D. Del. 2005) (Farnan, J.).[4]

9. A company therefore is *not* an insider of the debtor merely because it has a "close relationship" with the debtor. *See Shubert v. Lucent Techs., Inc. (In re Winstar Commc'ns, Inc.)*, 348 B.R. 234, 279 (Bankr. D. Del. 2005), *aff'd by*, No. 06-147, 2007 WL 1232185 (D. Del. Apr. 26, 2007) (Farnan, J.); *see also Radnor Holdings Corp. v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.)*, 353 B.R. 820, 841 (Bankr. D. Del. 2006).

---

[4]     Plaintiff cites *Student Finance* to suggest that this Court has ruled that the "close relationship" test is all that is required to establish insider status. (Pl. Counterstmt. at 8 n.15). That is incorrect. *Student Finance* involved a motion to dismiss, and the Court ruled that whether "[d]efendants in this case are insiders of SFC can be determined only after full discovery." *Id.* 335 B.R. at 547. In this case, of course, "full discovery" has occurred such that the Court does not need to credit the weak inferences of insider status in Plaintiff's pleadings. More fundamentally, this Court relied upon multiple cases in its *Student Finance* opinion that hold that "*control*" and the ability to "dictate corporate policy" are the essential elements of insider status. The cases cited in the Court's opinion to this effect include: *Butler*, 72 F.3d at 443 ("In order to satisfy this [Plaintiff's' close relationship] standard, the alleged insider 'must exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets.'"); *Goldin v. Primavera Familienstiftung (In re Granite Partners, L.P.)*, 194 B.R. 318, 331 (Bankr. S.D.N.Y. 1996) ("*In pari delicto* does not apply if the third party dominated or controlled the actions of the insider."); *ABC Electric Services, Inc. v. Rondout Electric, Inc. (In re ABC Electric Services, Inc.)*, 190 B.R. 672, 675 (Bankr. M.D. Fla. 1995) (holding that "control" and "actual management" of debtor are required elements insider status); and *Demko v. Dutil (In re Demko)*, 264 B.R. 404, 408 (Bankr. W.D. Pa. 2001) (internal citations omitted) ("The true test of 'insider' status is whether one's dealings with the debtor cannot accurately be characterized as arm's-length. The emphasis is on the nature of the relationship between debtor and the other person, especially on whether their relationship gave the other person the power or influence to have a debt owed to it repaid. The relationship must involve something more than a mere debtor-creditor relationship.").

10. *Radnor Holdings* further demonstrates that Plaintiff's "close relationship" test is incomplete and wrong. The creditors committee in *Radnor* argued that because TCP monitored its business, had access to its performance reports and other financial information, and even, through its representatives, attended its board meetings, it was an insider. *Id.* at 840-41. The court rejected this argument and ruled that "[e]vidence that TCP monitored the Company's business and attended Board Meetings" was insufficient to prove insider status because "the Committee failed to prove that TCP exercised 'day-to-day control' over Radnor's business affairs and dictated business." *Radnor Holdings*, 353 B.R. at 840-41. *See also Official Comm. of Unsecured Creditors of the Debtors v. Austin Fin. Servs., Inc. (In re KDI Holdings, Inc.)*, 277 B.R. 493, 511 (Bankr. S.D.N.Y. 1999) (emphasis added) (citing the "sufficiently close" relationship language relied upon by Plaintiff to seek to create a fact dispute, but properly continuing the analysis to examine whether control was present: "[i]n cases involving non-management creditors, a creditor will be held to an insider standard where it is found that it *dominated and controlled* the debtor.");[5] *Ellenberg v. William Goldberg & Co. (In re Sullivan Haas Coyle, Inc.)*, 208 B.R. 239, 244 (Bankr. N.D. Ga. 1997) ("There was no evidence that these defendants could command authority over corporate affairs by disposing of corporate assets or prevailing in any decisions regarding the actual operation of the debtor's business. Defendant Goldberg & Co. was simply a consultant hired to give advice on financial matters; he could not determine or dictate corporate policy.").

