## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oakwood Homes Corporation, et al., | ) | Case No. 02-13396 (PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| OHC Liquidation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0799 (JJF) |
| | ) | |
| Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

### PLAINTIFF'S MOTIONS *IN LIMINE*

Tony Castañares (CA SBN 47564)          -&-
Stephan M. Ray (CA SBN 89853)
Scott H. Yun (CA SBN 185190)
Whitman L. Holt (CA SBN 238198)
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
(310) 228-5600

Marla Rosoff Eskin (No. 2989)
Kathleen Campbell Davis (No. 4229)
Kathryn S. Keller (No. 4660)
CAMPBELL & LEVINE, LLC
800 N. King Street, Suite 300
Wilmington, DE 19801
(302) 426-1900

*Special Counsel for the OHC Liquidation Trust*

Dated:  April 21, 2008

For the convenience of the Court and the parties, and in anticipation of the jury

trial scheduled to commence on June 17, 2008 in the above-captioned civil proceeding, the OHC

Liquidation Trust, by and through its duly appointed trustee, Alvarez & Marsal, LLC

("**Plaintiff**") hereby submits in a consolidated pleading the following two[1] motions *in limine*:

**MOTION *IN LIMINE* NO. 1:**    TO LIMIT THE TESTIMONY OF DEFENSE EXPERT MR. THOMAS F. BOLAND, AND FOR JURY INSTRUCTIONS LIMITING MR. BOLAND'S TESTIMONY TO PLAINTIFF'S NEGLIGENCE AND CONTRACT CLAIMS.

**A.    Brief Summary of the Issue and the Relief Requested.**

• Defendants' "rebuttal" expert, Mr. Thomas Boland, submitted a report that could be read to improperly exceed the scope of the testimony he was hired to rebut.

• Defendants' counsel barred Mr. Boland from answering any deposition questions having anything to do with Plaintiff's fiduciary duty claim, and Mr. Boland complied with this attempt at stonewalling effective discovery about his opinions.

• Thus, because Mr. Boland's testimony might exceed the scope of permissible "rebuttal" and fails to "fit" the fiduciary duty claim, a ruling limiting the nature of his testimony at trial – including restrictive jury instructions – is appropriate.

**B.    Background Facts.**

Until very recently, this case was administered in the United States Bankruptcy

Court for the District of Delaware (the "**Bankruptcy Court**") by Judge Walsh.  On the deadline

date the Bankruptcy Court set for the exchange of expert reports, Plaintiff submitted two: the

reports of Dr. Alan C. Shapiro (the "**Shapiro Report**"[2]) and Dr. Michael Tennenbaum.  The

defendants in this case (collectively, "**Credit Suisse**" or "**Defendants**") submitted none.

---

[1]    In order to allow for initial briefing well in advance of the May 8, 2008 pretrial conference, Plaintiff chose to file the instant motions once its preliminary review of Defendants' recent submission of their draft pretrial materials confirmed the motions were apposite.  It remains possible that Plaintiff may submit additional motions *in limine* as the process of preparing for the pretrial conference continues.  Any such additional motions will be filed by May 7, 2008.

[2]    A copy of Dr. Shapiro's initial expert report is attached as Exhibit "622" to the accompanying

Defendants also did not submit any "rebuttal" reports within the scheduled deadline when this case was before the Bankruptcy Court, despite having received an extension of time at their request.  Because Defendants had no experts, Plaintiff was necessarily unable to submit any "rebuttals" of its own.  Months later, and in connection with Plaintiff's motion to withdraw the reference (D.I. #1), Defendants sought leave to file an untimely rebuttal to the Shapiro Report, which this Court granted after a January 22, 2008 hearing (*see* D.I. #24).

