# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oakwood Homes Corporation, et al., | ) | Case No. 02-13396 (PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| OHC Liquidation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0799 (JJF) |
| | ) | |
| Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF DR. ALAN C. SHAPIRO
IN SUPPORT OF PLAINTIFF'S CONSOLIDATED ANSWERING BRIEF IN
OPPOSITION TO DEFENDANTS' MOTIONS TO EXCLUDE PLAINTIFF'S
<u>EXPERT TESTIMONY</u>**

I, Dr. Alan C. Shapiro, declare as follows:

1. I am over 18 years of age, and I have personal knowledge of each of the facts stated in this declaration. If called as a witness, I could and would testify as to the matters set forth below based upon my personal knowledge.

2. I submit this declaration in support of the *Consolidated Answering Brief in Opposition to Defendants' Motions to Exclude Plaintiff's Expert Testimony* filed by the OHC Liquidation Trust in the above-captioned proceeding.

3. I am the Ivadelle and Theodore Johnson Professor of Banking and Finance, and past chairman of the Department of Finance and Business Economics, Marshall School of Business, University of Southern California ("USC"). I was retained by Stutman, Treister & Glatt, P.C., counsel for Plaintiff OHC Liquidation Trust to provide an expert opinion on whether Credit Suisse First Boston ("CSFB") performed its responsibilities in its capacity as underwriter, lender, and financial advisor to Oakwood Homes Corporation ("Oakwood") in a reasonable or reasonably prudent manner. I make this affidavit in response to Defendants' motion to exclude my testimony in this matter.

**Qualifications**

4. Defendants have raised questions about my expertise in securitizations and investment banking. These questions ignore my extensive background and experience in these areas. To begin, several courts have accepted my expert testimony with respect to securitizations. For example, in *Fleet Funding, Inc., and Fleet Funding II, Inc. vs. Commissioner of Revenue*, I testified regarding the securitization of REIT assets. In separate cases, I also provided expert

1

testimony concerning the securitization of corporate accounts receivables and of consumer credit card receivables. In addition, I was retained by a Fortune 500 bank to review and opine on the behavior of investment banks in the context of a major class-action securities lawsuit brought by former shareholders of a client of the investment bank alleging improper behavior on the part of the bank. Further, I was retained by the Securities and Exchange Commission to serve as an expert witness with respect to assessing the risks and values associated with the Orange County Investment Pool and whether CSFB and Merrill Lynch (two separate cases), acting in their capacity as investment banks underwriting various securities, adequately disclosed the risks connected with the Pool's investment strategy and position. I was also retained by the Federal Home Loan Bank to assess the investment policies and practices of Lincoln Savings and Loan Association.

      5. I have written extensively about the role of investment banks and securitization-related services. For example, in my textbook *Modern Corporate Finance* (Macmillan, 1990), cited by the *Journal of Finance* as potentially the "standard reference volume in corporate finance," I wrote a chapter on investment banking. Elsewhere in this book I discuss the role of investment banks in financial innovation and securitization. I also wrote a chapter entitled "Analysis of the Orange County Disaster" for the book *The Growth of Risk Management – A History* (Risk Books, 2003) and I have written several academic articles concerning financing strategy and choices.

      6. At USC, the Wharton School of the University of Pennsylvania, and schools at which I have served as a visiting professor, I have taught corporate finance, corporate financial strategy, international banking, and international financial management. These courses cover the roles and responsibilities of investment banks. For example, in teaching corporate

financial strategy, I often look at issues from the standpoint of an investment banker. Further, I have taught the "know your client" financial advisory principle in a number of my courses.

7. I have taught a number of executive programs at Bank of America and Citigroup. These programs covered topics including international finance, corporate finance, portfolio finance, and funds management. A major thrust of these programs was to train commercial bankers to become investment bankers. Many of the numerous other executive programs in which I have taught included investment bankers as participants.

8. Over the past 30 years, I have worked directly and extensively with investment bankers in my capacity as a director of several publicly traded companies. I have also dealt with investment bankers while serving as a trustee of the Private Equity Fund of Pacific Corporate Group and as a government-appointed director of Lincoln Savings and Loan Association.

9. I also possess specialized knowledge concerning agency conflicts, financial valuation, value-based management, and risk management, all topics that I have taught and written and consulted on extensively. These topics are relevant to the question of whether CSFB acted reasonably in its dealings with Oakwood. For example, securitization is the process of aggregating assets and turning them into negotiable securities. Investment banks play an important role in underwriting and marketing securities. They could not perform these roles in a professional manner without analyzing the value of the assets being sold or the risk associated with owning the assets. Similarly, understanding the potential agency conflicts that can arise between creditors and equity holders when a company is economically insolvent, and the consequences of these conflicts, is relevant to assessing the reasonableness of CSFB's advice to

Oakwood. Value-based management, which involves determining whether a company is creating or destroying value and stopping value-destroying behavior, is also relevant to this assessment and is an area in which I have written extensively and have considerable consulting experience.

**Methodology**

10. I applied reliable methods and principles in reaching my conclusions in this matter. Specifically, the approach I followed is consistent with the case study method. This method, which originated at the Harvard Business School and is a standard teaching approach used in business schools around the world today, involves bringing one's knowledge, experience, and basic economic principles to bear in a systematic way on the situation presented and judging an appropriate course of action in light of the facts and circumstances revealed by the preceding analysis.

