IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> Oakwood Homes Corporation, et al., <br><br> Debtors. | Chapter 11 <br><br> Case No. 02-13396 (PJW) |
| OHC Liquidation Trust, <br><br> Plaintiff, <br> v. <br><br> Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100, <br><br> Defendants. | Adv. Proc. No. 04-57060 (PJW) <br><br> Civil Action No. 07-799 (JJF) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE AT TRIAL TESTIMONY AND ARGUMENT REGARDING THE CURRENT SUBPRIME MORTGAGE CRISIS**

Of Counsel:

R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson

LINKLATERS LLP
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9000

Dated: May 5, 2008

Mark D. Collins (No. 2981)
collins@rlf.com
Russell C. Silberglied (No. 3462)
silberglied@rlf.com
Anne S. Gaza (No. 4093)
gaza@rlf.com
Lee E. Kaufman (No. 4877)
kaufman@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Attorneys for Defendants*

A09380564

RLF1-3280093-1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.    THE CURRENT SUBPRIME MORTGAGE CRISIS IS NOT RELEVANT ............. 2

II.    TESTIMONY AND ARGUMENT RELATING TO THE SUBPRIME
MORTGAGE CRISIS WOULD BE UNFAIRLY PREJUDICIAL TO
DEFENDANTS ........................................................................................................... 5

CONCLUSION ....................................................................................................................... 8

# TABLE OF AUTHORITIES

Page

## CASES

*Gentile v. State Bar of Nevada*,
501 U.S. 1030 (1991).................................................................................................................5

*Herskowitz v. Nutri/System, Inc.*,
857 F.2d 179 (3d Cir. 1988).......................................................................................................2

*Sacher v. United States*,
343 U.S. 1 (1952).......................................................................................................................4

*Zal v. Steppe*,
968 F.2d 924 (9th Cir. 1992) ..................................................................................................4, 5

## RULES

Fed. R. Evid. 401 ...........................................................................................................................2

Fed. R. Evid. 402 ...........................................................................................................................2

Fed. R. Evid. 403 ...........................................................................................................................6

## OTHER AUTHORITIES

*Barron's Dictionary of Finance and Investment Terms* (John Downes & Jordan Elliot
Goodman eds., 7th ed. 2006) .....................................................................................................2

RLF1-3280097-1

## INTRODUCTION

Defendants seek to bar testimony and argument that relate to the current subprime mortgage crisis on the basis that it is not relevant to his case and, even if it had any relevance, the probative value of such testimony and argument would be substantially outweighed by the possibility of unfair prejudice to Defendants. Plaintiff's response demonstrates that, just as we feared, Plaintiff intends to try to confuse and mislead the jury by suggesting, through testimony or argument, that somehow what happened at Oakwood was "just like" what jurors have read about the current problems in the subprime mortgage market. In fact, however, the issues in this case, which relate to 2002 and earlier, have nothing whatever to do with current events.

Plaintiff has failed to respond to Defendants' argument as to why the current subprime mortgage crisis is not relevant to this case. The victims in the current subprime mortgage crisis are two groups – homeowners and investors. Oakwood was neither. The securitization techniques which Oakwood used to provide liquidity may have been similar to the financing arrangements of subprime lenders; however, securitizations were not unique to subprime lenders. The dispute between Plaintiff and Defendants does not have anything to do with the type of financing arrangements that Oakwood utilized, nor does it have anything to do with the wave of defaults by and foreclosures on subprime borrowers that is at the root of the current subprime mortgage crisis.

Second, Plaintiff contends that Defendants have not provided any reasons why argument and testimony regarding the current subprime mortgage crisis would be unfairly prejudicial to Defendants. As we explained, however, there has been extensive media coverage since January 2007, much of it extremely negative in tone. Defendants also provided two samples of articles from the Wilmington News Journal that spoke highly critically of all players

in the subprime mortgage crisis, including Wall Street banks who did the work of securitizing subprime mortgages.

