## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Oakwood Homes Corporation, et al., | Case No. 02-13396 (PJW) |
| Debtors. | Jointly Administered |
| OHC Liquidation Trust, | |
| Plaintiff, | |
| v. | Adversary Proc. No. 04-57060 (PJW) |
| Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100, | Civil Action No. 07-799 (JFF) |
| Defendants. | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE*

Of Counsel:

R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson
LINKLATERS LLP
1345 Avenue of the Americas
New York, New York 10105
Telephone: (212) 903-9000
Facsimile: (212) 903-9100

Dated: May 5, 2008

Mark D. Collins (No. 2981)
collins@rlf.com
Russell C. Silberglied (No. 3462)
silberglied@rlf.com
Anne S. Gaza (No. 4093)
gaza@rlf.com
Lee E. Kaufman (No. 4877)
kaufman@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Attorneys for Defendants*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE OF THE CASE ................................................................................................ 1

SUMMARY OF ARGUMENT ....................................................................................... 1

FACTUAL BACKGROUND ............................................................................................ 2

ARGUMENT ................................................................................................................... 8

I.     THE LAW IS CLEAR THAT STATEMENTS OF WITNESSES
ABOUT LEGAL CONCEPTS ARE IRRELEVANT AND POTENTIALLY
PREJUDICIAL ......................................................................................................... 8

     A.     Mr. Boland Will Not Testify As To The Existence Or Non-existence
Of A Fiduciary Duty, So Plaintiff's Argument That His Testimony
Should Be Excluded In Part Is Wholly Baseless ............................................. 10

     B.     Plaintiff Is Not Permitted To Question Mr. Felt At Trial About
The Existence Or Non-Existence Of A Fiduciary Duty As His
Testimony On That Subject Is Irrelevant And Potentially Prejudicial ................. 13

     C.     The Felt Motion Is A Cynical Tactic, As Plaintiff Waited Nearly
Two Years After Mr. Felt's Deposition To Raise Issues Concerning
Mr. Felt's Statement Or His Communication With Counsel At
The Lunch Break ............................................................................................ 16

CONCLUSION ............................................................................................................... 18

## TABLE OF AUTHORITIES

Page

### CASES

*Bahamas Agric. Indus. Ltd v. Riley Stoker Corp.*,
526 F.2d 1174 (6th Cir. 1975) ................................................................. 15

*Brown v. Old Castle Precase East, Inc.*,
76 F. App'x 404, 410 (3d Cir. 2003) ..................................................... 8, 9

*HF Mgmt. Servs. LLC v. Pistone*,
818 N.Y.S.2d 40 (App. Div. 2006) ............................................................ 9

*Hall v. Clifton Precision*,
150 F.R.D. 525 (E.D.Pa 1993) ................................................................ 17

*Harb v. United Parcel Serv. Inc.*,
No. 84 Civ. 8430 (WCC), 1985 WL 4850 (S.D.N.Y. Dec. 23, 1985) ....... 15

*Hester v. BIC Corp.*,
225 F.3d 178 (2d Cir. 2000) ...................................................................... 9

*McNulty v. Citadel Broad. Co.*,
58 F. App'x 556 (3d Cir. 2003) ............................................................. 8, 9

*Oberlin v. Marlin Am. Corp.*,
596 F.2d 1322 (7th Cir. 1979) ............................................................ 8, 15

*Schieber v. Philadelphia*,
No. CIV. A. 98-5648, 2000 WL 1843246 (E.D. Pa. Dec. 13, 2000) .......... 9

*United States v. Davidson*,
308 F. Supp. 2d 461 (S.D.N.Y. 2004), *aff'd*, 220 F. App'x 5 (2d Cir. 2007) ................ 9

*United States v. Espino*,
32 F.3d 253 (7th Cir. 1994) ....................................................................... 9

*United States v. Scop*,
846 F.2d 135 (2d Cir. 1988) .................................................................... 10

### RULES

Fed. R. Civ. P. 32(d)(3)(B) ...................................................................... 15

Fed. R. Evid. 403 ...................................................................................... 13

ii

# **OTHER AUTHORITIES**

8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus,
*Federal Practice and Procedure* § 2153 (2d ed. 1994) ..................................................................15

## NATURE OF THE CASE

Defendants Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.) (collectively, "Defendants" or "Credit Suisse"), respectfully submit this Memorandum of Law in Opposition to Plaintiff's Motions in Limine ("Motion in Limine" or "Motion").

