## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Oakwood Homes Corporation, et al., | Case No. 02-13396 (PJW) |
| Debtors. | |
| OHC Liquidation Trust, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 04-57060 (PJW) |
| Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100, | Civil Action No. 07-799 (JJF) |
| Defendants. | |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT TESTIMONY OF ALAN C. SHAPIRO PURSUANT TO FEDERAL RULE OF EVIDENCE 702

Of Counsel:

R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson
LINKLATERS LLP
1345 Avenue of the Americas
New York, New York 10105
Telephone: (212) 903-9000
Facsimile: (212) 903-9100

Dated: May 7, 2008

Mark D. Collins (No. 2981)
collins@rlf.com
Russell C. Silberglied (No. 3462)
silberglied@rlf.com
Anne S. Gaza (No. 4093)
gaza@rlf.com
Lee E. Kaufman (No. 4877)
kaufman@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Attorneys for Defendants*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.  PROFESSOR SHAPIRO HAS FAILED TO GROUND HIS SUBJECTIVE
    OPINION IN A RELIABLE METHODOLOGY.................................................. 3

    A.  The Proper Standard For Evaluating Professor Shapiro's
        Testimony .............................................................................................. 3

    B.  Professor Shapiro Does Not Articulate Or Apply A Reliable
        Standard Of Care..................................................................................... 4

    C.  Plaintiff's Remaining Defenses of Professor Shapiro's Proposed
        Testimony Are Groundless ....................................................................... 8

II. PROFESSOR SHAPIRO IS NOT QUALIFIED TO SERVE AS AN
    EXPERT IN THIS CASE ................................................................................. 10

    A.  Professor Shapiro Lacks Appropriate Specialized Expertise................... 11

III. PROFESSOR SHAPIRO'S OPINION MUST BE EXCLUDED
     BECAUSE IT IS PREMISED ON AN INCORRECT LEGAL THEORY ....................... 13

CONCLUSION ........................................................................................................ 16

## TABLE OF AUTHORITIES

### CASES

*Ambrosini v. Labarraque,*
101 F.3d 129 (D.C. Cir. 1996) ..................................................................................4

*Carroll v. Otis Elevator Co.,*
896 F.2d 210 (7th Cir. 1990) ................................................................................12

*D&D Assocs, Inc. v. Bd. of Educ. of N. Plainfield,*
Civ. A. 03-1026, 2006 U.S. Dist. LEXIS 16721 (D.N.J. Mar. 20, 2006) .................11, 12

*Elcock v. Kmart Corp.,*
233 F.3d 734 (3d Cir. 2000)..................................................................................12

*Kidder Peabody & Co. v. IAG Int'l Acceptance Group N.V.,*
14 F. Supp. 2d 391 (S.D.N.Y. 1998)........................................................................5

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999) ......................................................................................3, 10

*LNC Invs., Inc. v. First Fid. Bank,*
No. 92 Civ. 7584 (CSH), 2000 WL 1024717 (S.D.N.Y. July 25, 2000) .................9, 10

*Lentino v. Fringe Employee Plans, Inc.,*
611 F.2d 474 (3d Cir. 1979).................................................................................5

*Murray v. Marina Dist. Dev. Co.,*
No 06-583, 2006 WL 3791336 (E.D. Pa. Dec. 22, 2006).............................................7

*Oddi v. Ford Motor Co.,*
234 F.3d 136 (3d Cir. 2000), *cert. denied*, 532 U.S. 921 (2001).....................................3

*Pineda v. Ford Motor Co.,*
520 F.3d 237 (3d Cir. 2008)................................................................................12

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.,*
446 F. Supp. 2d 163 (S.D.N.Y. 2006).......................................................................4

*Schmidt v. Currie,*
No. 06-1091, 2007 U.S. App. LEXIS 3534 (3d Cir. Jan. 22, 2007).................................5

*United States v. Frazier,*
387 F.3d 1244 (11th Cir. 2004) ............................................................................13

*Walbridge Aldinger Co. v. Aon Risk Servs., Inc. of Penn.*,
No. 06-CV-11161-DT, 2007 WL 1219036 (E.D. Mich. Apr. 25, 2007)..........................................3

## **RULES**

Fed. R. Evid. 702 ...............................................................................................................................4, 10

## INTRODUCTION

Plaintiff's defense of Professor Shapiro's suitability to testify as an expert boils down to this:

1. His reliance on the Harvard Business School "case study method" is an acceptable substitute for the application of reliable "principles and methods" required by Rule 702 and therefore his opinion is not, as Defendants claim, wholly subjective; and

2. His familiarity with a great many general financial topics excuses his lack of direct experience – professionally or academically – with the specific issues to be presented to the jury.

