IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Oakwood Homes Corporation, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 02-13396 (PJW) |
| OHC Liquidation Trust,<br><br>Plaintiff,<br>v.<br><br>Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100,<br><br>Defendants. | Adv. Proc. No. 04-57060 (PJW)<br><br>Civil Action No. 07-799 (JJF) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO EXCLUDE THE EXPERT TESTIMONY
OF MICHAEL TENNENBAUM PURSUANT TO FED. R. EVID. 702**

Of Counsel:

R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson
LINKLATERS LLP
1345 Avenue of the Americas
New York, New York  10105
(212) 903-9000

Dated:  May 7, 2008

Mark D. Collins (No. 2981)
collins@rlf.com
Russell C. Silberglied (No. 3462)
silberglied@rlf.com
Anne S. Gaza (No. 4093)
gaza@rlf.com
Lee E. Kaufman (No. 4877)
kaufman@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

*Attorneys for Defendants*

RLF1-3281157-1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

I.   DR. TENNENBAUM'S EXPERT TESTIMONY IS UNRELIABLE ..................... 3

II.  DR. TENNENBAUM'S TESTIMONY DOES NOT FIT PLAINTIFF'S CASE .... 5

II.  DEFENDANT'S AWAIT DR. TENNENBAUM'S FURTHER DISCLOSURES .. 8

CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

## CASES

*Am. Classic Voyages, Co. v. JP Morgan Chase Bank (In re Am. Classic Voyages Co.)*,
-- B.R. --, Civ. No. 07-352-JJF, 2008 WL 792773 (D. Del. Mar 25, 2008) .................................................. 1

*B.G. Soft Ltd. v. BG Soft Int'l., Inc.*,
No. CV-01-17, 2002 WL 1467744 (E.D.N.Y. Apr. 29, 2002) .................................................................... 8

*Brown v. SEPTA (In re Paoli R.R. Yard PCB Litig.)*,
35 F.3d 717 (3d Cir. 1994) ............................................................................................................... 6, 7

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ............................................................................................................................ 6

*Daubert v. Merrell Dow Pharm., Inc.*,
43 F.3d 1311 (9th Cir. 1995) ............................................................................................................... 6

*Inline Connection Corp. v. AOL Time Warner Inc.*,
472 F. Supp. 2d 604 (D. Del. 2007) .................................................................................................... 4

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ............................................................................................................................ 4

*ProtoComm Corp. v. Novell Advanced Servs., Inc.*,
171 F. Supp. 2d 473 (E.D. Pa. 2001) .................................................................................................. 4

*Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.)*,
350 B.R. 520 (Bankr. N.D. Okla. 2005) ........................................................................................ 4, 5

*Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.)*,
350 B.R. 559 (Bankr. N.D. Okla. 2005) ............................................................................................. 5

*Surace v. Caterpillar, Inc.*,
No. CIV. A. 94-1422, 1995 WL 303895 (E.D. Pa. May 16, 1995), *aff'd in part*,
111 F.3d 1039 (3d Cir. 1997) .............................................................................................................. 7

*Tracinda Corp. v. DaimlerChrysler AG*,
362 F. Supp. 2d 487 (D. Del. 2005) .................................................................................................... 4

*United States v. Ford*,
481 F.3d 215 (3d. Cir.), *cert. denied*, 128 S. Ct. 213 (2007) .............................................................. 6

*United States v. L.E. Cooke Co.*,
991 F.2d 336 (6th Cir. 1993) .............................................................................................................. 3

**Page**

*VFB LLC v. Campbell Soup Co.*,
482 F.3d 624 (3d Cir. 2007) ............................................................................................. 1

*Vollmert v. Wis. Dep't of Transp.*,
197 F.3d 293 (7th Cir. 1999) ............................................................................................ 3

## **RULES**

Fed. R. Evid. 401 ............................................................................................................. 7

Fed. R. Evid. 702 ............................................................................................................. 3

