# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oakwood Homes Corporation, et al., | ) | Case No. 02-13396 (PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| OHC Liquidation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0799 (JJF) |
| | ) | |
| Credit Suisse (f/k/a Credit Suisse First Boston, a | ) | |
| Swiss banking corporation), Credit Suisse | ) | |
| Securities (USA), LLC (f/k/a Credit Suisse First | ) | |
| Boston LLC), Credit Suisse Holdings (USA), Inc. | ) | |
| (f/k/a Credit Suisse First Boston, Inc.), and Credit | ) | |
| Suisse (USA), Inc. (f/k/a Credit Suisse First Boston | ) | **Re: Civil Docket Nos.** |
| (U.S.A.), Inc.), the subsidiaries and affiliates of | ) | **74-75 & 87-88** |
| each, and Does 1 through 100, | ) | |
| | ) | |
| Defendants. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

## REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTIONS *IN LIMINE*

Tony Castañares (CA SBN 47564)      -&-      Marla Rosoff Eskin (No. 2989)
Stephan M. Ray (CA SBN 89853)                Kathleen Campbell Davis (No. 4229)
Scott H. Yun (CA SBN 185190)                 Kathryn S. Keller (No. 4660)
Whitman L. Holt (CA SBN 238198)              CAMPBELL & LEVINE, LLC
STUTMAN, TREISTER & GLATT, P.C.              800 N. King Street, Suite 300
1901 Avenue of the Stars, 12th Floor         Wilmington, DE 19801
Los Angeles, CA 90067                        (302) 426-1900
(310) 228-5600

*Special Counsel for the OHC Liquidation Trust*

Dated: May 12, 2008

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ......................................................................................................1

ARGUMENT ...........................................................................................................2

      A.     Plaintiff's Motion *In Limine* Should Be Granted As To Defendants'
           Expert Witness, Mr. Thomas Boland...........................................................2

      B.     Plaintiff's Motion *In Limine* Should Be Granted As To Mr. Felt's
           Admission Of Fiduciary Duty.......................................................................6

      C.     Herein Of "Cynicism.".................................................................................13

CONCLUSION.........................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*AmeriSourceBergen Drug Corp. v. Curascript, Inc.*,
   No. 2272, 2007 Phila. Ct. Com. Pl. LEXIS 116 (Pa. Ct. Com. Pl. Apr. 17,
   2007). ..................................................................................................................... 14

*Colo. Capital v. Owens*,
   227 F.R.D. 181 (E.D.N.Y. 2005) ........................................................................... 5

*Hall v. Clifton Precision*,
   150 F.R.D. 525 (E.D. Pa. 1993) ........................................................................... 14

*Meinhard v. Salmon*,
   249 N.Y. 458 (1928) ............................................................................................... 5

*Plaisted v. Geisinger Med. Ctr.*,
   210 F.R.D. 527 (M.D. Pa. 2002) .......................................................................... 14

*SEC v. Treadway*,
   438 F. Supp. 2d 218 (S.D.N.Y. 2006) .................................................................... 9

*United States v. Chapman*,
   209 Fed. Appx. 253 (4th Cir. 2006), *cert. denied*, 127 S. Ct. 2286 (2007) ...... 8, 9

*Weinberger v. UOP, Inc.*,
   457 A.2d 701 (Del. 1983) ....................................................................................... 5

## STATUTES AND RULES

D. Del. LR 30.6 ............................................................................................................. 6

FED. R. CIV. P. 30(c)(2) .............................................................................................. 3

FED. R. CIV. P. 32(a)(6) ............................................................................................ 14

Plaintiff[1] respectfully submits this Reply Brief in further support of its consolidated motions *in limine* [D.I. #74] and in response to Defendants' May 5 memorandum of law in opposition thereto (the "**Defendants' Brief**" [D.I. #87]; cited herein as "Def. Br. at __").

## INTRODUCTION

Plaintiff's two motions *in limine* seek trial remedies for Defendants' improper conduct in instructing witnesses not to answer valid deposition questions and for violating the rules of this Court by an improper lunchtime conference with a witness, resulting in that witness's black-to-white recanting of his testimony on a key issue in the case.[2]

Nowhere in the Defendants' Brief is there a denial that the lunchtime conference occurred, or that defense counsel instructed the witnesses to stonewall Plaintiff's legitimate questions. Nowhere is there so much as a word purporting to show that these actions were not in violation of the rules, or that the violations were the result of inadvertence or excusable neglect.

