# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| Oakwood Homes Corporation, | Case No. 02-13396 (PJW) |
| et al., |  |
| Debtors. |  |
| OHC Liquidation Trust, |  |
| Plaintiff, |  |
| v. |  |
| Credit Suisse (f/k/a Credit Suisse First Boston, a Swiss banking corporation), Credit Suisse Securities (USA), LLC (f/k/a Credit Suisse First Boston LLC), Credit Suisse Holdings (USA), Inc. (f/k/a Credit Suisse First Boston, Inc.), and Credit Suisse (USA), Inc. (f/k/a Credit Suisse First Boston (U.S.A.), Inc.), the subsidiaries and affiliates of each, and Does 1 through 100, | Adversary Proceeding No. 04-57060 (PJW) |
| | Civil Action No. 07-799 (JJF) |
| Defendants. |  |

## REPLY TO PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Of Counsel:

R. Paul Wickes
Mary K. Warren
Michael J. Osnato, Jr.
J. Justin Williamson

LINKLATERS LLP
1345 Avenue of the Americas
New York, New York 10105
(212) 903-9000

Dated: May 19, 2008

Mark D. Collins (No. 2981)
Russell C. Silberglied (No. 3462)
Anne S. Gaza (No. 4093)
Lee E. Kaufman (No. 4877)

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700

*Attorneys for Defendants*

RLF1-3284911-1

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.    OAKWOOD WAS *IN PARI DELICTO* WITH DEFENDANTS ..................................... 2

    A.    Oakwood Actively And Voluntarily Participated In All Of The
        Actions Of Which Plaintiff Complains .............................................................. 2

    B.    The "Insider" Argument Fails Because Defendants Did Not
        Control Oakwood ................................................................................................ 4

    C.    There Is No Need To Weigh Relative Fault ........................................................ 8

II.    DEFENDANTS OWED NO DUTY TO OAKWOOD'S CREDITORS ............................. 9

III.    THERE IS NO EVIDENCE THAT DEFENDANTS CAUSED
     HARM TO OAKWOOD ......................................................................................... 13

IV.    PLAINTIFF FAILS TO SHOW THE EXISTENCE OF AN IMPLIED
     FINANCIAL ADVISORY CONTRACT ................................................................... 16

V.    THERE IS NO EVIDENCE THAT DEFENDANTS WERE NEGLIGENT .................... 18

CONCLUSION .............................................................................................................. 19

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
472 U.S. 299 (1985) .................................................................................................................8

*Berlinger v. Lisi,*
731 N.Y.S.2d 916 (App. Div. 2001) .....................................................................................16

*Burns v. Ferro,*
C.A. No.88C-SE-178, 1991 Del. Super. LEXIS 99 (Del. Super. Ct. Mar. 28, 1991) ...................8

*Butler v. David Shaw, Inc.,*
72 F.3d 437 (4th Cir. 1996) ....................................................................................................6

*Chem. Bank v. Stahl,*
655 N.Y.S.2d 24 (App. Div. 1997) ......................................................................................8, 9

*Claybrook v. Broad & Cassel, P.A. (In re Scott Acquisition Corp.),*
364 B.R. 562 (Bankr. D. Del. 2007) ....................................................................................4, 7

*Comeau v. Rupp,*
810 F. Supp. 1172 (D. Kan. 1992) ........................................................................................13

*Crowley v. Chait,*
Civ. No. 85-2441, 2004 U.S. Dist. LEXIS 27238 (D.N.J. Aug. 25, 2004) ....................................13

*Dexia Credit Local v. Rogan,*
Case No. 02 C 8288, 2003 U.S. Dist. LEXIS 18368 (N.D. Ill. Oct. 10, 2003) ..............................12

*Donovan v. Rothman,*
756 N.Y.S.2d 514 (App. Div. 2003) ........................................................................................9

*Ford v. Henry,*
598 N.Y.S.2d 660 (Sup. Ct. 1993) ..........................................................................................9

*Granite Corp. v. Primavera Familienstiftung (In re Granite Partners, L.P.),*
194 B.R. 318 (Bankr. S.D.N.Y 1996) ...................................................................................4, 5

*Grant Thornton, LLP v. FDIC,*
535 F. Supp. 2d 676 (S.D.W.Va. 2007) .................................................................................13

*Jeremias v. Shearson Hayden Stone, Inc,*
420 N.Y.S.2d 881 (App. Div. 1979) ........................................................................................8

RLF1-3284913-1

*Kalb, Voorhis & Co. v. Am. Fin., Corp*,
8 F.3d 130 (2d Cir. 1993).................................................................................................5

*Keener Lumber Co. v. Perry*,
560 S.E.2d 817 (N.C. Ct. App. 2002) ...........................................................................10

*LNC Invs., Inc. v. First Fid. Bank, N.A.*,
173 F.3d 454 (2nd Cir. 1999)........................................................................................15

*Lucent Techs., Inc. v. Shubert (In re Winstar Commc'ns, Inc.)*,
No. 06-147, 2007 U.S. Dist. LEXIS 31137 (D. Del. Apr. 26, 2007)...............................6

*Maas v. Cornell Univ.*,
721 N.E.2d 966 (N.Y. 1999).........................................................................................16

*Missigman v. USI Northeast, Inc.*,
131 F. Supp. 2d 495 (S.D.N.Y. 2001).............................................................................17

*Murray v. Northrop Grumman Info. Tech., Inc.*,
444 F.3d 169 (2d Cir. 2006)......................................................................................16, 17

*Nadel v. Play-By-Play Toys & Novelties, Inc.*,
208 F.3d 368 (2d Cir. 2000).........................................................................................17

*OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*,
340 B.R. 510 (Bankr. D. Del. 2006) ...............................................................................6

*Oberlin Capital, L.P. v. Slavin*,
554 S.E.2d 840 (N.C. Ct. App. 2001) ...........................................................................10