---

[5]    *See also Meeks v. Bank of Rison (In re Armstrong)*, 231 B.R. 746, 750 (Bankr. E.D. Ark. 1999) ("Even if the bank requires the debtor to submit frequent reports on receivables, invoices, and operations, receives all payments on the receivables, has the power to endorse checks, and obtain concessions from the debtor, the bank is not thereby an insider *because there is no control of the day-to-day decision making of the debtor.*") (emphasis added); *Gray v. Manklow (In re Optical Techs., Inc.)*, 252 B.R. 531, 539 (M.D. Fla. 2000) ("to be determined a person in control, the person must control the company so as to dictate corporate policy and disposition of corporate assets *without limits.*") (emphasis added), *aff'd*, 246 F.3d 1332 (11th Cir. 2001).

11. The *right* question under the *right* test is whether Credit Suisse "exercise[d] sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *Butler*, 72 F.3d at 443. Plaintiff does not even attempt to assert that. At page 15 of its opening brief, Credit Suisse cited deposition testimony from the chairman of Oakwood's audit committee, its chief executive officer and its treasurer uniformly rejecting the proposition that Credit Suisse controlled or dictated Oakwood's policies or decision-making. (Defs. Br. at 15 n.5). Plaintiff's inability to dispute this fact thus requires summary judgment on *in pari delicto* grounds.

## Conclusion

12.    Credit Suisse has not here addressed the portions of its summary judgment motion that address the specifics of Plaintiff's breach of fiduciary duty, negligence and breach of implied contract claims. This is not because Plaintiff's has shown that there are contested issues of fact with respect to those claims -- to the contrary, Plaintiff has misstated the record, and characterized record evidence incorrectly. But the Court simply need not reach those issues at this point, because *in pari delicto* and the lack of causation are each sufficient to require summary judgment on all three of Plaintiff's claims relating to the period before the August 19, 2002 contract, and hence all of the claims to which Plaintiff has asserted a jury trial right. No fact disputes need to be resolved in order to grant summary judgment.

DATED:     March 31, 2008
           Wilmington, Delaware

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
(302) 651-7700

                    -and-

R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson
LINKLATERS
1345 Avenue of the Americas
New York, New York  10105
(212) 903-9000

Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

In re:                                                      | Chapter 11

Oakwood Homes Corporation, et al.,                          | Case No. 02-13396 (PJW)

        Debtors.

_____

OHC Liquidation Trust,

        Plaintiff,
    v.                                            | Adv. Proc. No. 04-57060 (PJW)

Credit Suisse (f/k/a Credit Suisse First Boston, a          | Civil Action No. 07-799 (JJF)
Swiss banking corporation), Credit Suisse Securities
(USA), LLC (f/k/a Credit Suisse First Boston LLC),
Credit Suisse Holdings (USA), Inc. (f/k/a Credit
Suisse First Boston, Inc.), and Credit Suisse (USA),
Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.),
the subsidiaries and affiliates of each, and Does 1
through 100,

        Defendants.

-------------------------------------------------------------x

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2008, I caused the **Defendants' Reply to Plaintiff's**

**Counterstatement of Disputed Facts** to be delivered to the following parties via email, hand

delivery and federal express:

VIA HAND DELIVERY

Marla R. Eskin, Esq.
Campbell & Levine
800 North King Street
Suite 300
Wilmington, DE  19801

RLF1-3268057-1

<u>VIA FEDERAL EXPRESS</u>

Tony Castanares, Esq.
Stephen M. Ray, Esq.
Carol Chow, Esq.
Whitman L. Holt, Esq.
Stutman, Treister & Glatt, PC
1901 Avenue of the Stars
12th Floor
Los Angeles, CA  90067

Lee E. Kaufman (No. 4877)
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
Phone:  302-651-7700
Fax:  302-651-7701
kaufman@rlf.com

RLF1-3268057-1