On February 29, 2008, Defendants served Plaintiff with the *Expert Witness Report of Thomas F. Boland* (the "**Boland Report**" [Holt Decl. Ex. "621"]).[3]

Plaintiff asserts three claims to the jury based, in part, upon the conclusions set forth in the Shapiro Report: negligence, breach of implied contract, and breach of fiduciary duty.  Briefly stated, each claim is supported by evidence showing that Defendants fell short of their duties by failing to investigate adequately, by failing to advise competently, and ultimately, by continuing to participate (to their great profit) in transactions they knew to be contrary to their client's best interests.  The negligence and contract claims may generally be likened to any other sort of professional malpractice claims, in which a failure to meet the appropriate standard of care can be stated in either contract or negligence or both.  In addition, the evidence here shows the existence of a fiduciary relationship between Oakwood Homes and Credit Suisse, which adds a duty of loyalty and heightens the duty of care prevailing in the contract and negligence claims.

Dr. Shapiro's initial expert report is lengthy and detailed, but his two opinions are set forth succinctly in the "Summary of Opinions" section:  (1) "CSFB did not behave in a

---

declaration of Whitman L. Holt.  To avoid confusion, we continue to use the numeration as marked in Mr. Boland's March 25, 2008 deposition [Holt Decl. Ex. "A"] for certain exhibits.

[3]    Actually, Defendants submitted two separate "rebuttal" reports.  While that behavior clearly exceeded the scope of the Court's January 23, 2008 Order, it is not directly at issue here.

reasonable or reasonably prudent manner with respect to the services it provided to Oakwood"; and (2) "CSFB had financial incentives to keep Oakwood operating and to delay recommending that Oakwood file for bankruptcy" (Shapiro Report at pp. 3-4 [Holt Decl. Ex. "622"]).

Dr. Shapiro does not purport to opine on whether Credit Suisse owed a fiduciary duty to Oakwood Homes (which is a question for the jury that will be supported by abundant evidence at trial, much of it from the mouths of Defendants themselves), but does note at page 4 that he was asked by counsel to assume its existence. Thus, if one translates Dr. Shapiro's opinions into "lawyers' language," it is proper to view his first opinion as a statement of the standard of care applicable to the relationship between Oakwood Homes and Credit Suisse, as well as an indication that Defendants' conduct fell far short of that standard – i.e., the usual stuff of expert opinion in professional liability cases, whether sounding in contract or tort. Additionally, Dr. Shapiro's first opinion further relates to the standard of care applicable if, as the evidence will plainly show, there was a fiduciary relationship, and the violation of that standard.

Dr. Shapiro's second opinion speaks of the existence of evidence of violation of the "duty of loyalty" aspect of the fiduciary relationship between Oakwood Homes and Credit Suisse, namely the massive fees that Defendants received by creating and participating in the value-destroying transactions that underlay and drove Oakwood's business-as-usual death spiral.

It is critical to note that at no point does Dr. Shapiro purport to opine on the *existence* of any legal duty, fiduciary or otherwise.

Mr. Boland's "rebuttal" report does not contain the succinct statement of opinions provided by the Shapiro Report. The closest Mr. Boland comes to a straightforward statement of his opinions is in the "Conclusions" section. (*See* Boland Report at pp. 17-19 [Holt Decl. Ex. "621"].) To be fair, some of what Mr. Boland says can be read as an effort to rebut Dr. Shapiro's

standard of care and duty of loyalty opinions, but much of it is plainly a thinly-disguised effort to opine that no duty (fiduciary or otherwise) existed, mostly from the inferences he would like drawn from various statements about banking relationships generally and this one in particular.

At the March 25, 2008 deposition of Mr. Boland, Plaintiff's counsel repeatedly attempted to clarify the thrust of Mr. Boland's proffered testimony, including by asking (i) whether the Boland Report expresses an opinion on the existence of a fiduciary relationship; (ii) whether Mr. Boland has any opinion that subject; (iii) whether Mr. Boland has experience with the subject of the duties of a fiduciary; and, in a hypothetical question designed to isolate the discrete issue of whether or not Mr. Boland's standard of care opinions would apply were the jury to find that a fiduciary relationship existed between Oakwood Homes and Credit Suisse, (iv) whether his opinion would change in any respect if the Court ruled that a fiduciary duty existed.

Each and every one of these good faith efforts was steadfastly blocked by directions not to answer by Defendants' counsel, and a resulting refusal to answer by the witness, notwithstanding Plaintiff's counsel's statement on record that such instructions are inappropriate. (*See* Boland Dep. Tr. at 79:5-82:23, 87:23-88:2, & 219:16-22 [Holt Decl. Ex. "A"].)