11. For example, one of my two findings is that "CSFB should have advised Oakwood to reduce its operations or file for bankruptcy prior to August 2002" (p. 3 of my expert report). I reached this conclusion by assessing Oakwood's financial condition, establishing whether CSFB understood what that condition was, determining what actions were most appropriate given that condition, and then examining what CSFB actually did and the likely consequences of those actions given Oakwood's financial condition.

12. In my report, I analyze Oakwood's financial condition and outlook in 2001 and 2002. On pages 7 to 12 of my report, I assess Oakwood's operating and financial performance, as well as company and industry expectations regarding the prospects of a turnaround. This analysis is not a mere recitation of facts, but rather an expert analysis of

Oakwood's financial condition that informs my assessment of whether CSFB's actions were consistent with Oakwood's condition.

13. In my Supplemental Report, I analyze market data to examine Oakwood's financial condition from the late 1990s to 2002. I assess and interpret the level of and trends in the market value of Oakwood's assets, and compare the market value of the Company's assets to the face value of its debt, concluding that Oakwood was insolvent by June 2001 (even earlier than the insolvency date I was asked by counsel to assume based on the analysis of Dr. Michael Tennenbaum). Oakwood's financial condition and outlook are relevant to my findings with respect to the appropriateness of CSFB conduct during the period in question.

14. On pages 12 to 14 of my report, I establish that investment banks typically have access to nonpublic information concerning their client's financial condition. I review the services provided by investment banks and how the provision of those services affords them with access to financial information. In this section I cite a Journal of Finance article in support of my point that investment banks have better information about capital markets than do their clients.

15. On pages 22 and 23 of my report, I interpret documents obtained during the discovery process to show that CSFB obtained public and private information about Oakwood's financial condition.

16. In Section VII.B of my report, I analyze internal CSFB communications and the structure of its transactions with Oakwood to demonstrate that CSFB recognized that Oakwood posed a significant bankruptcy risk at least as early January 2000, a conclusion my own analysis supports. This finding is supported by my Supplemental Report, where on page 5 I

point out that CSFB's own internal analysis demonstrated that Oakwood was economically insolvent by no later than June 2001.

17.     On pages 28 to 39 of my report, I review CSFB's conduct and advice with respect to Oakwood, assess whether that advice and conduct was consistent with Oakwood's best interests given its financial condition and outlook, and analyze the likely effects of CSFB's conduct and advice.

18.     My other finding is that CSFB had financial incentives to keep Oakwood operating and to delay recommending that Oakwood file for bankruptcy. I reach this conclusion after analyzing the relationships between Oakwood and CSFB, the compensation structure of those relationships, and the importance of the compensation to CSFB.

19.     A critical component of this portion (Section VIII) of my report is the agency conflict between CSFB (as an equity holder in Oakwood) and Oakwood's debt holders. I cite several academic articles to demonstrate the impact of agency conflict on incentives and behavior. My own academic writings are consistent with this assessment.

**Conclusions**

20.     My conclusions – that CSFB should have advised Oakwood to reduce its operations or file for bankruptcy prior to August 2002 and that CSFB had financial incentives to keep Oakwood operating and to delay recommending that the Company file for bankruptcy – do not depend on whether CSFB owed a legal duty to Oakwood or its creditors and are consistent with CSFB's "know your customer rule" and its compliance manual.

21.     For example, as I discuss on page 27 of my report, CSFB's compliance manual requires that CSFB fulfill a high standard of care to its clients. Specific guidelines prescribed in the manual include making no recommendation unless you have a reasonable basis to do so and can substantiate it through publicly available information and making no recommendation contrary to a position taken by the CSFB Research Department, or inconsistent with the customer's investment objectives, financial resources and needs. Further, CSFB is never to act in a manner adverse to the best interests of its customer and self-dealing is strictly prohibited. These rules and guidelines would appear to apply equally to CSFB's actions as both a brokerage house and an investment bank.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 29, 2008, at Los Angeles, California.

*[signature]*

Dr. Alan C. Shapiro

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Oakwood Homes Corporation, et al., | ) Case No. 02-13396 (PJW) |
| | ) |
| Debtors. | ) Jointly Administered |
| _____ | ) |
| OHC Liquidation Trust, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07-0799 (JJF) |
| | ) |
| Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100, | ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## CERTIFICATE OF SERVICE

I, Kathryn S. Keller, of Campbell & Levine, LLC, hereby certify that on April 30, 2008, I caused a copy of the ***Declaration of Dr. Alan C. Shapiro in Support of Plaintiff's Consolidated Answering Brief in Opposition to Defendants' Motions to Exclude Plaintiff's Expert Testimony,*** to be served upon the individuals listed below via the method indicated.

| | |
|---|---|
| Lee E. Kaufman, Esq.<br>Russell C. Silberglied, Esq.<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>**VIA HAND DELIVERY** | Mary K. Warren, Esq.<br>Michael Osnato, Esq.<br>J. Justin Williamson, Esq.<br>Paul R. Wickes, Esq.<br>Linklaters<br>1345 Avenue of the Americas<br>Nineteenth Floor<br>New York, NY 10105<br>**VIA FEDERAL EXPRESS** |

{D0110603.1 }

Dated: April 30, 2008                                CAMPBELL & LEVINE, LLC

*/s/ Kathryn S. Keller*
Kathryn S. Keller (No. 4660)
800 N. King Street, Suite 300
Wilmington, DE 19801
(302) 426-1900

{D0110603.1 }