## ARGUMENT

### I.   THE CURRENT SUBPRIME MORTGAGE CRISIS IS NOT RELEVANT.

Federal Rule of Evidence 402 provides that only evidence that is relevant may be admitted. Fed. R. Evid. 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probably than it would be without the evidence." Fed. R. Evid. 401.

As far as the definition and the standard applied to assess the relevancy of a particular piece of evidence, Defendants and Plaintiff do not disagree. The standard for relevancy is not high. *Herskowitz v. Nutri/System, Inc.*, 857 F.2d 179, 188 (3d Cir. 1988). Where Defendants and Plaintiff part ways, however, is over whether the current subprime mortgage crisis bears any relation to "any fact that is of consequence to the determination of the action."

The meltdown in the subprime mortgage market began in 2006-2007 -- several years after the events at issue in this case -- and has taken its toll on homeowners who took out mortgages with low initial interest rates that have now increased to the point where they cannot afford to make their monthly payments and are facing foreclosure, or have already experienced foreclosure. The other principal group that has been hurt are investors who bought into subprime mortgage securitizations -- many of which are in default or are in danger of default. The technique of securitization involves creating securities backed by a pool of cash-flow producing financial instruments. *See Barron's Dictionary of Finance and Investment* (John Downes & Jordan Elliot Goodman eds., 7th ed. 2006) (definition of "securitization"). Securitization is not

2

limited to subprime mortgages because any type of receivables can be securitized, for example, auto loans, insurance policies and bonds.

This case does not implicate either the investors or subprime mortgagees who have suffered as a result of the subprime mortgage crisis. Likewise, this case does not involve any allegations that the nature of the securitization services provided by Credit Suisse harmed Oakwood or that such services were inappropriate. Rather, Plaintiff claims that it was harmed because Oakwood was able to stay in business longer than it should have because the Defendants continued to help Oakwood find liquidity -- not that it was harmed because those services were securitizations or because those securitizations were similar to those used by what Plaintiff refers to as "now-imploding 'subprime' lenders." Plaintiff's case would be no different if some other financing technique had been used.

While Plaintiff's response *asserts* that evidence comparing the Oakwood transactions is relevant, Plaintiff makes no attempt to show *how* it is relevant. Plaintiff's contention that drawing a parallel between Oakwood's financing arrangements to "those utilized by now-imploding 'subprime' lenders" would be relevant to Oakwood's financing arrangements is misplaced. First, the structure of Oakwood's financing arrangements was not unique to subprime lenders -- many companies in many other industries used, and continue to use, securitization to get liquidity. Second, Oakwood's financing arrangements can be explained to the jury without reference to "those utilized by now-imploding 'subprime' lenders." Finally, any similarity between Oakwood's securitizations and those of subprime lenders involved in the subprime mortgage crisis does not have any bearing on whether Credit Suisse had or breached any duties to Oakwood beyond providing securitization services. That Oakwood's securitizations and those of "now-imploding 'subprime' lenders" may have been similar does not make "any

3

fact that is of consequence to the determination of the action more or less probable than it would be" absent that similarity, and Plaintiff does not attempt to point to any such facts.

Indeed, the only reason for Plaintiff's attempt to draw parallels between what happened five and more years ago at Oakwood and the current subprime mortgage crisis is nothing more than an improper attempt to point the jurors to what they may know (or think they know) from the media about subprime lending.

Plaintiff accuses Defendants of attempting to trample on Plaintiff's and Plaintiff's counsel's First Amendment rights seeking a "prior restraint on speech" banning their use of the word "subprime." By that logic, many of the Federal Rules of Evidence encroach upon litigants' First Amendment rights. In fact, the two Rules that are the basis of Defendants' motion *in limine* -- Fed. R. Evid. 402 and 403 -- restrict speech at trial by requiring that litigants only present evidence that is relevant and whose relevance is not substantially outweighed by the danger of unfair prejudice. *See, e.g., Zal v. Steppe*, 968 F.2d 924, 928 (9th Cir. 1992) (quoting *Sacher v. United States*, 343 U.S. 1, 8-9 (1952) ("During a trial, lawyers must speak, each in his own time and within his allowed time, and with relevance and moderation ...")).[1] Likewise, litigants do not have an unfettered right to present argument that is not relevant or that is unduly prejudicial. *See id.* at 929-930 (trial court's order precluding the use of certain words so that excluded defenses "would not be presented to the jury through a back door" did not violate Constitution). As for Plaintiff's counsel's rights, "[i]t is unquestionable that in the courtroom itself, during a