## SUMMARY OF ARGUMENT

Plaintiff's consolidated motions in limine are much ado about nothing. The relief that Plaintiff demands is unnecessary, and it is difficult to understand why the Motions were filed at all other than to distract attention from the grave flaws in Plaintiff's own case. As to Defendant's expert Mr. Boland, Plaintiff asks that (i) he be forbidden from testifying on a subject which his report does not address and which Defendants have no intention of asking him about, and (ii) that the jury be given a limiting instruction which is nonsensical given the construct of Plaintiff's case. As to Mr. Felt, Plaintiff asks that he be forbidden from making a clarification of an answer he gave in a deposition, even though it is plain that he could not be asked the question at trial and that, therefore, no clarification will be needed.

In his rebuttal report, Mr. Boland did not express an opinion as to whether any Defendant had a fiduciary duty to Oakwood, and Defendants have no intention of asking him that question at trial. Of course it would be improper to ask such a question at trial, and neither party has suggested that the existence or not of a fiduciary duty is a subject for expert opinion. So, as to the first part of the relief requested with respect to Mr. Boland, Plaintiff may rest easy. Mr. Boland's role is not to express an opinion about

the existence of a duty. It is to rebut what Professor Shapiro has to say about the standards of care and "financial incentives" for investment banks.

Plaintiff goes further, and asks that the jury be instructed that Mr. Boland's testimony may be considered on two of their causes of action, but not on the breach of fiduciary duty claim. But that makes no sense, given that Plaintiff has not suggested that the duties of care are *different* with respect to the separate causes of action. Indeed, while Professor Shapiro says in his report that he was asked to assume the existence of a fiduciary duty, he made clear in his deposition that his opinion was not in any way affected by that assumption - the duty of care was the duty of care. While the parties will clearly argue at trial, based in part on the testimony of Professor Shapiro and Mr. Boland, about what the standard of care was in this case, neither expert is going to opine on the existence of a duty, nor suggest that the standard of care was dependent upon the source of the duty.

As to Mr. Felt, during his deposition he volunteered, in unrelated questioning, that "We had a fiduciary duty to Oakwood." Later, he said that he had not used that term in a legal sense, but meant it as "shorthand for we wanted to do the right thing by our client." Plaintiff wants to highlight (whether Mr. Felt testifies live or by deposition) his use of the term "fiduciary duty", but not his clarification. The simple answer is that there is no need for the clarification because Mr. Felt has no business opining on the existence of a fiduciary duty, and Plaintiff has no business asking him about it. Plaintiff will have to prove its case the old-fashioned way – with relevant facts.

## FACTUAL BACKGROUND

### Facts Concerning the Boland Motion

On April 30, 2007, Plaintiff served the Report of Alan C. Shapiro, Ph.D. (J. Justin Williamson Decl. Ex. A (hereinafter the "Shapiro Report").) The Shapiro

2

Report states the scope of Dr. Shapiro's engagement to be "to provide an expert opinion on whether Credit Suisse First Boston . . . performed its responsibilities in its capacity as underwriter, lender, and financial advisor to Oakwood Homes Corporation . . . in a reasonable or reasonably prudent manner." (Shapiro Report at 1.)

The Shapiro Report summarizes the expert opinion testimony to be offered as follows:

- CSFB did not behave in a reasonable or reasonably prudent manner with respect to the services it provided to Oakwood. CSFB's various relationships with Oakwood afforded it access to information, both public and inside, about Oakwood's financial condition. Given Oakwood's financial condition and in line with its fiduciary responsibility to Oakwood and its creditors and its own guidelines and principles of conduct, CSFB should have advised Oakwood to reduce its operations or file for bankruptcy prior to its engagement as a financial advisor for restructuring purposes in August 2002.

- CSFB had financial incentives to keep Oakwood operating and to delay recommending that Oakwood file for bankruptcy. These incentives came in two forms 1) CSFB continued to earn fees for the underwriting, lending, and advising services it provided as long as Oakwood continued as a going concern; and 2) due to its equity interest in Oakwood through warrants issued as a result of its participating in the loan purchase facility, CSFB stood to benefit if Oakwood did recover from its dire financial position. At the same time, even through CSFB was a lender to Oakwood, its interests differed from those of other Oakwood debt holders because its exposure to Oakwood was protected from the threat of bankruptcy. Thus, as a bankruptcy-insulated lender with an equity interest in the borrower, CSFB was exposed to the upside of an Oakwood recovery, no matter how remote the possibility, while insulated from the costs of a futile turnaround attempt. And, due to the potential of continued securitizations and other fees, CSFB stood to profit from the turnaround attempt even if it was not successful.