These arguments alone are ample grounds for exclusion. Plaintiff's response makes them even more compelling by asserting that Defendants committed what amounts to professional malpractice by departing from an industry "standard of care" in providing securitization-related services to Oakwood. (Pl. Unified Stmt. at 9-15).

An "expert" in a professional malpractice case must identify and apply the standards of care and custom in the relevant industry and apply them to the defendants' conduct. How else can the fact-finder assess whether the conduct at issue deviated from the appropriate standard of care? As shown below, however, Plaintiff's "standard of care" expert bases his conclusions on subjective opinion rather than an objective standard of care.

Defendants' opening brief showed that Professor Shapiro's report jumped impermissibly from a recitation of "facts" to his subjective "conclusion" that Defendants acted unreasonably. But a cornerstone of Rule 702 is that "facts" and "conclusions" must be *bridged* by the application of reliable "principles and methods" that provide the Court with assurances that the opinion rests on something other than the expert's "*say so.*" This is especially true in light of Plaintiff's assertion that this is akin to a malpractice case involving the breach of an industry standard care, *i e*, it is incumbent on Professor Shapiro to articulate the relevant standard of care,

including by explaining how he determined the standard, and to explain how he believes it was breached. He has not done so. Plaintiff now attempts to dress up Professor Shapiro's subjective opinion by characterizing it as the result of the Harvard Business School "case study method." We have searched in vain for any reported decision holding that a classroom method for teaching aspiring MBAs is a proper evidentiary basis for standard of care testimony. Plaintiff's case is not pending in a classroom, and the testimony of a "standard of care" expert who declines to even articulate the applicable standard or explain how it was violated must be excluded.[1]

Defendants also showed that there is nothing in Professor Shapiro's academic or professional background that qualifies him to opine on: (i) how an investment bank providing securitization-related services should behave when its customer faces financial difficulty (*i.e.*, the objective standard of care) or (ii) whether Defendants' behavior deviated from such an objective industry standard of care. Keeping in mind Plaintiff's insistence that this case is about breach of industry standards and practices in the delivery of securitization-related services, Professor Shapiro's lack of qualifications are all the more apparent. Plaintiff, however, insists that Professor Shapiro is qualified for a variety of irrelevant reasons, including that he has "taught academic programs and professional seminars about the roles and duties of investment banks and bankers, and has worked directly and extensively with investment bankers in his capacity as a director of several public companies." (Pl. Opp. at 24) Time spent in a classroom or boardroom talking about "investment banking" does not, however, qualify Professor Shapiro as an expert to

---

[1]    Several pages of Plaintiff's opposition memorandum are devoted to defending the solvency analysis found in Professor Shapiro's supplemental report dated August 28, 2007. (Pl. Opp. at 33-36). It is unclear why Plaintiff feels compelled to make these arguments given that Defendants' motion does not address solvency (it is not germane to the claims before the Court).

evaluate whether Defendants deviated from an industry standard of care in its dealings with Oakwood.[2]

## ARGUMENT

## I.    PROFESSOR SHAPIRO HAS FAILED TO GROUND HIS SUBJECTIVE OPINION IN A RELIABLE METHODOLOGY

### A.    The Proper Standard For Evaluating Professor Shapiro's Testimony

Beginning with the plain language of Rule 702, Defendants' opening memorandum cited precedent requiring experts to articulate, and then apply, a "reliable" methodology in reaching an opinion, *i.e.*, the expert must "detail any principles, methods or comparative cases that he utilized in forming his opinion." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 n.20 (3d Cir. 2000) (requiring experts to apply under Rule 702 a reliable "methodology," defined as a "body of methods, rules, and postulates employed by a discipline [which constitute] a particular procedure [or] set of procedures."); *Walbridge Aldinger Co. v. Aon Risk Servs., Inc. of Penn.*, No. 06-CV-11161-DT, 2007 WL 1219036, at *3 (E.D. Mich. Apr. 25, 2007). As the Supreme Court has ruled, without the safeguard of a robust and verifiable methodology, an expert's opinion is no more than subjective "say so" that does not further the fact-finding process. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999).