## INTRODUCTION

In responding to Defendants' Motion to exclude Dr. Tennenbaum's testimony, Plaintiff spends a considerable effort responding to issues Defendants did not raise. As to Dr. Tennenbaum's qualifications (Ans. Br. at 7-8), Defendants have not suggested he is not qualified to conduct a valuation analysis. Defendants further recognize that Plaintiff's alphabet soup of DCF, CAPM, WACC, Fama-French Three Factor Model, and Black-Scholes, can be appropriately used in conducting valuations, although we have noted the Third Circuit's clearly expressed preference for market-based data.[1] *See VFB LLC v. Campbell Soup Co.*, 482 F.3d 624 (3d Cir. 2007).

Defendants' Motion argued that although Dr. Tennenbaum may have used recognized methodologies, the *inputs* he has chosen are ones that guarantee inaccurate results. Obviously the utility of a DCF valuation can be no better than the cash flow projections on which it is based. First, with respect to his September 2001 valuation, he picks projections for which he cannot identify the source and which he believes are "aggressive", "hockey stick" projections. (Motion at 18-22.) Like all companies, Oakwood had various financial projections at various points in time, but if Dr. Tennenbaum is offering his expert opinion of the value of Oakwood on a given date, he necessarily must pick projections he believes in (or make necessary adjustments), otherwise his analysis is nothing more than the proverbial "garbage in, garbage out."

---

[1] Citing *American Classic Voyages, Co. v. JP Morgan Chase Bank (In re American Classic Voyages Co.)*, -- B.R. --, Civ. No. 07-352-JJF, 2008 WL 792773 (D. Del. Mar. 25, 2008), Plaintiff argues that this Court has determined that *Campbell Soup* does not *require* market data analysis. (Ans. Br. at 15.) Defendants note that this Court's decision was based on that fact that *neither party* had submitted or raised market analysis until appeal. Moreover, this Court correctly noted that *Campbell Soup* addresses the failure of an expert to reconcile the difference between the market-based data and the expert's opinion.

Second, with respect to Dr. Tennenbaum's September 2002 valuation, not only are the projections not from 2002 (Dr. Tennenbaum concedes they were prepared in 2003 during the course of Oakwood's bankruptcy (Deposition of Michael Tennenbaum, Ph.D, dated October 22, 2007, at 34-39 (hereinafter cited "Tenn. Dep. at __") (attached as Ex. A to Declaration of J. Justin Williamson, dated May 7, 2008) (hereinafter cited "Williamson Decl. Ex. __") (contemporaneously filed herewith))), but they are projections for a substantially reshaped Oakwood, which include the assumption that Oakwood eliminated its financing business. There is virtually no information concerning the other underlying assumptions concerning these projections, but what information there is – that the projections came from 2003 and relate to a very different Oakwood – suggests they cannot form the basis of an opinion as to Oakwood's value as of September 2002. His comparison of the two values actually compares two different companies: (i) Oakwood in 2001 assuming a substantial industry recovery with "aggressive" revenue projections and Oakwood maintaining its finance business; and (ii) a 2003 stripped-down Oakwood without its finance business. Dr. Tennenbaum's damages analysis therefore suffers from the fundamental flaw of comparing apples to oranges.

Plaintiff's Answering Brief essentially presents two arguments in opposition to Defendants' Motion: (i) that Dr. Tennenbaum's testimony is appropriate for this case and that Defendants' reliability arguments are actually credibility and weight arguments; and (ii) that Dr. Tennenbaum's testimony need only meet the "relevancy" standard of Rule 401 to be admissible.[2] Plaintiff is wrong as a matter of law on both accounts.