Rather, Defendants characterize this as "much ado about nothing" (Def. Br. at 1). Defendants' approach, in essence, is that the presumptive remedy following a willful violation of the rules ought to be complete impunity – bad actions should not have consequences. Plaintiff believes that the rules of practice and procedure aren't "nothing," and that they mean *something*. After all, if the rules don't mean something, why have them at all? That is the first point at issue.

The second point is this: Plaintiff isn't here seeking sanctions or anything punitive. Plaintiff has demonstrated how Defendants' violations have put Plaintiff at a

---

[1]    All capitalized terms used but not otherwise defined herein have the meaning set forth in Plaintiff's initial moving papers (the "**Opening Brief**" [D.I. #74]).

[2]    The specific relief sought is set forth in our Opening Brief, and includes restrictions on Defendants' ability to use Mr. Boland and Mr. Felt's deposition testimony in certain ways at trial, as well as appropriate limiting jury instructions.

disadvantage at trial, and seeks remedies that are purely remedial.  Defendants have done nothing

to rebut this reality in their answering brief.

## ARGUMENT

**A.**    **Plaintiff's Motion *In Limine* Should Be Granted As To Defendants' Expert Witness, Mr. Thomas Boland.**

There are two issues regarding Mr. Boland.  The first is whether the jury should

be given a clarifying instruction that Mr. Boland is not opining on the existence of a fiduciary

relationship.  The second is whether Mr. Boland, having refused to say whether his opinion does

or does not apply if the relationship between Oakwood and Credit Suisse *is* found to be a

fiduciary one, should be precluded from testifying at trial on any matters relating to fiduciary

duties because he refused to do so at his deposition.

### 1.    Is Mr. Boland opining on the existence of a fiduciary relationship?

It is reassuring that Defendants now say that their expert is not going to purport to

testify on whether there was a fiduciary relationship between Credit Suisse and Oakwood.

Plaintiff was concerned about this point because of the rambling nature of the Boland Report and

the fact that it *could* be read as opining on the existence of a fiduciary relationship.  Indeed, the

one passage that Defendants choose to quote from it is not reassuring at all, namely that the

relationship "was a very typical banking/client product driven relationship" (Def. Br. at 4).  One

*could* easily read that text as an attempt to say that the relationship was not a fiduciary one.

To find out, we asked Mr. Boland at his deposition whether he was attempting to

express an opinion on that subject or not. (This is in the passage at 81-83 of the Boland

deposition transcript discussed in our Opening Brief [D.I. #75, Ex. "A"], where we specifically

warned defense counsel that her instructions not to answer were improper and would result in a

motion like the instant one.)  The final question in the series puts the matter in focus: "Does your

2

report attempt to express an opinion on whether or not CSFB ever owed a fiduciary duty to Oakwood?"  Instruction not to answer; refusal to answer.

Defendants' answering brief on this point responds:  "Oh how silly.  *Of course* Mr. Boland isn't opining on that."  Essentially, Defendants are simply telling the Court, "The answer to the question was 'no.'"  Then why didn't Defendants just let Mr. Boland answer the question?  The jury should be entitled to hear this statement directly from the mouth of the witness, rather than through the spin of a legal brief on the subject.

And, of course, Defendants offer absolutely zero by way of purporting to justify an instruction that was clearly improper under any reading of Federal Rule 30(c)(2).

All that aside, it now appears that the answer to the question is "no," and so Defendants should have no objection to the Court giving the first portion of the jury instruction proposed at pages 7-8 of our Opening Brief – the first three paragraphs are phrased neutrally, apply to Plaintiff's expert Dr. Shapiro as well as to Mr. Boland, and make it clear that neither expert is testifying as to the existence of a fiduciary relationship or duty.

### 2.    Mr. Boland's refusal to state whether his opinion applies if it is determined that there was a fiduciary relationship.