*Official Comm. of Unsecured Creditors v. Austin Fin. Servs., Inc.*
*(In re KDI Holdings, Inc.)*, 277 B.R. 493 (Bankr. S.D.N.Y. 1999)..................................6

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*,
267 F.3d 340 (3d Cir. 2001)..................................................................................2, 8, 9, 12

*Official Comm. of Unsecured Creditors v. Shapiro*,
No. 99-526, 2001 U.S. Dist. LEXIS 18734 (E.D. Pa. Nov. 16, 2001) .........................4, 5

*Official Comm. of Unsecured Creditors of Allegheny Health, Educ. & Research*
*Found. v. PricewaterhouseCoopers LLP*, No 2:00CV684,
2007 WL 141059 (W.D. Pa. Jan 17, 2007).................................................................4, 7, 8

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers &*
*Lybrand, LLP*, 322 F.3d 147 (2d Cir. 2003) ..................................................................9

iii

*Official Comm. of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.),*
353 B.R. 820 (Bankr. D. Del. 2006) ................................................................6

*Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.),* 343 B.R. 444 (Bankr. S.D.N.Y. 2006).................................4, 7, 8

*Peltz v. SHB Commodities, Inc.,*
115 F.3d 1082 (2d Cir. 1997)........................................................................4

*Ross v. Bolton,*
904 F.2d 819 (2d Cir. 1990)..........................................................................8

*Russo v. Bank of Am. Sec., LLC,*
No. 05 Civ. 2992, 2007 WL 1946541 (S.D.N.Y. June 28, 2007)............................16, 17

*Snyder v. Simon,*
853 N.Y.S.2d 195 (App. Div. 2008) ..............................................................18

*Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.),*
335 B.R. 539 (D. Del. 2005).........................................................................6

*Three Flint Hill Ltd. P'ship v. Prudential Ins. Co. (In re Three Flint Hill P'ship),*
213 B.R. 292 (D. Md. 1997)..........................................................................7

*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.,*
906 A.2d 168 (Del. Ch. 2006), *aff'd,* 931 A.2d 438 (Del. Sup. Ct. 2007) .....................11

*UCAR Int'l Inc. v. Union Carbide Corp.,*
No. 00CV1338, 2004 U.S. Dist. LEXIS 914 (S.D.N.Y. Jan. 26), *aff'd,*
119 F. App'x 300 (2d Cir. 2004) ...................................................................4

*Whitley v. Carolina Clinic, Inc.,*
455 S.E.2d 896 (N.C. Ct. App. 1995)..............................................................10

## STATUTES

N.C. Gen. Stat § 55-8-01(b).........................................................................10

**INTRODUCTION**

Defendants' opening brief showed that this case is ripe for summary judgment. Plaintiff's answering brief does not alter that conclusion.

First, the doctrine of *in pari delicto* bars all of Plaintiff's claims. The harm of which the Trust complains is the prolongation of Oakwood's corporate life, which was made possible in part by securitizations underwritten by Defendant Credit Suisse Securities ("CSS"). Oakwood's strategy, the securitizations, and other related transactions involving Defendants were authored and approved by Oakwood's Board and management. None of the three arguments Plaintiff makes against the application of *in pari delicto* withstands scrutiny.

- While Plaintiff tries to separate the "wrongs" committed by Oakwood and Defendants, the evidence shows there was a single strategy that Plaintiff now calls wrongful: the attempt to survive a cyclical industry downturn, for which the securitizations, which provided liquidity, were necessary.

- Plaintiff argues that Defendants were "insiders," relying on the Bankruptcy Code definition and cases interpreting that definition. But *in pari delicto* is an equitable defense to state law causes of action, not a matter of bankruptcy law; the Bankruptcy Code definition has no place in deciding this matter. In every case in which a court has refused to allow an *in pari delicto* defense that would otherwise have been available, the defendant was in a position of domination and control over the plaintiff. Defendants were not in remotely such a position as to Oakwood, and there is not even an allegation to the contrary.

- The cases Plaintiff cites to support the notion that a jury must weigh relative fault apply when *in pari delicto* is raised in defense to a claim under the federal securities laws. The Supreme Court created a specific rule to be applied such cases, to ensure the *in pari delicto* doctrine does not interfere with federal regulatory concerns. That rule has no application here.

Second, any duty Defendants owed, fiduciary or otherwise, was to Oakwood itself, not its creditors. It was up to Oakwood's Board, in satisfaction of *its* fiduciary duties, to determine its obligations to various stakeholders and once it did that, it was not Defendants' job to second-guess the Board's decisions.

Third, there remains no evidence that Defendants' conduct caused harm to Oakwood or that any different actions by Defendants would have led to a better result for Oakwood.

Fourth, there was no implied contract for the provision of financial advisory services. Credit Suisse Securities tried repeatedly to be hired by Oakwood to provide those services and Oakwood flatly rejected all such offers until the summer of 2002.

Finally, Plaintiff presents no evidence on a standard of care to support its negligence claim. Professor Shapiro's opinion about Defendants' "unreasonable" behavior is unsupported by any evidence of what other banks have or would have done under similar circumstances.

We turn to these issues in order.

## ARGUMENT

## I.    OAKWOOD WAS *IN PARI DELICTO* WITH DEFENDANTS

### A.    Oakwood Actively And Voluntarily Participated In All Of The Actions Of Which Plaintiff Complains

As shown in Defendants' Opening Brief in Support of Defendants' Motion for Partial Summary Judgment ("Opening Brief" or "Defs. Br."), Oakwood may not recover damages if it "bears fault for the claim" or "participated in [the] wrongdoing." *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 354, 361 (3d Cir. 2001). Plaintiff, of course, is Oakwood's successor and has no greater rights than Oakwood. The wrongdoing alleged in this case is the continuation of securitization transactions which kept the company in business after it was insolvent.[1] Oakwood's Board and management were fully

---

[1]    Plaintiff alleges that an additional harm at issue is Defendants' faulty advice in endorsing Oakwood's business-as-usual path which entailed the continuation of its securitization program. (Answering Brief in Opposition to Defendants' Motion for Partial Summary

informed and in control of this business strategy and the securitizations which supported it. Indeed, as one would expect of a public company with a board comprised of highly qualified business and legal professionals, the Board, with the assistance of management, made *all* the operative decisions which led Oakwood to undertake and continue what Plaintiff now calls "value-destroying transactions," rather than adopt some other business strategy.