## C.    Argument.

### 1.    Recognition of the Proper Scope of the Boland Report and Testimony.

Plaintiff, content to let the jury decide the issue based on the abundant fact evidence, has not offered expert opinion testimony regarding the existence of duties, fiduciary or otherwise, and the Shapiro Report makes clear that Dr. Shapiro does not opine on that matter. Rather, Dr. Shapiro is plainly opining on the standards of care and loyalty, as well as the violation of those standards.  But the rambling and disorganized nature of the Boland Report, and much of what it contains, could possibly form a basis for Defendants to argue to the jury that no

fiduciary relationship existed.

Plaintiff does not know the Court's general thoughts about the propriety of expert opinion evidence about the existence of legal duties, fiduciary or otherwise, but even if the Court were inclined to allow such testimony as a general proposition, the Court should not do so here for the simple reason that it is not "rebuttal" testimony at all. At the January 22, 2008 hearing, Defendants asked only to offer *rebuttal* expert testimony, not testimony on new subjects, and that was the relief the Court granted. Accordingly, Defendants should not be permitted to expand that scope now, because the effect is prejudicial to Plaintiff. If Defendants wished to offer expert testimony on this subject, they should have done so with an *original* (i.e., not "rebuttal") report. Plaintiff would have had an opportunity to rebut that report, but it has no such opportunity now.

This reasoning alone provides the fundamental basis for the first form of relief Plaintiff requests: That the Court order that Mr. Boland's testimony be strictly limited to the issues of standards of care and loyalty, and that Defendants be prohibited from arguing that Mr. Boland's testimony goes to the question of the existence of any duty, fiduciary or otherwise.

## 2.    Mr. Boland's Testimony Does Not "Fit" the Fiduciary Duty Claim.

Among the three basic requirements imposed on the admission of putative expert testimony by the Federal Rules of Evidence, as interpreted in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), is that the testimony "fit" the issues presented by the case. *See id.* at 591; *see also, e.g.*, *In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999) ("The expert's testimony must 'fit,' and admissibility depends, in part, on a connection between the expert opinion offered and the particular disputed factual issues in the case."). As such, any testimony that does not "fit" the specific issues will be excluded at trial. *See, e.g.*, *In re W.R. Grace & Co.*, 355 B.R. 462, 489-90 (Bankr. D. Del. 2006) (sustaining evidentiary objections

where proffered expert studies did not "fit" factual allegations).  By definition there can be no "fit" if the proffered expert categorically refuses to address the factual questions that the trier of fact must decide when evaluating a party's claim.

Because of Mr. Boland's refusal to answer any deposition questions about whether or not he is opining on fiduciary matters,[4] and most significantly, his final refusal to answer whether his opinion would or would not apply were a fiduciary relationship found to exist here, Plaintiff respectfully requests a ruling that Mr. Boland's testimony is not admissible as to Plaintiff's breach of fiduciary duty claim.  More precisely, Plaintiff submits that Mr. Boland's testimony simply does not "fit" any of the issues regarding the fiduciary standards of care and loyalty, including whether Credit Suisse breached those standards.

After all, the essence of Mr. Boland's refusal to answer the last question is quite simply a categorical refusal to say whether his testimony relates to the fiduciary duty claim or not.  (*See* Boland Dep. Tr. at 219:16-22 [Holt Decl. Ex. "A"].)  If Defendants wish to so cabin Mr. Boland's testimony, fine, but Mr. Boland should not then be permitted to say (or Defendants to argue) that his testimony affects the fiduciary duty claim when he testifies at trial.  Such a result would be fundamentally unfair, and reflect a gross distortion of the rule letting Plaintiff take discovery from Mr. Boland about the nature and scope of his expected testimony.[5]

---

[4]    Plaintiff recognizes, as Defendants will undoubtedly note, that Mr. Boland was permitted to respond to questions about his *own* experience as a fiduciary.  (*See* Boland Dep. Tr. at 88:3-96:12 [Holt Decl. Ex. "A"].)  That fact cannot salvage the problems associated with letting Mr. Boland testify here, however, for at least two reasons:  (1) Mr. Boland's responses did nothing to clarify whether the Boland Report is intended to cover Plaintiff's breach of fiduciary duty claim, thus perpetuating the limited scope of Mr. Boland's actual opinions; and (2) Mr. Boland was not allowed to respond to questions involving the application of his own experience to the actual facts of *this* case, which creates significant "fit" problems.