---

[1] In his concurrence in *Zal*, Judge Trott stated unequivocally that "[t]raditional First Amendment analysis also supports the idea that lawyers (and others) have no First Amendment right to speak freely in a courtroom: a courtroom is not a public forum in the technical sense that this terminology is used in free-speech analysis." *Zal*, 968 F.2d at 932

Plaintiff contends that *Zal* is distinguishable from this case on its facts and because it had a "criminal law overlay." Their contention is irrelevant: the language in *Zal* cited in this Reply is not confined to the facts or procedural posture of *Zal* and is applicable to this case

4

judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed." *Id.* (quoting *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991)).[2]

In any event, given that the current subprime mortgage crisis is not relevant to any of Plaintiff's allegations, Plaintiff does not need to present any testimony or argument regarding the current subprime mortgage crisis at trial. Plaintiff does not allege that the nature of the securitizations harmed the company, the events at issue pre-date the current subprime mortgage crisis by at least five years, the services provided by Defendants neither affected nor were affected by the current subprime mortgage crisis, Oakwood was not affected by the current subprime mortgage crisis and this case has nothing to do with retail borrowers who may have been the victims of predatory lending and who are now facing foreclosure or the investors who purchased securities backed by subprime mortgages. While it is true that one of the things that drove Oakwood to lax underwriting standards was a similar loosening of standards in the market for mortgages for conventional housing -- *i.e.*, it had new competitors -- that point can be made without any need to tie it to the subprime securitizations that led to today's problems.

In short, Plaintiff has made no real effort to counter Defendants' argument that testimony or argument relating to the current subprime mortgage crisis is not relevant. Accordingly, the Court should grant Defendants' motion *in limine*.

## II. TESTIMONY AND ARGUMENT RELATING TO THE SUBPRIME MORTGAGE CRISIS WOULD BE UNFAIRLY PREJUDICIAL TO DEFENDANTS.

Even if the current subprime mortgage crisis bore an iota of relevance to this case, which it does not, such relevance would be vastly outweighed by the danger of unfair prejudice

---

[2] Judge Trott went even further than the majority, stating that "I believe a lawyer properly functioning as such on behalf of a client has no independent First Amendment rights in the courtroom... I believe *Sacher* and *Gentile* are potentially misleading: although they discuss the in-court First Amendment rights of lawyers, in fact those rights do not have any independent substance." *Zal*, 968 F.2d at 931.

5

RLF1-3280093-1

to Defendants, as illustrated by Plaintiff's contention that "it is abundantly clear that the financing schemes constructed by Credit Suisse for Oakwood bear a striking similarity to those utilized by now-imploding 'subprime' lenders." Plaintiff here betrays its intention to tie Defendants to the subprime mortgage crisis in the minds of the jury.

Plaintiff offers nothing more than an unsupported assertion that there is no evidence that the "term 'subprime' has become a shibboleth so terrible as to forever taint any party indirectly associated with it." First, Defendants are not required to demonstrate that the current subprime mortgage crisis is "a shibboleth so terrible as to forever taint any party indirectly associated with it." Defendants are merely required to show that the probative value of argument and testimony relating to the current subprime mortgage crisis "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury …." Fed. R. Evid. 403.