(Shapiro Report at 3-4.) In support of these opinions, the Shapiro Report describes Dr. Shapiro's understanding of the nature and structure of investment banks, the process of securities underwriting and the access to information such services afford (*id* at 12-14), Dr. Shapiro's understanding of the relationship between certain Defendants and Oakwood (*id* at 14-23), his understanding of Defendants' analysis of Oakwood's credit risk (*id* at

3

24-28) and Dr. Shapiro's opinion of how Defendants should have acted in those relationships (*id.* at 28-39), and Dr. Shapiro's opinion on various financial incentives he believes influenced Defendants' actions (*id.* at 39-47).

The Shapiro Report also notes that Dr. Shapiro was "asked by counsel to assume that CSFB owed Oakwood and its creditors a fiduciary responsibility." (*Id.* at 4.) However, Dr. Shapiro testified that his opinion would not change if Defendants did not owe fiduciary duties. (Deposition of Dr. Alan C. Shapiro, dated September 5, 2007, at 5:5 – 6:11, J. Justin Williamson Decl. Ex. B (hereinafter cited "Shapiro Dep.").)

On February 29, 2008, Defendants served the Expert Witness Report of Thomas F. Boland. (J. Justin Williamson Decl. Ex. C (hereinafter the "Boland Report").) The Boland Report summarizes the expert testimony of Mr. Boland that Defendants intend to offer in rebuttal to Dr. Shapiro's testimony. (*See* Boland Report at 4.) The Boland Report concludes that prior to August 2002, no Defendant served as a general financial advisor to Oakwood, and that the existing relationship "was a very typical banking/client product driven relationship and was conducted in an appropriate manner." (*Id.* at 18.)

The Boland Report provides a summary of the standard of care testimony that Mr. Boland will provide in rebuttal to Dr. Shapiro's testimony. In support of his conclusion and in rebuttal to Dr. Shapiro, the Boland Report discusses the nature and structure of an investment bank (*id.* at 5-7), the underwriting of asset backed securities such as the ones utilized by Oakwood (*id.* at 8-10), other services provided to Oakwood by Defendants (*id.* at 10-16), the financial services relationship between Oakwood and Defendants, and the compensation Defendants received for such services (*id.* at 16-17). Finally, Mr. Boland notes the important role of a board of directors in determining the fate of a company. (*Id.* at 13). In that regard, Plaintiff certainly agrees, admitting "the

4

wrong committed by Oakwood's management and board: the adoption of a flawed business plan that drove their company into the ground." (Plaintiff's Unified Brief at 19.)

The Boland Report does not suggest that Mr. Boland has an opinion concerning the existence of a fiduciary duty in this case, and Defendants will not offer any testimony from Mr. Boland concerning the existence of a fiduciary duty at trial.

Mr. Boland was deposed on March 25, 2008. (Deposition of Thomas F. Boland, dated March 25, 2008, J. Justin Williamson Decl. Ex. D (hereinafter cited "Boland Dep.").) Although the Boland Report does not suggest an opinion on the question of whether Defendants owed a fiduciary duty, counsel for Plaintiff sought to inquire into whether Mr. Boland believed Defendants owed a fiduciary duty. (Boland Dep. at 79-82.) Counsel for Defendants objected to this line of questioning on the grounds that it called for a legal conclusion, and one of the ultimate questions in the case. Mr. Boland was instructed not to answer. (*Id.*) Mr. Boland was permitted to testify as to his own experience as a fiduciary both as a member of a board of directors and in connection with financial restructuring engagements. (*Id* at 88:3 – 88:19.) In addition Mr. Boland testified that he did not have an opinion on whether Defendants ever owed any fiduciary duty to Oakwood. (*Id* at 81:6 – 81:12.)

The Jared Felt Deposition

As Plaintiff did not reproduce the relevant deposition excerpt in its Motion, we quote below from the questioning that led to Mr. Felt's statement. Counsel was questioning Mr. Felt about negotiations with Foothill Capital for a DIP loan shortly before Oakwood's bankruptcy filing in 2002:

> Q. And Foothill knew that New York branch was contemplating doing the warehouse line; correct?
>
> A. Foothill knew that New York branch was considering a – providing a loan purchase facility if the company chose to file for bankruptcy.

Q. Okay. And you – in fact, you hadn't contacted any other potential warehouse line provider besides New York branch as of November 7th on behalf of Oakwood, had you?

A. I personally had not.

Q. Had CSFB?

A. I don't know.

Q. Okay. So what did you tell Foothill when they signaled that they wanted the warehouse facility with regard to why New York branch hadn't committed to it yet?

A. The company's – OAC still had a loan purchase facility until the company filed for bankruptcy. If the question is did I discuss with them whether or not New York branch was going to provide one – is that the questions?