---

[2]    Plaintiff also notes that Professor Shapiro has previously served as an expert in another case involving "securitizations" and has been retained to critique the actions of investment bank defendants in other cases. (Pl. Opp. at 24). Just because Professor Shapiro was retained as an expert in other cases involving different facts and legal issues does not allow him to bypass this Court's gatekeeper role. It is Plaintiff's burden to show that Professor Shapiro is qualified here, and observing that he is familiar with securitization as a financing technique proves nothing in a case that turns on the very different question of how such services were provided over time to a distressed company in a unique market. Indeed, most jurors will understand the basic concept of securitization, *i.e.*, converting something payable at a later date into ready cash. But most jurors will *not* understand how an investment bank should provide such services in a fluid and dynamic situation, particularly in light of the statutory obligation of the board of directors of the company to direct strategy, including the financing techniques provided by the investment bank.

Plaintiff first argues that Defendants are unfairly holding Professor Shapiro to the "formal *Daubert* requirements" of scientific reliability in a non-scientific case where softer standards of admissibility should apply. (Pl. Opp. at 27-28). This is nonsense. Neither the cases cited by Defendants nor the analysis in their memorandum address exclusively "scientific" expert opinions. (Defs. Mem. at 13-18). Rule 702 applies in *all* cases, and the cases cited by Defendants – from the Supreme Court, the Third Circuit and other federal courts – uniformly hold that an expert in *every* type of case must ground his or her opinion in verifiable and reliable principles and methods. Professor Shapiro is therefore *not* being held to an unfair standard but rather to the literal command of Rule 702, *i.e.*, his opinion must be the product of reliable "principles and methods" or else it is simply "subjective belief [and] unsupported speculation." Fed. R. Evid. 702; *Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996) (citation omitted). As shown below, his testimony falls well short of this standard.

**B.      Professor Shapiro Does Not Articulate Or Apply A Reliable Standard Of Care**

Plaintiff asserts that its "Unified Statement Of The Case" tells the Court, in Plaintiff's own "undistorted" words, what the Court needs to know about Plaintiff's "actual case." (Pl. Unified Stmt. at 8). In its statement, Plaintiff repeatedly likens its claim to one of "professional liability," (*id.* at 9, 10, 11, 12), and notes the "great significance" of the "standard of care" applicable to Defendants' conduct, which Plaintiff states must be "measured by what reasonable practitioners of the same profession do." (*Id.* at 11). Plaintiff is correct -- in professional malpractice cases of all varieties, the standard of care *is* measured by the skill and practices of reasonable practitioners of the same profession. *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 446 F. Supp. 2d 163, 198 (S.D.N.Y. 2006) (Under New York law, professional malpractice occurs where there is a "departure from accepted

standards of practice.") (citations omitted); *Kidder Peabody & Co. v. IAG Int'l Acceptance Group N.V.*, 14 F. Supp. 2d 391, 404 (S.D.N.Y. 1998) ("A malpractice plaintiff must prove that the defendant failed to act in conformity with accepted professional standards prevailing at the place and time the services were rendered."). Plaintiff frames its theory, and Professor Shapiro's role in it, as follows: "As in other professional liability cases, any duty owed by Defendants would have required them to act reasonably under the circumstances. And, as is usual in such cases, Plaintiff has an expert to testify about the subject, Dr. Alan Shapiro." (Pl. Unified Stmt. at 11). Of course, the question that must be answered is, "what was reasonable under these circumstances?" This question must be answered through application of a proper methodology. Indeed, expert testimony in professional malpractice cases is intended to assist "the jury in its determination of a defendant's conformity to the relevant standard of care." *See Schmidt v. Currie*, No. 06-1091, 2007 U.S. App. LEXIS 3534, at *11 (3d Cir. Jan. 22, 2007); *see also Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 480 (3d Cir. 1979) (In professional malpractice cases, "[e]xpert testimony is required to establish the relevant standard and whether the defendant[s] complied with that standard…") Thus, here is what Professor Shapiro must do in order provide reliable expert testimony under Rule 702:

1. Define what it means to act "reasonably" in the context of the services provided by Defendants, including by (in Plaintiff's own words) explaining how other "practitioners" in Defendants' role have behaved, and

2. Apply that standard and opine on whether Defendants' conduct met or deviated from it.

As we demonstrated in our opening brief, Professor Shapiro had ample means by which to define the relevant standard of care, including through review of comparative industry

practice, discussion of industry standards or customs,[3] review of relevant academic, industry or

scholarly sources, or application of first-hand experience in providing the services at issue in this

lawsuit. But he did none of these things. The very best that can be said is that Professor Shapiro

believes that the standard of care is one of "reasonableness" or "prudence," which "standard"

arises by inference from the boilerplate conclusion that some Defendant acted "unreasonably"

---

[3]     As set out in Defendants' opening brief, Professor Shapiro acknowledged he never
reviewed the relevant industry to determine the standard of care applicable to a financial
institution Defendants' position:

Q:      Did you make any attempt in your research, in your preparation of this
        report to see, to research, to determine what other investment banking
        companies faced with similar situations did or didn't do?

A:      No I have not.

Q:      There were a number of other companies in the manufactured housing
        industry that   during this period of time were experiencing many of the
        same difficulties that Oakwood was; is that correct?

A:      That's correct.

Q:      Do you know whether those companies had financial advisers?

A:      I don't know anything specifically. I assume they probably did but I
        don't know.

Q:      Those other companies in the manufactured housing industry all would
        have been running securitization programs, weren't they?

A:      I believe they would have . . . Again, I don't know that for a fact, but it
        would make economic sense.

Q:      Did you make any determination – any effort to determine whether the
        securitization advisers for any of those other companies shut off the
        securitization in the way you're suggesting Credit Suisse should have
        done here?

A:      No. And that wouldn't necessarily be determinative or affect my
        opinion in any case because the facts and circumstances of each
        company I presume would be unique

(Machan Decl. Ex. B at 140:11-141:18).

and "imprudently." In a professional malpractice case, however, those terms are buzzwords when used without context or explanation, particularly to a jury unfamiliar with the industry practices and transactions at issue.

The gaping holes in Professor Shapiro's analysis, discussed at length in our opening memorandum, remain unpatched. Where does Professor Shapiro set forth the standard of care, including how he arrived at that standard? And where is the explanation of how any Defendants' conduct deviated from that standard? These failures are dispositive, as a putative expert in a professional malpractice case who fails to "cite to any established industry standard for his opinions" has, by definition, not provided the "reliable methodology" required by Rule 702. *Murray v. Marina Dist. Dev. Co.*, No 06-583, 2006 WL 3791336, at *4 (E.D. Pa. Dec. 22, 2006); *see also* cases cited at p. 17-19 of Defs. Mem.

Plaintiff, however, dismisses these arguments and leaves it to Professor Shapiro to explain why Defendants' arguments about his failure to apply a reliable methodology are much ado about nothing:

> I applied reliable methods and principles in reaching my conclusions in this matter. Specifically, the approach I followed is consistent with the case study method. This method, which originated at the Harvard Business School and is a standard teaching approach used in business schools around the world today, involves bringing one's knowledge, experience, and basic economic principles to bear in a systematic way on the situation presented and judging an appropriate course of action in light of the facts and circumstances revealed by the preceding analysis.