---

[2] Plaintiff also makes much of the fact that Defendants' rebuttal expert, Allen Pfeiffer, does not reach affirmative opinions concerning valuation and damages. (Ans. Br. at 12.) That is of course beside the point. This is Plaintiff's case and if Plaintiff cannot prove the

2

I.  **DR. TENNENBAUM'S EXPERT TESTIMONY IS UNRELIABLE**

As an initial matter, Plaintiff's reliance on *Vollmert v. Wisconsin Department of Transportation*, 197 F.3d 293 (7th Cir. 1999), is misplaced. To support the supposed "reliability" of Dr. Tennenbaum's testimony, Plaintiff argues that the "proper scope" must be "clarified" by the *Vollmert* analysis (Ans. Br. at 12), in which the court analogized to a radiologist reviewing an X-Ray to provide expert testimony. The court reasoned that the radiologist need not explain "why the X-Ray allows her to arrive at [a] conclusion. The X-Ray itself provides the basis for her conclusion." *Id* at 301. *Vollmert* is entirely inapposite. The court was determining whether an expert opinion could be sufficient to create a triable issue of fact to defeat summary judgment, not whether to admit the testimony before a jury under Fed. R. Evid. 702. In fact, that analysis has nothing to do with determining admissibility of expert testimony under Fed. R. Evid. 702 for purposes of a jury trial.[3]

Plaintiff's Answering Brief further argues that Defendants' complaints concerning Dr. Tennenbaum's use of unreliable projections, failure to account for market data, and failure to account for the actual events of Oakwood's bankruptcy and the sale price of Oakwood's assets really address weight and credibility – not the admissibility of the testimony. (Ans. Br. at 11-17.) While that may be the case where parties dispute minute adjustments and assumptions in an expert's analysis,[4] the problems with Dr. Tennenbaum's

---

elements of its case, including causation and damages, there is no liability. Defendants bear no burden to disprove damages here.

[3] In addition, part of Defendants' argument concerning Dr. Tennenbaum is that he did not believe in his own underlying valuation inputs. To follow Plaintiff's chosen analogy here, the radiologist's reading of an X-Ray should not be admissible when the radiologist questions whether the X-Ray was of the correct body part. That is simply not an issue of weight, but rather admissibility based on the reliability standard.

[4] Plaintiff's case law citations are either just such circumstances or are entirely inapposite. *See United States v. L.E. Cooke Co.*, 991 F.2d 336 (6th Cir. 1993) (analysis

3

analysis – as explained in detail in Defendants' Motion – are so grave they implicate the reliability of the analysis.[5] Credibility issues may arise from assumptions. But reliability issues arise when Plaintiff's expert opines that Oakwood was damaged by at least $50 million (i) based on projections that the expert himself does not believe (no matter how Dr. Tennenbaum now attempts to backpedal from his use of the words "aggressive" and "hockey stick"); (ii) comparing two very different companies; (iii) while ignoring the fact that Oakwood was sold one year after the expert's valuation period for $75 million more than Dr. Tennenbaum's valuation of $300 million; and (iv) without any attempt by the expert to analyze what the result would have been for Oakwood had it gone into bankruptcy in September 2001 as Plaintiff claims it should have.[6] Dr. Tennenbaum's analysis has no

---

conducted pre-*Daubert* and pre-*Kumho Tire*); *ProtoComm Corp. v. Novell Advanced Servs., Inc.*, 171 F. Supp. 2d 473, 480 (E.D. Pa. 2001) (finding that an expert could testify, despite his failure to articulate an accounting or other financial standard, where the court concluded that "accounting standards may not explain the full nature of the transaction at issue" and that the expert could therefore base "his opinions on personal knowledge and experience"); *Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 604, 613 (D. Del. 2007) (finding, after already determining that the expert had "used sufficient data and mathematical models," that some of the experts testimony would be admissible, but not testimony on subjects outside the scope of his deposition); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 494 (D. Del. 2005) (concluding that an experts analysis was admissible when the complaining party had performed a similar valuation analysis for merger discussions prior to the litigation).