Dr. Shapiro's report is perfectly clear: if one assumes the existence of a fiduciary relationship, Credit Suisse's performance on the facts of this case fell short of the standard of care applicable to such a relationship.[3]

One would assume that a rebuttal report would address that point squarely, but the Boland Report does not.  Rather, its rambling nature, consisting of a recital of things banks do

---

[3]    Dr. Shapiro also opines that Credit Suisse's conduct falls short of the standard of care applicable to the various relationships that Credit Suisse undertook with Oakwood even under a traditional negligence standard, rather than a fiduciary standard.

and don't do, what an "investment banking" relationship is in contradistinction to a relationship

with an investment bank, and so forth, leaves the matter ambiguous. And, we believe,

deliberately so.

So, in deposition, Plaintiff attempted to find out. Ultimately, the question that

attempted to isolate the issue was this one: "Let me ask you hypothetically, Mr. Boland, let's

suppose that the Judge in this case were to make a ruling that at all times Credit Suisse owed a

fiduciary duty to Oakwood. Would that in any way change the opinion that you've rendered?"

Defense counsel: "Object and direct the witness not to answer."[4]

First, it may be noted that this is virtually the identical question that Defendants

asked of Plaintiff's expert, which is in the Shapiro transcript cited at page 4 of the Defendants'

Brief. Plaintiff's expert *was* permitted to answer that legitimate question, and he did so

forthrightly and directly. Indeed, Dr. Shapiro said, by the way, that while Defendants' conduct

fell short of the standard of reasonableness on *any* standard, his conclusion was heightened in the

fiduciary context: "I think if [Credit Suisse] had a fiduciary obligation to behave in a certain way

that that strengthens that obligation or makes behavior less reasonable than it otherwise would."[5]

In contrast, defense counsel stepped in and instructed Mr. Boland to stonewall.

So, despite several efforts to get a single answer to the parallel question, Plaintiff got none.

---

[4]    This is the passage at 219:16-22 of the Boland deposition transcript discussed in our Opening
Brief [D.I. #75, Ex. "A"].

[5]    Shapiro Dep. Tr. at 6:20-24, reproduced as Exhibit B to the Williamson Declaration
accompanying the Defendants' Brief [D.I. #88]. This testimony exposes the falsehood of
Defendants' statement that Dr. Shapiro's "opinion was not *in any way* affected by" the
assumption of a fiduciary duty. (*See* Def. Br. at 2 (emphasis added); *see also id.* at 4 (falsely
asserting that Dr. Shapiro's "opinion would not change if Defendants did not owe fiduciary
duties").) The "change" that Dr. Shapiro plainly explained to Defendants' counsel is that all
of his conclusions about the unreasonable nature of Credit Suisse's conduct would be *even
stronger* if a fiduciary duty was owed, but would nevertheless obtain absent any such duty.

Now Defendants come and, once again failing to offer a word to justify the illegitimate instructions not to answer, tell the Court, "Oh how silly. *Of course* Mr. Boland's opinion applies in the fiduciary context."[6]

Well, if the expert opinion was intended to apply in both contexts, why not just permit the witness to say so? Clearly Defendants *want* the answer to be "yes" – that is the whole tenor of this section of the Defendants' Brief. But if the answer was "yes," then Plaintiff and the jury are entitled to hear it from the witness rather than having a gag stuffed in the witness's mouth so that the question could be answered later by defense counsel in a legal brief.

Furthermore, the Defendants' Brief simply addresses the *duty of care* aspect of a fiduciary relationship, totally ignoring the corresponding *duty of loyalty*. As expressed in then-Judge Cardozo's timeless words:

> Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. . . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court.