Unable to dispute that Oakwood actively participated in this alleged wrongdoing, Plaintiff deconstructs its own theory of wrongdoing and now says that Defendants' wrong was "personal" and "separate" from that of Oakwood, *i.e.*, Oakwood's "wrong" was a flawed business plan while Defendants' "wrong" was "putting their stamp of approval on the [company's] continuation of a disastrous" business plan.[2] (Pl. Ans. at 20.) Plaintiff's semantic hair-splitting over the nature of the "wrong" is baseless: *in pari delicto* operates as a matter of law to bar claims by plaintiffs who underlined participated in the wrongdoing for which they seek recovery. Plaintiff itself characterizes the "wrongdoing" as "value-destroying" transactions, which were *approved, adopted and controlled* by Oakwood and *structured and executed* by Defendants. (Pl. Ans. at 19-20.) There is but a single "wrong" at issue and Oakwood indisputably participated in it.[3]

---

Judgment ("Answering Brief" or "Pl. Ans.") at 32.) The *only* means by which Oakwood alleges that Defendants offered such advice was by "Credit Suisse's silence and...active participation in destructive transactions." (*Id.*) This is merely a different label for the very same conduct – continuing to help Oakwood meet its liquidity needs.

2    Plaintiff suggests that Defendants' "wrong" differed from that of Oakwood because Oakwood lacked "evil intent" while Defendants acted fraudulently by concealing their "knowledge" and "true opinions" from Oakwood. This is nonsense. Plaintiff has never alleged any type of fraud in this case, and any suggestion of fraud is entirely unsupported by the record. Plaintiff's citation to a handful of *in pari delicto* cases involving overt allegations of fraud or self-dealing by defendants to induce a plaintiff to engage in wrongdoing have no relevance here. (Pl. Ans. at 21.)

3    In any *in pari delicto* case, it is theoretically possible to argue that the defendant's

In *Peltz v. SHB Commodities, Inc.*, the plaintiff sought to avoid *in pari delicto* by alleging that its wrongdoing was qualitatively separate from that of the defendant. 115 F.3d 1082, 1090-91 (2d Cir. 1997). The court rejected this "hyper-technical interpretation of the *in pari delicto* doctrine" as "outdated." "[A]lthough the alleged violation of [defendant] in this case is of a different quality than [the wrongdoing] in which [plaintiff] participated, *the lack of an identical nature does not destroy the defense*." *Id.* (emphasis added); *see also UCAR Int'l Inc. v. Union Carbide Corp.*, No. 00CV1338, 2004 U.S. Dist. LEXIS 914, *33 (S.D.N.Y Jan. 26, 2004), *aff'd*, 119 F. App'x. 300 (2d Cir. 2004) ("Although [plaintiff] argues that the wrongdoing which it accuses the defendants of committing is different than the wrongdoing to which [plaintiff] admitted guilt, it is sufficiently similar.").

## B.    The "Insider" Argument Fails Because Defendants Did Not Control Oakwood

Plaintiff's next ground for rejecting *in pari delicto* – that Defendants were insiders of Oakwood – grossly mischaracterizes the operative law. *In pari delicto* is generally not available to insiders like directors or controlling shareholders because "insiders exercise control over a corporation and should not benefit from *in pari delicto*." *Official Comm. of Unsecured Creditors v. Shapiro*, No. 99-526, 2001 U.S. Dist. LEXIS 18734, *5 (E.D. Pa. Nov. 16, 2001). Similarly, *in pari delicto* is not available to third parties who "dominated or controlled the actions" of the corporation. *See Granite Corp. v. Primavera Familienstiftung (In re Granite*

---

misconduct was "different" from that of the corporation, *e.g.*, the auditor who failed to spot a company's weak financial condition which enabled the company to pursue a merger; the law firm that wrongly advised a transaction was lawful, which led a company to pursue it. But in those situations, and many others, courts focus on the larger harmful conduct and not a defendant's particular contribution to it. *See, e.g., Official Comm. of Unsecured Creditors of Allegheny Health, Educ. & Research Found. v. PricewaterhouseCoopers LLP*, No. 2:00CV684, 2007 WL 141059 (W.D. Pa. Jan 17, 2007); *Claybrook v. Broad & Cassel, P.A. (In re Scott Acquisition Corp.)*, 364 B.R. 562 (Bankr. D. Del. 2007); *Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 478-79 (Bankr. S.D.N.Y. 2006).

*Partners,) L.P.*, 194 B.R. 318, 331 (Bankr. S.D.N.Y 1996). The insider exception exists in order to prevent *in pari delicto* from becoming circular by permitting a defendant who controlled the plaintiff to avoid liability by pointing to participation by the very plaintiff it controlled.

In *Kalb, Voorhis & Co. v. American Financial Corp.*, the Second Circuit explained the rationale for the insider exception:

> Where the parties do not stand on equal terms and one party *controls* the other, the *in pari delicto* doctrine does not apply....The *in pari delicto* defense does not apply to such actions because the essential element of such claims is that a controlling shareholder forced the corporation to act for the benefit of the shareholder through *domination and control*.