[5]    We note that we are not seeking to compel further discovery or to impose discovery

Consequently, the second form of relief Plaintiff requests as to Mr. Boland is a limiting jury instruction giving effect to the above, and we respectfully propose this language:

> Members of the jury, I would like to give you a specific instruction about the testimony of two of the experts, Dr. Shapiro and Mr. Boland. Both of them offered testimony about whether Credit Suisse's conduct in this case was reasonable and prudent.
>
> Neither Dr. Shapiro nor Mr. Boland offered expert testimony on whether Credit Suisse had a fiduciary relationship with Oakwood Homes. That is a matter for you to decide from all of the evidence, as I have instructed you already, and you should not interpret either of the experts' testimony as an opinion on the subject.
>
> The testimony of these two experts relates only to what constitutes reasonable and prudent conduct and whether Credit Suisse did or did not meet that standard here. You may consider both of their opinions on those subjects on Plaintiff's negligence and breach of implied contract claims.
>
> But on Plaintiff's breach of fiduciary duty claim, I have made a ruling, for reasons I don't need to explain, that Mr. Boland's testimony on those points is not admissible.
>
> So, in summary, you may not consider the testimony of either of these experts on the subject of whether Credit Suisse owed a duty to Oakwood Homes. On the negligence and implied contract

---

sanctions here, despite the utterly lawless nature of counsel's directions not to answer. In that regard, we might ask exactly what purports to justify counsel's directions. Absent a court order, the rules generally permit such directions in just two situations: to protect a privilege or to seek a protective order. *See* FED. R. CIV. P. 30(c)(2). Since the latter has not been forthcoming, Defendants' counsel presumably had some privilege in mind, but since none was articulated, we can only speculate on its nature. After dismissing priest-penitent and doctor-patient, we may dispose of the remainder of the list of possibilities with equal ease, arriving finally at what it almost always is when counsel's power to direct witnesses not to answer is abused: the Unanticipated Damaging Question Privilege.

More importantly, discovery-compulsion remedies are inadequate here, partly because of the lateness of the hour created by Defendants' belated designation of Mr. Boland as a witness, and partly because of the virtually certain result that whatever Mr. Boland would later say will be the result of coaching by counsel, given this particular counsel's propensity to do exactly that. (*See* Plaintiff's Motion *in Limine* No. 2, *infra*.) Rather, defense counsel has caused her witness to refuse to state whether his opinion applies or has any relevance to Plaintiff's fiduciary duty claim. Plaintiff will live with that construct. So should Defendants.

claims, you may consider the testimony of both experts on the standard of care and whether Credit Suisse met that standard. But on the fiduciary duty claim, if you find that a fiduciary relationship existed, you may consider only Dr. Shapiro's opinion, and not Mr. Boland's, about the standards of care and loyalty, as well as whether Credit Suisse's behavior conformed to those standards.

**MOTION _IN LIMINE_ NO. 2:** CONCERNING A PORTION OF THE DEPOSITION TESTIMONY OF MR. JARED FELT.

**A.** **Brief Summary of the Issue and the Relief Requested.**

• One of Defendants' key witnesses, Mr. Jared Felt, unequivocally testified at his deposition that Credit Suisse owed a fiduciary duty to Oakwood Homes.

• Following a lunchtime conference with defense counsel, Mr. Felt attempted to modify his prior testimony regarding the fiduciary duty issue.

• Suspicious of inappropriate "coaching," Plaintiff's counsel attempted to investigate the nature and content of the lunch conference, but defense counsel blocked all such attempts on grounds of the attorney-client privilege.

• Defense counsel's conference with Mr. Felt violated the rules in Delaware and was not protected by any privilege. As such, a ruling restricting Defendants' use of Mr. Felt's "clarification," or allowing full examination at trial, is appropriate.