Second, as discussed above, the current subprime mortgage crisis has no probative value to this case. If, however, for the sake of argument, we were to assume that the current subprime mortgage crisis had some small amount of probative value, Defendants have already demonstrated that the media coverage of the current subprime mortgage crisis has been extensive and its negative tone has encompassed all of the players, with the Wall Street investment banks portrayed as among the villains who profited at the expense of homeowners who are now in danger of losing their homes. Given that this case does not relate to the subprime mortgage crisis, testimony or argument that would give the jury reason to believe that Defendants have played any part in the subprime mortgage crisis would distract the jury from the issues they should be considering.

Plaintiff claims, however, that the coverage of the subprime market has "given the public at least some vague idea of how complicated securitizations transactions involving loans of dubious credit quality were structured and how they functioned" and that this knowledge should help the jury. But this argument points exactly to the problem to which this motion is addressed. Plaintiff wants to direct the attention of the jury to media coverage of the current subprime mortgage crisis, which is improper. Surely Plaintiff can explain how the Oakwood securitizations worked without resorting to that sort of outside reference. As discussed above, Plaintiff does not allege that it was securitizations, as opposed to some other form of financing, that caused Oakwood harm and, consequently, discussion of the similarities between Oakwood's securitizations and those of now-failing subprime lenders would be distracting and unnecessary. Plaintiff should be able to explain to the jury how Oakwood's financing arrangements were structured without the need to resort to discussion of the subprime mortgage crisis, especially given the technique of securitization is not limited to use by subprime mortgage lenders. In any event, if the jury only has a "vague idea," then drawing a parallel between Oakwood's financing and the financing arrangements of the subprime lenders who are the cause of the current subprime mortgage crisis will not be useful in clarifying the jury's concept of securitizations and, in fact, would only confuse the issues.

Plaintiff provides no support for its contention that Defendants would not be unfairly prejudiced by testimony or argument relating to the current subprime mortgage crisis. By contrast, Defendants have shown that, in fact, there has been extensive and highly negative coverage of the current subprime mortgage crisis and that tying Defendants to the current subprime mortgage crisis could lead the jury to believe that Defendants are culpable in the current subprime mortgage crisis and draw the conclusion that they were probably equally

7

culpable in their provision of securitization services to Oakwood. Given that the current subprime mortgage crisis bears no relation to the issues in this case, it would be unfairly prejudicial to Defendants to allow Plaintiff to present argument and testimony that could connect Defendants to the current subprime mortgage crisis.

## CONCLUSION

For all the reasons stated above, Defendants respectfully request that the Court exclude any testimony or argument regarding the current subprime mortgage crisis.

Dated: May 5, 2008
      Wilmington, Delaware

Respectfully submitted,

Mark D. Collins (No. 2981)
collins@rlf.com
Russell C. Silberglied (No. 3462)
silberglied@rlf.com
Anne S. Gaza (No. 4093)
gaza@rlf.com
Lee E. Kaufman (No. 4877)
kaufman@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson
LINKLATERS
1345 Avenue of the Americas
New York, NY 10105
Telephone: (212) 903-9000
Facsimile: (212) 903-9100

*Attorneys for Defendants*

8

RLF1-3280093-1

## CERTIFICATE OF SERVICE

I, Lee E. Kaufman, do hereby certify that on May 5, 2008, I caused a copy of the foregoing **Reply Memorandum of Law in Further Support of Defendants' Motion to Exclude at Trial Testimony and Argument Regarding the Current Subprime Mortgage Crisis** to be served upon each party on the attached service list in the manner indicated thereon.

Lee E. Kaufman (No. 4877)

RLF1-3280083-1

## SERVICE LIST

**Via Hand Delivery**
Marla R. Eskin, Esq.
Kathleen Campbell Davis, Esq.
Campbell & Levine
800 North King Street
Suite 300
Wilmington, DE 19801

**Via First Class Mail**
Tony Castanares, Esq.
Stephen M. Ray, Esq.
Carol Chow, Esq.
Whitman L. Holt, Esq.
Stutman, Treister & Glatt, PC
1901 Avenue of the Stars
12th Floor
Los Angeles, CA 90067