Q. I'll withdraw the question. Let's go back to the first line of this.

A. Yes.

Q. "Foothill signals strongly that without a warehouse line." Now, there was a warehouse line at that time, wasn't there?

A. There was.

Q. So you knew that Foothill wasn't talking about the existing warehouse line, didn't you?

A. If there's a debtor possession – yes.

Q. You knew they were talking about a post-bankruptcy warehouse line; correct?

A. Yes.

Q. All right. What did you tell Foothill in response to that, about why New York branch hadn't yet committed to that post-bankruptcy line?

MS. WARREN: Objection to the form.

THE WITNESS: I don't recall. But in a situation like this, you would make – you would make noncommittal positive – say noncommittal positive things.

BY MR. CASTANARES:

Q. What does that mean?

A. They're working on it.

Q. That's what you told them? That's your recollection?

A. I don't recall.

Q. Okay. Had the company from time to time asked you what kind of progress was happening on New York branch coming up with the post-bankruptcy warehouse line?

A. Not me personally, but the question was asked, of course.

Q. Of CSFB?

A. Yes.

Q. Just not you personally there?

A. Those would be questions that were primarily directed to Fihehra.

Q. Okay. Do you know how he responded to them if at all?

A. Yes.

Q. Tell me how?

A. That he was working with New York branch toward the end.

Q. Positive noncommittal response?

    MS. WARREN: Objection to the form.

BY MR. CASTANARES:

Q. Correct?

    MS. WARREN: Objection to the form.

    THE WITNESS: That is your statement not mine.

BY MR. CASTANARES:

Q. That fits the definition you just gave me of positive noncommittal response?

A. The way I would –

MS. WARREN: Objection to the form. Let him finish the question. And, Tony, please don't cut him off.

MR. CASTANARES: I don't think I have. I think what actually happened was your objection got cut off.

    Did the reporter get the answer?

    THE REPORTER: No, I didn't, sir.

MR. CASTANARES: I didn't either, so I'll rephrase the question. Allow me to state the question. Allow your counsel to state her formal objection, and then you can answer it.

BY MR. CASTANARES:

7

Q.    The response that you have just described that Mr. O'Driscoll gave to Oakwood as to why – as to what progress was being made on getting New York branch to commit to a post-bankruptcy warehouse line, fit within the definition you just gave of quote "positive noncommittal response," close quote, when you define that term a few questions ago; correct?

MS. WARREN:  Objection to the form.

BY MR. CASTANARES:

Q.    Please answer.

A.    Foothill was a third party to whom we had no fiduciary duty.  We were trying to sell to them – we were trying to help the company sell to them a DIP facility.  We had a fiduciary duty to Oakwood.  We were very honest in our assessment of progress made in all situations, including with respect to the loan purchase facility.

Q.    Tell me, sir, in capsule form your formal education since high school.

(Deposition Transcript of Jared Felt, June 15 and 16, 2007, at 372:3 – 376:10, J. Justin Williamson Decl. Ex. E (hereinafter the "Felt Dep.").)  Plaintiff's counsel then moved on to other topics.

## ARGUMENT

### I.    THE LAW IS CLEAR THAT STATEMENTS OF WITNESSES ABOUT LEGAL CONCEPTS ARE IRRELEVANT AND POTENTIALLY PREJUDICIAL.

Statements of lay or expert witnesses concerning legal concepts are generally inadmissible, and there is good reason for that.  *See, e.g., McNulty v. Citadel Broad Co.*, 58 F. App'x 556, 564 (3d Cir. 2003) ("Lay witnesses are not needed to interpret ... especially when the opinion goes to the ultimate issue and witnesses' testimony distracts jurors from their task of drawing an independent conclusion.") (citation and quotations omitted); *Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322, 1327-28 (7th Cir. 1979) (upholding trial court decision to exclude certain deposition testimony about the existence of an agency relationship as "conclusory and of little probative value"); *Brown v. Old Castle Precase E., Inc.*, 76 F. App'x 404, 410 (3d Cir. 2003) ("'[S]eldom will be the case when a lay opinion on an ultimate issue will meet the test of

8

being helpful to the trier of fact since the jury's opinion is as good as the witness'.'"

(quoting *Hester v. BIC Corp.*, 225 F.3d 178, 184 (2d Cir. 2000) (citation omitted)

(emphasis in original))); *Schieber v. Philadelphia*, No. CIV. A. 98-5648, 2000 WL

1843246, at *8, 11 (E.D. Pa. Dec. 13, 2000) (granting defendants' motion in limine to

prevent expert witnesses from testifying to legal conclusions); *United States v. Espino*, 32

F.3d 253, 257 (7th Cir. 1994) (concluding that the district court abused its discretion by

requiring a lay witness to respond to a question that "demanded a legal conclusion and

created the danger that the jury gave his response undue weight"); *United States v.