(Shapiro Decl. ¶ 10). In other words, Professor Shapiro reviewed data handpicked for him by Plaintiff and reached the entirely subjective opinion that Defendants acted unreasonably. This approach does not suffice under the Federal Rules of Evidence. Plaintiff seeks fifty million dollars based on its allegation that Defendants failed to meet the standard of care applicable to providers of securitization-related services. At a minimum, Plaintiff's "standard of care" expert

should identify and describe the standard of care in the relevant industry, and explain how the alleged breach occurred. As it stands, Professor Shapiro has failed to so.[4]

### C.    Plaintiff's Remaining Defenses of Professor Shapiro's Proposed Testimony Are Groundless

Plaintiff makes two additional arguments in defense of Professor Shapiro's methodology. The first is that Defendants' rebuttal expert witness, Thomas Boland, blessed Professor Shapiro's methodology when asked about it in his recent deposition. (Pl. Opp. at 28) ("I have no issue with his methodology."). There are multiple problems with this line of defense, not the least of which is that Mr. Boland is not the "gatekeeper" of expert testimony in this case – that role is reserved for the Court. Mr. Boland is also a "rebuttal" witness whose report is confined to addressing the shortcomings in Professor Shapiro's opinion. Professor Shapiro, by contrast, is Plaintiff's "standard of care" expert, and is therefore required to ground his opinion on the standard of care applicable in this case in a reliable methodology. Likewise, Plaintiff's argument that Professor Shapiro and Mr. Boland used the same method – reviewing documents and providing analysis – overlooks a critical distinction between Professor Shapiro and Mr. Boland. One is a career academic with some consulting experience. The other (Mr. Boland) is a retired senior executive, 31-year veteran of Citigroup, and former Managing Director of Seneca Financial Group, where his work focused on financial advisory engagements on behalf of distressed companies.

Plaintiff's final argument arises from a highly selective reading of the case law, including a conspicuous failure to address the many cases cited by Defendants showing that a

---

[4]    Indeed, as described in Defendants' opening brief, Professor Shapiro's opinion is rife with subjective conclusions that lack any connection to an actual standard of care – *e g*, Defendants should have advised Oakwood to make "operational changes," should have "advis[ed] Oakwood [to] scale back its operations" – and which instead are products only of his subjective judgment. (Machan Decl. Ex. A at 34-39).

reliable methodology is a prerequisite to the admission of expert testimony. Plaintiff instead cites a handful of cases which purportedly show that Professor Shapiro's "methodology" suffices under Rule 702. According to Plaintiff, a "particularly striking example of the appropriateness of Dr. Shapiro's analysis is" *LNC Investments Inc., v. First Fidelity Bank*, No. 92 Civ. 7584 (CSH), 2000 WL 1024717 (S.D.N.Y. July 25, 2000). (Pl. Opp. at 30).

Plaintiff makes the simplistic argument that because the *LNC* Court permitted experts to testify in a "banking malpractice" case involving "complex and specialized" areas of "high corporate finance," the complexity of this "malpractice" claim likewise justifies testimony from Professor Shapiro. (Pl. Opp. at 30-31). The parallel is, however, entirely unsupportable, because the expert testimony in dispute in *LNC* was not standard of care evidence at all – it was causation evidence. The defendants in *LNC* sought "to preclud[e] plaintiffs from adducing expert opinion evidence on the issue of causation," *i.e.*, that if the defendants had sought to lift the automatic stay, the relief would have been granted and harm averted. *LNC Invs.*, 2000 WL 1024717, at *3-4. Plaintiff in this case has offered Dr. Shapiro not as a causation expert, but as a standard of care expert to opine on the substance of Defendants' duty to Plaintiff and whether Defendants met the standard of care under the circumstances.[5]

Plaintiff glosses over that portion of *LNC* which in fact demonstrates precisely why Professor Shapiro's testimony *fails* under Rule 702. Because it was a "malpractice case," the *LNC* Court expressly ruled that – as in "all cases of malpractice" – any assessment of liability required the plaintiff to demonstrate that "<u>the defendant's conduct failed to measure up to the applicable professional standard of care owed to the plaintiff</u> . . . ." *LNC Invs.*, 2000 WL 1024717, at *2 (citations omitted) (emphasis added). Defendants' argument, in full agreement

---

[5]    As Defendants showed in their Memorandum in Support of Partial Summary Judgment, there is also a fatal gap in causation evidence here, but that is not the purpose for which Professor Shapiro has been offered.

with the holding of *LNC*, is that standard of care evidence *is* required in this case. Professor Shapiro, however, has not supplied it, because he never (i) defines the "applicable professional standard of care" or (ii) shows how any Defendant's conduct failed to "measure up" to that objective standard. Instead, using a "standard of care" still known only to him, Professor Shapiro reaches the conclusion that Defendants acted "unreasonably." More is required in a malpractice case.