[5] In an attempt to save Dr. Tennenbaum's problematic analysis and conclusions, Plaintiff resorts to attacking the credibility of Mr. Pfeiffer, mischaracterizing documents and testimony to suggest that Mr. Pfeiffer reached independent conclusions in 2007 that support Dr. Tennenbaum's analysis. (Ans. Br. at 13, n.13.) None of Plaintiff's characterizations of Mr. Pfeiffer's work are accurate, as Mr. Pfeiffer testified that he reached no conclusion, and that his documents illustrated that if corrections were made to *Dr. Tennenbaum's analysis*, the conclusions would be wildly different and outside the realm of reality. (Deposition of Allen M. Pfeiffer, dated March 27, 2008, at 189:24-193:25 (Williamson Decl. Ex. B).) Plaintiff also fails to acknowledge that much of Mr. Pfeiffer's prior work was conducted when this was a $600 million preference action; it is of course a different case now that all of those claims have been abandoned.

[6] Plaintiff inappropriately relies on a decision by the Bankruptcy Court in the Northern District of Oklahoma, *Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial*

4

reliability because it has no relationship to reality when viewed in context with what actually happened to Oakwood. His testimony should therefore be excluded.

## II.  DR. TENNENBAUM'S TESTIMONY DOES NOT FIT PLAINTIFF'S CASE

A court should always be cautious about proposed expert evidence when the proponent's opening salvo is to argue how low the bar for admissibility is, and that is exactly what Plaintiff's Answering Brief argues here: In response to Defendants' argument that Dr. Tennenbaum's proposed testimony does not "fit" Plaintiff's case and will not be helpful to the trier of fact, Plaintiff asserts that if Dr. Tennenbaum's opinion is considered reliable, the only further analysis required is whether his opinion meets the relevancy standard of Fed. R. Evid. 402. (Ans. Br. at 17.) Not only is that not the proper standard of admissibility under Third Circuit precedent, but even if it were, Dr. Tennenbaum's proposed testimony would still be inadmissible.

---

*Financial Services, Inc.)*, 350 B.R. 520 (Bankr. N.D. Okla. 2005), to make the argument that because that expert's testimony involving a DCF was found to be admissible, Tennenbaum's testimony should also be found admissible. (Ans. Br. at 16-17.) However, as Plaintiff concedes, the *Sharp* court had already determined that the disputed expert utilized economic assumptions that had "some evidentiary foundation and [were] not unrealistic or unreasonable in light of the evidence," and that "her conclusions logically follow from a well-explained path of data, leaving no 'analytical gap' between the facts relied upon and the opinion rendered." *Id.* at 558-59. This stands in stark contrast to the proposed Tennenbaum testimony, which is *riddled* with analytical gaps. Along these lines, in a companion opinion, also relied upon by Plaintiff, the court noted that "an expert's conclusions are not immune from scrutiny: A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Sharp v. Chase Manhattan Bank USA, N.A. (In re Commercial Fin. Servs., Inc.)* 350 B.R. 559, 566 (Bankr. N.D. Okla. 2005) (citations and quotations omitted). The court continued, "[u]nder Daubert, any step that renders the analysis unreliable … renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *Id* (citations and quotations omitted). As Defendants argued in their opening brief, Dr. Tennenbaum's methodological problems are not "minute quibbles" but rather systemic issues that render an otherwise appropriate methodology inappropriate as applied here.