*Meinhard v. Salmon*, 249 N.Y. 458, 464 (1928); *accord, e.g.*, *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) (explaining how a fiduciary duty requires fiduciaries not only to refrain from any act that breaches trust, "but also to affirmatively protect and defend those interests entrusted to them"). Clearly the presence of a relationship obligating Credit Suisse to comply

---

[6]  Defendants' reasoning is that the standard of care in the fiduciary context is *identical* to the standard of care in other contexts. (*See* Def. Br. at 13.) This proposition directly contradicts the Shapiro testimony they cite, which makes clear that Dr. Shapiro's conclusion would have been even stronger if a fiduciary relationship existed here, *see* note 5 *supra*, and is further belied by the relevant case law. *See, e.g.*, *Colo. Capital v. Owens*, 227 F.R.D. 181, 189 (E.D.N.Y. 2005) (noting "the difference between the duty of reasonable care that is required to sustain a negligence action and the fiduciary duty of care required to sustain an action for breach of fiduciary duty," and making clear that that the latter is a "heightened duty").

with *this* duty ought to have *some* bearing on the analysis of whether Credit Suisse's behavior was appropriate under the circumstances (Dr. Shapiro certainly thought it would be germane). Plaintiff was categorically denied any ability to explore whether Mr. Boland believes Credit Suisse's conduct as to Oakwood was merely in accord with "the morals of the market place" or consistent with a higher standard of utmost good faith and loyalty.

As matters stand, Mr. Boland has refused to state whether his opinion applies if a fiduciary relationship is found to exist, which means his testimony just does not "fit" Plaintiff's fiduciary duty claim. Defendants engineered this refusal. They should now live with it, and the remainder of the instruction proposed at 7-8 of our Opening Brief is a proper implementation.

**B.    Plaintiff's Motion *In Limine* Should Be Granted As To Mr. Felt's Admission Of Fiduciary Duty.**

In our Opening Brief, we pointed out that Jared Felt, one of Defendants' two principal witnesses, testified in so many words that Defendants owed a fiduciary duty to Oakwood. This testimony was followed by a lunch break, and about 45 minutes later Mr. Felt spontaneously purported to "clarify" this testimony by essentially recanting it.

It emerged that the attempted "clarification" was the result of a lunchtime conference with counsel, which is specifically prohibited by the rules of this Court. *See* D. Del. LR 30.6. By instructions not to answer, counsel prevented Mr. Felt from testifying about the lunchtime conference. As our Opening Brief pointed out on pages 10-11, these instructions not to answer were improper because the lunchtime conference is not a privileged communication.

The Defendants' Brief contests none of this. Defendants offer no real excuse for the prohibited lunchtime conference. They do not contest the law we cited showing that the conference was not privileged, thereby admitting the impropriety of the instructions not to answer. Along with the Defendants' Brief, Credit Suisse *could* have filed an affidavit of either

Mr. Felt or the defense counsel who participated in the lunchtime conference, so as to set the record straight and allay any concerns that improper "coaching" occurred. They chose not to.

Defendants' reply boils down to this: "incompetent, irrelevant, and immaterial."

**1.    The testimony is relevant, and Mr. Felt was competent to give it.**

Since breach of fiduciary duty is a live claim in this case, and since Defendants contend that there was no fiduciary relationship between Oakwood and Credit Suisse, it seems relatively axiomatic that the testimony of their own witness acknowledging the existence of that relationship is relevant evidence. If nothing else, Mr. Felt's belief and understanding that such a relationship existed and colored *his own actions* is highly relevant.

Was Mr. Felt competent to give this testimony? Who else is more competent to testify as to his belief and understanding than the witness himself? Evidently it is Defendants' position that a key actor's belief and understanding does not matter, and that only a lawyer can testify competently on the existence of a fiduciary relationship. Thus Defendants would exclude the testimony of a corporate officer or director who said he owed a fiduciary duty to his company; or the testimony of a bank trust officer; or a trustee in bankruptcy, or personal representative, or conservator, or executor, or a partner in any partnership other than a law firm, or of a host of other fiduciaries who aren't lawyers but who understand that fiduciary duties flow from certain relationships.

A dramatic example is Mr. Boland, the defense expert discussed in the first portion of this brief. He isn't a lawyer, but he readily testified that he had been subject to fiduciary duties in a number of situations, including five directorships.[7] And quite significantly, in relation to a contract between the investment bank Mr. Boland worked for and a corporation

---

[7]    *See* Boland Dep. Tr. at 88:3-16 [D.I. #75, Ex. "A"].

that the investment bank was advising about restructuring, Mr. Boland testified that he had

fiduciary duties because of the nature of the relationship, despite the fact that the relevant

contracts did not specify a fiduciary duty.[8]  Are Defendants now saying that Mr. Boland is

"incompetent" as a witness on such matters?