8 F.3d 130, 133 (2d Cir. 1993) (emphasis added). *Kalb*, like other courts to consider the insider exception to *in pari delicto*, based its rejection of the defense on a factual finding that the insider-defendant dominated and controlled the plaintiff. *See, e.g., Shapiro*, 2001 U.S. Dist. LEXIS 18734, at * 5; *In re Granite Partners, L.P.*, 194 B.R. at 331. Application of the insider exception to *in pari delicto* requires evidence of domination and control of the plaintiff by the defendant. Because the record here – including deposition testimony from Oakwood's officers and directors and Oakwood's own documents – shows that Defendants did not dominate or control Oakwood, the insider exception does not apply.

Rather than address the cases which explain the necessary preconditions for insider status, namely control and domination, Plaintiff relies on the Bankruptcy Code definition of insider (even citing to its legislative history), despite the fact that *in pari delicto* is an *equitable* defense based in *common law*, and the claims at issue in this motion do not arise out of the Bankruptcy Code. Defendants assert *in pari delicto* as a defense to Oakwood's claims for breach of fiduciary duty, breach of contract, and negligence, all of which are governed by state law and could have been raised entirely outside the context of the bankruptcy litigation. There is

no basis for relying on the Bankruptcy Code's definition of insider, which is used for particular purposes in the bankruptcy statute.[4]

Even under the Bankruptcy Code definition of "insider," Plaintiff mischaracterizes the test, attempting to eliminate entirely its control element. According to Plaintiff, Defendants were insiders of Oakwood merely because the relationship between the parties was "sufficiently close to warrant careful scrutiny." (Pl. Ans. at 25.) As demonstrated by Defendants' Reply Brief and the cases cited therein, the Code definition requires that Plaintiff show "the alleged insider [exercised] sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets." *Butler v. David Shaw, Inc.*, 72 F.3d 437, 443 (4th Cir. 1996); *see also Official Comm. of Unsecured Creditors v. Austin Fin. Servs., Inc. (In re KDI Holdings, Inc.)*, 277 B.R. 493, 511 (Bankr. S.D.N.Y. 1999); *Official Comm. of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.)*, 353 B.R. 820, 841 (Bankr. D. Del. 2006).

Plaintiff attempts to refute this line of authority on several grounds, none of which succeed. While Plaintiff argues that the legislative history of the Bankruptcy Code does not specifically reflect the control requirement, Plaintiff ignores that it has been left to the "courts" to determine "[who] is an insider on a case by case basis." *See Lucent Techs., Inc. v. Shubert (In re Winstar Commc'ns)*, No. 06-147, 2007 U.S. Dist. LEXIS 31137, at *7 (D. Del. Apr. 26, 2007). The insider-status test developed by the *courts* is therefore the operative test.

---

[4]     Plaintiff relies on *Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)*, 335 B.R. 539, 547 (D. Del. 2005) (Farnan, J.) in which this Court rejected the *in pari delicto* defense. That case is not dispositive. *Stanziale* involved a motion to dismiss and the Court ruled that full discovery was necessary to determine whether defendants were insiders. Similarly, the ruling on the Motion to Dismiss in this case, *OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*, 340 B.R. 510, 536 (Bankr. D. Del. 2006) reflected the need for discovery given the allegation of insider status.

Plaintiff's discussion of *Winstar* omits the crucial record facts that led this Court to affirm a finding of insider status. This Court upheld the finding of insider status based upon a close relationship, *and* expressly grounded its finding on the fact that the defendant "controlled [the debtor's] purchasing decisions" and demanded that the debtor transfer funds to defendant," both indications that defendant exercised a degree of control over the debtor. *See id*, at *8.

*Three Flint Hill Ltd. Partnership v. Prudential Insurance Co. (In re Three Flint Hill Partnership)*, another case relied upon by Plaintiff, held that "[w]hile the statutory categories of 'insiders' are non exhaustive, courts should look to the categories to determine the types of relationships that fall within the scope of insider exclusion." 213 B.R. 292, 299 (D. Md. 1997). Thus, contrary to Plaintiff's contention that Defendants' "paradigm fails as a matter of basic statutory construction," the control requirement makes perfect sense.

According to Plaintiff's logic, every "sufficiently close relationship" between two parties would prevent one party from asserting the *in pari delicto* defense against the other, even when they both participated in the wrongdoing. If this were true, *in pari delicto* would *never* be available to accountants, lawyers, brokers, investment banks, or other professional service providers who necessarily have "close relationships" with their clients, in suits brought by those clients. *In pari delicto* is, however, often raised, and often upheld, in these very situations.[5]

---

5    *See, e.g., Official Comm. of Unsecured Creditors of Allegheny Health, Educ. & Research Found. v. PricewaterhouseCoopers LLP*, No 2:00CV684, 2007 WL 141059 (W.D. Pa. Jan 17, 2007) (dismissal on *in pari delicto* grounds in suit brought by company against its auditors); *Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 478-79 (Bankr. S.D.N.Y. 2006) (dismissal on *in pari delicto* grounds in suit brought by company against its investment bank); *Claybrook v. Broad & Cassel, P.A. (In re Scott Acquisition Corp.)*, 364 B.R. 562 (Bankr. D. Del. 2007) (dismissal on *in pari delicto* grounds in suit brought by company against its attorney).

## C.     There Is No Need To Weigh Relative Fault

Plaintiff's argument of last resort is that even if *in pari delicto* applies, the "extremely fact-intensive" nature of the inquiry requires the jury to decide the "respective amount of blame" to be assigned.[6] (Pl. Ans. at 26.) This proposition is based on a line of cases involving the federal securities laws that have no application here.