**B.** **Background Facts.**

As explained above, one of the principal issues in this case is whether Credit Suisse owed a fiduciary duty to Oakwood Homes. There is considerable evidence on this point, but nothing quite as direct as the deposition testimony of Mr. Jared Felt, one of Defendants' main witnesses. As Mr. Felt said, "Foothill was a third party to whom [Credit Suisse] had no fiduciary duty. . . . We had a fiduciary duty to Oakwood." (Felt Dep. Tr. at 376:2-8 [Holt Decl. Ex. "B"].)

Mr. Felt was an officer of Credit Suisse. For about a year before the contract of August 19, 2002, he had, in an effort to advise Oakwood Homes and sell various "services," gathered information and made presentations to Oakwood's board of directors. In doing all these things, he worked with Fiachra O'Driscoll, another Credit Suisse officer and Defendants' other

principal witness, who had a longstanding relationship with Oakwood Homes that originated in Oakwood's securitization business but took on far broader aspects as the years went on.

Mr. Felt also was the Credit Suisse officer principally in charge of the negotiation and performance of the August 19, 2002 advisory contract. That contract did not provide that any of the Defendants had a fiduciary duty to Oakwood Homes, but it did contain an integration clause. (*See* August 19 Agreement, CSFB-00013646 – CSFB-00013659, § 13 [Holt Decl. Ex. "C"].) As a result, the fiduciary duty about which Mr. Felt directly testified must have come from somewhere else, somewhere beyond the parties' contractual relationship.

*Precisely.*

In Mr. Felt's two-day deposition, his testimony about Credit Suisse's fiduciary duty to Oakwood Homes came on the morning of the second day. Then there was a lunch recess, and the deposition reconvened at 1:06 p.m. Fifty-one minutes later, Mr. Felt "spontaneously" decided that he wanted to make "one clarification" of his prior testimony, *viz.* "Earlier today I used a legal buzz word or term, 'fiduciary duty,' that I don't fully understand as just shorthand for we wanted to do the right thing by our client." (*See* Felt Dep. Tr. at 411:23-412:5 [Holt Decl. Ex. "B"].)

Counsel for Plaintiff, suspecting that this "one clarification" resulted from lunch hour coaching by defense counsel, sought to inquire, but all meaningful inquiry was foreclosed by unyielding directions not to answer on the grounds of attorney-client privilege.[6] There is little point in paraphrasing, and the entire exchange is quite short, appearing at 412:6-414:3 of the Felt

---

[6] The only question Mr. Felt did answer was whether this "one clarification" was his idea. As discussed below, this is irrelevant to both of the key points: (i) such a conference between a witness and counsel violates the Delaware rules; and (ii) the conversation was not privileged. But if the Court believes this single answer is of any real importance, we ask the Court to call for the video of the deposition to evaluate Mr. Felt's demeanor and expression as he spoke.

deposition transcript [Holt Decl. Ex. "B"].

Plaintiff intends to offer Mr. Felt's original deposition testimony in evidence. When the matter was set for trial in the Bankruptcy Court, Defendants agreed to make Mr. Felt available for "live" testimony during Plaintiff's case-in-chief.  Now, however, Defendants have informed Plaintiff's counsel that although Mr. Felt is still employed by Credit Suisse, Defendants may choose not to bring him to trial from the Los Angeles office where he now works.

Plaintiff anticipates that if Mr. Felt does not testify "live," Defendants will seek to introduce Mr. Felt's "one clarification" under FRCP 32(a)(6); and that if he does testify live, Defendants will seek to put on the "one clarification" by live testimony.

Plaintiff submits that neither course should be permitted at trial, and seeks an appropriate remedy, including jury instruction if necessary.

## C.    Argument.

### 1.    The Law.

Conferences by an attorney with a witness on the subject of that witness's testimony during breaks in a deposition are prohibited in this District.  *See* D. Del. LR 30.6.  This broad ban on off-the-record "coaching" conferences is easily justified on the grounds that:

> Once the deposition has begun, the preparation period is over and the deposing lawyer is entitled to pursue the chosen line of inquiry without interjection by the witness's counsel.  Private conferences are barred during the deposition, and the fortuitous occurrence of a coffee break, lunch break, or evening recess is no reason to change the rules.  Otherwise, the same problems would persist.  A clever lawyer or witness who finds that a deposition is going in an undesired or unanticipated direction could simply insist on a short recess to discuss the unanticipated yet desired answers, thereby circumventing the prohibition on private conferences.