Davidson*, 308 F. Supp. 2d 461, 477 (S.D.N.Y. 2004) (stating that "testimony that

expresses [a conclusion on an ultimate question for the jury] with legal terminology is

ordinarily not admissible"), *aff'd*, 220 F. App'x 5 (2d Cir. 2007).

Here, it is Plaintiff's burden to establish the existence and nature of any

alleged duty on the part of any of the Defendants. Plaintiff has a particularly heavy

burden of proof on its fiduciary duty claim given that New York law generally rejects the

notion that the relationship between an issuer and an underwriter is a fiduciary one. *HF

Mgmt. Servs. LLC v. Pistone*, 818 N.Y.S. 40, 43 (App. Div. 2006) ("New York courts and

jurisdictions applying New York law have long recognized the non-fiduciary nature of the

underwriter-issuer relationship") (collecting cases). But it is for the Court to instruct the

jury (if there is one in this case) on what the law is and what evidence it may consider. It

is not the province of a lay witness to "instruct" the jury on any legal concept, much less

an ultimate issue in dispute. *See McNulty v. Citadel Broad. Co.*, 58 F. App'x 556, 564

(3d Cir. 2003) ("Lay witnesses are not needed to interpret … especially when the opinion

goes to the ultimate issue and witnesses' testimony distracts jurors from their task of

drawing an independent conclusion.") (citation and quotations omitted); *Brown v. Old

Castle Precase E., Inc.*, 76 F. App'x 404, 410 (3d Cir. 2003) (noting that lay witness

9

opinion is generally not helpful to trier of fact because jury's opinion is just as reliable); *United States v. Scop*, 846 F.2d 135, 139-40 (2d Cir. 1988) (concluding that expert testimony "embodying legal conclusions exceeded the permissible scope of opinion testimony under the Federal Rules of Evidence" because it invaded "the province of the court to determine the applicable law and to instruct the jury as to that law" and gave "the appearance that the court was shifting to witnesses the responsibility to decide the case") (citations and quotations omitted).

Given those precepts, it is difficult to understand why Plaintiff believes that this Court will permit any witness at trial to testify as to whether a fiduciary duty existed between any Defendant and Oakwood. Defendants do not intend to ask Mr. Boland to testify whether a fiduciary duty existed (indeed, he has already testified that he has no opinion on that topic (Boland Dep. at 81:6 - 81:12)). Rather, his testimony will involve the standards of care and customary behavior of investment banks in their business with clients. As to Mr. Felt, this investment banker's blurted statement that "we had a fiduciary duty" is probative of nothing – particularly given that Mr. Felt had no personal knowledge of the securitization work that is the heart of Plaintiff's fiduciary duty claim.

### A.     Mr. Boland Will Not Testify As To The Existence Or Non-Existence Of A Fiduciary Duty, So Plaintiff's Argument That His Testimony Should Be Excluded In Part Is Wholly Baseless.

Plaintiff's Motion in Limine concerning the testimony of Mr. Boland is perplexing on a number of levels. Plaintiff argues that because Mr. Boland was not permitted to testify in deposition as to whether a fiduciary duty existed, none of Mr. Boland's testimony may be considered by the trier of fact in determining the fiduciary duty claim. (Motion at 5-8.) What Plaintiff is essentially saying is that even though Mr. Boland's report does not opine on any legal conclusions, and even though Mr. Boland's

10

views on the existence or non-existence of a fiduciary duty would be inadmissible at trial, and even though Defendants do not intend to ask Mr. Boland to opine on that ultimate question, and even though Plaintiff's own expert Dr. Shapiro does not opine on that ultimate question, the trier of fact should be precluded from considering Mr. Boland's testimony for any purpose relating to the fiduciary duty claims. This all makes no sense. Plaintiff is not entitled to exclude an expert's testimony because counsel asks the witness to address legal conclusions that are not in his report and that would be inadmissible at trial.

The simple fact is that Mr. Boland is an expert testifying on the standards of care and the "incentives" for an investment bank in rebuttal to Dr. Shapiro's testimony about the same things. (Shapiro Report at 3 – 4, 12 – 14, 39 – 40.) Mr. Boland's report does not express an opinion on the existence of a fiduciary duty. That concept is a legal construct, and Mr. Boland, who does not have a law degree, is not qualified to express such an opinion and was not asked to.