Professor Shapiro's opinion boils down to precisely the type of "because I said so" testimony prohibited by the Supreme Court. *Kumho Tire Co.*, 526 U.S. at 157 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (internal quotation marks omitted).

## II.   PROFESSOR SHAPIRO IS NOT QUALIFIED TO SERVE AS AN EXPERT IN THIS CASE

Defendants also demonstrated that Plaintiff has failed entirely to establish that Professor Shapiro has the "specialized expertise" required under Fed. R. Evid. 702 to serve as an expert in this case. Despite Plaintiff's fulsome description of Professor Shapiro's academic background, consulting experience, and seats on boards of directors, the fact remains that Professor Shapiro has neither the professional experience nor the academic background necessary to qualify him as an expert with respect to the issues in this case. That Plaintiff sees this as a "professional liability case" in which Professor Shapiro will evaluate whether Defendants met the standard of care in a highly specialized industry only underscores his lack of qualification, *i.e.*, Professor Shapiro must be qualified to opine on how a reasonably prudent investment bank should have acted in providing securitization-related services to a financially distressed company under similar circumstances. But he has no basis for doing so.

### A.    Professor Shapiro Lacks Appropriate Specialized Expertise

As described in Defendants' opening brief, an "expert must have specialized knowledge and be qualified to speak with authority on [the] particular matter" that is the subject of the expert's opinion. *D&D Assocs, Inc. v. Bd. of Educ. of N. Plainfield*, Civ. A. 03-1026, 2006 U.S. Dist. LEXIS 16721, at *8 (D.N.J. Mar. 20, 2006).  Rather than meet its burden of showing that Professor Shapiro has the "specialized knowledge" to serve as an expert in this case (Defs. Mem. at 7-9), Plaintiff retreats to generalities like Dr. Shapiro's "undisputedly acclaimed knowledge about corporate finance and banking," and his minimal experience interacting with investment banks.  (Pl. Opp. at 24).  Not once does Plaintiff pause to explain how this experience specifically qualifies Professor Shapiro to opine on what Plaintiff has now acknowledged is *the* core issue in this case –  how a reasonably prudent investment bank providing securitization related services to a company like Oakwood should have acted under these circumstances. Plaintiff has simply not addressed Defendants' fundamental argument that there is a complete disconnect between the subject matter on which Dr. Shapiro is being called upon to offer his expert opinion and his qualifications.

The fact remains that Dr. Shapiro has no experience working *as* an investment banker or *for* an investment bank.  Plaintiff has thus submitted a Declaration from Professor Shapiro that presumably seeks to show the Court that there is a substantial degree of overlap between his background and the specific subject matter of his testimony.    Professor Shapiro declares, among other things, that his "specialized knowledge concerning agency conflicts, financial valuation, value-based management, and risk management" is "relevant to the question of whether CSFB acted reasonably in its dealings with Oakwood" because it is tangentially related to the broad subject matter of this case.  (Shapiro Decl. ¶ 9).  He utterly fails, however, to

explain how any of this "specialized knowledge" qualifies him to opine on the core issue of this case – what the standard of care in this industry was and whether Defendants' conduct fell below that standard. (*Id*).[6]

Getting somewhat closer to the real issue raised by this motion, Professor Shapiro also implies in his Declaration that he is an expert in securitizations because he once served as an expert in another case involving the general financing technique of securitization. (Shapiro Decl. ¶ 4). No further detail is provided, including an answer to the obvious question of whether Professor Shapiro opined on a standard of care applicable to the provider of the securitization services in that case. (*Id*). General knowledge in one area (securitizations) is, however, plainly no substitute for specialized knowledge of how a reasonable investment bank must perform when providing securitization-related services to a distressed company. The same is true of Professor Shapiro's attempt to establish his qualifications by noting that he "wrote a chapter on investment banking" in a corporate finance textbook, covered "the roles and responsibilities of investment banks" in various academic courses he has taught, has interacted with investment