5

Plaintiff cites *United States v. Ford*, 481 F.3d 215 (3d. Cir. 2007) for the proposition that "[t]he Third Circuit has set the bar for 'fit' fairly low, however; once the reliability factor has been met, the 'fit' element merely requires that the proposed testimony meet 'the basis relevancy standard in Federal Rule of Evidence 401' by making 'a fact of consequence more probable or less probable than it would be without the evidence.'" (Ans. Br. at 17.) However, the Third Circuit has never so held. Although it is true, and the Supreme Court said as much in *Daubert*, that fit is a relevance issue, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993), the Third Circuit has held that the standard for fit is not the same as Rule 401, and that "[t]his statement elucidates what the fit requirement is about – that the scientific knowledge must be connected to the question at issue – rather than the standard for evaluating that connection." *Brown v. SEPTA (In re Paoli R.R. Yard PCB Litig.)*, 35 F.3d 717, 745 n.13 (3d Cir. 1994). The Third Circuit has said on multiple occasions that the standard for analyzing the fit of an expert's analysis is "higher than bare relevance."[7] *Id.* at 745; *United States v. Ford*, 481 F.3d 215, 220 n.6 (3d Cir.), *cert.*

---

[7] The Third Circuit even explained the rationale behind the "fit" requirement by quoting approvingly a Ninth Circuit opinion that held:

> [t]he Supreme Court recognized that the "fit" requirement "goes primarily to relevance," but it obviously did not intend the second prong of Rule 702 to be merely a reiteration of the general relevancy requirement of Rule 402. In elucidating the "fit" requirement, the Supreme Court noted that scientific expert testimony carries special dangers to the fact-finding process because it "'can be both powerful and quite misleading because of the difficulty in evaluating it.'" Federal judges must therefore exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced *that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury*.

*Ford*, 481 F.3d at 220 n.6 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995)) (citations omitted) (emphasis in *Ford*). Beyond revealing a misapplication of the law, the suggestion that the reliability prong could be satisfied and therefore reduce the "fit" element to a standard Rule 401 relevancy requirement also demonstrates additional problems with Plaintiff's "fit" analysis, because "the requirement of

6

*denied*, 128 S. Ct. 213 (2007). Moreover, the Third Circuit has further held that "Rule 702's 'helpfulness' standard requires a valid *scientific* connection to the pertinent inquiry as a precondition to admissibility." *Brown*, 35 F.3d at 743 (citation and quotations omitted) (emphasis in original). In other words, the "fit" requirement expects "that the connection between the scientific knowledge and the case must itself constitute scientific knowledge." *Id.* at 745 n.13. As Defendants demonstrated in their opening brief, Dr. Tennenbaum's testimony does not meet that standard. And even if the lower relevance standard were appropriate, it has certainly not been met here.

Plaintiff argues that Dr. Tennenbaum's testimony meets the Fed. R. Evid. 401 standard because it makes it more probable than not that Oakwood "suffered damages." (Ans. Br. at 18.) The reason Dr. Tennenbaum's proffered testimony does not "fit" Plaintiff's case is that it is not connected by *anything* to Plaintiff's damages theory, which is that Oakwood was harmed by some Defendant's failure to cause Oakwood's bankruptcy sooner than it, in fact, happened. That is not an issue to be addressed on cross-examination – that is a "fit" problem. *See, e.g., Surace v. Caterpillar, Inc.*, No. CIV. A. 94-1422, 1995 WL 303895, at *2 (E.D. Pa. May 16, 1995) ("Fit demands more than simple relevance; it requires a logical relation between the testimony and the factual issues involved in the litigation. That is, notwithstanding that there exist good grounds for the expert's opinion, it must also be validly and scientifically related to the issues in the case in order to be admitted."), *aff'd in part*, 111 F.3d 1039 (3d Cir. 1997). Dr. Tennenbaum's testimony could only be relevant to

---

reliability, or 'good grounds,' extends to each step in an expert's analysis all the way through the step that connects the work of the expert to the particular case." *Brown*, 35 F.3d at 743. Plaintiff's proposed logic would also render the specific Rule 702 "fit" requirement a redundancy, given that all evidence must be relevant to be admissible, expert or otherwise. Not surprisingly, therefore, case law throughout the Third Circuit uniformly acknowledges that "fit" must mean more that just relevance.