And it's not as if Mr. Felt were an electrician, gardener, or graduate student in

astrophysics talking about fiduciary duties.  He is a high-ranking officer, with considerable

professional training and education, of an investment bank that regularly deals with fiduciary

matters, as is shown by the fact that Credit Suisse's internal employee manuals specifically speak

of fiduciary relationships and of the duties when representing fiduciaries.[9]  Indeed, an investment

banker may be more qualified to assess whether an investment banking relationship is fiduciary

in nature than a lawyer who does nothing but drunk driving cases, the latter's law degree

notwithstanding.

The notion that Mr. Felt's testimony about Credit Suisse's fiduciary duty to

Oakwood is categorically inadmissible (either as improper "lay" testimony or as testimony about

a "legal" matter) is put to rest by the recent opinion in *United States v. Chapman*, 209 Fed. Appx.

253 (4th Cir. 2006), *cert. denied*, 127 S. Ct. 2286 (2007).  *Chapman* involved the government's

prosecution of Mr. Chapman for various forms of fraud and securities violations in connection

with the IPO of an internet company.  "Some of those charges required the jury to consider

whether fiduciary duties existed and whether Chapman breached those duties."  *See id.* at 265.

---

[8]    *See id.* at 88:20-92:2.

[9]    A true and correct copy of one such manual is attached as Exhibit "A" to the accompanying
declaration of Whitman L. Holt in support of this Reply Brief (cited hereinafter as "Holt
Decl.").  The relevant discussion appears at pages CSFB-00053080 – CSFB-00053082,
CSFB-00053100 – CSFB-00053103, and CSFB-00053127 – CSFB-00053130.

The government called a number of lay witnesses to testify about the existence of a fiduciary duty for Mr. Chapman as to various entities and about whether they thought he breached that duty. On appeal, the Fourth Circuit rejected Mr. Chapman's argument that such testimony should have been excluded at the jury trial, discussing the details of each witness's testimony and concluding that all the "witnesses simply testified about their personal knowledge and perceptions of the historical facts surrounding the relevant transactions." *See id.* at 265-67. Such testimony, based upon the lay witnesses' personal understandings of the parties' rights and obligations and involving "historical or narrative facts," was properly admitted by the trial court. *See id.* Because Mr. Felt's testimony is of precisely the same nature as the lay testimony analyzed in *Chapman*, that decision strongly supports its admissibility in the instant case.[10]

Defendants also assert that Mr. Felt was not part of the securitization transactions that were being handled for Oakwood by Fiachra O'Driscoll, Defendants' other principal witness. Thus, Defendants say, Mr. Felt could not have had an opportunity to know whether a fiduciary relationship existed or, indeed, even have *any* "personal knowledge of the securitization relationship between Oakwood and Mr. O'Driscoll's team." (*See* Def. Br. at 13-14.) But this factual assertion totally ignores how Mr. Felt was a percipient witness to much of what went on in 2001-2002, having made a study of Oakwood for over a year before his department was

---

[10] In this regard, it is worth noting that all of Defendants' "lay opinion testimony" cases are inapposite. Mr. Felt was not offering a naked "opinion" about the nature of the relationship between Oakwood and Credit Suisse, but rather was testifying as to his own, very *personal* knowledge and understanding of that relationship. This is descriptive, factual evidence, not impermissible opinion testimony. *See, e.g., SEC v. Treadway*, 438 F. Supp. 2d 218, 224 (S.D.N.Y. 2006) (allowing introduction of lay testimony about understanding of compliance with securities prospectus and whether certain information should have been disclosed to a corporate board, because "[t]hrough his position as a Board member [the witness] gained personal knowledge as to PIMCO's policies and can testify as to whether certain types of activity were consistent with those policies as understood by him in his fiduciary capacity").

engaged by Oakwood in a formal contract.  During this time, he was able to observe aspects of

the securitizations and of the "warehouse facility."  Mr. Felt also attended Oakwood board

meetings and made restructuring proposals.  He became aware of Defendants' 20% warrant

position sufficiently to classify Credit Suisse as an "insider" in documents he prepared.[11]  And he

was the recipient of reassurances from Mr. O'Driscoll in August 2001 that Oakwood would not

take its business elsewhere, because it was by that point "very shackled" to Credit Suisse.[12]