Plaintiff cites *Bateman Eichler, Hill'Richards, Inc. v. Berner*, for the proposition that application of *in pari delicto* invariably raises questions for the finder of fact. 472 U.S. 299, 307 (1985). In *Bateman*, however, the Supreme Court specifically considered how *in pari delicto* should be applied to claims under the federal securities laws, and ruled that it "should be narrowly defined in litigation arising under federal regulatory statutes" so that "preclusion of the suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public."[7] *Id.* at 308-10. Plaintiff's reliance on a factually and legally inapposite case to suggest a jury must weigh the "relative allocation of culpability" reveals the danger of quoting snippets of judicial opinions out of context.[8]

---

6     Plaintiff also claims that *in pari delicto* should not be considered a defense to breach of contract. The cases hold otherwise. *See In re Verestar, Inc.*, 343 B.R. at 480 (granting motion to dismiss contract claims on *in pari delicto* grounds, stating, "the *in pari delicto* doctrine has been applied to bar relief in contract as well as tort") citing *Burns v. Ferro*, C.A. No.88C-SE-178, 1991 Del. Super. LEXIS 99 (Del. Super. Ct. Mar. 28, 1991); *Jeremias v Shearson Hayden Stone, Inc*, 420 N.Y.S. 2d 881 (App. Div. 1979); *Official Comm. of Unsecured Creditors of Allegheny Health, Educ. & Research Found*, No2:00CV684, 2007 WL 141059 (W.D. Pa. Jan 17, 2007) (finding *in pari delicto* equally applicable as a defense to plaintiff's contract and tort claims) citing *Official Comm. of Unsecured Creditors v. Lafferty & Co*, 267 F.3d 340, 354 (3d Cir. 2001).

7     Plaintiff's citation to *Ross v Bolton*, 904 F.2d 819, 824 (2d Cir. 1990) is similarly flawed because that case simply applied *Bateman Eichler* (in dicta).

8     Plaintiff also suggests that the entirety of New York jurisprudence on *in pari delicto*, in particular the notion that the doctrine is the province of the finder of fact, is reflected in one appellate court decision. (Pl. Ans. at 26 n.33 (citing *Chem. Bank v Stahl*, 655 N.Y.S.2d 24, 25 (App. Div. 1997)). Here, in its entirety, is what *the Stahl* court said about *in pari delicto*: "The court also properly declined to dismiss on the basis that

The Second Circuit has summarily rejected the argument that "*in pari delicto* can never be established on the pleadings because issues of relative fault are 'quintessential' fact questions for the jury." *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 164 (2d Cir. 2003).[9]  After noting that the plaintiff (also a bankruptcy trustee) had offered no support for such a sweeping proposition, the Court ruled that the plaintiff had ignored the many times that "this Court has affirmed the dismissal of breach of fiduciary duty claims on the pleadings upon finding that *in pari delicto* had been established." *Id.* The same observation is true in the Third Circuit, where the Court in *Lafferty* affirmed the dismissal of claims brought by a bankruptcy trustee at the pleadings stage on the basis of *in pari delicto. Lafferty,* 267 F.3d at 354.

## II.    DEFENDANTS OWED NO DUTY TO OAKWOOD'S CREDITORS

In response to Section IV of our Opening Brief, Plaintiff says that we have grossly mischaracterized what Professor Shapiro said in his deposition, and insists that he did not opine on the existence of a fiduciary duty. There is no denying, however, that Professor Shapiro did in fact testify to the following: a key assumption of his report, that Defendants owed a duty to "Oakwood and its creditors," meant a duty to "to Oakwood's creditors," because of the

---

plaintiff is *in pari delicto*, which requires immoral or unconscionable conduct that makes the wrongdoing of the party against which it is asserted at least equal to that of the party asserting it." *Chem. Bank*, 655 N.Y.S. 2d at 25. Plaintiff's version of the law of New York leaves much to be desired.

[9]    The suggestion that the *in pari delicto* defense can only be decided by a jury is belied by the fact that courts in New York (and throughout this Circuit) routinely invoke the doctrine to dismiss claims, including at the summary judgment stage. (Pl. Ans. at 26; Defs. Br. at 18-19) (collecting cases where *in pari delicto* was basis for granting of motions to dismiss or for summary judgment); *see also Donovan v. Rothman*, 756 N.Y.S.2d 514, 515 (App. Div. 2003) (affirming summary judgment on *in pari delicto* grounds where "Plaintiffs were signatories to the allegedly illegal agreement."); *Ford v. Henry*, 598 N.Y.S.2d 660, 661 (Sup. Ct. 1993) (granting summary judgment and holding plaintiff *in pari delicto* with defendants as a "knowing and willing participant" in the underlying harmful conduct).

assumption that Oakwood was insolvent.[10] (Shapiro Dep. 28:23 – 31:17 (Ex. AA).)[11]  Indeed,

Professor Shapiro's conclusion that Defendants acted unreasonably *necessarily depends* on his

assumption that Defendants owed a duty to Oakwood's creditors. (*Id.* 36:6 – 37:14.)  And it is

Professor Shapiro's conclusion that Defendants acted unreasonably which forms the entire basis

of Plaintiff's case. (See, e.g., Pl. Ans. at 15-16)

Whatever duty Defendants owed, it was to Oakwood.  It was not to Oakwood's

creditors, or shareholders, or employees, or even its Board.   Management of a corporation, by

contrast, is entrusted to its Board of Directors, which has a fiduciary duty to the company's

shareholders. N.C. Gen. Stat § 55-8-01(b) ("All corporate powers shall be exercised by or under

the authority of, and the business and affairs of the corporation managed by or under the

direction of, its board of directors, except as otherwise provided in the articles of incorporation

or in an agreement [between shareholders] valid under G.S. 55-7-31(b)").

When a company is in financial distress, or is insolvent, the directors' duties are

commonly said to expand to require consideration of the interests of creditors.[12]  Professor

Shapiro, in his report, discusses what he calls "the agency conflict," which arises from the

possibility that, as a corporation encounters difficulty its shareholders and creditors may prefer

differing strategies. (Shapiro Rep. at 42-43 (Ex. L).)   In times of distress, the interests of

---

[10]     He went on to state that bondholders were the only creditors he had in mind (Shapiro
Dep. 36:6- 37:14 (Ex. AA).)