*Hall v. Clifton Precision*, 150 F.R.D. 525, 529 (E.D. Pa. 1993); *see also id.* at 531.

Even if such conferences did not violate the rules of practice in Delaware, they are not privileged. Rather, inquiry is permitted because the questions go to whether the altered testimony is the result of improper "coaching." *See, e.g.*, *Plaisted v. Geisinger Med. Ctr.*, 210 F.R.D. 527, 535 (M.D. Pa. 2002) (finding that off-the-record "coaching" conferences are "not covered by the attorney-client privilege," and allowing questioning "about any discussion that took place during the two breaks"); *Hall*, 150 F.R.D. at 529 n.7 (noting that off-the-record deposition conferences are not privileged, but rather "are fair game for inquiry by the deposing attorney to ascertain whether there has been any coaching and, if so, what"). *Accord AmeriSourceBergen Drug Corp. v. Curascript, Inc.*, No. 2272, 2007 Phila. Ct. Com. Pl. LEXIS 116, at *14-16 (Pa. Ct. Com. Pl. Apr. 17, 2007) (discussing issue in the context of deponent who changed prior testimony after off-the-record conference, and allowing inquiry into content of the conference even though jurisdiction did not have formal "no conference" rule, unlike Delaware).[7]

Why are the particulars of the lunchtime conference subject to inquiry? The answer seems obvious: To the extent that the resulting testimony is the product of participation by counsel rather than the witness's unvarnished perceptions related in his own words, the trier of fact ought to be allowed to take that fact into account when assessing both the credibility and the weight to be accorded to the witness's testimony.

---

[7] There are many scenarios in which a conference, though technically violative of the rules, might be totally innocent; for example, a witness might ask counsel: "If I'm asked to identify everyone I talked to about this, do I have to include my wife?" And there are others scenarios one could imagine that would amount to a subornation of perjury. We do not suggest such an extreme here, but Mr. Felt's black-to-white effort to recant prior testimony, especially given his status as a high-level professional subject to internal manuals governing (among other things) the performance of fiduciary duties, is highly suggestive of a meaningful level of participation by counsel in the formulation of the testimony that would constitute the so-called "one clarification."

By their false assertions of privilege, Defendants seek to deprive the trier of fact of that knowledge regarding Mr. Felt.  They should not be permitted to do so.[8]

### 2.    The Remedy.

We submit that the foregoing record would justify an outright prohibition by the Court on any attempt by Defendants to introduce Mr. Felt's "one clarification," whether by live testimony, by introducing the deposition pages containing it, or otherwise.

If the Court, however, desires to fashion a different remedy, it is difficult to know what to recommend since Defendants have not yet confirmed whether they will bring Mr. Felt to testify live at trial, and the Court may wish to fashion a different remedy depending on that point.

If Mr. Felt does not testify live, we believe that the appropriate remedy is simply to deny Defendants permission to offer the "one clarification" pages.  Rule 32(a)(6) provides that if only parts of a deposition are offered, an adverse party may require the introduction of other parts that "in fairness should be considered with the part introduced."  FED. R. CIV. P. 32(a)(6).  But Defendants' improper instructions not to answer have totally foreclosed Plaintiff's ability to cross-examine Mr. Felt on the undeniably admissible circumstances of his lunchtime conference with counsel.  Thus, using an "in fairness" standard, the later testimony should be excluded.  *See, e.g.*, *Wallace v. Bowen*, 869 F.2d 187, 192 (3d Cir. 1989) (discussing weighty "fairness" concerns associated with a party's ability to effectively cross-examine an adverse witness).

---

[8]    *See, e.g.*, *Hall*, 150 F.R.D. at 531 ("[D]epositions are to be limited to what they were and are intended to be: question-and-answer sessions between a lawyer and a witness aimed at uncovering the facts in a lawsuit.  When a deposition becomes something other than that because of the strategic interruptions, suggestions, statements, and arguments of counsel, it not only becomes unnecessarily long, but it ceases to serve the purpose of the Federal Rules of Civil Procedure: to find and fix the truth." (footnote omitted)).