Moreover, Plaintiff's arguments reveal a fundamental misunderstanding of the elements of its own claims. Among the elements of a fiduciary duty claim are necessarily (i) the existence of a duty; and (ii) the breach of that duty. Expert witness testimony addressing the latter may certainly be offered without the expert being required to opine on the existence of a duty. In fact, Plaintiff argues that this is the very type of testimony offered by Dr. Shapiro. (Motion at 3 (noting that "it is proper to view [Shapiro]'s opinion as a statement of the standard of care applicable to the relationship between Oakwood Homes and Credit Suisse . . . i.e., the usual stuff of expert opinion in professional liability cases").) That, of course, is *precisely* the scope of Mr. Boland's rebuttal report – *i.e.*, Mr. Boland will testify in rebuttal to Dr. Shapiro on whether

11

Defendants acted reasonably under the circumstances, not on whether there is a fiduciary duty.

Dr. Shapiro does not opine on whether a fiduciary duty exists – indeed, although he was asked to assume one, he testified that his opinion neither depends nor relies upon the existence of a fiduciary duty. (Shapiro Dep. at 5:5 – 6:11.) He testifies solely with respect to whether, in his opinion, Defendants acted in a reasonable manner under the circumstances.[1]   The Boland Report and the expert testimony Mr. Boland will offer at trial does nothing more than contest Dr. Shapiro's inaccurate understanding of the services and banking relationships existing in this case and offer his opinion that in these circumstances Defendants acted reasonably and appropriately.

Plaintiff's feigned outrage that Mr. Boland was not permitted to answer what were inappropriate deposition questions should be viewed as the tactic that it is. Mr. Boland's superior experience in and understanding of investment banking client relationships, as compared to Dr. Shapiro, is obvious. Plaintiff is undoubtedly concerned about that, particularly as Defendants have filed a Daubert motion addressing Dr. Shapiro's testimony. But Plaintiff's tactic to blunt the force of Mr. Boland's experience should be rejected. Given there will be no expert testimony on the existence of a

---

[1]    There simply is no legitimate question about the "scope" of rebuttal here. The Shapiro Report spends some 25 of its 47 pages addressing the work of typical investment banks, the process of underwriting securities, investment banks' access to information, and the factual background of certain Defendants' relationship with Oakwood (Shapiro Report at 1- 27), followed by a discussion of Shapiro's opinion of whether Defendants' conduct was reasonable and appropriate given the circumstances (Shapiro Report at 28- 39.) The Boland Report rebuts Shapiro's proposed testimony by addressing the types of services provided by investment banks (Boland Report at 5-7), the Oakwood securitization process and Defendants' underwriting of the securities (*id* at 8-10); other services provided by Defendants to Oakwood (*id* at 10-16); and compensation for investment banking services (*id* at 16-17). It also provides Mr. Boland's conclusions regarding whether Defendants' conduct was reasonable and appropriate under the circumstances (*id* at 16-19). The Boland Report is virtually a topic-by-topic rebuttal of the Shapiro Report.

12

fiduciary duty, neither of Plaintiff's remedies is appropriate, and the Motion with respect to Mr. Boland should be denied.

Finally, Plaintiff's proposed jury instruction simply makes no sense. It would allow the jury to consider both Dr. Shapiro's and Mr. Boland's testimony with respect to the standard of care on the negligence and breach of contract claim, but may only consider Dr. Shapiro's testimony on the breach of fiduciary duty claim. Implicit in this instruction is the assumption that the standards of care are somehow different between the fiduciary and other claims. However, as Dr. Shapiro has testified, his standard of care applies whether or not a fiduciary duty arose between Defendants and Oakwood. There is therefore no evidence, or even suggestion, that a differing standard applies between and among the claims. Given that the same standard applies among the claims, Plaintiff's proposed instruction would make no sense in this case.

**B.    Plaintiff Is Not Permitted To Question Mr. Felt At Trial About The Existence Or Non-Existence Of A Fiduciary Duty As His Testimony On That Subject Is Irrelevant And Potentially Prejudicial**

Mr. Felt's statement during his deposition is not "evidence having any tendency to make the existence of any *fact* that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 402 (emphasis added). Mr. Felt was an employee in the restructuring/financial advisory side of the investment bank who was not hired by Oakwood until August 2002. (Felt Dep. at 16:23 – 17:6, 89:4 – 89:19.) Mr. Felt played no role in Oakwood's separate securitization relationship with Fiachra O'Driscoll's ABS group from which Plaintiff claims a fiduciary duty arose. Indeed, Oakwood rejected the possibility of the involvement of Mr. Felt and his restructuring team whenever it was offered to them prior to the summer of 2002. (Felt Dep. at 49:21 – 50:22, 98:11-99:6.) But Plaintiff alleges a fiduciary duty extending back at least to 2001 (or maybe longer, depending on which of

13

Plaintiff's briefs one reads) based on Plaintiff's allegations about the many "roles" that Mr. O'Driscoll and his team played and that "the securitization documents did not require" them. (Unified Brief at 9-11.)  As Mr. Felt has no personal knowledge of the securitization relationship between Oakwood and Mr. O'Driscoll's team, his statement about fiduciary duty, cannot be fairly read to apply to the securitization relationship on which Plaintiff has premised its fiduciary duty claim.