---

[6]     Professor Shapiro's lack of qualifications is clear under those cases holding that an expert must be qualified by virtue of "specialized expertise" that closely matches the subject matter of the proposed expert testimony. *See Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000); *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990); *D&D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, Civ. A. 03-1-26, 2006 U.S. Dist. LEXIS 16721, at *8 (D.N.J. Mar. 20, 2006). Rather than address these cases, Plaintiff would rather stand behind the purportedly liberal standard for qualifying experts set forth in *Pineda v. Ford Motor Co.*, 520 F.3d 237 (3d Cir. 2008). While the court in *Pedina* did note that Rule 702's qualification requirement has been interpreted liberally, the Court still compared the challenged expert's background and expertise to the subject matter on which he had purported to offer an expert opinion. Only after concluding that his specific engineering expertise qualified him to offer an opinion on the engineering defects at issue in the case did the Court rule that his testimony was permissible. *See id.* Plaintiff here, however, has never demonstrated a clear connection between Professor Shapiro's background and the specific subject matter of his opinions. Nor is the theory of this case – which hinges on the existence and breach of an industry-wide standard of care – like the facts of *Pineda*, which turned on a single discrete engineering analysis by the plaintiff's expert.

bankers, and has even taught professional courses attended by investment bankers. (*Id.* ¶¶ 5,6) This hodgepodge of activity relating broadly to "investment banking" is no replacement for either the professional experience or specialized expertise in the subject matter relevant to this case. Professor Shapiro is not qualified and his testimony should be excluded.[7]

### III.    PROFESSOR SHAPIRO'S OPINION MUST BE EXCLUDED BECAUSE IT IS PREMISED ON AN INCORRECT LEGAL THEORY

In its opening brief, Defendants showed that Professor Shapiro's opinion and conclusions are interwoven with his assumption – articulated in both his report and deposition – that Defendants owed a fiduciary duty to Oakwood's creditors, particularly the company's bondholders. (Defs. Mem. at 18-19). The existence of such a duty is wholly unsupportable under the law, which holds that directors – and not outside advisors – are the only actors charged with fiduciary duties running to creditors when the company becomes insolvent. Because Professor Shapiro's opinion that Defendants acted unreasonably cannot be unwound from his legally flawed assumption that Defendants owed duties to creditors, exclusion of his testimony is necessary. (*Id.*).

---

[7]    In addition to providing no meaningful evidence of his qualifications as an expert, Professor Shapiro's Declaration provides another reason to exclude his testimony under Rule 403 because of the strong likelihood that his accomplishments in unrelated fields will confuse the jury and prejudice Defendants. The Declaration recites Professor Shapiro's prior appearances as an expert, his work as a director of public companies, and his knowledge concerning agency conflicts, financial valuation, value-based management, and risk management – none of which provide him with the "specialized expertise" to opine on how Defendants should have behaved in their dealings with Oakwood but all of which may, in the aggregate, lead the jury to believe Professor Shapiro's testimony should still be credited. As established in Defendants' opening brief, there is a risk that the jury will attach "talismanic" significance to these unrelated qualifications and background and credit his testimony in an undue and prejudicial manner as a result. *See United States v. Frazier*, 387 F.3d 1244, 1263. (11th Cir. 2004)

Plaintiff does not meaningfully challenge the proposition that a board of directors and corporate officers are the only actor that owes duties to creditors.[8] Plaintiff argues that Defendants have misstated Professor Shapiro's opinion and notes, with deliberately cautious language, that he did not assume the existence of a "direct and exclusive" duty running to creditors. Rather, according to Plaintiff, Professor Shapiro was entitled to assume that by virtue of Defendants' fiduciary relationship with Oakwood, Defendants' duties broadened to include "at least some consideration of the interests of Oakwood's creditors" once the company was insolvent. (Pl. Opp. at 36).

Plaintiff's suggestion that Professor Shapiro went no further than saying that Defendants should have "at least consider[ed] the interests of residual stakeholders," including possibly Oakwood's creditors, is completely belied by the record. (Pl. Opp. at 39). Repeatedly in his report – which of course his trial testimony will replicate in substance – Professor Shapiro states that his conclusion that Defendants acted unreasonably is *expressly* predicated on the assumption that Defendants owed fiduciary duties to Oakwood's creditors:

> Given Oakwood's financial condition *and in line with its fiduciary responsibility to Oakwood and its creditors* and its own guidelines and principles of conduct, CSFB should have advised Oakwood to reduce its operations or file for bankruptcy prior to its engagement as a financial advisor for restructuring purposes in August 2002.