7

and fit this case if it were somehow tied to the actual facts in this case. Moreover, Dr. Tennenbaum is an expert offered to *prove an amount of damages*. Although his analysis does not need to be perfectly precise, his testimony is meant to give the jury a basis for determining the *amount* of damages, which cannot be based on sheer speculation. *See B.G. Soft Ltd. v. BG Soft Int'l, Inc.*, No. CV-01-17, 2002 WL 1467744, at *2 (E.D.N.Y. Apr. 29, 2002) ("Although damages need not be proved with mathematical certainty, they cannot be speculative.").

Dr. Tennenbaum chose two dates of convenience (based on Oakwood's fiscal year) that do not relate to anything specific that Defendants did or did not do, and opines as to the company valuation on each date. He then labels the entire differential as "damages" caused by Defendants, ignoring market factors, economic factors, management factors, or anything else that might have influenced the fate of the company. Such a cursory, speculative analysis has no fit with Plaintiff's case and should therefore be excluded.

### III. DEFENDANTS AWAIT DR. TENNENBAUM'S FURTHER DISCLOSURES

In addition to Plaintiff's legal arguments addressed above, Plaintiff also submits with its Answering Brief what is in essence a new expert report by Dr. Tennenbaum that presents new opinions based on new analyses not contained in his initial report. (*See* Declaration of Dr. Michael Tennenbaum in Support of Plaintiff's Consolidated Answering Brief in Opposition to Defendants' Motions to Exclude Plaintiff's Expert Testimony ¶¶ 5-7 (hereinafter referred to as the "Tennenbaum Declaration").) Plaintiff has also promised there is still more expert testimony to come from Dr. Tennenbaum that has not yet been disclosed. (Email from Whitman Holt to Paul Wickes et al., dated April 14, 2008 (Williamson Decl. Ex. C) (promising a supplemental report to address "incomplete" nature of current record of Dr. Tennenbaum's opinions).)

8

One might presume that the Tennenbaum Declaration is a preview of the soon-to-be-served supplemental report, but no mention of the new expert report is made in Plaintiff's Answering Brief. Whatever the content of this unseen new report, both the Court and Defendants may need to see what it contains, as well as complete any necessary additional discovery, before a final hearing and determination can be made as to admissibility. But on the current record, Dr. Tennenbaum should not be allowed to testify.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

For all the reasons stated above, Defendants respectfully request that the Court exclude the testimony of Michael Tennenbaum pursuant to Federal Rule of Evidence 702.

Dated: May 7, 2008
      Wilmington, Delaware

Respectfully submitted,

_____
Mark D. Collins (No. 2981)
collins@rlf.com
Russell C. Silberglied (No. 3462)
silberglied@rlf.com
Anne S. Gaza (No. 4093)
gaza@rlf.com
Lee E. Kaufman (No. 4877)
kaufman@rlf.com
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and -

R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson
LINKLATERS
1345 Avenue of the Americas
New York, NY 10105
Telephone: (212) 903-9000
Facsimile: (212) 903-9100

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I, Lee E. Kaufman, do hereby certify that on May 7, 2008, I caused a copy of the foregoing **Reply Memorandum of Law in Further Support of Defendants' Motion to Exclude the Expert Testimony of Michael Tennenbaum Pursuant to Fed. R. Evid. 702** to be served upon each party on the attached service list in the manner indicated thereon.

Lee E. Kaufman (No. 4877)

RLF1-3281131-1

## SERVICE LIST

**Via Hand Delivery**
Marla R. Eskin, Esq.
Kathleen Campbell Davis, Esq.
Campbell & Levine
800 North King Street
Suite 300
Wilmington, DE 19801

**Via First Class Mail**
Tony Castanares, Esq.
Stephen M. Ray, Esq.
Carol Chow, Esq.
Whitman L. Holt, Esq.
Stutman, Treister & Glatt, PC
1901 Avenue of the Stars
12th Floor
Los Angeles, CA 90067

RLF1-3281131-1