Mr. Felt testified that he had been trying to gain Oakwood's *trust* before being

formally engaged, and that Mr. O'Driscoll had done so too.  And he testified that Oakwood's trust

in Mr. O'Driscoll helped Mr. Felt himself also gain Oakwood's trust: "First of all, they trusted

him . . . ."[13]

Thus, Mr. Felt was quite capable of observing the relationship that existed

between Oakwood and Credit Suisse before the formal contract covering the last 88 days of that

relationship was signed.  He knew what trust was.  His testimony as to the fiduciary relationship

certainly is admissible, and if Defendants wish to try to persuade the jury that Mr. Felt didn't

know what he was talking about, they can try it, but they won't succeed.

Defendants are not aided here by their mischaracterization of Plaintiff's argument

about where the fiduciary duty came from – it came from the entire history of the relationship,

and the reposition of trust and confidence that Mr. Felt, among others, observed.  Our point about

the fact that the 88-day contract had an integration clause and no discussion of a fiduciary

---

[11]    *See* Holt Decl. Ex. "B," at CSFB-00052890.

[12]    *See* Holt Decl. Ex. "C."

[13]    *See* Felt Dep. Tr. at 85:19-88:1 [Holt Decl. Ex. "D"].  The specific quote accompanying this
footnote is at 87:21.

relationship is simply to reemphasize that Mr. Felt's assessment of the existence of the fiduciary relationship came from his observation of *other* aspects of the relationship, not the contract itself.

## 2.    The context of Mr. Felt's testimony and the form objection.

At pages 5-8 of the Defendants' Brief, Credit Suisse reproduces a long excerpt of the Felt deposition, showing the context of the implicated testimony, apparently to support their statements that Mr. Felt just "blurted out" the existence of the duty.[14]  In fact, the excerpt shows that Credit Suisse made a distinction between what it told to outsiders (here Foothill) and what it told to its client (here Oakwood), and that the basis of that distinction was the duty of a fiduciary to its client.  This also shows the emptiness of Defendants' purported form objection.

Stated very briefly, here is the context of this testimony.  As Oakwood was approaching bankruptcy, Credit Suisse (through the division Mr. Felt worked in) was engaged to help avoid a free-fall bankruptcy.  It became known to all of the players that there were three necessary pieces to be put into place: (1) a DIP loan had to be negotiated so as to be available to the company when it filed – Foothill was the primary potential DIP lender; (2) the "warehouse" had to be in place – this would involve getting Credit Suisse to waive the bankruptcy default clause in the existing pre-bankruptcy facility; and (3) Berkshire Hathaway, the largest creditor due to the guarantees resulting from the disastrous "LOTUS" transactions engineered and negotiated on Oakwood's "behalf" by Mr. O'Driscoll, had to indicate its support.  The problem was that each part of this three-legged stool made itself expressly dependent on the other two.[15]

---

[14]   Since when are spontaneous admissions or confessions inadmissible evidence?  Assume that a defendant has been charged with murder and blurts out, in response to an arguably unrelated question, "I committed murder."  Would Credit Suisse's counsel argue that the defendant's statement is irrelevant, incompetent, and inadmissible because knowledge of what might technically give rise to the crime of "murder" would constitute a legal opinion?

And here, although the 88-day contract did not expressly provide for it (and, as we have pointed out elsewhere, contained an integration clause), Credit Suisse undertook the responsibility for lining up the DIP loan, and Mr. O'Driscoll took it upon himself to try to get Credit Suisse's New York branch to waive the bankruptcy default in the warehouse facility.[16] The Felt testimony now at issue came in the context of questioning about the process of lining up the DIP loan, and the basic inquiry was what the various parties were being told about progress on getting Credit Suisse to make its "warehouse" facility available to Oakwood post-petition.

The key testimony begins toward the bottom of page 6 of the Defendants' Brief:

Q.      All right. What did you tell Foothill in response to that, about why New York branch [Credit Suisse] hadn't yet committed to that post-bankruptcy line?