[11]     Unless stated otherwise, all exhibits referenced herein are attached to the Declaration of
Kate Z. Machan, dated February 29, 2008, which was filed contemporaneously with
Defendants' Opening Brief.

[12]     Actually, in North Carolina, where Oakwood was based and incorporated, it is not clear
that directors' duties expand until the corporation is actually in liquidation. *Whitley v.
Carolina Clinic, Inc.*, 455 S.E.2d 896, 898 (N.C. Ct. App. 1995); *see also Oberlin
Capital, L.P. v. Slavin*, 554 S.E.2d 840, 847 (N.C. Ct. App. 2001); *Keener Lumber Co. v.
Perry*, 560 S.E.2d 817, 824-26) (N.C. Ct. App. 2002).

shareholders may call for riskier strategies than the interests of creditors. It is, as we showed in our opening brief, the job of the directors to set the strategy, giving the weight to each of these competing interests that is required by law. (Defs. Br. at 21-22.) Oakwood's Board set the company's course, and called on CSS and the New York Branch of Credit Suisse to provide the liquidity that was essential to the execution of that strategy. CSS and the New York Branch behaved entirely *reasonably* because they provided Oakwood with the liquidity it needed to carry out the Board's strategy. Only if Plaintiff were correct that Defendants owed a duty to Oakwood's creditors, who may have preferred a strategy different from the one decided upon by the Board, could it be argued that Defendants behaved *unreasonably*.

At the point of insolvency, a board of directors continues to have discretion in deciding upon the appropriate course of action. "If the board of an insolvent corporation, acting with due diligence and good faith, pursues a business strategy that it believes will increase the corporation's value, but that also involves the incurrence of additional debt, it does not become a guarantor of that strategy's success …. [I]n such a scenario the directors are protected by the business judgment rule." *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 205 (Del. Ch. 2006), *aff'd*, 931 A.2d 438 (Del. Sup. Ct. 2007).

Plaintiff does not (nor can it) claim that there was any reason for Defendants to question Oakwood's directors' and officers' competence, diligence or honesty. The Board included educated, sophisticated business people and lawyers. (Defs. Br. at 4, n 2.) Oakwood's corporate counsel, Kennedy Covington, was often present at board meetings to render advice. (*See, e.g.*, Oakwood Bd. of Dirs. Mtng. Mins., dated August 10, 1999 (Ex. M); Oakwood Bd. of Dirs. Mtng. Mins., dated July 24, 2001 (Ex. S).) In fact, Myles Standish, who was at various points general counsel, Chief Executive Officer of Oakwood, and a director, was himself a

11

former Kennedy Covington partner.  (Standish Dep. 45:1- 45:20 (Ex. BB).)  Accordingly, Defendants could reasonably assume that Oakwood's Board and officers were properly carrying out their duties.

Plaintiff provides no legal support for its assertion that Defendants were required to consider the interests of the company's creditors apart from those of the company.[13]  The only case Plaintiff cites in connection with this argument -- *Dexia Credit Local v. Rogan*, Case No. 02 C 8288, 2003 U.S. Dist. LEXIS 18368 (N.D. Ill. Oct. 10, 2003) -- is not relevant to Plaintiff's contention.  *Dexia* did not address duties owed by third parties; rather, *Dexia* stated that the "special circumstance fiduciary duty" to creditors that arises when a corporation is insolvent should be extended to "controlling members" of closely held corporations.  *Dexia*, 2003 U.S. Dist. LEXIS 18368, at *21-22.  *Dexia* also stated that the rule that "controlling members owe fiduciary duties to their corporations and other shareholders ... exists because of the great power that controlling members can wield over the corporation." *Id.*

Plaintiff is the successor in interest to Oakwood, possessed only of those claims against Defendants that Oakwood had on November 15, 2002, the date Oakwood filed for bankruptcy. *See Lafferty*, 267 F.3d at 356.  Plaintiff's case consists of Oakwood asking Defendants, "Why didn't you stop us from carrying out the strategy that our own Board set?" But plaintiff fails to tell us how or why Defendants had any obligation to do that.

---

[13]    Moreover, according to Professor Shapiro, even in the academic literature there is no support for the proposition that a third party who owes a duty to a company will also owe a duty to the company's creditors in the event of the company's insolvency. (Shapiro Dep. 40:16-25 (Ex. AA).)

III.    **THERE IS NO EVIDENCE THAT DEFENDANTS CAUSED HARM TO OAKWOOD**

Plaintiff relies on the causation analyses in *Grant Thornton, LLP v. FDIC*, 535 F. Supp. 2d 676 (S.D.W.Va. 2007), *Crowley v. Chait*, Civ. No. 85-2441, 2004 U.S. Dist. LEXIS 27238 (D.N.J. Aug. 25, 2004); and *Comeau v. Rupp*, 810 F. Supp. 1172 (D. Kan. 1992), arguing that Oakwood's evidence is "similar, if not superior," to the evidence in these cases, all of which were permitted to go to the jury. (Pl. Ans. at 36.) In fact, these cases demonstrate exactly what is required as a matter of law but is missing here – any evidence in the record showing that, but for Defendants' breach of a duty, a different, better result would have obtained for Oakwood.

In *Grant Thornton,* the court noted that "FDIC has proven that the losses for which it seeks recovery would not have occurred but for the negligence of Grant Thornton. FDIC has proved that if Grant Thornton had followed GAAS, it would have discovered and reported the fraud and insolvency of Keystone before April 21, 1999, which would have led to immediate closure of the Bank." 535 F. Supp. 2d at 710. In *Crowley*, two experts testified that had the audit not been negligent, the insurance company would have been placed into immediate runoff status and not allowed to write new policies, and the responsible state regulator testified that, had the audit been done correctly, the company would have been ordered immediately to cease generating new business. 2004 U.S. Dist. LEXIS 27238, at *25. In *Comeau*, two board members testified that they would have taken corrective action promptly had the audit been correct, and an expert testified that a write-down in assets of the magnitude that would have been required by a proper audit would have demanded immediate attention. 810 F. Supp. at 1143-44.