If, on the other hand, the Court is inclined to permit the testimony at all, Plaintiff suggests jury instruction derived from the authorities cited above – namely that the rules prohibit such conferences, that they are not privileged, and that the jury may draw such inferences as it deems appropriate from the improper assertion of non-existent privilege by Defendants' counsel.

But what if Mr. Felt does testify live?  There can be little doubt that Defendants will attempt to proffer some sort of live testimony equivalent to the "one clarification."  In this case, Plaintiff respectfully suggests a ruling in advance that the deposition lunchtime conference is fair game for full cross-examination, and that the same is true of *any* preparation session on this point in advance of trial.  To give effect to such a ruling, Plaintiff respectfully requests that the Court out of the jury's presence, allow full inquiry of Mr. Felt, under oath, by either Plaintiff's counsel or the Court itself on both of these matters, followed by immediate examination in the jury's presence, subject to such additional orders as the Court may then deem just.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CERTIFICATION AND CONCLUSION

Pursuant to Local Rule 7.1.1., the undersigned counsel hereby certifies that reasonable efforts were undertaken to reach agreement with Defendants' counsel regarding the above matters.  No agreement was reached.  Accordingly, for the reasons and based on the authorities set forth above, the Court should grant each of Plaintiff's two motions *in limine*.

Respectfully submitted,

Dated:  April 21, 2008
Wilmington, Delaware

/s/ *Marla Rosoff Eskin*
MARLA ROSOFF ESKIN (No. 2989)
KATHLEEN CAMPBELL DAVIS (No. 4229)
KATHRYN S. KELLER (No. 4660)
CAMPBELL & LEVINE, LLC
800 N. King Street, Suite 300
Wilmington, DE 19801
(302) 426-1900

 -and-

TONY CASTAÑARES (CA SBN 47564)
STEPHAN M. RAY (CA SBN 89853)
SCOTT H. YUN (CA SBN 185190)
WHITMAN L. HOLT (CA SBN 238198)
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
(310) 228-5600

Special Counsel for the OHC
Liquidation Trust

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oakwood Homes Corporation, et al., | ) | Case No. 02-13396 (PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| OHC Liquidation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0799 (JJF) |
| | ) | |
| Credit Suisse (f/k/a Credit Suisse First Boston, a | ) | |
| Swiss banking corporation), Credit Suisse | ) | |
| Securities (USA), LLC (f/k/a Credit Suisse First | ) | |
| Boston LLC), Credit Suisse Holdings (USA), Inc. | ) | |
| (f/k/a Credit Suisse First Boston, Inc.), and Credit | ) | |
| Suisse (USA), Inc. (f/k/a Credit Suisse First Boston | ) | |
| (U.S.A.), Inc.), the subsidiaries and affiliates of | ) | |
| each, and Does 1 through 100, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**CERTIFICATE OF SERVICE**

I, Kathryn S. Keller, of Campbell & Levine, LLC, hereby certify that on April 21, 2008, I

caused a copy of the Plaintiff's Motions *in Limine,* to be served upon the individuals listed below

via the method indicated.

| | |
|---|---|
| Lee E. Kaufman, Esq. | Mary K. Warren, Esq. |
| Russell C. Silberglied, Esq. | Michael Osnato, Esq. |
| Richards, Layton & Finger, P.A. | J. Justin Williamson, Esq. |
| One Rodney Square | Paul R. Wickes, Esq. |
| 920 North King Street | Linklaters |
| Wilmington, DE 19801 | 1345 Avenue of the Americas |
| **VIA HAND DELIVERY** | Nineteenth Floor |
| | New York, NY 10105 |
| | **VIA FEDERAL EXPRESS** |

Dated: April 21, 2008                    CAMPBELL & LEVINE, LLC


                                         */s/ Kathryn S. Keller*
                                         Kathryn S. Keller (No. 4660)
                                         800 N. King Street, Suite 300
                                         Wilmington, DE 19801
                                         (302) 426-1900

{D0109877.1 }