As to the prejudice, confusion, and waste of time that would result from admission of Mr. Felt's statement, we draw the Court's attention to this excerpt from Plaintiff's Unified Brief:

> What of the fiduciary duty claim?  Defendants deny that such a relationship existed, so Plaintiff will undertake the burden of proving it. There is considerable evidence of this, including the five undertakings by Mr. O'Driscoll described above; the numerous and multifaceted roles that Credit Suisse occupied vis-à-vis Oakwood; and, perhaps most glaringly, the outright admission by Jared Felt (one of Defendants' main witnesses): 'we had a fiduciary duty to Oakwood.'  Mr. Felt was Defendants' principal actor regarding the *formal* financial advisory contract that prevailed in the last 88 days of Oakwood's existence.  That contract did not mention any fiduciary duty, but it did contain an integration clause.  The necessary conclusion is that the fiduciary duty Mr. Felt mentioned came from somewhere else.
>
> *Precisely.*

(Plaintiff's Unified Brief at 11) (emphases in original).  Come again?  Plaintiff appears to contend, seriously, that the statement of Mr. Felt, a non-lawyer, was made with awareness and understanding not just of a legal fiduciary duty, but of the "integration clause" in the contract; and that "the necessary conclusion" is that the fiduciary duty that Mr. Felt mentioned "came from somewhere" other than the contract; which in turn must have been the earlier securitization relationship *to which Mr. Felt was not privy.*  That is "*precisely*" the kind of unfounded speculation and bootstrap theorizing that will confuse and mislead a jury without adding any factual evidence to the record.  Plaintiff wishes to use a witness who was not involved in the primary relationship between Oakwood and

14

CSS to "prove" that a fiduciary duty existed by virtue of that primary relationship. The Court should not permit Plaintiff to create a misleading sideshow at trial using Mr. Felt's statement.

Consequently, Plaintiff's Motion should be denied, as its premise -- that Plaintiff will engage Mr. Felt in a discussion of fiduciary duty at trial, or that Plaintiff will play this deposition video excerpt for a jury if Mr. Felt does not testify in person – impinges on the role of the trier of fact and promises only to confuse and mislead a jury. Whether Mr. Felt testifies in person or via deposition excerpts, the portion of his testimony at issue here is still inadmissible testimony[2].

---

[2]    Mr. Felt's statement is inadmissible at trial for the additional reason that it was made in response to a defective question, following a valid objection to the form by Defendants' counsel. Objections to errors or irregularities in questioning at depositions are permitted, and indeed encouraged. Federal Rule of Civil Procedure 32(d)(3)(B) provides that any objection to the form of a question that might have been corrected at the time is waived unless timely made during the deposition. The purpose of Rule 32(d) is "to give the erring party an opportunity to correct the mistake, and to prevent waste of time and money by a subsequent claim that a deposition must be suppressed because of some technical error long ago." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2153 (2d ed. 1994). *See also Bahamas Agric. Indus. Ltd v. Riley Stoker Corp.*, 526 F.2d 1174, 1180 (6th Cir. 1975). *Cf. Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322, 1327-28 (7th Cir. 1979) (upholding trial court decision to allow certain deposition testimony into evidence, as defendant waived objections during deposition); *Harb v. United Parcel Serv. Inc.*, No. 84 Civ. 8430 (WCC), 1985 WL 4850, at * 3-4 (S.D.N.Y. Dec. 23, 1985) (motion for exclusion of testimony denied due to untimeliness of request and lack of objection by witness' counsel during deposition). In the instant case, the question put to Mr. Felt was clearly argumentative and clearly called for him to speculate. It was the last of a series of questions in which Plaintiff's counsel tried to have Mr. Felt agree with counsel's characterization of the state of mind and intentions of another CSS employee, Mr. O'Driscoll, during conversations that Mr. Felt was not present for. (See Felt Dep. 372:3 – 376:8) For the same reasons, the question lacked foundation. After Defendants' counsel's timely objection to the form, Plaintiff's counsel chose not to correct his question. Consequently, Mr. Felt's answer to the question must be excluded.