(Machan Decl. Ex. A at 3). Professor Shapiro even clarified, during his deposition, that he understood this assumption to mean the exact same thing as, "CSFB owed *Oakwood's creditors* a fiduciary responsibility." (See Machan Decl. Ex. B at 30:3-15) (emphasis added). Moreover,

---

[8]  Plaintiff is simply advancing a backdoor approach for imposing a creditor-based duty on Defendants, *i e ,* because the treatment of its creditors was important to Oakwood, which was in a fiduciary relationship with Defendants, Defendants should have, but did not, elevate the interests of Oakwood's creditors. (Pl. Opp. at 37). This attenuated theory, however, has no support under the law.

Plaintiff and Professor Shapiro attached enough importance to the assumption that Defendants had a fiduciary duty running to Oakwood's creditors to single it out in his report:

**"Assumptions**

**V.A   CSFB Owed Oakwood and its Creditors a Fiduciary Duty**

**I have been asked by counsel to assume that CSFB owed Oakwood and its creditors a fiduciary responsibility."**  (*Id.* at 4) (emphasis added).

Professor Shapiro goes even further in tying his opinion that Defendants "did not behave in a prudent manner" to his assumption that it had a duty to Oakwood's creditors in his "Summary of Opinions," where he states:  "I demonstrate that CSFB's advice and conduct with respect to Oakwood was inappropriate given the Company's financial condition and violated its fiduciary duty to Oakwood and its creditors . . . ."  (*Id.* at 3).[9]

In short, Professor Shapiro's core opinion that Defendants acted unreasonably cannot be separated from his assumption that they had a direct duty running to creditors, *i.e.*, he opines that Defendants acted unreasonably because Oakwood harmed its creditors.   Because his opinion is based on a profoundly incorrect reading of the law, Professor Shapiro should not be permitted to testify at trial.[10]

---

[9]    As Defendants also showed in its opening brief, Professor Shapiro's testimony repeatedly and improperly usurps from the trier of fact the question of whether and to what extent Defendants owed a duty to Oakwood.  (Defs. Mem. at 19-20).  This further argues in favor of exclusion.

[10]    Consistent with its recent repeated characterization of this as a "professional liability" case, Plaintiff also suggests that the whole controversy over whether  Professor Shapiro's opinion is excludable because it relies on the existence of a duty not recognized in the law is irrelevant because his opinion does not depend on the existence of any duty at all.  While this argument may reflect the case Plaintiff now would like to bring to trial, it is does not reflect the opinion its expert has rendered.

## CONCLUSION

For all the reasons stated above, Defendants respectfully request that this Court exclude from evidence the testimony of Plaintiff's expert Alan Shapiro.

Dated:      May 7, 2008
            Wilmington, Delaware

Mark D. Collins (No. 2981)
collins@rlf.com
Russell C. Silberglied (No. 3462)
silberglied@rlf.com
Anne S. Gaza (No. 4093)
gaza@rlf.com
Lee E. Kaufman (No. 4877)
kaufman@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson
LINKLATERS
1345 Avenue of the Americas
New York, New York  10105
(212) 903-9000

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Lee E. Kaufman, do hereby certify that on May 7, 2008, I caused a copy of the foregoing **Defendants' Reply Memorandum of Law in Support of Motion to Exclude the Expert Testimony of Alan C. Shapiro Pursuant to Federal Rule of Evidence 702** to be served upon each party on the attached service list in the manner indicated thereon.

_____
Lee E. Kaufman (No. 4877)

<u>**SERVICE LIST**</u>

**<u>Via Hand Delivery</u>**
Marla R. Eskin, Esq.
Kathleen Campbell Davis, Esq.
Campbell & Levine
800 North King Street
Suite 300
Wilmington, DE 19801

**<u>Via First Class Mail</u>**
Tony Castanares, Esq.
Stephen M. Ray, Esq.
Carol Chow, Esq.
Whitman L. Holt, Esq.
Stutman, Treister & Glatt, PC
1901 Avenue of the Stars
12th Floor
Los Angeles, CA 90067