[Form objection]

A.      I don't recall. But in a situation like this, you would make – you would make noncommittal positive – say noncommittal positive things.

Q.      What does that mean?

A.      They're working on it.

The questioning then turns to whether *Oakwood* ("the company") was asking the same questions about progress on the warehouse. Mr. Felt replies that the questions didn't go to him, but to Mr. O'Driscoll. Mr. Felt also testifies that *he knows how O'Driscoll responded*; "That he was working with New York branch toward the end." (*See* Def. Br. at 7.)

The next several questions address whether the "they're working on it" response to

---

[15]   *See, e.g.*, Holt Decl. Ex. "E."

[16]   Some of this evidence will relate to "bench" issues in the trial, namely (i) what value, if any, at all, Credit Suisse delivered to Oakwood under the 88-day contract so as to insulate Defendants from a fraudulent transfer attack on the payments made under that contract; (ii) whether Defendants' proofs of claim present a legitimate claim for further payments under that contract; and (iii) whether any allowable claims should be equitably subordinated in any event.

Oakwood fit the definition of "noncommittal positive things" when the response went to Foothill. There followed some objections, some colloquy, and a rephrasing, but when the witness finally answered, the context was crystal clear: Credit Suisse felt it could brush off Foothill, to which it owed no fiduciary duty, with a purposefully non-responsive answer, but simultaneously felt an obligation to be honest with its client, to which it did owe a fiduciary duty.

Mr. Felt knew exactly the distinction he was trying to make, and the basis for it. He was, in short, dead right about Credit Suisse's fiduciary duty. In this context, then, the kitchen-sink form objections set out in footnote 2 at page 15 of the Defendants' Brief all fail.

## C.     Herein Of "Cynicism."

As pointed out above, Defendants offer no real justification for their violations of the rules.[17]  So instead of addressing the consequences of their violations straightforwardly, Defendants resort to the old "attack your opponent" strategy.  Plaintiff is cynical, say Defendants, as if there were a "cynical opponent" exception to the rules of practice.  (*See* Def. Br. at 16-17.)

Defendants suggest Plaintiff had some obligation to make a motion to compel Mr. Felt's testimony about the lunch talk, with the implicit assertion that this is Plaintiff's *only* choice if Plaintiff is dissatisfied by Defendants' rules violations.  This notion is easily disposed of.

The cases holding that the lunchtime conference was not privileged are grounded in the fact, argued in our Opening Brief and unaddressed in the Defendants' Brief, that the circumstances of that conference go to the credibility and weight of Mr. Felt's subsequent

---

[17]   Other than a half-hearted last paragraph with a contrived scenario about what "might" have happened: counsel heard the witness say "we had a fiduciary duty," but wasn't concerned about privilege issues at the time of the testimony – rather, at the lunch hour, she inquired about whether this had inadvertently revealed attorney-client communications.  It didn't, but hey, one thing led to another and sure enough, the witness attempted to recant his testimony.

attempt to restate his pre-lunch testimony.[18]

In other words, the case law holds that whatever statements were made in the conference are discoverable. Defendants make no effort, because they cannot, to contend otherwise. Their blocking of the discovery was undeniably, and undeniedly, improper. From that, Defendants somehow posit that no consequence other than a potential motion to compel flows from their wrongful acts. It is unremarkable that they cite no authority for this proposition.

And if the facts are relevant to the credibility and weight of testimony, they are not only discoverable, but also admissible at trial if that testimony is offered.

The fact that Plaintiff did not see fit to trouble Judge Walsh or this Court with yet another discovery motion (there having been a surfeit of them in this case) does not render these particular facts inadmissible. They are admissible, but they have been wrongfully denied to Plaintiff. Our Opening Brief suggested what we thought to be the appropriate remedy: to forbid Defendants from offering the testimony of Mr. Felt to contradict his original admission.

Our Opening Brief also allowed for the possibility that the Court may not think it appropriate to go that far. Our alternative suggestion depended on whether or not Mr. Felt would testify live.