Not a single member of Oakwood's Board or management has testified that anything different would have happened had Defendants offered different advice. Indeed, Plaintiff has never said exactly what advice Defendants should have given, or when. Oakwood

13

obviously knew it was in financial trouble, had liquidity problems, and faced a real possibility of bankruptcy, and it was implementing measures to improve this situation. (Shapiro Dep. 107:16 – 108:24 (Ex. AA).)

Plaintiff relies heavily on the notion that the Xanthos memos should have been shared with Oakwood, but all the *factual* information in those memos came directly from the Company and Xanthos' meetings with Oakwood's management.[14] (*See* Civ. D.I. No. 57 (Declaration of William L. Holt, dated March 19, 2008, Exhibit N).) Oakwood's management knew as well as Xanthos that Oakwood had not met recent projections, the markets were difficult, and customer default rates were rising. If it is Plaintiff's position that Xanthos' *opinions* would have turned the tide, Plaintiff is required to put forth some evidence of this fact. But not a single witness comes remotely close to saying, "If only we had known that Xanthos thought poorly of our management we would have done something different."

Perhaps Plaintiff believes the focus should be not on wrongs of *omission* (failing to give proper advice) but on wrongs of *commission* (continuing the securitizations). There is still no evidence of causation. Dr. Tennenbaum says he has no idea what would have happened had the securitizations come to an end. (Although he does agree that some source of liquidity for continuing operations would have been necessary to realize his calculated values. (Tennenbaum Dep. 74:10 – 75:17 (Ex. CC).) We can guess, and reasonably so, that the result would have been an immediate and catastrophic liquidation of Oakwood. But at this stage in the proceedings we are not supposed to be guessing. Evidence is required, and it does not exist.

Plaintiff also argues, with no citation to the record or any authority, that causation

---

[14]     Furthermore, the record reveals that more senior people employed by Defendants *did not agree* with the opinions expressed by Xanthos, and his views certainly cannot be said to represent the institutional views of all of the Defendants.

is easily established with respect to what it says are $21 million in fees earned by Defendants in 2001 and 2002. However, with no evidence suggesting that Defendants' securitization related services, Warehouse Facility, or other conduct, caused harm to Oakwood, Plaintiff's alternative "fee" theory of damages exists in a vacuum. Plaintiff's argument is also circular. Plaintiff attempts to sidestep, in a single footnote, the two key problems with its claim to the fees. First, the fees were not paid by any of the Trust's predecessors in interest (they were paid by entities which were never debtors). Second, the fees did not "deprive Oakwood of needed cash" because they were simply reductions in the proceeds of the transactions that *provided* Oakwood with the cash it needed. Unless Plaintiff means to contend that fiduciaries are always obligated to work for free, the fee claim is entirely without foundation, since there is no evidence the fees were improper.

Although Plaintiff makes a half-hearted claim for the application of the so-called "substantial factor" causation test, that analysis (as stated by Plaintiff's own authority) only applies when a plaintiff seeks restitution. *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 173 F.3d 454, 464-66 (2d Cir. 1999). The Second Circuit summarized New York's causation rules as follows:

> [U]nder New York law, the level of causation required in breach of fiduciary duty and breach of contract cases depends on the type of remedy sought. "Where . . . the remedy sought is damages to compensate for a claimant's loss, the usual damages-causation rule for tort and contract breach cases is appropriate," but "where . . . the remedy being sought is a restitutionary one to prevent the fiduciary's unjust enrichment as measured by his ill-gotten gain, the less stringent 'substantial factor' standard may be more appropriate." Thus, where damages are sought for breach of fiduciary duty under New York law, the plaintiff must demonstrate that the defendant's conduct proximately caused injury in order to establish liability.

*LNC Invs.*, 173 F.3d at 465 (internal citations omitted). Plaintiff's Answering Brief makes no claim to equitable or restitutionary remedies, but rather argues that Oakwood was injured by an enterprise value diminution and by the payment of fees that depleted Oakwood's assets -- classic

compensatory damages claims. Plaintiff does not seek an equitable or "restitutionary" remedy that would give rise to any alternative causation analysis under New York law.[15]

## IV.    PLAINTIFF FAILS TO SHOW THE EXISTENCE OF AN IMPLIED FINANCIAL ADVISORY CONTRACT

Plaintiff's contention that an implied contract existed between the Defendants and Oakwood is entirely contradicted by the record. There is no evidence in the record to support several key elements of an implied contract for financial advisory services. Further, Oakwood *expressly rejected* entering into such a contractual relationship with Defendants on several occasions. Plaintiff's argument amounts to the claim that Defendants had entered into an implied contract to provide exactly those financial advisory services, for free, that it had repeatedly and unsuccessfully offered to provide for a fee.

Under New York law, an implied contract requires all the elements required of any other valid contract, including consideration, mutual assent, legal capacity, and legal subject matter. *Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 178 (2d Cir. 2006); *Maas v. Cornell Univ.*, 721 N.E.2d 966, 969-70 (N.Y. 1999). As in all contracts, plaintiff must establish that the parties' conduct indicated a mutual intent to contract and a meeting of the minds. *Berlinger v. Lisi*, 731 N.Y.S.2d 916, 917 (App. Div. 2001); *Russo v. Bank of Am. Sec., LLC*, Slip Copy, No. 05 Civ. 2992, 2007 WL 1946541, at *4 (S.D.N.Y. June 28, 2007).

Plaintiff fails to point to any facts establishing the elements of an implied contract between a Defendant and Oakwood to provide financial advisory services to Oakwood. Perhaps most damning is this: there is not a single shred of evidence that Oakwood's board ever asked any of the Defendants for any sort of strategic advice.