C.    **The Felt Motion Is A Cynical Tactic, As Plaintiff Waited Nearly Two Years After Mr. Felt's Deposition To Raise Issues Concerning Mr. Felt's Statement Or His Communication With Counsel At The Lunch Break.**

The deposition of Jared Felt that is the subject of Plaintiff's Motion in Limine took place on June 15th and 16th, 2006, nearly two years ago. During all that time, Plaintiff never raised any issue about wanting to question Mr. Felt further about his statement or his communication with counsel during the lunch break. Had Plaintiff's counsel truly believed that there was "coaching" (Motion at 8) at the lunch break, and/or that Plaintiff had been deprived of relevant information by Defendant's counsel's instruction not to answer, the proper course would have been to adjourn the deposition to seek a ruling, or to file a motion with the Court immediately after the deposition to compel the witness to answer questions about the lunch break. But Plaintiff did none of these things. Nor did Plaintiff's counsel raise any issue about the deposition during subsequent contacts with Defendants' counsel over the ensuing two years of litigation – not in correspondence, emails, phone calls, or any of the numerous communications the parties have had since June 2006.

Now, Plaintiff's Motion, filed on the eve of trial, asks this Court for a special jury instruction based on Mr. Felt's deposition and counsel's instruction to the witness not to answer certain questions. This tactic should be rejected. Had Plaintiff's counsel sought relief two years ago, and had that relief been either granted or denied, there would be no need for this dispute now and no need for an additional instruction to the jury. Instead, Plaintiff said nothing and did nothing, until now. That fact alone should raise serious doubts about the motives and the merits of Plaintiff's Motion.

Leaving aside Plaintiff's choice of tactics, the innuendo in its Motion about "suborning perjury" and "coaching" (Motion at 11 n 7) should be addressed briefly. When Mr. Felt volunteered a legal conclusion, counsel would naturally have been, and in

16

fact was, concerned about whether that answer implicated privileged communication, and about the possibility of an inadvertent waiver as a result of Mr. Felt's volunteered legal conclusion. Inquiry to determine whether there was a privilege issue was certainly proper under the rules, and such an inquiry might naturally lead the witness to clarify that his answer was not meant to be a legal opinion of his own or anyone else's. Other than this controversy churned up two years after the fact, Plaintiff has not raised any other issues with this two-day deposition, and Plaintiff has not alleged that Defendants' counsel prevented Plaintiff from pursuing any proper factual testimony from Mr. Felt. Consequently, Plaintiff's citations to *Hall v. Clifton Precision*, 150 F.R.D. 525, 529 (E.D.Pa 1993) and like cases are unmerited.

17

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the

Court deny Plaintiff's Motion in Limine.

DATED:    May 5, 2008
          Wilmington, Delaware



                                  Mark D. Collins (No. 2981)
                                  collins@rlf.com
                                  Russell C. Silberglied (No. 3462)
                                  silberglied@rlf.com
                                  Anne S. Gaza (No. 4093)
                                  gaza@rlf.com
                                  Lee E. Kaufman (No. 4877)
                                  kaufman@rlf.com
                                  RICHARDS, LAYTON & FINGER, P.A.
                                  One Rodney Square
                                  920 North King Street
                                  Wilmington, Delaware  19801
                                  Telephone:  (302) 651-7700
                                  Facsimile:  (302) 651-7701

                                          -and-

                                  R. Paul Wickes
                                  Mary K. Warren
                                  Michael J. Osnato, Jr.
                                  J. Justin Williamson
                                  LINKLATERS
                                  1345 Avenue of the Americas
                                  New York, New York  10105
                                  Telephone:  (212) 903-9000
                                  Facsimile:  (212) 903-9100

                                  *Attorneys for Defendants*

18

## CERTIFICATE OF SERVICE

I, Lee E. Kaufman, do hereby certify that on May 5, 2008, I caused a copy of the

foregoing **Defendants' Memorandum of Law in Opposition to Plaintiff's Motion in Limine**

to be served upon each party on the attached service list in the manner indicated thereon.

Lee E. Kaufman (No. 4877)

## SERVICE LIST

**Via Hand Delivery**
Marla R. Eskin, Esq.
Kathleen Campbell Davis, Esq.
Campbell & Levine
800 North King Street
Suite 300
Wilmington, DE 19801

**Via First Class Mail**
Tony Castanares, Esq.
Stephen M. Ray, Esq.
Carol Chow, Esq.
Whitman L. Holt, Esq.
Stutman, Treister & Glatt, PC
1901 Avenue of the Stars
12th Floor
Los Angeles, CA 90067