Since Defendants *still* have not indicated whether they intend to bring the still-employed Mr. Felt to testify live at trial, we must still suggest the two alternatives we suggested originally. If Mr. Felt does not testify live, the "clarification" portion of his testimony should not be admitted in evidence under the "in fairness" standard of Federal Rule 32(a)(6) and pursuant to

---

[18]  *See, e.g.*, *Plaisted v. Geisinger Med. Ctr.*, 210 F.R.D. 527, 535 (M.D. Pa. 2002); *Hall v. Clifton Precision*, 150 F.R.D. 525, 529 n.7 (E.D. Pa. 1993); *AmeriSourceBergen Drug Corp. v. Curascript, Inc.*, No. 2272, 2007 Phila. Ct. Com. Pl. LEXIS 116, at *14-16 (Pa. Ct. Com. Pl. Apr. 17, 2007).

the uncontroverted authority of case law holding for exactly that sort of result when one party

has blocked legitimate cross-examination.

        If Mr. Felt does testify live, he should not be permitted to contradict his admission

without a prior *in camera* hearing exploring all aspects of both the deposition lunchtime

conversation and any preparation sessions on that point in advance of the hearing.  After such a

hearing, Plaintiff will ask the Court to make such orders as it deems just in the circumstances.

[Remainder of page intentionally left blank]

## CONCLUSION

The rules of practice of this Court, and the Federal Rules of Civil Procedure, must mean *something*. Plaintiff refuses to believe that they are, to use Defendants' words, "nothing."

The present motions seek no retribution, no monetary sanctions, and nothing more than a releveling of the playing field at trial. This result is plainly just, and for all the reasons and based on the authorities set forth above and in the Opening Brief, the Court should grant Plaintiff's two motions *in limine*.

Respectfully submitted,

Dated: May 12, 2008
Wilmington, Delaware

/s/ *Marla Rosoff Eskin*
MARLA ROSOFF ESKIN (No. 2989)
KATHLEEN CAMPBELL DAVIS (No. 4229)
KATHRYN S. KELLER (No. 4660)
CAMPBELL & LEVINE, LLC
800 N. King Street, Suite 300
Wilmington, DE 19801
(302) 426-1900

-and-

TONY CASTAÑARES (CA SBN 47564)
STEPHAN M. RAY (CA SBN 89853)
SCOTT H. YUN (CA SBN 185190)
WHITMAN L. HOLT (CA SBN 238198)
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067
(310) 228-5600

Special Counsel for the OHC
Liquidation Trust

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Oakwood Homes Corporation, et al., | ) | Case No. 02-13396 (PJW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| _____ | ) | |
| OHC Liquidation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-0799 (JJF) |
| | ) | |
| Credit Suisse (f/k/a Credit Suisse First Boston, a | ) | |
| Swiss banking corporation), Credit Suisse | ) | |
| Securities (USA), LLC (f/k/a Credit Suisse First | ) | |
| Boston LLC), Credit Suisse Holdings (USA), Inc. | ) | |
| (f/k/a Credit Suisse First Boston, Inc.), and Credit | ) | |
| Suisse (USA), Inc. (f/k/a Credit Suisse First Boston | ) | |
| (U.S.A.), Inc.), the subsidiaries and affiliates of | ) | |
| each, and Does 1 through 100, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I, Kathryn S. Keller, of Campbell & Levine, LLC, hereby certify that on May 12, 2008, I

caused a copy of the ***Supplemental Expert Report of Dr. Michael Tennenbaum,*** to be served

upon the individuals listed below via the method indicated.

| | |
|---|---|
| Lee E. Kaufman, Esq.<br>Russell C. Silberglied, Esq.<br>Richards, Layton & Finger, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, DE 19801<br>**VIA HAND DELIVERY** | Mary K. Warren, Esq.<br>Michael Osnato, Esq.<br>J. Justin Williamson, Esq.<br>Paul R. Wickes, Esq.<br>Linklaters<br>1345 Avenue of the Americas<br>Nineteenth Floor<br>New York, NY 10105<br>**VIA FEDERAL EXPRESS** |

Dated: May 12, 2008                    CAMPBELL & LEVINE, LLC


                                       */s/ Kathryn S. Keller*
                                       Kathryn S. Keller (No. 4660)
                                       800 N. King Street, Suite 300
                                       Wilmington, DE 19801
                                       (302) 426-1900