---

15    Plaintiff has expressly disclaimed any attempt to claim equitable remedies (such as restitution). (Adv. Proc. D.I. No. 203 (Reply Brief in Support of the Motion for Determination of Plaintiff's Rights to a Jury Trial).)

Plaintiff's argument as to consideration borders on frivolous. *See Murray*, 444 F.3d at 178. Plaintiff's theory is that Defendants provided financial advice in exchange for: (i) fees earned from Defendants' securitizations and other lending activities with Oakwood; (ii) the equity warrant; and (iii) "access to 'pitch' other 'services' to Oakwood and otherwise be Oakwood's 'first choice' investment bankers." (Pl. Ans. at 38.) First, it is clear under New York law that "a contract cannot be implied 'where there is an express contract covering the subject matter involved.'" *Russo*, 2007 WL 1946541, at * 5 (quoting *Missigman v. USI Northeast, Inc.*, 131 F. Supp. 2d 495, 512 (S.D.N.Y. 2001)). The fees for securitizations and the Warehouse Facility (including the warrant), which were earned for performing those transactions, cannot provide consideration for a wholly different set of obligations. *See Murray*, 444 F.3d at 178 (finding that "no consideration was exchanged between the parties alleged to have contracted with each other" because the alleged consideration was part of a pre-existing obligation). That leaves "access to pitch" as Plaintiff's remaining theory of consideration. But it is absurd to claim that a major investment bank would contract with a company to provide unspecified, general financial advice of all sorts[16] in exchange for the mere ability to "pitch" services to that company. *Cf. Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 376 n.5 (2d Cir. 2000) (noting that industry custom may be used to determine whether an implied contract exists). By contrast, the record shows that when Oakwood actually *did* contract with CSS to become Oakwood's financial advisor, the consideration was specified and the services to be provided were carefully delineated in writing.

---

[16] Especially "when not asked expressly" to provide such advice. (Pl. Ans. at 38) And especially when, as Plaintiffs would have it, by so doing it became the guarantor of the success of its advice.

## V.     THERE IS NO EVIDENCE THAT DEFENDANTS WERE NEGLIGENT

Plaintiff now points to the "primary focus" of its negligence claim. (Pl. Ans. at 39 n.43.)     That focus apparently centers on "far broader *questions*" than the adequacy of securitization services, only one of which Plaintiff ever articulates: "whether any such 'services' should have been provided." (Pl. Ans. at 40.) (emphasis added). According to Plaintiff's theory, Defendants breached this "broader duty of care" by failing to provide Oakwood with "financial advice which was reasonable under the circumstances." (*Id*) Since we know (*see* p 2, fn.1, *supra*) that Oakwood never actually asked for or received advice from Defendants about its strategy, we can infer that what Plaintiff means is that Defendants *impliedly* gave such advice by executing (at Oakwood's request) the securitizations.  Leaving aside the implausibility of that negligence theory, the simple fact is that Plaintiff has utterly failed to provide *any facts* as to the applicable standard of care. Plaintiff's expert, Professor Shapiro, concludes that Defendants "did not behave in a reasonable or reasonably prudent manner," but never suggests what the appropriate standard of care for a reasonably prudent bank would have been. (Shapiro Rep. at 3 (Ex. L).) Either Professor Shapiro, or some other expert, must define the "broader duty of care" alleged to have been breached by pointing to empirical evidence that other banks under similar circumstances act in a materially different manner as a matter of custom. (Pl. Ans. at 40.) *See Snyder v. Simon*, 853 N.Y.S.2d 195, 197 (App. Div. 2008) (affirming summary judgment where a plaintiff did "not identify or define the applicable standard of care, and fail[ed] to adequately set forth both the manner in which [defendant] deviated from the standard of care" and the requisite nexus between the deviation and the injuries sustained). Professor Shapiro's Reports fail to establish the appropriate industry standard, not because they provide inadequate evidence, but because they provide *no* evidence.

## CONCLUSION

It is now time for Plaintiff's three common law causes of action to be resolved. The case can then turn to the resolution – in this Court or in the Bankruptcy Court – of the real issues: a $1.8 million preference claim and the allowance of Credit Suisse Securities' proof of claim.

DATED:     May 19, 2008
           Wilmington, Delaware

                                        *Anne Shea Gaza*

                                        Mark D. Collins (No. 2981)
                                        collins@rlf.com
                                        Russell C. Silberglied (No. 3462)
                                        silberglied@rlf.com
                                        Anne S. Gaza (No. 4093)
                                        gaza@rlf.com
                                        Lee E. Kaufman (No. 4877)
                                        kaufman@rlf.com
                                        RICHARDS, LAYTON & FINGER, P.A.
                                        One Rodney Square
                                        920 North King Street
                                        Wilmington, Delaware  19801
                                        (302) 651-7700

                                                -and-

                                        R. Paul Wickes
                                        Mary K. Warren
                                        Michael J. Osnato, Jr.
                                        J. Justin Williamson
                                        LINKLATERS
                                        1345 Avenue of the Americas
                                        New York, New York  10105
                                        (212) 903-9000

                                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2008, I caused to be served by electronic mail and hand delivery the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

> Marla R. Eskin, Esq.
> Kathleen Campbell Davis, Esq.
> Campbell & Levine
> 800 North King Street
> Suite 300
> Wilmington, DE 19801

I hereby certify that on May 19, 2008, I sent by electronic mail and Federal Express the foregoing document to the following non-registered participants:

> Tony Castanares, Esq.
> Stephen M. Ray, Esq.
> Carol Chow, Esq.
> Whitman L. Holt, Esq.
> Stutman, Treister & Glatt, PC
> 1901 Avenue of the Stars
> 12th Floor
> Los Angeles, CA 90067

Anne Shea Gaza (#4093)